ORIGINAL

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
TELEPHONE (213) 633-6800
FAX (213) 633-6899
Andrew R. Hall (CA SBN 125773)
andyhall@dwt.com
Catherine E. Maxson (CA SBN 187509)
catherinemaxson@dwt.com

OF COUNSEL:
DAVIS WRIGHT TREMAINE LLP
1633 BROADWAY
NEW YORK, NEW YORK 10019-6708
TELEPHONE (212) 489-8230
FAX (212) 489-8340
Victor A. Kovner (NY SBN 1155688)
victorkovner@dwt.com

DAVIS WRIGHT TREMAINE LLP
1501 FOURTH AVENUE, SUITE 2600
SEATTLE, WASHINGTON 98101-1688
TELEPHONE (206) 622-3150
FAX (206) 628-7699
Stuart R. Dunwoody (WA SBN 13948)
stuartdunwoody@dwt.com
John A. Reed (WA SBN 07735)
johnreed@dwt.com

Attorneys for Plaintiff
CLAUDE CASSIRER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CLAUDE CASSIRER,

    Plaintiff,

vs.

KINGDOM OF SPAIN, a foreign state, and THYSSEN-BORNEMISZA COLLECTION FOUNDATION, an agency or instrumentality of the Kingdom of Spain,

    Defendants.

Case No. CV05-3459 GAF(Ex)

**COMPLAINT FOR:**

1. **DECLARATORY RELIEF;**
2. **IMPOSITION OF A CONSTRUCTIVE TRUST;**
3. **POSSESSION OF PERSONAL PROPERTY; AND**
4. **CONVERSION**

COMPLAINT

SEA 1604297v11 68251-1

# SUMMARY

This action seeks to recover a masterpiece of French impressionist art, the painting *Rue Saint-Honoré, après-midi, effet de pluie* by Camille Pissarro, that was looted by the Nazi regime from its Jewish owner in 1939 and is now in the Thyssen-Bornemisza Museum in Madrid.

In 1939, fearing for her life in the face of the Nazi regime's persecution of Jews, the owner of the painting, Lilly Cassirer Neubauer, decided to flee Germany. This decision probably saved her life, for her sister Hannah, who was unable to leave Germany because she was taking care of their sick mother, was later taken to the Theresienstadt extermination camp where she was murdered. To obtain exit visas out of Germany for herself and her husband, Lilly Cassirer Neubauer was forced to relinquish the Pissarro to an official appraiser appointed by the Nazi regime.

Lilly Cassirer Neubauer died in 1962 without ever having recovered the painting or having learned of its whereabouts. In 2000, her grandson and sole heir, plaintiff Claude Cassirer, learned that the painting was in the collection of the Thyssen-Bornemisza Museum, a museum in Madrid operated by the Thyssen-Bornemisza Collection Foundation, an agency or instrumentality of the Kingdom of Spain. Claude Cassirer petitioned the Spanish Minister of Culture, who is also the chair of the board of the Thyssen-Bornemisza Collection Foundation, for return of the painting. Even though Spain has signed several international agreements calling for the return of art plundered during the Holocaust, Spain and its Thyssen-Bornemisza Collection Foundation have refused to return the painting to Claude Cassirer, its rightful owner.

Claude Cassirer therefore brings this action and alleges as follows:

COMPLAINT

1

# THE PARTIES

1. Plaintiff, Claude Cassirer ("Cassirer"), is an 84-year-old retired photographer residing in San Diego, California. He was born in Germany and has been an American citizen since 1947. Cassirer is the sole heir of the estate of his grandmother, Lilly Cassirer Neubauer.

2. Defendant Kingdom of Spain is a foreign state, as defined in 28 U.S.C. § 1603(a).

3. Defendant Thyssen-Bornemisza Collection Foundation, also known in Spanish as Fundación Colección Thyssen-Bornemisza, is a foundation created under Spanish law with its principal place of business in Madrid, Spain. The Thyssen-Bornemisza Collection Foundation operates the Thyssen-Bornemisza Museum (known in Spanish as the Museo Thyssen-Bornemisza), an art museum in Madrid, Spain. The Thyssen-Bornemisza Collection Foundation and the Kingdom of Spain are sometimes referred to herein collectively as the "Thyssen-Bornemisza Collection Foundation."

# JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction and personal jurisdiction over the Kingdom of Spain and the Thyssen-Bornemisza Collection Foundation under 28 U.S.C. § 1330(a) because defendants are foreign states within the meaning of 28 U.S.C. § 1603(a) and this is a non-jury civil action as to which neither defendant is entitled to immunity under 28 U.S.C. §§ 1605 – 1607 or any applicable international agreement. *See Republic of Austria v. Altmann*, 317 F.3d 954, *modified* 327 F.3d 1246 (9th Cir. 2003), *aff'd* 541 U.S. 677 (2004).

5. This action concerns rights in property expropriated in violation of international law, namely a painting by the French Impressionist painter Camille Pissarro, *Rue Saint-Honoré, après-midi, effet de pluie* (the "Painting"). The Painting was confiscated from Lilly Cassirer Neubauer by the Nazi regime in Germany in

March 1939 when, fearing further persecution as a Jew, she fled Germany and was forced to surrender the Painting to an official of the Nazi regime. A reproduction of the Painting is attached as Exhibit A.

6. The Painting is in the possession of the Thyssen-Bornemisza Collection Foundation.

7. The Thyssen-Bornemisza Collection Foundation is, and at all relevant times herein has been, an agency and instrumentality, as defined in 28 U.S.C. § 1603(b), of the Kingdom of Spain.

8. The Thyssen-Bornemisza Collection Foundation is a separate legal person, corporate or otherwise.

9. The Thyssen-Bornemisza Collection Foundation is an organ of the Kingdom of Spain, or a majority of its shares or other ownership interest is owned by the Kingdom of Spain or a political subdivision thereof, as is set out below.

   a. The Kingdom of Spain, through its Ministry of Culture, co-founded the Thyssen-Bornemisza Collection Foundation.

   b. As authorized by a Spanish ordinance, Real Decreto-Ley 11/1993, the Kingdom of Spain gave the Thyssen-Bornemisza Collection Foundation over 42 billion pesetas (more than $327 million) for purchase of the Thyssen-Bornemisza collection from a trust controlled by Baron Thyssen-Bornemisza. Through Real Decreto-Ley 11/1993, the Kingdom of Spain also ceded the Villahermosa Palace in Madrid to the Thyssen-Bornemisza Collection Foundation without charge for use as the Thyssen-Bornemisza Museum, but directed that if the palace is no longer used as the seat of the collection, the palace will revert to the Kingdom of Spain. Through Real Decreto-Ley 11/1993, the Kingdom of Spain required that the Thyssen-Bornemisza collection be exhibited in Spain, at the Villahermosa Palace and at the Pedralbes Monastery near Barcelona, and limited the number of paintings from the collection that may be lent to other institutions for exhibition, and the duration of

COMPLAINT

3

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

such loans. Real Decreto-Ley 11/1993 provides that if the collection is not used in this way, or if the Foundation ceases to exist, the Thyssen-Bornemisza collection will become part of the "patrimony of the State," thereby being owned by the Kingdom of Spain.

   c.   As the Thyssen-Bornemisza Collection Foundation itself admits in recounting on its website for the Thyssen-Bornemisza Museum how the collection came to Spain, "[t]he Spanish State therefore acquired one of the most important private collections in the world."

   d.   In addition to providing the funds by which the Thyssen-Bornemisza Collection Foundation purchased the collection, and the palace at which the Thyssen-Bornemisza Collection Foundation displays the collection, the Kingdom of Spain controls the Thyssen-Bornemisza Collection Foundation. Through Real Decreto-Ley 11/1993, the Kingdom of Spain mandates that at least two-thirds of the directors on the Foundation's Board must be representatives of the Kingdom of Spain, nominated and removed freely by the government through royal decree. In fact, four of the governmental directors of the Thyssen-Bornemisza Collection Foundation serve by virtue of their high positions in the Spanish government: Spain's Minister of Culture; its Secretary of State for Culture, its Secretary of State for Budget and Expenses, and its Undersecretary of Culture, are all *ex officio* members of the board of the Thyssen-Bornemisza Collection Foundation.

   10.   The Thyssen-Bornemisza Collection Foundation is neither a citizen of a State of the United States as defined in 28 U.S.C. § 1332(c) and (d), nor created under the laws of any third country other than the United States or Spain.

