UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-03459 GAF (Ex) | Date | October 31, 2014 |
|---|---|---|---|
| Title | David Cassirer v. Thyssen-Bornemisza Collection Foundation | | |

| Present: The Honorable | **GARY ALLEN FEESS** | | |
|---|---|---|---|
| Stephen Montes Kerr | None | | N/A |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: | |
| None | | None | |

**Proceedings:** (In Chambers)

### ORDER RE: MOTION TO STRIKE AFFIRMATIVE DEFENSES

**I.
INTRODUCTION & BACKGROUND**

The present case involves claims to Nazi-looted artwork. The subject painting, the Rue Saint-Honoré, après-midi, effet de pluie (the "Painting"), by French impressionist Camille Pissarro, has been owned by Defendant Thyssen-Bornemisza Foundation ("TBC") and housed in the Thyssen-Bornemisza Museum in Madrid, Spain, since 1993. The Complaint alleges that the Painting was extorted from Lilly Cassirer Neubauer by the Nazis in 1939, as a condition of granting her an exit visa to leave Germany. (Docket No. 1 [Compl.].) The whereabouts of the Painting was unknown for some time, and, in the 1950s, Ms. Neubauer sought and received compensation for the Painting via the German courts and the United States Court of Restitution Appeals of the Allied High Commission for Germany. (See Docket No. 159 [5/24/12 Order] at 5.) Plaintiffs, Ms. Neubauer's great-grandchildren, David Cassirer and Ava Cassirer, together with the United Jewish Federation of San Diego County, (collectively, "Plaintiffs") seek to recover the Painting from TBC. They allege that David's and Ava's father, Claude Cassirer, first learned in 2000 that TBC possessed the Painting, and that this was the first information the family had regarding its whereabouts since it was taken in 1939. (Compl. ¶ 31.) Spain refused Claude Cassirer's requests to return the Painting, and, in 2005, he filed this lawsuit. (Id. ¶¶ 32–34.)

After much motion practice, including appeals to the Ninth Circuit Court, and ongoing discovery since 2006, TBC has now finally filed its Answer. (Docket No. 189 [Answer to Complaint ("Answer")].) Therein, TBC asserted thirty-two affirmative defenses. (Id.) Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-03459 GAF (Ex) | Date | October 31, 2014 |
|---|---|---|---|
| Title | David Cassirer v. Thyssen-Bornemisza Collection Foundation | | |

now seek to strike twenty of those defenses on various grounds, including that some of the issues are barred by the law of the case, are not properly affirmative defenses, are barred by the Parties' stipulation, are barred as a matter of law, or do not give fair notice. (Docket No. 195 [Mem. to Strike Affirmative Defenses ("Mem.")].)

For the reasons set forth below, the Court **GRANTS** Plaintiffs' Motion to Strike Affirmative Defenses.

**II.
DISCUSSION**

**A. LEGAL STANDARD**

Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike from any pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Ninth Circuit has held that "'[i]mmaterial' matter is that which has no essential or important relationship to the claim for relief" and that "[i]mpertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993) (internal citations omitted), rev'd on other grounds, 510 U.S. 517 (1994). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).

"Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). Accordingly, "courts often require a showing of prejudice by the moving party before granting the requested relief." Quintana v. Baca, 233 F.R.D. 562, 564 (C.D. Cal. 2005) (internal quotations omitted). In considering a Rule 12(f) motion, "the Court views the pleadings in the light most favorable to the non-moving party, and resolves any doubt as to the relevance of the challenged allegations in favor of [the pleading party]. This is particularly true if the moving party fails to demonstrate prejudice." Id. (internal citation omitted). In the end, the decision to grant or deny the motion is vested within the sound discretion of the trial court. Neilson, 290 F. Supp. 2d at 1152.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-03459 GAF (Ex) | Date | October 31, 2014 |
|---|---|---|---|
| Title | David Cassirer v. Thyssen-Bornemisza Collection Foundation | | |

    Motions to strike are frequently used as a basis to challenge affirmative defenses. E.g., Ross v. Morgan Stanley Smith Barney, LLC, 2013 WL 1344831, at *1 (C.D. Cal. Apr. 2, 2013) (internal quotations and citation omitted).

