Thaddeus J. Stauber (Bar No. 225518)
　tstauber@nixonpeabody.com
Jason Gonzalez (Bar No. 178768)
　jgonzalez@nixonpeabody.com
Irene Tatevosyan (Bar No. 301568)
　itatevosyan@nixonpeabody.com
NIXON PEABODY LLP
555 West Fifth St., 46th Floor
Los Angeles, California 90013-1010
Tel: (213) 629-6000
Fax: (213) 629-6001

Attorneys for Defendant
THYSSEN-BORNEMISZA
COLLECTION FOUNDATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CASSIRER, AVA CASSIRER, and UNITED JEWISH FEDERATION OF SAN DIEGO COUNTY, a California non-profit corporation,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>THYSSEN-BORNEMISZA COLLECTION FOUNDATION, an agency or instrumentality of the Kingdom of Spain;<br><br>　　　　　　Defendant. | Case No. 05-cv-03459-JFW (Ex)<br><br>**THYSSEN-BORNEMISZA COLLECTION FOUNDATION'S REPLY IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION**<br><br>**Hon. John F. Walter**<br><br>**Date: March 16, 2015**<br>**Time: 1:30 p.m.**<br>**Courtroom: 16**<br><br>**Pre-Trial Conference: July 10, 2015**<br>**Trial: July 28, 2015** |

**TABLE OF CONTENTS**

Page

Table of Authorities .................................................................................................ii

I. Plaintiffs' Identify No Material Facts or Genuine Disputes to Preclude This Court from Deciding the Foundation's Motion for Summary Adjudication ..................................................................................................1

    A. The Undisputed Material Facts Prove that Plaintiffs' Claims Were Settled and Resolved by the 1958 German Settlement Agreement ...........1

    B. Plaintiffs Disputed Facts Do Not Preclude the Court from Adjudicating the Foundation's Motion ......................................................5

II. Any "Taking in Violation of International Law" Was Remedied by Germany with the 1958 German Settlement Agreement where Germany Compensated those Parties for their Wartime Losses ..........................................6

III. U.S. Government's Policy of Respecting the Finality of Foreign Governments Appropriate Restitution Actions Counsels in Favor of Respecting the Finality of the 1958 German Settlement Agreement.................10

IV. Conclusion ............................................................................................................12

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Abelesz v. Magyar Nemzeti Bank*,
 692 F.3d 661 (7th Cir. 2012) ...................................................................................7

*Cassirer v. Kingdom of Spain*,
 461 F. Supp. 2d 1157 (C.D. Cal. 2006) ..................................................................7

*Emrich v. Touche Ross & Co.*,
 846 F.2d 1190 (9th Cir. 1988) ................................................................................6

*Fischer v. Magyar Államvasutak Zrt.*, Nos. 13-3073, 14-1319, --- F.3d ---,
 2015 WL 294382 (7th Cir. Jan. 23, 2015) ..............................................................7

*Orkin v. Swiss Confederation*,
 770 F. Supp. 2d 612 (S.D.N.Y. 2011) ....................................................................7

*United States v. Alexander*,
 106 F.3d 874 (9th Cir. 1997) ..................................................................................7

*United States v. Mills*,
 810 F.2d 907 (9th Cir. 1987) ..................................................................................6

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
 754 F.3d 712 (9th Cir. 2014) ..................................................................... 10, 11, 12

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
 862 F. Supp. 2d 1044 (C.D. Cal. 2012) ................................................................10

*Zappia Middle E. Constr. Co. Ltd. v. Emirate of Abu Dhabi*,
 215 F.3d 247 (2d Cir. 2000) ...................................................................................7


**FEDERAL STATUTES**

Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1330, *et seq*
 ("FSIA") ......................................................................................................6, 7, 10

28 U.S.C. § 1605(a)(3) .................................................................................................6, 7

**STATE STATUES**

Cal. Civ. Code § 1636 (2015) ................................................................................... 9

**OTHER AUTHORITIES**

*Sachs v. Deutches Historisches Museum*, BGH Mar 16, 2012, V ZR 279/10
    (Ger.) ................................................................................................................ 12