   11.   The Thyssen-Bornemisza Collection Foundation is engaged in commercial activity in the United States.

   a.   The Thyssen-Bornemisza Collection Foundation has borrowed artworks from museums in the United States, including from the Los Angeles County

4

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Museum of Art and the Fine Arts Museum of San Francisco, and, on information and belief, lends artworks to museums in the United States.

      b.    The Thyssen-Bornemisza Collection Foundation engages in and receives the benefit of tourist advertising in the United States conducted by the official Spanish National Tourist Office, an agency sponsored and controlled by the Kingdom of Spain, which has offices in various cities in the United States, including in Los Angeles, California. For example, Turespaña, an arm of the Kingdom of Spain, distributes in this District and throughout the United States a color brochure entitled "The Great Museums of Madrid" that prominently features the Thyssen-Bornemisza Museum.

      c.    The Thyssen-Bornemisza Collection Foundation seeks publicity in the United States promoting the Thyssen-Bornemisza Museum and encouraging residents of the U.S. to visit the museum.

      d.    The museum operated by the Thyssen-Bornemisza Collection Foundation, the Thyssen-Bornemisza Museum, is visited by thousands of U.S. citizens each year, and accepts entrance fees from these visitors. In its gift shop, the Thyssen-Bornemisza Museum sells various items to U.S. citizens. These include objects bearing images of the Painting, such as posters, address books, and transparencies. The Thyssen-Bornemisza Collection Foundation accepts payment by U.S. credit card for payment of entrance fees and for purchases at its gift shop.

      e.    The Thyssen-Bornemisza Collection Foundation has a website, www.museothyssen.org, at which U.S. citizens may purchase tickets for admission to the Thyssen-Bornemisza Museum using U.S. credit cards. Visitors to the website can view the paintings on display in the Thyssen-Bornemisza Museum, including *Rue Saint-Honoré, après-midi, effet de pluie*.

12.    The Kingdom of Spain is engaged in numerous other commercial activities in the United States, and in this judicial district in particular.

5

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

a. The Kingdom of Spain actively promotes its cultural and commercial interests throughout the United States, including within Los Angeles. The Kingdom of Spain has a consular office in Los Angeles, California, that promotes Spanish cultural and business interests in California and the Western United States. The Kingdom of Spain has a commercial office in Los Angeles, California, that promotes Spanish business interests in California and the Western United States.

b. The Spanish National Tourist Office, an agency sponsored and controlled by the Kingdom of Spain, has an office in Los Angeles. It conducts advertising and marketing in California and throughout the United States promoting tourism in Spain generally and the Thyssen-Bornemisza Museum in particular.

13. Venue is proper in this District under 28 U.S.C. §1391(f)(3) because the Kingdom of Spain and the Thyssen-Bornemisza Collection Foundation conduct business in this District. There is no other venue in the United States that would be more appropriate for this action than this District.

## FACTS

### Ownership of the Painting

14. Camille Pissarro completed *Rue Saint-Honoré, après-midi, effet de pluie* in 1897. He sold the Painting in 1898 to his friend and representative, Durand-Ruël, who in turn sold it that same year to Julius Cassirer.

15. The Cassirers were a well-known and highly regarded Jewish family that played a leading role in Germany's economic and cultural life until the Nazis drove them from the country in the 1930's. Julius Cassirer and his six brothers were highly successful industrialists with interests in timber, paper and pulp, real property development, and electrical cables. The next generation of Cassirers – Julius Cassirer's children, nieces and nephews – were prominent in Germany's intellectual and cultural life. For example, Julius's son Bruno Cassirer ran an influential art

COMPLAINT 6

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

publishing house in Berlin, and his nephew Paul Cassirer was an outstanding art dealer who championed the French Impressionists and later the German Expressionists at his gallery in Berlin.

16. When Julius Cassirer died in 1924, his son, Fritz Cassirer, and Fritz's wife, Lilly Cassirer, inherited the Painting.

17. Fritz and Lilly Cassirer had one child, Eva Cassirer, who married her cousin, Friedrich Wilhelm Cassirer. Eva and Friedrich Wilhelm Cassirer had one child, the plaintiff Claude Cassirer. Eva Cassirer died in an influenza epidemic in 1921, when Claude Cassirer was four months old, and he was raised largely by his grandmother, Lilly Cassirer.

18. Fritz Cassirer died in 1926, and the Painting then passed to his widow, Lilly Cassirer. Lilly Cassirer subsequently married Otto Neubauer, after which she was known as Lilly Cassirer Neubauer, or simply Lilly Neubauer.