> An affirmative defense may be insufficient as a matter of pleading or as a matter of law. An affirmative defense may be insufficiently pleaded where it fails to provide the plaintiff with fair notice of the defense asserted. Wyshak v. City Nat'l Bank, 607 F.2d 824, 827 (9th Cir.1979). An affirmative defense is insufficient as a matter of law where "there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances the defense could succeed." Ganley v. Cnty. of San Mateo, No. 06–3923, 2007 WL 902551, at *1 (N.D.Cal. Mar.22, 2007).

Id. Courts have similarly stricken affirmative defenses that aren't. "A defense that rebuts plaintiff's prima facie case is a negative defense, not an affirmative defense." Figueroa v. Islands Rests. L.P., 2012 WL 2373249, at *2-3 (C.D. Cal. June 22, 2012) ("Figueroa II"); see also Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense.")

**B. APPLICATION**

    **1. AFFIRMATIVE DEFENSES THREE, FOUR, ELEVEN, TWELVE, AND THIRTEEN ARE BARRED BY LAW OF THE CASE**

    *a. "Preserved" Affirmative Defenses – Affirmative Defenses Eleven, Twelve, and Thirteen*

    TBC asserts it is "preserving [its Eleventh, Twelfth, and Thirteenth Affirmative Defense] for a writ of certiorari later in the case." (Opp. at 16.) However, "TBC admits that the Ninth Circuit has already found in this case that . . . 'Section 338 is not barred by the First Amendment, the Fourteenth Amendment's equal protection clause, or the foreign affairs doctrine.'" (Reply at 2; see also, Opp. at 16.) Thus, under law of the case these defenses are no longer viable. Moreover, TBC was previously granted a three month stay of the Ninth Circuit mandate so as to file such a writ; however, TBC did not do so within that period and the stay was lifted. (Docket No. 175 [Staying of Mandate]; Docket No. 176 [Lifting Stay].) Accordingly, the Court hereby **STRIKES** Affirmative Defenses Eleven, Twelve, and Thirteen.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-03459 GAF (Ex) | Date | October 31, 2014 |
|---|---|---|---|
| Title | David Cassirer v. Thyssen-Bornemisza Collection Foundation | | |

### b. Affirmative Defenses Based on Previously Adjudicated Issues – Affirmative Defenses Three and Four

TBC asserts its Foreign Sovereign Immunity Act ("FSIA") and Subject Matter Jurisdiction ("SMJ") Affirmative Defenses despite the Ninth Circuit's earlier decision and the Supreme Court's refusal to grant certiorari on the issue. (Opp. at 9.) The Ninth Circuit's finding, they argue, only established that "in looking at Plaintiffs' complaint alone – as the Court does when considering a [Motion to Dismiss] – that no exception to the FSIA appeared to preclude the Court's subject matter jurisdiction at that stage." (Id.) Moreover, TBC argues that the Ninth Circuit has clearly held SMJ as a non-waivable matter "that may be raised at anytime by one of the parties . . . ." (Id. (quoting Emrich v. Touche Ross & Co., 846 F.2d 1190, 1194 n.2 (9th Cir. 1988)).) Further, they argue that if at anytime a court determines it lacks SMJ it must dismiss the action. (Id. (citing Fed. R. Civ. P. 12(h)(3)).) Finally, TBC argues that in any case a later SMJ challenge would be "substantially different," specifically because the German litigation was not considered by the Ninth Circuit in reaching its decision mandates the defense not be stricken. (Opp. at 10-11.)[1]

While TBC is correct that subject matter jurisdiction is never waived, the remainder of its argument is unpersuasive. The Ninth Circuit noted that this Court allowed jurisdictional discovery on the commercial activity element of the FSIA, and that the Court's findings on the subject were supported by the evidentiary record. Cassirer v. Kingdom of Spain, 616 F.3d 1019, 1032 (9th Cir. 2010) (noting that various specific factual "findings are supported in the record"). Likewise, in Cassirer II, the Ninth Circuit made explicit reference to the German litigation, stating that the "Sachs v. Deutches Historisches Museum [BGH Mar 16, 2012, V ZR 279/10 (Ger.)] shows that 'under German law, the compensation received by Ms. Neubauer in 1958 did not divest her or her heirs of title to the [Painting].'" Cassirer v. Thyssen-Bornemisza Collection Foundation, 737 F.3d 613, 618 n.1 (9th Cir. 2013). Thus, the Court finds that the issue relating to both application of the FSIA and lack of SMJ has been adjudicated in this case, affirmed in the Ninth Circuit, and that there is, therefore, no plausible basis for allowing the assertion of these affirmative defenses. Accordingly, the Court hereby **STRIKES** Affirmative Defenses Three and Four.