**I.     Plaintiffs' Identify No Material Facts or Genuine Disputes to Preclude This Court from Deciding the Foundation's Motion for Summary Adjudication**

**A.     The Undisputed Material Facts Prove that Plaintiffs' Claims Were Settled and Resolved by the 1958 German Settlement Agreement**

The undisputed material facts, and the historical documents from which they come, are now before the Court. The Court is now in a position to conduct a legal analysis of whether the 1958 German Settlement Agreement bars Plaintiffs from making a modern claim in U.S. Courts against the Foundation, fifty years after "all" claims were settled.

In 1939, Mr. Scheidwimmer paid RM 900 into a blocked account and obtained possession of *Rue Saint-Honoré, après-midi, effet de pluie* by Camille Pissarro (the "Painting"). *See* Combined Statement of Fact ("CSF") ¶ 5. In 1948, Mrs. Lilly Neubauer filed a timely restitution claim in compliance with German post-war procedures. CSF ¶ 6. Mrs. Neubauer litigated her claim while represented by Mr. Siegfried Neuland, the attorney of her choice. CSF ¶ 7. In his perpetuation deposition, Mr. Cassirer stated that his grandparents "were satisfied with [Mr. Neuland's] work," that he was "a very good attorney and [Claude Cassirer] relied on him," that "[h]e was very responsible," and that "we had full confidence in Mr. Neuland." *Id.*

Mrs. Neubauer's action was "combined" with an action brought by Mr. Sulzbacher. CSF ¶ 9. The action now involved the Painting and three additional artworks. CSF ¶ 28. Two of these three additional artworks were at the Munich Collecting Point at the war's end and returned to Germany, giving Germany the responsibility for resolving any ownership disputes. CSF ¶ 29. In 1954, the U.S. Court of Restitution Appeals of the Allied High Commission for Germany considered an appeal brought by Mrs. Neubauer of a lower German court decision. CSF ¶ 8.

In a document filed with the court, Mr. Neuland stated that, in his opinion, the current value of the Painting was at least 110,000 DM. CSF ¶ 13; Def. Resp. to Plfs'

1

Objs. to Evid. in SUF at 5.  Mrs. Neubauer eventually dropped claims to the German artworks, sought as substitution for the Painting.  CSF ¶¶ 30, 71.

After nearly ten years of proceedings, a settlement was reached on February 28, 1958 ("1958 German Settlement Agreement").  CSF ¶¶ 10, 81.  That settlement included four parties and related to the Painting and additional artworks.  CSF ¶¶ 10, 28.  The 1958 German Settlement Agreement included Mrs. Neubauer and Grete Kahn (Julius Sulzbacher's heir) as distinct Jewish victims of the Nazi era dispossession of the artwork, Mr. Scheidwimmer, through whose hands the Painting had been transferred in 1939, and the German government.  CSF ¶ 11.  At the time of the settlement, the current location of the Painting was still unknown to the 1958 German Settlement Agreement parties.  CSF ¶ 12.

The 1958 German Settlement Agreement states that Mrs. Neubauer was to receive 120,000 DM from the German Reich.  CSF ¶ 13.  As of April 1, 1956, the appraiser reported the value of the Painting as 120,000 DM.  CSF ¶ 79; Def. Resp. to Plfs' Objs. to Evid. in SUF at 6.  (The German Federal Restitution Act (or "BrüG") required claims to be valued as of April 1, 1956.  CSF ¶ 78.)  The 120,000 DM is greater than the 110,000 DM proffered by Mr. Neuland.  CSF ¶ 13; Def. Resp. to Plfs' Objs. to Evid. in SUF at 6.