19. The Painting was prominently displayed in Lilly Cassirer Neubauer's parlor in Germany. A photograph of Lilly Cassirer Neubauer's parlor in Berlin, showing the Painting, is attached as Exhibit B. Claude Cassirer has vivid memories of seeing the Painting hanging in his grandmother's parlor, and still has in his possession the Barlach sculpture and several distinctive antiques shown in this photograph.

## Seizure of the Painting

20. As a Jew, Lilly Cassirer Neubauer was subjected to increasing persecution in Germany after the Nazis seized power in 1933. The racist anti-Jewish Nuremberg Laws that Germany enacted in September 1935 deprived her and other German Jews of their civil rights. In 1937 and 1938, the Nazi regime set out to impoverish Jews by requiring them to register their property and then by "Aryanizing" Jewish businesses, under which the ownership of most Jewish businesses was taken over by non-Jewish Germans who bought them at bargain

7

COMPLAINT

prices fixed by Nazis. The persecution of Jews reached a new and far more frightening level on the night of November 9, 1938, when the Kristallnacht pogroms took place throughout Germany. In Munich, where Lilly Cassirer Neubauer was living at that time, numerous Jews were arrested by the Gestapo and held at the Dachau concentration camp, and several synagogues and numerous Jewish-owned businesses were destroyed. Immediately after Kristallnacht, the Nazi regime continued its campaign of genocide against German Jews by promulgating regulations that (1) required the Jewish owners of businesses that were damaged during Kristallnacht to repair the damage at their own expense, (2) excluded Jews from business, and (3) required German Jews as a group to pay a "contribution" of 1 billion Reichsmarks to the German state.

21. In 1939, Lilly Cassirer Neubauer felt she had no choice but to flee Germany. This decision saved her life. The Second World War broke out shortly thereafter and her sister, Hannah, who could not leave Germany because she was caring for their mother, was later taken to the Theresienstadt extermination camp and murdered.

22. To secure entrance visas to England for Lilly Cassirer Neubauer and her husband, Professor Otto Neubauer, four prominent London doctors who had studied under Dr. Neubauer in Munich together sponsored the now impoverished couple by guaranteeing their support for life, to reassure the British government that Lilly and Otto Neubauer would never become a burden on society in England.

23. Lilly and Otto Neubauer still had to obtain official permission to leave Germany, and to take their belongings with them. A Munich art dealer, Jakob Scheidwimmer, was appointed by the Nazi regime as the official appraiser to evaluate the works of art that Lilly Cassirer Neubauer wished to take with her. After completing his appraisal, Scheidwimmer told Lilly Cassirer Neubauer that she could not take the Painting out of Germany and demanded that she hand it over to him in

8

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

exchange for a derisory payment of 900 Reichsmarks – about $360 at 1939 exchange rates. Lilly Cassirer Neubauer recognized that a speedy departure from Germany was a question of life and death for her and her husband, and feared that refusal of his demand might anger Scheidwimmer and result in denial of her request for permission to leave Germany. Even though she knew that she would never be permitted to take even the nominal payment offered by Scheidwimmer with her when she fled to England, because it was to be paid into a blocked bank account from which she would never be allowed to withdraw funds, Lilly Cassirer Neubauer had no choice in the matter, and surrendered the Painting to Scheidwimmer as demanded. The Nazi regime, through its appraiser Scheidwimmer, thus effectively stole the Painting from Lilly Cassirer Neubauer, who received nothing from the transaction other than freedom for herself and her husband.

24.   Because Germany confiscated the Painting based on Lilly Cassirer Neubauer's status as a Jew and as part of its genocide against Jews, the confiscation was in violation of international law. As the United States Congress recognized in the Holocaust Victims Redress Act, because "[t]he Nazis' policy of looting art was a critical element and incentive in their campaign of genocide against individuals of Jewish and other religious and cultural heritage", "the same international legal principles applied among states should be applied to art and other assets stolen from victims of the Holocaust." Pub. L. 105-158, § 201, 112 Stat. 15, 17 (1998).

### Failure to Recover the Painting After Germany's Defeat

25.   Scheidwimmer traded the Painting in 1939 to another dealer, Julius Sulzbacher who, also persecuted by the Nazis, fled to Holland with it. Shortly thereafter, Germany invaded Holland and the Gestapo confiscated the Painting from Sulzbacher. In January 1943, the Painting was sold at auction in Berlin to an anonymous purchaser.