---

[1] TBC's argument regarding the German litigation and settlement identified in Affirmative Defense 5–which is not a target of Plaintiffs' Motion to Strike Affirmative Defenses– is irrelevant for the present analysis and is disregarded as such. (See Answer ¶ 52; Opp. at 11.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-03459 GAF (Ex) | Date | October 31, 2014 |
|---|---|---|---|
| Title | David Cassirer v. Thyssen-Bornemisza Collection Foundation | | |

**2. AFFIRMATIVE DEFENSES EIGHTEEN, NINETEEN, TWENTY-TWO AND THIRTY-TWO ARE NOT "AFFIRMATIVE DEFENSES"**

   *a. Claims Properly Brought as Motions to Dismiss*

   TBC's Eighteenth, Nineteenth, and Twenty-Second Affirmative Defenses relate to failure to state claims for a constructive trust or conversion and lack of standing. (Docket No. 189 [Answer] at ¶¶ 65, 66, 69.) As this Court has held in previous cases, "[f]ailure to state a claim, which is the basis for a motion to dismiss, and lack of standing are not technically affirmative defenses." Vogel v. Linden Optometry APC, 2013 WL 1831686, at *4 (C.D. Cal. Apr. 30, 2013) (citing Ross v. Morgan Stanley Smith Barney, LLC, 2013 WL 1344831, at *3 (C.D. Cal. Apr. 2, 2013) (addressing failure to state a claim); Kohler v. Big 5 Corp., 2012 WL 1511748, at *3 (C.D. Cal. Apr. 30, 2012) (same); Figueroa v. Marshalls of CA, LLC, 2012 WL 1424400, at *3 (C.D. Cal. Apr. 23, 2012) (same) ("Figueroa III"); Figueroa II, 2012 WL 2373249at *2-3 (addressing both failure to state a claim and standing)). Nevertheless, TBC requests the "opportunity to demonstrate the cognizability [of these claims] within the proper context of documents and evidence that the Court can now consider as the case moves forward." (Opp. at 19.) This argument is unpersuasive. TBC had the ability to challenge these claims by bringing a motion to dismiss. The time for challenging the legal sufficiency of Plaintiff's claims has passed. Accordingly, the Court **STRIKES** Affirmative Defenses Eighteen, Nineteen and Twenty-Two.

   *b. Reservation of Right to Amend Answer*

   TBC's Thirty-Second Affirmative Defense "reserves the right to amend [TBC's] Answer and assert additional defenses as discovery progresses and reveal [sic] the need for the same." (Answer ¶ 79.) This is clearly not an affirmative defense, but a reservation of a supposed right not reflected in the Federal Rules of Civil Procedure. TBC has the right to seek the Court's permission to amend its pleadings, but not more. Accordingly, the Court **STRIKES** Affirmative Defense Thirty-Two.

**3. AFFIRMATIVE DEFENSE TWENTY-FOUR IS BARRED BY THE PARTIES' STIPULATION**

   The Parties in this case previously entered into a stipulation whereby TBC "agree[d] not to challenge . . . that venue of this action is proper in this District." (Docket No. 147 [Venue Stip.] ¶ 7.) Before TBC signed the stipulation, Plaintiffs explained its purpose was "regarding the understanding that [TBC] w[ould] not re-raise or appeal the issue of personal jurisdiction,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-03459 GAF (Ex) | Date | October 31, 2014 |
|---|---|---|---|
| Title | David Cassirer v. Thyssen-Bornemisza Collection Foundation | | |

and also addressing venue in the expectation that [TBC] will agree or has agreed not to contest that issue either." (Docket No. 205-1 [Reply Declaraton of Willilam Jacobson ("Jacobson Reply Decl.")] at Ex. C [1/26/12 Email Between Counsel ("1/26/12 Email")] at 1.) Plaintiffs further asked TBC to let them know if they agreed with the stipulation and proposed order granting such stipulation or "whether there are edits [TBC] wish[ed] to make." (Id.) The stipulation was submitted to the Court, signed by both Parties. (Venue Stip. ¶ 7.)