Ms. Kahn received the sum of 14,000 DM.  CSF ¶ 14.  The 1958 German Settlement Agreement states that this amount is to be made from the payment made to Mrs. Neubauer.  *Id*.  As part of the 1958 German Settlement Agreement, the two German artworks found after the war and restituted to Germany, were given to Scheidwimmer.  CSF ¶¶ 15, 29.  Article VI of the 1958 German Settlement Agreement states:  "This Settlement settles all mutual claims among the parties, including any claims which might exist in accordance with Art. 47 REG."  Decl. G. Schnabel, Exh. 126 at 3.  The 1958 German Settlement Agreement contains no language stating that

2

any of the parties retain an ownership right or any other right or interest. CSF ¶ 24; Def. Resp. to Plfs' Objs. to Evid. in SUF at 14.[1]

On May 2, 1958, the District Court of Munich – Reparations Chamber issued a decision. CSF ¶ 17. The decision states

> Initially, Neubauer requested from Scheidwimmer the restitution of the painting by Pissarro, alternatively, compensation for damages in the amount of DM 25,000. – (cf. decision to transfer issued by the Reparations Authority on 9.5.1950, sheet 20 of the request I WKV 190/54). Later on, the petitioner Neubauer changed her petition against Scheidwimmer as such that she demanded the surrogate for the Pissarro, namely the 2 [found German artworks] that were exchanged for it and are still available today (cf. sheet 60 ff of the request I WKV 190/54). After it was recognized in the course of the proceedings that the second buyer and racially persecuted Sulzbacher was dispossessed of the Pissarro by the German Government, and after it was shown that the claims for compensation for damages against the government were far higher than the value of the [two found German artworks], Neubauer made a claim for compensation on the government by reason of the Pissarro picture.

---

[1] Plaintiffs note that German settlement interpretation principles direct the reader to examine the intent of the Parties. Decl. G. Schnabel ¶ 23. The intent of the parties cannot be readily determined, as there is no one now alive who participated in the German litigation or settlement. When asked about the German litigation, Claude Cassirer stated he did not participate in the process and that any information he had regarding the Painting came from the German archives, the 1958 German Settlement Agreement, and correspondence between Mrs. Neubauer and Mr. Neuland. Decl. I. Tatevosyan, Exh.161 (C. Cassirer Depo. 195:14-196:12, Dec. 13, 2006). Plaintiffs made no effort to contact Mr. Neuland after the German litigation ended 1958 and prior to 2001, at which point they learned that Mr. Neuland had since died. *Id.* (C. Cassirer Depo. 204:5-18, Dec. 13, 2006). Plaintiffs maintain that the correspondence between Mrs. Neubauer and Mr. Neuland is privileged. *Id.* (C. Cassirer Depo. 197:4-18, Dec. 13, 2006).

Plaintiff David Cassirer stated in his declaration that he "reviewed all of [his] father's papers connected with the matter." Decl. D. Cassirer ¶ 24. Plaintiffs refused to make these materials available. Decl. I. Tatevosyan ¶¶ 4-6. Thus, the Court is left with the documents themselves, and there is no language or other evidence that the parties to the 1958 German Settlement Agreement intended to reserve rights or make future indeterminate claims against unidentified parties. The 1958 German Settlement Agreement is what it claims to be – a finalized, stamped, court-approved settlement.

3

> She only waived the restitution claim against Scheidwimmer as a result of the settlement of 2.28.1958 (cf. sheet 203 of the request I WKV 190/54).

Decl. L. Stein, Exh. 55 at 2.  The May 2, 1958, decision contains no language stating that any of the parties retain an ownership right or any other right or interest.  CSF ¶ 24; Def. Resp. to Plfs' Objs. to Evid. in SUF at 14.

The undated, handwritten notes, entitled "From Uncle Otto's Notes – Regarding Lilly Cassirer Neubauer," state

> At my application in connection with the restitution law, I have demanded the return of the painting or compensation for its value as the [wartime] sale price of RM 900 was completely out of line with its real value.  I also would have been willing to accept as part payment the 3 German paintings that Scheidwimmer had received from Sulzbacher in exchange for the Pissaro [sic].