9

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

26. The Painting's whereabouts after 1943 were unknown to Lilly Cassirer Neubauer. Despite having made substantial efforts to locate and recover the Painting, she died in the United States in 1962, without ever having recovered the Painting or becoming aware of its whereabouts. In her will, she designated her grandson, plaintiff Claude Cassirer, as her sole heir.

### Acquisition of the Painting by Defendants

27. The whereabouts of the Painting since its seizure by the Nazi regime have recently been discovered. On information and belief, by 1952 it was in the possession of Knoedler & Co., a New York gallery, who then sold it to Sydney Schoenberg, a private collector in St. Louis, Missouri. In 1976, a New York art dealer, Stephen Hahn, purchased the Painting from Schoenberg and sold it to Baron Hans-Heinrich Thyssen-Bornemisza, a resident of Switzerland and one of the world's greatest private collectors of art. Lilly Cassirer Neubauer never learned of these transactions involving the Painting and, until recently, Claude Cassirer was unaware of them.

28. In the latter half of the 1980's, Baron Thyssen-Bornemisza began looking for a permanent home for his art collection. The Kingdom of Spain made great efforts to obtain the collection for Spain, and ultimately was successful.

29. In 1988, the Kingdom of Spain entered into a contract with the Baron's trust that owned the Thyssen-Bornemisza collection for the loan of the collection to Spain. The Kingdom of Spain spent millions of dollars to refurbish a palace it owned, the Villahermosa Palace, and provided it at no charge as a home for the Thyssen-Bornemisza Museum, where the collection was displayed. The Kingdom of Spain also paid Baron Thyssen-Bornemisza, or entities controlled by him, approximately $50 million for a ten-year lease on the Thyssen-Bornemisza collection.

30. In 1993, the Kingdom of Spain provided 42,277,120,000 Pesetas – more than $327 million – to the Thyssen-Bornemisza Collection Foundation to enable it to purchase the Thyssen-Bornemisza collection, including the Painting.

### **Defendants' Refusal to Return the Painting**

31. In 2000, Claude Cassirer learned that the Painting was on display in Madrid at the Thyssen-Bornemisza Museum. This was the first knowledge that Claude Cassirer had of the Painting's whereabouts since it was stolen from his grandmother in 1939.

32. On May 3, 2001, Cassirer, through counsel, presented a petition to Ms. Pilar del Castillo Vera, at that time Spain's Minister for Education, Culture and Sports and chair of the board of the Thyssen-Bornemisza Collection Foundation, requesting the return of the Painting to him as its lawful owner. His request was denied.

33. In July 2003, five members of the United States Congress wrote to Minister del Castillo, requesting that the Kingdom of Spain and the Thyssen-Bornemisza Collection Foundation return the Painting to Cassirer. Again the Kingdom of Spain and the Thyssen-Bornemisza Collection Foundation refused to return the Painting.

34. Under principles of international law to which the Kingdom of Spain itself subscribes, the Kingdom of Spain and the Thyssen-Bornemisza Collection Foundation should return the Painting to Cassirer.

   a. The Kingdom of Spain was one of the forty-four states that participated in the Washington Conference on Holocaust-Era Assets in 1998 and subscribed to the Washington Conference Principles on Nazi-Confiscated Art that resulted from the Washington Conference. Under the Washington Conference Principles, the Kingdom of Spain and the Thyssen-Bornemisza Collection Foundation should return the Painting to Cassirer.

11
COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

b. The Parliamentary Assembly of the Council of Europe, representing forty-one nations, including the Kingdom of Spain, unanimously passed Resolution 1205 on November 5, 1999, calling for the restitution of looted Jewish cultural property in Europe. Among other things, Resolution 1205 directs that "[b]odies in receipt of government funds which find themselves holding looted Jewish cultural property should return it." Under Resolution 1205, the Kingdom of Spain and the Thyssen-Bornemisza Collection Foundation should return the Painting to Cassirer.

c. The Vilnius International Forum on Holocaust Era Looted Cultural Assets took place in October 2000, under the auspices of the Council of Europe as a follow-up to the Washington Conference on Holocaust-Era Assets of December 1998. The states present at the Vilnius Forum, including the Kingdom of Spain, agreed to a declaration on October 5, 2000 that, among other things, "asks all governments to undertake every reasonable effort to achieve the restitution of cultural assets looted during the Holocaust era to the original owners or their heirs," and "encourages all participating States to take all reasonable measures to implement the Washington Conference Principles on Nazi-Confiscated Art as well as Resolution 1205 of the Parliamentary Assembly of the Council of Europe." Under the Vilnius Forum Declaration, the Kingdom of Spain and the Thyssen-Bornemisza Collection Foundation should return the Painting to Cassirer.