TBC now contends that despite signing such stipulation agreeing not to challenge venue as improper, that it still may make a *forum non conveniens* argument. (See Opp. at 16-18.) TBC argues "public interest factors . . . . tips in favor of Spain – even though venue in this district is proper." (Id. at 17.) Relying on the persuasive authority of Barnes v. At&t Pension Ben. Plan-Nonbargained Program, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010), TBC also requests the Court hold off from "analyz[ing] the merits of the defense now," arguing that they have demonstrated that Plaintiffs have failed to make the requisite showing of "'a certainty that plaintiffs would succeed despite any state of facts, which could be proved in support of the [*forum non conveniens*] defense.'" (Id. at 18.) However, TBC is undone by their own argument. The Parties' stipulation establishes to a certainty that Plaintiffs would succeed here because TBC expressly gave up the right to assert such a challenge. TBC's argument, though inventive, fails because the discussion between counsel clearly demonstrates the intent behind the words of the stipulation. It was not, as TBC suggests, simply that TBC would not challenge venue "as being improper" but rather that TBC would not challenge venue at all. (See 1/26/12 Email at 1.) TBC cannot be allowed to speak out of both sides of its mouth and must be held to its agreement.

Accordingly, the Court **STRIKES** Affirmative Defense Twenty-Four.

**4. AFFIRMATIVE DEFENSES SEVEN & TWENTY-THREE ARE BARRED AS A MATTER OF LAW**

TBC's Seventh Affirmative Defense asserts that Plaintiffs' claims are barred by the Act of State Doctrine. (Answer ¶ 54.) However, TBC fails to describe which foreign state's official act bars Plaintiffs' claims, noting that "there are multiple sovereigns – and potentially acts of multiple states – that may be implicated in this action . . . . [including] France, Germany, Holland, the United States, . . . Switzerland . . . [and] Spain." (Opp. at 14.) Plaintiffs argue that the only possibly relevant state actions, those of Spain and Germany, cannot be relied upon as a basis for this defense (Mem. at 17-21; Reply at 9-12.) Moreover, TBC's defense of this defense shows its defects. By disclosing the number of possibilities for state action allegedly encompassed by this defense, TBC has demonstrated that it fails to give fair notice of the state

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-03459 GAF (Ex) | Date | October 31, 2014 |
|---|---|---|---|
| Title | David Cassirer v. Thyssen-Bornemisza Collection Foundation | | |

actions that purportedly shield it from liability. That would be enough to support Plaintiff's motion. However, in argument TBC has referenced only the actions of Spain in the acquisition of the Painting, and the resolution of the German litigation through settlement. (See Opp. at 13-14.) Thus, the Court will address those in turn below.

### a. Spain's Purchase of the Painting[2]

Courts have found that where sovereigns exercise power as a private party might the Act of State doctrine does not apply. See de Csepel v. Republic of Hungary, 714 F.3d 591, 604 (D.C. Cir. 2013) (Act of State doctrine applies only to "conduct that is by nature distinctly sovereign, i.e., conduct that cannot be undertaken by a private individual or entity") (quoting McKesson Corp v. Islamic Republic of Iran, 672 F.3d 1066, 1073 (D.C. Cir. 2012)); Malewicz v. City of Amsterdam, 517 F. Supp. 2d 322, 339 (D.D.C. 2007) (acquisition of painting by city official not a public act for purposes of the Act of State doctrine where "any private person or entity could have purchased the paintings for display in a public or private museum.").

Here, Spain's action of buying the Painting, Plaintiffs argue, is "not an inherently sovereign act" but rather is indistinguishable from the commercial actions of a private party. (Mem. at 19.) Here Spain did nothing that a private party could not have done. It either directly purchased the Painting as would a private buyer, or indirectly purchased the Painting by providing TBC the funds to do so. (Reply at 10.) TBC does not explicitly argue that the purchase of the Painting was not a commercial action, but rather contends that whether such actions were commercial in nature has "yet to be determined." (Opp. at 14.) TBC does not, however, identify any facts that might tend to show how the purchase of the Painting could possibly have amounted to an official sovereign act. (See Reply at 10.) Indeed, the Painting's acquisition documents expressly state that the acquisition was subject to private law as a private commercial act. (Reply at 11; Jacobson Reply Decl. ¶ 5 at Ex. D [Acquisition Documents] at § 11.5.3 (noting, in relevant part, that TBC "is subject to private law with respect to its obligations under this Agreement . . . and any document entered into pursuant to this Agreement constitute[s] private commercial acts in the realm of private law").) All the evidence before the Court, including TBC's own conflicting statements regarding Spain's direct or indirect purchase