CSF ¶ 25.[2]  Mr. Cassirer's family received the settlement proceeds from the German government.  CSF ¶ 27.  These undisputed facts show that Plaintiffs' claim to the Painting was settled.[3]

---

[2] Plaintiffs initially identified Claude Cassirer as the author of this document, provided to the Foundation by Plaintiffs.  Decl. L. Brill, Exh. 149 at 4.  After the Foundation filed its motion, Plaintiffs retracted their statement.  *See id*. at Exh. 150 at 4.  Plaintiffs affirmed that the *handwriting* on the document is that of Claude Cassirer.  *Id.*  Plaintiffs further note that Claude Cassirer "often referred to Lilly Neubauer's husband, Otto Neubauer, whose native language was German, as Uncle Otto," but they now lack "sufficient information to identify the original author, date, or other circumstance relating to the creation of any 'notes' by Otto Neubauer or anyone else on which the document 'From Uncle Otto's Notes – Regarding Lilly Cassirer Neubauer' may have been based."  *Id.*

[3] Laurie Stein's expert report, Exhibit 15 to her Declaration, was offered to provide the Court with a comprehensive history of the Painting and a context in which to place the 1958 German Settlement Agreement.  It is not a "deluge of irrelevant banalities," Opp. at 4, but a thorough recitation of information found in historical documents.  The historical documents memorializing the German proceedings did not come to the Court from Plaintiffs – who possessed them or had direct access to the German Archives, as Mrs. Neubauer's heirs – but from the Foundation.

4

### B. Plaintiffs Disputed Facts Do Not Preclude the Court from Adjudicating the Foundation's Motion

In their Corrected Statement of Genuine Disputes of Material Facts ("GDMF"), reproduced in the CSF, Plaintiffs raise a host of objections to the Foundation's Statement of Undisputed Facts ("SUF"). The majority of Plaintiffs' objections attempt to split hairs – none of the objections undermine or undercut any of the relevant, undisputed facts. Plaintiffs identify 140 "genuine disputes of material fact." Many of these are undisputed and/or not subject to reasonable dispute. *See, e.g.*, CSF ¶ 44 ("Hitler became Chancellor of Germany in 1933.") Others simply restate undisputed facts already identified by the Foundation. *See, e.g.*, CSF ¶ 6 ("In 1948, Mrs. Neubauer filed a timely restitution claim"); CSF ¶ 59 ("Lilly timely filed her claim in 1948"). Others contain unsupported assertions or opinions, with no identified factual support. CSF ¶ 35 ("The Painting thus has unique atmospherics and captures the grays, browns, and other tones so emblematic of Paris.") Occasionally, these unsupported assertions are inflammatory. *See, e.g.,* CSF ¶ 118 ("Both the Baron and TBC were either aware of or were willfully blind to numerous red flags concerning the Paintings' provenance.") More still relate to events before the war or after 1958 and have no relevance to this Motion.[4] *See, e.g.,* CSF ¶¶ 113-46. None of these "facts" raise a factual dispute to preclude the Court from deciding the pending Motion.[5]

---

[4] Plaintiffs attack the post-1950s possession and ownership of the Painting. Opp. at 22-25. That the post-1950s possession and ownership was unchallenged until recently, underscores that the 1958 German Settlement Agreement resolved Mrs. Neubauer's claims, as no post-settlement efforts were made to find the Painting. Plaintiffs' specific attacks on modern-day owners are not material to the Foundation's Motion.

[5] Plaintiffs object to the translation of the 1958 German Settlement Agreement, Exhibit 38 to the Declaration of Laurie Stein, asserting that "it is not accurately translated and it is not supported by a declaration under oath of a qualified translator or any facts to show the qualifications of the translator." Def. Resp. to Plfs' Objs. to Evid. in Decls. at 2-3. The case law cited by Plaintiffs does not render the translation inadmissible, and like all other translated documents the Foundation submitted, it was accompanied

*(Footnote continued on next page)*

5

With that, the material, undisputed facts are now before the Court, and there are no meaningful or relevant disputes to preclude this Court from considering the Motion.[6]

## II. Any "Taking in Violation of International Law" Was Remedied by Germany with the 1958 German Settlement Agreement where Germany Compensated those Parties for their Wartime Losses

Plaintiffs contend that the expropriation exception of the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1330, *et seq* ("FSIA") provides this Court with jurisdiction over the Foundation.[7] That exception abrogates sovereign immunity in a

---

*(Footnote continued from previous page)*
by a formal certification, made under oath, and signed by the identified translator. *See, e.g.,* Decl. L. Stein, Exh. 38.