d. The European Parliament, of which Spain is a member, passed a resolution in December 2003 by a vote of 487 to 10 that, among other things, calls on its Member States (including Spain) "to make all necessary efforts to adopt measures to ensure the creation of mechanisms which favour the return of" property looted before and during World War II, and "to be mindful that the return of art objects looted as part of crime against humanity to rightful claimants is a matter of general interest for the purposes of Article 1 of Protocol 1 to the European Convention of

Human Rights." Under the resolution of the European Parliament, the Kingdom of Spain and the Thyssen-Bornemisza Collection Foundation should return the Painting to Cassirer.

35. In spite of these principles of international law, the Kingdom of Spain and the Thyssen-Bornemisza Collection Foundation have refused to return the Painting to Cassirer, stating that Cassirer should "start legal proceedings before a judge" to recover the Painting. Having exhausted his other means of recovering the Painting, Cassirer now brings this action.

## FIRST CAUSE OF ACTION
## FOR DECLARATORY RELIEF

36. Cassirer incorporates here by reference paragraphs 1 through 35.

37. An actual controversy exists between Cassirer on the one hand, and the Kingdom of Spain and the Thyssen-Bornemisza Collection Foundation on the other, as to ownership of the Painting, and Cassirer's right to return of the Painting.

38. Pursuant to 28 U.S.C. § 2201, Cassirer prays for a declaration affirming Cassirer's ownership of the Painting and his right to its immediate return.

## SECOND CAUSE OF ACTION
## FOR IMPOSITION OF A CONSTRUCTIVE TRUST

39. Cassirer incorporates here by reference paragraphs 1 through 38.

40. The Kingdom of Spain and the Thyssen-Bornemisza Collection Foundation have wrongfully detained the Painting from Cassirer.

41. As a result, Cassirer is entitled to the imposition of a constructive trust on the Painting, obligating the Kingdom of Spain and the Thyssen-Bornemisza Collection Foundation to return it to Cassirer.

## THIRD CAUSE OF ACTION
## FOR POSSESSION OF PERSONAL PROPERTY

42. Cassirer incorporates here by reference paragraphs 1 through 41.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800

43. Cassirer is the lawful owner of the Painting.

44. Cassirer is entitled to immediate recovery of the Painting.

45. Cassirer is also entitled to recover (a) damages for deprivation of possession of the Painting from the time of his demand for return of the Painting until he recovers possession of it, and (b) defendants' unjust enrichment resulting from use of the Painting during the same period of time.

## FOURTH CAUSE OF ACTION
## FOR CONVERSION

46. Cassirer incorporates here by reference paragraphs 1 through 45.

47. If for some reason the Court is unable to order return of the Painting, Cassirer has been damaged by the conversion of his property, and is entitled to damages in an amount to be proved at trial.

## PRAYER

WHEREFORE, Claude Cassirer prays for relief as follows:

1. For a declaration affirming Cassirer's ownership of the Painting and his right to its immediate return.

2. For imposition of a constructive trust on the Painting.

3. For an order directing the Kingdom of Spain and the Thyssen-Bornemisza Collection Foundation to return the Painting to Cassirer.

4. In the alternative, if the Kingdom of Spain and the Thyssen-Bornemisza Collection Foundation do not return the Painting, for an award of damages in an amount to be proven at trial.

5. For further compensatory damages for the refusal of the Kingdom of Spain and the Thyssen-Bornemisza Collection Foundation to return the Painting after demand by Cassirer, together with an award in the amount of defendants' unjust enrichment resulting from their use of the Painting from the time of Cassirer's demand for return of the Painting until he recovers possession of it.

14

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

6. For exemplary damages to the extent allowed by law.

7. For pre- and post-judgment interest on any award.

8. For costs, including a reasonable attorneys' fee, to the extent allowed by law.

9. For such other and further relief that the Court deems just and appropriate.

DATED: May 10, 2005

DAVIS WRIGHT TREMAINE LLP
ANDREW R. HALL
CATHERINE E. MAXSON

By: _____
Andrew R. Hall
Attorneys for Plaintiff
Claude Cassirer

15
COMPLAINT
DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**EXHIBIT A**



**EXHIBIT B**