---

[2] In determining whether Spain's purchase of the Painting was a commercial activity the Court relies on facts from materials provided to the Court by declaration. (E.g., Jacobson Reply Decl. ¶ 5 at Ex. D [Acquisition Documents].) Because no facts relied on by the Court are in dispute, the Court's analysis would remain unchanged even if Plaintiffs' Motion to Strike Administrative Defenses was treated as a Motion for Partial Summary Judgment as to the Seventh Act of State Affirmative Defense or Twenty-Third Political Question Affirmative Defense.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-03459 GAF (Ex) | Date | October 31, 2014 |
|---|---|---|---|
| Title | David Cassirer v. Thyssen-Bornemisza Collection Foundation | | |

of the Painting, demonstrate that the Painting's purchase was a commercial activity and thus, not an official sovereign action. Thus, there is no official sovereign act of Spain on which to base either Affirmative Defense.

### b. *The German Litigation & Settlement Agreement*

TBC also argues that this Court would impermissibly be forced to review the German litigation because it involved the Painting and a restitution payment in settlement of Neubauer's claim. (Opp. at 14-15.) However, TBC fails to point out any portion of the German proceedings, whether an official sovereign act or not, that the Court would necessarily need to invalidate. (See Reply at 12 (noting TBC's lack of argument).) The most that TBC argues is that the Court would need to review the foreign settlement agreement. A U.S. court is not barred from interpreting foreign court rulings or settlement agreements, but only from invalidating such action. See U.S. v. Portrait of Wally, 663 F. Supp. 2d 232, 248 (S.D.N.Y. 2009) (Act of State did not bar court's review of Austrian governmental actions regarding transfers of painting where "the Court is not being asked to *invalidate* any action by an Austrian governmental authority, but only to determine the effect of such action, if any, on [the painting's] ownership.").)

Unlike the proceedings in Von Saher v. Norton Simon Museum of Art, 754 F.3d 712 (9th Cir. 2014), the prior German proceedings regarding the Painting did not seek to convey the Painting because it was presumed lost or destroyed. (See Reply at 12; Docket No. 164-3 [Declaration of Gunnar Schnabel ("Schnabel Decl.")] at Ex. 1 [Report on German Law Interpretation] at 7-8 (interpreting Peter Sachs v. Deutsches Historisches Museum, BGH Mar. 16, 2012, V ZR 279/10 (Ger.), as holding that "a claimant who receives monetary compensation under the Federal Restitution Act for the presumed loss of property that was wrongfully taken in the course of Nazi persecution does not thereby lose her ownership interest in that property, and can demand its return from the possessor if it is later discovered.") Plaintiffs do not wish to invalidate the settlement agreement or any other German case in any way; rather, they believe that applying the Sachs German case law to the German settlement reveals that Plaintiffs' property interest in the Painting endures. Thus, the Court is not being asked to invalidate any foreign action, officially sovereign or otherwise, but rather to review and interpret a German court's ruling and its impact on a German settlement agreement. There cannot be a bar, under either an Act of State or Political Question Affirmative Defense, based on such request.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-03459 GAF (Ex) | Date | October 31, 2014 |
|---|---|---|---|
| Title | David Cassirer v. Thyssen-Bornemisza Collection Foundation | | |

### c. *Political Question*

Additionally, TBC's Twenty-Third Affirmative Defense argues that Plaintiffs's claims are barred by the Political Question doctrine because they "raise non-justiciable political questions." (Answer ¶ 70.) The thrust of the lawsuit plainly shows that this is not the case, and TBC fails to elaborate or allege any facts supporting such a claim. In its opposition, TBC mixes together its discussion of the Act of State doctrine and the Political Question doctrine. (See Opp. at 13-15.) Thus, implicitly, TBC is alleging that these defenses are based on the same official sovereign acts. Accordingly, TBC's Twenty-Third Political Question Affirmative Defense and Seventh Act of State Affirmative Defense both rise and fall together

Accordingly, the Court **STRIKES** Affirmative Defenses Seven and Twenty-Three.