   Plaintiffs' real objection is that there are slight differences between the parties' certified translations of the document. *See* Def. Resp. to Plfs' Objs. to Evid. in SUF at 8 (comparing translations). But this is not a meaningful dispute. If the Foundation's translation is objectionable, the Foundation requests that the Court use Plaintiffs' preferred translation, which states that "[t]his Settlement settles *all* mutual claims among the parties, including any claims which might exist in accordance with Art. 47 REG." Decl. G. Schnabel, Exh. 126 at 3 (emphasis added).

[6] Plaintiffs maintain that the 1958 German Settlement Agreement is a "conditional" agreement. Opp. at 8; CSF ¶ 81. The document itself notes that "[t]his settlement will have final force unless revoked by the German Reich until 4/1/1958." Decl. G. Schnabel, Exh. 126 at 3. The settlement was not revoked and was thus made final. *See* CSF ¶ 17.

[7] Plaintiffs assert that the Foundation cannot challenge this Court's subject matter because the Ninth Circuit rejected the Foundation's prior Rule 12(b)(6) challenges that no exception to the FSIA applied to provide jurisdiction. This finding, however, does not establish that this Court's subject matter jurisdiction can no longer be questioned. Opp. at 17 (asserting that "jurisdiction had already been decided"). It established, rather, that in considering the Foundations' Rule 12(b)(6) challenge, the Ninth Circuit found that no exception to the FSIA appeared to preclude the Court's subject matter jurisdiction at that stage. The district court's subject matter jurisdiction "is not a waivable matter and may be raised at anytime by one of the parties, by motion or in the responsive pleadings, or *sua sponte* by the trial or reviewing court." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1194 n.2 (9th Cir. 1988). Further, the law of the case doctrine is discretionary, *see United States v. Mills*, 810 F.2d 907, 909 (9th Cir. 1987),
*(Footnote continued on next page)*

6

case where "rights in property taken in violation of international law" are involved. 28 U.S.C. § 1605(a)(3). The phrase "taken in violation of international law" refers to "the nationalization or expropriation of property *without payment of the prompt adequate and effective compensation required by international law*," including "takings which are arbitrary or discriminatory in nature." *Zappia Middle E. Const. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 251 (2d Cir. 2000) (emphasis added) (citation omitted). That a sovereign's failure to remedy or compensate a taking was a condition in establishing that the taking rose to the level of "a violation of international law" has been recognized by this Court and others. *See, e.g., Cassirer v. Kingdom of Spain*, 461 F. Supp. 2d 1157, 1164 (C.D. Cal. 2006); *Orkin v. Swiss Confederation*, 770 F. Supp. 2d 612, 616 (S.D.N.Y. 2011).

The concept was recognized most recently in *Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661 (7th Cir. 2012), and, following remand from the district court, in *Fischer v. Magyar Államvasutak Zrt.*, Nos. 13-3073, 14-1319, --- F.3d ---, 2015 WL 294382 (7th Cir. Jan. 23, 2015), where the Jewish claimants, like Plaintiffs, sought adjudication of World War II, discriminatory, taken property claims. Reversing the district court's finding that it had subject matter jurisdiction under the FSIA's expropriation exception, the *Abelesz* panel found that the plaintiffs failed to demonstrate a violation of international law because they had not given Hungary an opportunity to remedy the taking. *See* 692 F.3d at 697. The panel recognized that until and unless the foreign court demonstrates that it is unwilling or unable to remedy the violation of international law, it should not be forced to submit to the jurisdiction of a U.S. Court. *See id.*

On remand the district court dismissed the action, finding that the plaintiffs failed to demonstrate that the remedies in Hungary were inadequate. On appeal, the

---

*(Footnote continued from previous page)*
and does not apply where "the evidence [before the court] is substantially different," *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).