### 5. AFFIRMATIVE DEFENSES EIGHT, NINE, FIFTEEN, SIXTEEN, SEVENTEEN, TWENTY-SIX, TWENTY-SEVEN, AND TWENTY-EIGHT DO NOT GIVE FAIR NOTICE[3]

"'The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense.'" Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1023 (9th Cir. 2010) (quoting Wyshak v. City Nat'l Bank, 607 F.2d 824, 827 (9th Cir. 1979).). "Fair notice generally requires that the defendant state the nature and grounds for the affirmative defense." Kohler v. Islands Rest., LP, 280 F.R.D. 560, 564 (S.D. Cal. 2012). "It does not, however, require a detailed statement of facts." Id.

Plaintiffs seek to strike Affirmative Defenses Eight, Nine, Fifteen, Sixteen, Seventeen, Twenty-Six, Twenty-Seven, and Twenty-Eight for failure to give fair notice. (Mem. at 22-25; Reply at 15-19.) These defenses appear as one sentence statements without any supporting factual allegations. (See Answer ¶¶ 55, 56, 62, 63, 64, 73, 74, 75 (conclusory allegations of affirmative defenses of statute of limitations, laches, res judicata, collateral estoppel, foreign law, accord and satisfaction, and waiver).) TBC contends that these defenses, though "concise" are still sufficient to give Plaintiffs fair notice because TBC's "Answer does not come to Plaintiffs on a blank slate – the parties have engaged in significant discovery and motion practice over the last nine years of litigation." (Opp. at 1.) Thus, "in light of the prior years of litigation,

---

[3] The Court notes that various of the other Affirmative Defenses Plaintiffs are seeking to strike might also be subject to strike for failure to give fair notice. That the Court disposes of them by another form of analysis in this order does not indicate that the Court believes that Plaintiffs have been given fair notice as to all other Affirmative Defenses.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-03459 GAF (Ex) | Date | October 31, 2014 |
|---|---|---|---|
| Title | David Cassirer v. Thyssen-Bornemisza Collection Foundation | | |

communications, discovery responses and productions, and Plaintiff Claude Cassirer's deposition," TBC believes that they have "more than [met] [TBC's] obligation." (Opp. at 1-2.)

TBC's argument proves too much. If it is indeed true that the parties are both in possession of information that would put meat on the bare bones of these affirmative defenses, TBC should have been able to do so in its pleading. Its failure to do so is inexcusable. As this Court has noted in other litigation, where the defendant's "Answer fail[ed] to provide factual support for any of them" and "[i]nstead . . . provide[d] a barebones recitation of legal doctrines" the plaintiff is "le[ft] to guess how they apply to his claims." See Vogel, 291 F.R.D. at 441 (finding bare assertion that claim was barred by laches or waiver absent factual support was insufficient to provide fair notice and survive motion to strike). In some ways the situation here is more egregious because TBC claims to know what facts support its defenses and suggests that Plaintiff should be required to guess as to what specific information developed in discovery applies to each of these defenses. This is especially ironic because TBC has repeatedly refused to respond to Plaintiff's efforts to discover such information. (See e.g., Reply at 15-16; Jacobson Reply Decl. at Ex. F [Plaintiffs' Interrogatories] at 3 (Interrogatory 18: "State all facts supporting each of the affirmative defenses in YOUR ANSWER."); id. at Ex. G [TBC's Responses to Plaintiffs' Interrogatories] at 4-9 (long response objecting to Interrogatory 18, noting German restitution proceedings with Ms. Neubauer, acquisition of the Painting, exhibition of the Painting since acquisition, and documentation of these subjects).) Thus, in its answer, throughout discovery, or even now in its opposition faced with the threat of having some of its defenses struck—TBC refuses to provide sufficient factual allegations supporting Affirmative Defenses Eight, Nine, Fifteen, Sixteen, Seventeen, Twenty-Two, Twenty-Six, Twenty-Seven, and Twenty-Eight.

Accordingly, as TBC has failed to give fair notice of these defenses, the Court **STRIKES** Affirmative Defenses Eight, Nine, Fifteen, Sixteen, Seventeen, Twenty-Six, Twenty-Seven, and Twenty-Eight.

### III.
### CONCLUSION

For the reasons discussed above, Plaintiffs' Motion to Strike Affirmative Defenses is **GRANTED**. The hearing presently scheduled for November 3, 2014, is hereby **VACATED**.

**IT IS SO ORDERED.**