7

*Fischer* panel affirmed, recognizing that "[a]t bottom, international law favors giving a state accused of taking property in violation of international law an opportunity to 'redress it by its own means, within the framework of its own legal system' before the same alleged taking may be aired in foreign courts." *Fischer*, 2015 WL 294382, at *4 (quoting *Abelesz*, 692 F.3d at 680). If a "violation of international law," once committed, can never be undone or remedied, principles furthered by prudential exhaustion and international comity – principles that recognize the offending sovereign should have the opportunity to right its wrong in its own court – are meaningless.

The Foundation never asserted that Plaintiffs failed to exhaust their remedies in Germany or that this action belongs in German courts. The Foundation asserts that international comity, as recognized in the cases above, counsels in favor of allowing the offending sovereign to remedy the violation of international law. And where, as here, the offending country (Germany) does "redress [the violation of international law] by its own means, within the framework of its own legal system," and that process includes significant litigation (in which Mrs. Neubauer was represented by the attorney of her choice, in proceedings before multiple courts of competent jurisdiction, in which the court-appointed appraiser valued the Painting at a value greater than the minimum requested by Mrs. Neubauer who signed a settlement agreement with three other parties, and neither Plaintiffs nor any party to the timely litigation asserted that the restitution proceedings or resulting 1958 German Settlement Agreement were anything less than bona fide) Germany complied with principles of international comity and remedied the violation of international law, depriving this Court of subject matter jurisdiction over Plaintiffs' claims.

Plaintiffs assert that the compensation paid to Mrs. Neubauer as part of the 1958 German Settlement Agreement does not remedy the violation of international law because "international law," including German law, recognizes that "return of property" is the "preferred form" of restitution. Decl. G. Schnabel ¶ 155; *see also* Decl. C. Vazquez ¶ 45. But a "preference" for physical restitution does not mean that

8

a violation of international law continues unless – and until – physical restitution is accomplished.[8] In fact, Plaintiffs concede that "[c]ompensation in lieu of restitution is appropriate if restitution has become impossible or would be out of all proportion to the benefit to the victim." Decl. C. Vazquez ¶ 45.[9]

There is no dispute that for the duration of the German litigation and at the time of the 1958 German Settlement Agreement, the Painting's location was unknown to the parties. CSF ¶¶ 12, 65, 72, 106. As physical restitution of the Painting was not possible, Mrs. Neubauer's choice to accept compensation from Germany per the terms of the 1958 German Settlement Agreement – after Germany placed a monetary value on the Painting that was greater than the minimum value placed on it by Mrs.

---

[8] Plaintiffs' attack Ms. Lynn Nicholas and her declaration, asserting that she "does not establish that there was no taking in violation of international law." Decl. G. Schnabel at 37. Ms. Nicholas was not offered as an expert on international law nor does her report attempt to make legal arguments. As is evident from her CV and Expert Report, Ms. Nicholas has extensive experience reviewing wartime takings claims and resolutions. To that end, Ms. Nicholas was asked to provide her professional opinion on "whether or not the February 28, 1958, settlement between Lilly Cassirer Neubauer, Jakob Scheidwimmer, Julius Sulzbacher and the German Reich, finalized on April 2, 1958, was a final, fair, and just resolution of her loss of the Painting in 1939." Decl. L. Nicholas, Exh. 12 at 2. The weight ultimately afforded to this or any of the expert reports submitted by either party, however, falls to the discretion of this Court. For this case, the legal import of the German litigation and resulting 1958 German Settlement Agreement is a legal determination for this Court – not an expert – to make.

[9] Plaintiffs' reference and submit to the Court numerous foreign judgments that contain language addressing the role and limitations of compensation in a restitution action. *See* Decl. C. Vazquez ¶¶ 36-37, 47a-i; Exhs. 135-43. But the 1958 German Settlement Agreement is a *settlement*, and a settlement is a compromise reached between parties with competing interests. It is not a court *judgment* where a court weighed competing positions and applied relevant law in a reasoned decision, nor is it entitled to *res judicata* under German law. *See* Decl. W. Ernst II, Exh. 160, ¶ R17. A "contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful," Cal. Civ. Code § 1636, not to give effect to newly-fashioned theories of modern-day lawyers.

9

Neubauer and in accordance with the BRüG – complies with principles of international law and remedies the taking, as least for purposes of jurisdiction under the FSIA.[10]

### III. U.S. Government Policy of Respecting the Finality of Foreign Governments Appropriate Restitution Actions Counsels in Favor of Respecting the Finality of the 1958 German Settlement Agreement[11]

In *Von Saher v. Norton Simon Museum of Art at Pasadena*, 862 F. Supp. 2d 1044 (C.D. Cal. 2012), this Court recognized the inherent problem with reviewing a foreign government's restitution proceedings. *See id.* at 1053. This Court granted the museum's motion to dismiss, as "[a]llowing Plaintiff's action to proceed would have 'more than incidental effect in conflict with express foreign policy of the National Government.'" *Id.* (citation omitted).

The Ninth Circuit reversed. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 754 F.3d 712 (9th Cir. 2014). The panel noted, as paramount to U.S. policy on the restitution of Nazi-looted art, "a commitment to respect the finality of 'appropriate actions' taken by foreign nations to facilitate the internal restitution of

---

[10] Plaintiffs contend that the 120,000 DM figure does not represent the fair market value of the picture because the value of the Painting appears to have increased after 1957. Opp. at 8; Decl. J. Petropoulos ¶ 39. Plaintiffs fail to acknowledge, however, that the Court assigned to the Painting a value greater than the minimum value identified by Mrs. Neubauer's lawyer. CSF ¶ 13; Def. Resp. to Plfs' Objs. to Evid. in SUF at 6. Nor do Plaintiffs dispute that the BRüG requires – as it still does today – that the value accorded to property must be current as of April 1, 1956. CSF ¶ 78. The point, however, is not whether this figure reflects the fair market value – the point is that this is the amount she accepted to settle her claim.

[11] Plaintiffs assert that this Court "has already rejected" the Foundation's argument that "resolving Plaintiffs' claims on the merits will 'run afoul of the Ninth Circuit's recent decision in *Von Saher*,'" Opp. at 21, and that by defending this action, the Foundation "forces Plaintiffs (and the Court) to relitigate the same issues over and over again," Opp. at 22. But it is Plaintiffs who are attempting to litigate Mrs. Neubauer's settled claim "over and over again." The Foundation does not seek to invalidate the 1958 German Settlement Agreement – it looks to this Court to recognize the import, impact, and finality of a settlement agreement that resolves all claims between the parties regarding the wartime takings of four artworks.

plundered art." 753 F.3d at 721; *see also id*. at 720 (acknowledging U.S. "continuing and ongoing commitment to external restitution"); id. at 722. The panel found, however, that this "commitment" could not be invoked because while the artworks were subject to external restitution, it did not appear that the artworks were ever "subject to postwar internal restitution proceedings." *Id.* at 721-23. The panel also questioned the legitimacy of the post-war Dutch restitution proceedings, acknowledged by a modern Dutch government to have been "bureaucratic, cold and often even callous." *Id.* at 717, 722, 725. In other words, finality appropriately afforded to foreign sovereign's restitution actions, was improper because the was no evidence in the record to prove: (1) that the disputed artworks were, in fact, subject to internal restitution proceedings, or (2) that such proceedings, had they occurred, were bona fide.

On summary judgment, the record in this action contains the facts to fill these holes. The Neubauer/Sulzbacher/Scheidwimmer/Germany litigation involved artworks that were part of both the "external restitution process" and "internal restitution process" following World War II that the *Von Saher* panel identified as "appropriate actions." *Id.* at 721. Two of the four artworks at issue in the litigation were found at the Munich Collecting Point at the war's end and were restituted to Germany, giving Germany the responsibility for resolving any ownership disputes. CSF ¶ 29. In fact, for a time Mrs. Neubauer made claims to these externally restituted German artworks as substitution for the Painting. CSF ¶¶ 30, 71. While the Painting was not itself physically returned to any of the post-WWII competing claimants, the Painting was part of a settlement that involved artworks externally restituted to Germany by the United States. Thus, under *Von Saher*, unless the Painting was not subject to restitution proceedings or those proceedings were not bona fide or "appropriate," the finality of the 1958 German Settlement Agreement should be respected.

It is not disputed that the Painting (along with three other works) was the subject of internal restitution proceedings in Germany. Nor is it disputed that the proceedings,

11

REPLY IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION
05-cv-03459 JFW (Ex)

in which Mrs. Neubauer was represented by the lawyer of her choice and the court valued the Painting at a figure above the minimum suggested by Mrs. Neubauer, was bona fide.[12]  Plaintiffs challenge the translation of certain words used by German parties, lawyers, and courts more than fifty years ago, but they do not – and cannot – challenge the substance of the documents themselves.[13]  Because the 1958 German Settlement Agreement resolved all claims to artworks externally restituted by the United States in bona fide internal restitution proceedings, the Foundation respectfully requests that this Court acknowledge the "commitment to respect the finality of [Germany's] 'appropriate actions.'"  *Von Saher,* 754 F.3d at 721.

## IV. Conclusion

For the reasons set forth above, the Foundation respectfully requests that the Court grant its Motion for Summary Adjudication.

---

[12] Plaintiffs assert that immediately after the BRüG became effective, on July 19, 1957, Mrs. Neubauer "reformulated" her restitution claim against Scheidwimmer into a compensation claim against the German Reich.  Decl. G. Schnabel ¶ 91.  As a result of this "new claim," Plaintiffs' assert, the claims against Scheidwimmer and Sulzbacher-Kahn were terminated, were not pending when the 1958 German Settlement Agreement was signed, and were not resolved.  *Id.* ¶¶ 92, 94, 96, 101.  This theory is not supported by the clear language of the documents which make evident that the Painting was always central to Mrs. Neubauer's claim and the proceedings.  Language modified by Plaintiffs' expert in an attempt to patch together this theory is ineffective.  Def. Objs. to Evid. in Plfs' GDMF at 120-21 (noting "(under the new BRüG)" is added to court quotation); Decl. W. Ernst II, Exh. 160, ¶¶ R9-R15.  But even if supportable, it is of no import as the 1958 German Settlement Agreement, by its terms and by nature, resolved "*all* mutual claims among the parties," Decl. G. Schnabel, Exh. 126 at 3 (emphasis added), not just those pending.  *See* Decl. W. Ernst II, Exh. 160 ¶ R17.

[13] Plaintiffs assert that in light of *Sachs v. Deutsches Historisches Museum* BGH Mar. 16, 2012, V ZR 279/10, a German decision, Plaintiffs retain a right to seek restitution of the Painting in the United States.  If this was a German court, if Plaintiffs were German citizens, if the Foundation was a German state institution that had held the Painting since it was taken by Germany during the war, and had the division of Eastern and Western Germany until 1989 precluded Plaintiffs (or their predecessors) from bringing a claim, the *Sachs* decision might be analogous to this action and, therefore, potentially relevant.  These, however, are not the facts of this case.

12

| | |
|---|---|
| Dated: March 2, 2015 | Respectfully submitted, |
| | NIXON PEABODY LLP |
| | By:  /s/ Thaddeus J. Stauber |
| | Thaddeus J. Stauber (Bar No. 225518) |
| | tstauber@nixonpeabody.com |
| | Jason Gonzalez (Bar No. 178768) |
| | jgonzalez@nixonpeabody.com |
| | Irene Tatevosyan (Bar No. 301568) |
| | itatevosyan@nixonpeabody.com |
| | NIXON PEABODY LLP |
| | 555 West Fifth Street, 46th Floor |
| | Los Angeles, CA 90013 |
| | Telephone: 213-629-6000 |
| | Fax: 213-629-6001 |
| | Attorneys for Defendant |
| | THYSSEN-BORNEMISZA COLLECTION FOUNDATION |