KENDALL BRILL & KLIEGER LLP
Bert H. Deixler (70614)
  bdeixler@kbkfirm.com
Laura W. Brill (195889)
  lbrill@kbkfirm.com
Nicole S. Phillis (291266)
  nphillis@kbkfirm.com
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California  90067
Telephone:  310.556.2700
Facsimile:   310.556.2705

Attorneys for Plaintiffs
DAVID CASSIRER, AVA CASSIRER,
and UNITED JEWISH FEDERATION
OF SAN DIEGO COUNTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DAVID CASSIRER, AVA CASSIRER, and UNITED JEWISH FEDERATION OF SAN DIEGO COUNTY, a California non-profit corporation,<br><br>   Plaintiffs,<br><br>  v.<br><br>THYSSEN-BORNEMISZA COLLECTION FOUNDATION, an agency or instrumentality of the Kingdom of Spain,<br><br>   Defendant. | Case No. CV 05-03459-JFW (Ex)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Judge:  Hon. John F. Walter<br>Date:   May 18, 2015<br>Time:   1:30 p.m.<br>Dept.:  16 |

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

238519

Case No. CV 05-03459-JFW (Ex)

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1
2

# **TABLE OF CONTENTS**

**Page**

3   I.   INTRODUCTION ........................................................................ 1

4   II.   BACKGROUND AND DISPUTED ISSUES OF FACT ................................. 3

5      A.   The Nazis Confiscated The Painting From Lilly ................................. 3

6      B.   California Residents Were Responsible For Lilly's Inability To
     Obtain Possession Of The Painting After The War ............................. 3

7
   C.   The Baron Obtained Possession Of The Painting In 1976 For A
8        Below-Market Price And Despite Numerous Red Flags ....................... 4

9      D.   TBC Acquired The Baron's Collection For Below-Market Value
     And In The Face Of Numerous Red Flags Concerning The
10        Painting ............................................................................... 5

11      E.   Claude Promptly Pursued His Claims ............................................ 8

12   III.   Procedural Background ...................................................................... 9

13   IV.   ARGUMENT ..................................................................................... 9

14      A.   TBC Faces A Heavy Burden ........................................................ 9

15      B.   TBC Is Not Entitled To Summary Judgment Concerning
     Ownership Under California Law ................................................ 11
16
   C.   TBC Is Not Entitled To Summary Judgment Concerning
17        Ownership Under Swiss Law ..................................................... 12

18      D.   TBC Is Not Entitled To Summary Judgment Concerning
     Ownership Under Spanish Law .................................................. 15
19
   E.   Choice-of-law Analysis Leads To Application Of California Law ...... 16
20
   F.   TBC's Due Process and Statute of Limitations Arguments Fails ........ 19
21
   G.   TBC's Laches Arguments Fail .................................................... 21
22
   H.   TBC Cannot Meet Its Burden As To Laches .................................. 23
23
V.   CONCLUSION ................................................................................ 25
24
25
26
27
28

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*Alphaville Design, Inc. v. Knoll, Inc.*,
   627 F.Supp.2d 1121 (N.D. Cal. 2009)................................................21

6

7

*Auto Auction Inc. v. Riding Motors*,
   187 Cal. App. 2d 693 (1960) ...........................................................18

8

9

*Bakalar v. Vavra*,
   619 F.3d 136 (2d Cir. 2010) ............................................................17

10

11

*Barndt v. Cnty. of LA*,
   211 Cal. App. 3d 397 (1989) ...........................................................22

12

13

*Bd. of Regents of State Colleges v. Roth*,
   408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) ......................20

14

*Bono v. Clark*,
   103 Cal. App. 4th 1409, 128 Cal. Rptr. 2d 31 (2002) ...................21, 22

15

16

*Boone v. Mechanical Specialities Company*,
   609 F.2d 956 (1979) ......................................................................22

17

18

*Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*,
   No. 10-CV-419-GPC (WVG), 2012 WL 6553403 (S.D. Cal. Dec.
   13, 2012) .....................................................................................21

19

20

*Cahill v. Superior Court*,
   145 Cal. 42 (1904) ........................................................................22

21

22

*Campbell v. Holt*,
   115 U.S. 620 (1885) ......................................................................20

23

24

*Chase Sec. Corp. v. Donaldson*,
   325 U.S. 304 (1945) ......................................................................19

25

26

*Chiron Corp. v. Abbott Labs.*,
   No. C-93-4380 MHP, 1996 WL 209717 (N.D. Cal. Apr. 23, 1996) ...................10

27

28

*Clark v. Capital Credit & Collection Servs.*,
   460 F.3d 1162 (9th Cir. 2006) .........................................................10

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

238519

ii

*Cooper v. Hungry Buzzard Recovery, LLC*,
No. C11-0280-JCC, 2011 WL 5299422 (W.D. Wash. Nov. 4, 2011) .................. 9

*Cortez v. Skol*,
776 F.3d 1046 (9th Cir. 2015) ................................................................. 9

*Culp v. Signal Van & Storage*,
142 Cal. App. 2d Supp. 859 (1956)....................................................... 11

*Danjaq LLC v. Sony Corp.*,
No. CV 97-8414-ER (MCX), 1999 WL 317629 (C.D. Cal. Mar. 11,
1999) ............................................................................................... 21

*Directors of Motion Picture Indus. Pension Plan v. Nu Image Inc.*,
No. 2:13-CV-03224-CAS, 2014 WL 6066105 (C.D. Cal. Nov. 10,
2014) ............................................................................................... 21

*Farahani v. San Diego Cmty. Coll. Dist.*,
175 Cal. App. 4th 1486 (2009)............................................................. 21

*Golden Gate Wtr. Ski Club v. Contra Costa Cnty.*,
165 Cal. App. 4th 249, 254, 263-64 (2008) ......................................... 22

*Green v. Arcadia Fin. Ltd.*,
663 N.Y.S.2d 944, *aff'd*, 689 N.Y.S.2d 596 (1999)............................. 13

*Harpending v. Meyer*,
55 Cal. 555 (1880) ............................................................................. 11

*Huddleson v. Huddleson*,
178 Cal. App. 3d 1564 (1986) ............................................................. 22

*Hurtado v. Superior Court*,
11 Cal. 3d 574 (1974) ........................................................................ 18

*Jarrow Formulas, Inc. v. Nutrition Now,* Inc.,
304 F.3d 829 (9th Cir. 2002) .............................................................. 22

*In re Katz Interactive Call Processing Patent Litig.*,
882 F. Supp. 2d 1123 (C.D. Cal. 2010).............................................. 21

*Kelly v. San Francisco*,
No. C 05-1287 SI, 2005 WL 3113065 (N.D. Cal. Nov. 21, 2005) ...... 22

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

238519

iii

Case No. CV 05-03459-JFW (Ex)

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*Maguire v. Hibernia Sav. & Loan Soc.*,
   23 Cal. 2d 719 (1944) ........................................................................................ 22

*Miller v. Ash*,
   156 Cal. 544 (1909) .......................................................................................... 22

*Miller v. Eisenhower Med. Ctr.*,
   27 Cal. 3d 614 (1980) ................................................................................. 10, 21

*Miller v. Glenn Miller Prods.*,
   454 F.3d 975 (9th Cir. 2006) ........................................................................... 22

*Mosk v. Summerland Spiritualist Ass'n*,
   225 Cal. App. 2d 376 (1964) ........................................................................... 10

*Naftzger v. American Numismatic Soc'y*,
   42 Cal. App. 4th 421 (1996) ............................................................................ 11

*Pac. Hills Homeowners Ass'n v. Prun*,
   160 Cal. App. 4th 1557 (2008) ........................................................................ 21

*Piper Aircraft Corp. v. Wag-Aero, Inc.*,
   741 F.2d 925 (7th Cir. 1984) ........................................................................... 22

*Portman v. Cnty. of Santa Clara*,
   995 F.2d 898 (9th Cir. 1993) ........................................................................... 20

*Quick v. Pearson*,
   186 Cal. App. 4th 371 (2010) .......................................................................... 22

*Reich v. Purcell*,
   67 Cal. 2d 551 (1967) ...................................................................................... 18

*Sachs v. Republic of Austria*,
   737 F.3d 584 (9th Cir. 2013) (en banc), cert. *granted sub nom. OBB Personenverkehr AG v. Sachs*, 135 S. Ct. 1172 (2015) ....................................... 17

*Samson v. City of Bainbridge Island*,
   683 F.3d 1051 (9th Cir. 2012) ......................................................................... 20

*San Francisco Credit Clearing House v. Wells*,
   196 Cal. 701 (1925) ......................................................................................... 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

*Soc'y of Cal. Pioneers v. Baker*,
 43 Cal. App. 4th 774 (1996) .......................................................................... 10, 11

*Strasberg v. Odyssey Group, Inc.*,
 51 Cal. App. 4th 906 (1996) ......................................................................... 11, 22

*ViaSat, Inc. v. Space Sys./Loral, Inc.*,
 No. 3:12-CV-00260-H WVG, 2014 WL 868594 (S.D. Cal. Jan. 31,
 2014) ............................................................................................................... 21

*Western Coal and Mining Co. v. Jones*,
 27 Cal. 2d 819 (1946) ...................................................................................... 11

*Wilson v. Crocket*,
 43 Mo. 216 (1869) (Missouri) .......................................................................... 13

*Zakaessian v. Zakaessian*,
 70 Cal. App. 2d 721 (1945) ............................................................................. 22

**Statutes**

28 U.S.C. § 1606 ...................................................................................... 17, 22

Cal. Code Civ. Proc. § 338(c)(3) ........................................................... 11, 12, 20

**Other Authorities**

Cal. S. Judiciary Comm., Bill Analysis (AB 2765), 2009-10 Reg. Sess.,
 at 5 (2010) ................................................................................................ 12, 20

**Rules**

Fed. Rule Civ. Proc. 44.1 ................................................................................. 22

**Treatises**

12 Cal. Jur. 3d Conflict of Laws
 § 27 .................................................................................................................. 18
 § 93 .................................................................................................................. 18

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.    <u>INTRODUCTION</u>

Legal principles and disputed issues of fact preclude TBC's motion for summary judgment.  Regardless of whether the Court applies California, Swiss, or Spanish law, TBC's claim that it has obtained title to the Painting fails.

*First*, as to the Baron's acquisition, TBC presents no serious argument that the 1976 transfer from the Stephen Hahn Gallery ("SHG") to the Baron passed valid title given that the SHG did not have good title to convey.  (Dkt. 249, TBC Br. at 14:6-9.)

*Second*, TBC argues that the Baron obtained title by the Swiss law of acquisitive prescription.  (TBC Br. at 14-15.)  At a minimum, however, disputed issues of fact preclude granting summary judgment to TBC on this basis.  It is undisputed that the Baron must have had good faith in order for Swiss law of acquisitive prescription to apply.  TBC Ex. 46 at ¶ 8 (TBC's expert: "The possessor has to be in good faith.").  Abundant evidence supports a finding that the Baron did not act in good faith.  TBC's ongoing willful blindness in the face of numerous red flags and TBC's lack of diligence does not justify summary judgment.

*Third*, as the Baron did not have valid title to convey, the 1993 acquisition agreement could not transfer good title.  TBC Ex. 50 at 18-19, ¶¶ 24-25.

*Fourth*, TBC cannot succeed based on Spanish law of adverse possession or statute of limitations, for at least two reasons:

(a) Under the Spanish Criminal Code, there is no period of prescription for crimes against humanity or genocide, including for acts of concealment.  The elimination of the period of prescription for crimes against humanity likewise prevents TBC from obtaining title by way of acquisitive prescription.  *See generally* Declaration of Alfredo Guerrero Righetto.  At a minimum, genuine issues of material fact exist as to these matters as a result of TBC's falsification of provenance information, concealment of the Berlin label and missing labels, and

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

238519
1
Case No. CV 05-03459-JFW (Ex)
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1  withholding relevant information concerning the Baron's lack of good faith from

2  the attorneys who conducted TBC's title investigations.

3  　　　(b) Applying the Spanish law of adverse possession to dispossess Plaintiffs of

4  the Painting would violate the property protections of the European Convention on

5  Human Rights.  *See generally* Declaration of Prof. Carlos M. Vázquez filed 3/23/15

6  (Ex. 104 to 4/20/15 Phillis Decl.).  As TBC has the burden of proof and has

7  submitted no evidence that application of Spanish law of adverse possession to

8  deprive Plaintiffs of their property would comply with Spain's international

9  obligations, TBC cannot succeed on its motion for summary judgment, even if

10  Spanish law applied.

11  　　　*Fifth*, applying California law, Plaintiffs claims are not barred because, as this

12  Court recently recognized in the *von Saher* case, (1) a thief cannot transfer title; (2)

13  each new conveyance constitutes a new act of conversion; and (3) California has

14  never recognized the validity of transfers by adverse possession for moveable

15  property, much less in the case of bad faith acquirers like the Baron and TBC.

16  　　　*Sixth, w*hile the analysis presented here shows why there is no true conflict

17  between Swiss, Spanish, and California law in that the law of each of these

18  jurisdictions points to the validity of Plaintiffs' claims and denial of the motion,

19  were the Court to find a conflict, both California and federal choice-of-law

20  principles point to the application of California substantive law to this case, and as

21  noted in point five above, TBC's defenses fail under California law.

22  　　　*Seventh*, because there has been no valid transfer of title to TBC, the due

23  process clause does not bar application of California's statute of limitations to this

24  case.  Even if title had transferred under Spanish or Swiss law, the due process

25  clause would not present a barrier to Plaintiffs' claims.

26  　　　*Finally*, TBC's one-page after-thought discussion of laches also fails to meet

27  TBC's burden on the fact-intensive questions of prejudice and unjustified delay.

28  　　　This motion should be denied, and trial should proceed in July 2015.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

238519                                   2                    Case No. CV 05-03459-JFW (Ex)
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## II.   BACKGROUND AND DISPUTED ISSUES OF FACT

### A.   The Nazis Confiscated The Painting From Lilly

In brief, the Nazis unlawfully confiscated the Painting from Lilly in 1939. GIMF ¶35.  At the end of the war in 1945, the U.S. military authorities occupying Germany declared such transfers void and forbade taking such property out of Germany.  *Id.* ¶36.  In 1948, Lilly timely filed a claim to the Painting.  *Id.* ¶37.

### B.   California Residents Were Responsible For Lilly's Inability To Obtain Possession Of The Painting After The War

In 1951, the California art dealer Frank Perls was having financial difficulties. *Id.* ¶38.  In defiance of U.S. Military Law, the Frank Perls Gallery ("FPG") in Beverly Hills, arranged to traffic the Painting out of Germany via a sale from "Herr Urban" of Munich, and to fly the Painting to California.  *Id.* ¶39.  FPG earned a commission of $3,105 for arranging to sell the Painting to Sydney Brody of Los Angeles.  *Id.* ¶40.  Brody possessed the Painting in California.  *Id.* ¶41.

Months later, FPG arranged for another sale, this time to Sydney Shoenberg in Missouri.  *Id.* ¶¶42-43.  The sale was shady.  Provenance information was shared only by phone.  *Id.* ¶44.  FPG and its collaborator E. Coe Kerr, Jr. of the Knoedler Gallery discussed a commercially unreasonable process of shipping the Painting to New York and then shipping it back to California again with no reason provided. *Id.* ¶45.

Neither the Cassirers nor any of the parties then involved in the ownership dispute in Germany knew that any of this was happening.  *Id.* ¶46.  Lilly diligently prosecuted her claim in Germany.  *Id.* ¶47.  A June 1, 1954 published opinion of the U.S. Court of Restitution Appeals ("CORA") addressed Lilly's claim in detail, establishing her as the owner of the Painting.  *Id.* ¶48.  Earlier proceedings in the action were to the same effect.  *Id.* ¶50.  The CORA opinion identified the Painting by name.  *Id.* ¶49.  After years of further legal proceedings, the claimants to the

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

238519

3

Case No. CV 05-03459-JFW (Ex)

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1   Pissarro reached a settlement in 1958.  *Id.* ¶51.  Lilly maintained her claim of

2   ownership.  *Id.* ¶52; *see also* Dkt. 245.

3   **C.**   **The Baron Obtained Possession Of The Painting In 1976 For A**

4   **Below-Market Price And Despite Numerous Red Flags**

5   Meanwhile, back in the United States, Sydney Shoenberg and/or SHG held

6   the Painting for 24 years until 1976.  GIMF ¶54.  In 1976, SHG in New York sold

7   the Painting to the Baron for substantially below market value.  *Id.* ¶62.  Under both

8   New York and Missouri law, where the Painting presumably was located at the time

9   of the sale to the Baron, the transfer to the Baron was void.  *See infra* at 13 n.6.

10   The Baron faced numerous red flags in connection with the acquisition,

11   included the following:  (1) the documentation provided by SHG was minimal and

12   showed no prior provenance, GIMF ¶64; (2) SHG had been affiliated with Nazi

13   looting, *id.* ¶65; (3) Pissarros in general were known to be the frequent subjects of

14   Nazi looting (Pissarro himself was Jewish and Jewish collectors in Europe before

15   the rise of Hitler frequently owned his works), i*d.* ¶66; (4) the back of the Painting

16   has a "Berlin" label traceable to the Cassirer Gallery, and the provenance

17   documentation provided no explanation for that label, i*d.* ¶ 68; (5) it was widely

18   known by 1976 that the Jewish population of cities like Berlin had been the targets

19   of Nazi genocide and looting, i*d.* ¶67; and (6) the back of the Painting showed

20   evidence of other missing labels, which should have raised suspicions, i*d.* ¶69.

21   The Baron proceeded despite these red flags, acquiring the Painting for below

22   market value.  *Id.* ¶62.  Other than faulty provenance, there was no other reason for

23   this low price.  *Id.* ¶63.  Had the Baron performed due diligence at the time, his

24   advisors and/or the SHG could have traced provenance back to the unlawful

25   transportation out of Germany either by directly contacting Knoedler or Perls

26   through whom Shoenberg had purchased the Painting or by finding the published

27   CORA opinion, or by contacting the Wildenstein Institute or the State Department,

28   any one of which would have been sources for the relevant information.  *Id.* ¶71.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

238519                                                                          Case No. CV 05-03459-JFW (Ex)

4

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

After the Baron obtained possession of the Painting, he engaged in non-arms'-length transactions concerning the Painting with various entities under his or his family's control. *Id.* ¶72. TBC has introduced no evidence that any of these transactions included due diligence. *Id.* ¶73. Rather, they were tainted by the same bad faith that plagued the original transaction between SHG and the Baron. *Id.* ¶74. TBC has submitted no evidence identifying the individuals or entities that purported to hold title to the Painting after the Baron's acquisition in 1976 and prior to a transfer by an unknown transferor to the Stichting sometime before February 1989. *Id.* ¶75. Nor has TBC provided evidence that whatever entity or entities were in this position intended to return the Painting to Switzerland throughout the many extended periods in which the Painting was not in Switzerland. *Id.* ¶76. From 1976 to 1992, neither the Baron nor any of his entities exhibited or caused the exhibition of the Painting in the United States. *Id.* ¶81.

### D. **TBC Acquired The Baron's Collection For Below-Market Value And In The Face Of Numerous Red Flags Concerning The Painting**

TBC entered a loan agreement with one of the Baron's entities in 1988, *id.* ¶83, took possession of the Painting in 1992, *id.* ¶84, and entered an acquisition agreement with another of the Baron's entities in 1993, *id.* ¶85.

Throughout this time, Claude Cassirer was a resident of California. *Id.* ¶88. He had no ties either to Spain or to Switzerland. *Id.* ¶89. TBC did not give Mr. Cassirer notice of its possession of the Painting or its intent to acquire title by adverse possession. *Id.* ¶90. The newspaper article about the transaction that TBC has placed into the record did not mention the Painting. *Id.* ¶91.

In 1989 and again in the early 1990s, TBC engaged counsel in connection the loan and acquisition agreements. *Id.* ¶92. TBC limited the scope of the title investigations and the information provided to its attorneys. *Id.* ¶95. The lawyers were not given the paintings to physically inspect. *Id.* ¶96. Nor were they given access to the paltry provenance materials that the Baron had provided to TBC

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

238519
5
Case No. CV 05-03459-JFW (Ex)
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

concerning the Painting. *Id.* ¶97. Such documents would have revealed red flags and lack of diligence on the Baron's part, including the below-market price the Baron had paid, the Berlin label, and the unexplained transportation of the Painting out of Germany and to the United States. *Id.* ¶¶62-71, 103. The Baron and his representatives were heavily involved in the governance of TBC at the time of the transaction. *Id.* ¶104. The implicit purpose of limiting the lawyers' access to information was to create a veneer of respectability to what was in fact a bad faith, non-arms'-length transaction. *Id.* ¶¶62-71, 103-104.

The limited information TBC gave its lawyers was not without consequence. TBC's lawyers expressly disclaimed any opinions regarding the validity of the Baron's title in the event of bad faith or a past forced sale. *Id.* ¶¶98-99.

TBC's Swiss lawyers warned TBC it had reason to worry: "If the acquisition occurred in bad faith, in other words, if the acquirer knew or should have known of the lacking right of the transferor, ownership cannot be acquired. The rightful owner keeps his right at all times to claim recovery of the object." *Id.* ¶100. TBC's German counsel opined: "a good faith purchase will be prohibited under German law" if "the painting has been stolen from, or lost by, the lawful owner." *Id.* ¶101.[1] Sullivan & Cromwell, asked to give an opinion on New York and California law, also would not bless the deal: "We have not attempted to determine whether the original purchasers in the Thyssen-Bornemisza group of a painting from a third party acquired valid title to the painting, or whether any of the paintings in question remain subject to claims by third parties . . . Further, at your instructions, we have

---

[1] TBC's lawyers expressly asserted that to the extent they were opining that the Baron had valid title with respect to works in the Baron's collection prior to 1980, the opinion was not based on any actual case-by-case due diligence with respect to works in question but was instead premised on Swiss law of acquisitive prescription and an *assumption* that the Baron had acted in good faith. GIMF ¶ 99. The assumption, however, was unjustified given the information substantiating the Baron's lack of good faith that was available at the time. *Id.* ¶62-71, 103-104.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

238519

6

Case No. CV 05-03459-JFW (Ex)

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1   limited our consideration to the general questions presented and have not attempted

2   to trace the transfer of individual paintings." *Id.* ¶102.

3        TBC had access to both the Painting, including the back of the work, showing

4   the Berlin label, and the Baron's provenance materials showing the below-market

5   price, which would have alerted any reasonable acquirer to the title defects. *Id.*

6   ¶103.  The Baron and his representatives were deeply involved in TBC's

7   governance at the time. *Id.* ¶104.  TBC knew the risks but took its chances. *Id.* ¶113.

8        The red flags facing TBC were the same as those facing the Baron.  (1) the

9   documentation provided by SHG to the Baron and from the Baron to TBC was

10  minimal and showed no prior provenance, *id.* ¶64; (2) SHG had been affiliated with

11  Nazi looting, *id.* ¶65; (3) Pissarros in general were known to be the frequent subjects

12  of Nazi looting (Pissarro himself was Jewish and Jewish collectors in Europe before

13  the rise of Hitler frequently owned his works), *id.* ¶66; (4) the back of the Painting

14  has a "Berlin" label traceable to the Cassirer Gallery, and the provenance

15  documentation provided no explanation for that label, *id.* ¶68; (5) it was widely

16  known by 1976 that the Jewish population of German cities like Berlin had been

17  targeted for Nazi genocide and looting, *id.* ¶67; (6) the back of the Painting showed

18  evidence of other missing labels, which should have raised suspicions, *id.* ¶69; and

19  (7) the Thyssen family was known for selling steel and arms to the Nazis and for

20  financing Hitler's rise to power; it was unlikely that the Baron would be diligent in

21  avoiding possession of Nazi-looted art, *id.* ¶105.

22       Like the Baron, TBC bargained for a deep discount price for the Collection:

23  $350 million, compared to the $1 billion - $1.5 billion that TBC admits was the

24  appropriate fair market value (and the $2 billion market price some commentators

25  attributed to the deal). *Id.* ¶108.  The risks were factored into the transaction.

26       The Painting was only one of ***775 artworks*** in the transaction. *Id.* ¶111.  In

27  mathematical terms $1 \div 775 = .00129$.  The Collection as a whole was second only

28  to that of Queen Elizabeth. *Id.* ¶150.  TBC has provided no evidence that the

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

238519                                                          Case No. CV 05-03459-JFW (Ex)

7

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1   Painting was material to the acquisition, including with respect to price or the

2   requirement to remodel a 48-room Madrid palace, that would have been part of the

3   deal regardless of whether TBC was acquiring 775 works or 774.  *Id.* ¶112.

4          TBC has concealed the provenance of the Painting and its ties to Nazi

5   genocide and crimes against humanity.  *Id.* ¶¶125-129.  TBC has falsely asserted

6   that the Baron had obtained the Painting from Galerie Joseph Hahn in Paris,

7   although TBC knew the Baron had obtained the Painting through the Stephen Hahn

8   Gallery in New York.  *Id.* ¶125.  TBC concealed other U.S. transfers of the Painting.

9   *Id.* ¶126.  TBC concealed the Berlin and Cassirer Gallery provenance of the

10  Painting.  *Id.* ¶127.  The concealment of the German and U.S. provenance of the

11  Painting combined with the false statements about Joseph Hahn were designed to

12  suggest that the Painting had never travelled out of France prior to the Baron's

13  acquisition, which TBC knew to be false.  *Id.* ¶128.  TBC concealed information

14  from its own lawyers relating to the Baron's bad faith, including that the Baron had

15  acquired the Painting for well below market value and other evidence that the

16  Painting had been the subject of Nazi looting.  *Id.* ¶129.

17         The acquisition agreement for the collection is dated June 21, 1993.  *Id.* ¶130.

18  Less than three years later, in 1995, Spain eliminated the statute of limitations for

19  crimes against humanity and for genocide, including crimes of concealment.  *Id.*

20  ¶131.  As explained below, that change eliminated under Spanish law TBC's ability

21  to obtain title by way of acquisitive prescription.  *See infra* section IV.D.

22         **E.      Claude Promptly Pursued His Claims**

23         Claude Cassirer learned of TBC's possession of the Painting in 2000.  GIMF

24  115.  He promptly petitioned the Spanish government and TBC in 2001, *id*. ¶116,

25  and pursued resolution through diplomatic and other voluntary channels, *id*. ¶¶117-

26  119.  He promptly filed this action on May 10, 2005, when those efforts proved

27  futile.  *Id.* ¶116.  That Claude did not learn of the Painting's whereabouts earlier was

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

238519

8

Case No. CV 05-03459-JFW (Ex)

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    perfectly reasonable under the circumstances. *Id.* ¶120. *See infra* section IV.G.-H.[2]

2    **III.    Procedural Background**

3            Claude filed this action on May 10, 2005.  Dkt. 1.  Motion practice and

4    appeals delayed this action for nine years.  TBC answered the Complaint on August

5    22, 2014.  Dkt. 189.  On October 31, 2014, Judge Feess ruled that most of TBC's

6    affirmative defenses were barred as a matter of law.  Dkt. 206.  On January 20,

7    2015, TBC moved for summary adjudication contending that the 1958 Agreement

8    barred this action.  Dkt. 223.  The Court denied that motion and held that Lilly did

9    not give up her claim of ownership.  Dkt. 245.[3]

10           On March 23, 2015, Plaintiffs filed a motion seeking summary adjudication

11   that the substantive law of California governs this action.  Dkt. 251.  TBC filed this

12   motion the same day invoking Spanish and Swiss law.  Dkt. 249.  As demonstrated

13   below, TBC's motion lacks merit.

14   **IV.    ARGUMENT**

15           **A.    TBC Faces A Heavy Burden**

16           "Summary judgment is appropriate only if, taking the evidence and all

17   reasonable inferences drawn therefrom in the light most favorable to the non-

18   moving party, there are no genuine issues of material fact and the moving party is

19   entitled to judgment as a matter of law.  An issue of material fact is genuine if there

20   is sufficient evidence for a reasonable jury to return a verdict for the non-moving

21   party." *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015) (reversing grant of

22   summary judgment) (citations and internal quotation marks omitted).

23           "[I]f the defendant is moving for summary judgment based on an affirmative

24   defense for which it has the burden of proof, the defendant must establish beyond

---

25   [2] Additional background is set forth in Plaintiffs' Motion for Summary
26   Adjudication re Choice of California Law, Dkt 251 at 3-10 & 251-1 to 251-19,
     which is incorporated by reference in full herein.
27   [3] This Court has certified as frivolous and/or waived a notice of appeal that
28   TBC filed on April 10, 2015.  Dkt. 264.  Accordingly, this Court retains jurisdiction.

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

238519                                              9                          Case No. CV 05-03459-JFW (Ex)
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

peradventure *all* of the essential elements of the ... defense to warrant judgment in his favor."  *Cooper v. Hungry Buzzard Recovery, LLC*, No. C11-0280-JCC, 2011 WL 5299422, at *1 (W.D. Wash. Nov. 4, 2011) (citations and internal quotation marks omitted); *see also Clark v. Capital Credit & Collection Servs.,* 460 F.3d 1162, 1177 (9th Cir. 2006) (recognizing that a defendant bears the burden of proof at summary judgment with respect to an affirmative defense).

When a defendant moves for summary judgment on an affirmative defense, the elements of which the defendant must prove by clear and convincing evidence, the non-moving party must simply produce enough evidence to allow a rational trier of fact to find that there is not clear and convincing evidence.  *Chiron Corp. v. Abbott Labs.*, No. C-93-4380 MHP, 1996 WL 209717, at *2 (N.D. Cal. Apr. 23, 1996).  The non-moving party's burden to come forward with evidence to prevent summary judgment is "less stringent" than that normally placed on a non-moving party.  *Id.*  If adverse possession were available as a defense in this case, it would be an affirmative defense with a heightened burden of proof.  *See Soc'y of Cal. Pioneers v. Baker*, 43 Cal. App. 4th 774, 779 (1996); *Mosk v. Summerland Spiritualist Ass'n*, 225 Cal. App. 2d 376, 381-82 (1964) ("[T]he burden of proving all of the essential elements of adverse possession rests upon the person relying thereon and it cannot be made out by inference but only by clear and positive proof."); *see infra* at 11 (defense unavailable for conversion of chattel).  Laches is an affirmative defense as to which the defendant has the burden of proof and the burden of production.  *Miller v. Eisenhower Med. Ctr.*, 27 Cal. 3d 614, 624 (1980).

This Opposition first explains why TBC's motion must be denied as to the issue of ownership regardless of whether the law of California, Switzerland or Spain applies.  Were the Court required to resolve the choice-of-law issues presented here, California law would control.  After addressing these issues in turn, this Opposition addresses why TBC's last-ditch arguments – due process and laches – fail.

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

238519

10

Case No. CV 05-03459-JFW (Ex)

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**B.** **TBC Is Not Entitled To Summary Judgment Concerning Ownership Under California Law**

This Court is familiar with the law in California concerning transfers of title to stolen property, the statute of limitations relating to claims against museums and galleries, and the law of adverse possession of moveable property. *von Saher v. Norton Simon Museum of Art*, No. 2:07-cv-02866 (Apr. 2, 2015 Order, Dkt. 119) ("*von Saher* 2015 Order"). In brief, under California law, a thief cannot transfer good title. *von Saher* 2015 Order at 9 (citing *Naftzger v. American Numismatic Soc'y*, 42 Cal. App. 4th 421, 432 (1996); *Harpending v. Meyer*, 55 Cal. 555, 560 (1880); *Strasberg v. Odyssey Group, Inc.*, 51 Cal. App. 4th 906, 921 (1996)). Each time stolen property is transferred, a new tort or act of conversion has occurred.[4] No California case has extended the doctrine of adverse possession to personal property obtained by a *bone fide good faith* purchaser.[5] A fortiori California law does not allow for acquisition by adverse possession when the would-be acquirer (like the Baron or TBC) obtained possession of moveable property in *bad faith*.

For claims seeking the recovery of artwork from galleries or museums, the statute of limitations is six years from the date of actual discovery of the museum's possession. Cal. Code Civ. Proc. § 338(c)(3)(A). The statute of limitations, enacted by the Legislature in 2010, applies retroactively. *Id.* at § 338(c)(3)(B). Even where the prior statute of limitations had expired before enactment of the current version of section 338(c)(3), such expiration does not cause title to pass to a defendant in

---

[4] *See von Saher* 2015 Order at 9-10 (citing *Harpending v. Meyer*, 55 Cal. 555 (1880); *Culp v. Signal Van & Storage*, 142 Cal. App. 2d 859, 861 (1956); *See, e.g., Soc'y of California Pioneers v. Baker*, 43 Cal. App. 4th 774, 782-83 (1996); *San Francisco Credit Clearing House v. Wells*, 196 Cal. 701, 707 (1925)).

[5] *See San Francisco Credit Clearing House v. C.B. Wells*, 196 Cal. 701, 707-08 (1925); *Soc'y of California Pioneers*, 43 Cal. App. 4th at 785 n.13 ("The court in *San Francisco Credit C. House v. Wells*, *supra*, 196 Cal. 701, 707, suggested that the doctrine of adverse possession would not apply to personal property, and no California case has been cited in support of such an application.").

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

238519
11
Case No. CV 05-03459-JFW (Ex)
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1   possession of the work.  *von Saher* 2015 Order at 10 ("Expiration of the statute of

2   limitations under California law does not divest the owner of title or convey title to

3   the thief or possessor.") (citing *Western Coal and Mining Co. v. Jones*, 27 Cal. 2d

4   819, 828 (1946) ("The general rule is that the running of the statutory period does

5   not extinguish the cause of action…")).  There is no unfairness in applying section

6   338(c)(3) retroactively to museums.  Museums are "sophisticated entities that are

7   well-equipped to trace the provenance of the fine art that they purchase."  *von Saher*

8   2015 Order at 11.  In enacting AB 2765, the California Assembly Bill that amended

9   section 338(c)(3), the California Legislature gave detailed consideration to the

10  question whether retroactive application of the statute of limitations would violate

11  the due process clause, and determined that it would not.  *See* Cal. S. Judiciary

12  Comm., Bill Analysis (AB 2765), 2009-10 Reg. Sess., at 5 (2010) (finding that AB

13  2765 does not violate due process).

14       Applying these principles, TBC did not obtain good title under California law.

15  TBC's acquisition of the Painting from the Baron was an independent act of

16  conversion.  TBC is a museum.  GIMF ¶151.  Claude indisputably sued within six

17  years of obtaining actual knowledge of TBC's possession of the Painting.  SUF ¶

18  28, 30.  TBC did not obtain title to the Painting three years after Claude's

19  knowledge because the expiration of the prior statute of limitations does not convey

20  title.  The Legislature was free to lengthen the statute of limitations, balance the

21  competing interests at stake, and determine that the unfairness to rightful owners

22  deserved greater protection than wrongful possessors.  TBC does not contend that it

23  can succeed on the merits of its ownership claim under California law.  Under

24  California law, TBC's motion must be denied.

25       **C.     TBC Is Not Entitled To Summary Judgment Concerning**

26              **Ownership Under Swiss Law**

27       TBC's motion also fails under Swiss law.  TBC summarily states its first

28  argument concerning Swiss law as follows:  "The Baron obtained good title to the

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

238519

12

Case No. CV 05-03459-JFW (Ex)

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Painting when he purchased it from art dealer Stephen Hahn in 1976." TBC Br. at 14:6-7. The only evidentiary material TBC cites in support of this proposition is an invoice from SHG to the Baron, memorializing the sale, "[w]ith compliments." *Id.* (citing SHG invoice). TBC offers no legal authority, whether under the law of Switzerland, Spain, or California that an invoice for the subsequent sale of stolen property conveys valid title. *Id.* Professor Ernst, TBC's Swiss law expert, offers no opinion supporting this point. Dkt. 249-23. Instead, Professor Ernst focuses on acquisitive prescription as discussed below.[6]

TBC's second argument is that "even if the 1976 conveyance was somehow tainted or flawed, the Baron acquired vested titled to the Painting in 1981, under Swiss acquisitive prescription laws." TBC Br. at 14:8-9. Genuine issues of material fact preclude summary judgment on this basis for two independent reasons.

*First,* TBC concedes that under Swiss law, acquisitive prescription requires a finding of good faith. Plaintiffs have submitted substantial evidence of the Baron's bad faith. GIMF ¶¶62-71. Plaintiffs' expert on Swiss law, Professor Marc André Renold, has provided a detailed opinion explaining why the Baron's conduct shows bad faith. Renold Decl., ¶¶14-64. The facts showing bad faith include:

- The Baron paid far below market value for the Painting. GIMF ¶62.
- The back of the Painting has a Berlin label, and the Baron obtained no provenance material substantiating a voluntary transfer out of Berlin. *Id.* ¶64, 68.

---

[6] TBC's expert also states that Swiss courts would follow the law of the place where the Painting was located in resolving ownership disputes concerning moveable property. *Id.* at Page 13 of 51, ¶ 3. TBC, however, submits neither evidence nor argument that the Painting was transported to Switzerland before the sale. Under New York law the transfer of possession to the Baron did not transfer title. *Green v. Arcadia Fin. Ltd.*, 663 N.Y.S.2d 944, *aff'd*, 689 N.Y.S.2d 596 (1999) ("A purchaser who purchases … from a thief, or from a dealer who has purchased from a thief does not acquire title under [U.C.C.] § 2–403."); *see also Wilson v. Crocket*, 43 Mo. 216, 216 (1869) ("No one can transfer to another a greater interest" than he possesses) (Missouri); *supra* at 11 (California).

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

238519

13

Case No. CV 05-03459-JFW (Ex)

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1      •      It was well known in the art world that Berlin had a large Jewish

2   population, and that this population was a target of Nazi genocide and looting.  *Id.*

3   ¶67.

4      •      In addition to the Berlin/Cassirer Gallery label, the back of the Painting

5   also shows evidence of other labels being removed in whole or in part.  *Id.* ¶69.

6      •      The documentation of the transaction was incredibly thin.  *Id.* ¶64.

7      •      SHG had a history of trafficking in looted art.  *Id.* ¶65.

8      •      The fact that the Painting is a Pissarro should have caused the Baron to

9   act with extra diligence because a large number of Pissarros were looted.  *Id.* ¶66.

10     •      The Baron and his consultants were highly sophisticated.  *Id.* ¶70.

11     •      The Baron and his consultants failed to diligently investigate the

12  provenance of the Painting.  *Id.* ¶71.

13     *Second,* TBC's Swiss law expert opines that Swiss law of acquisitive

14  prescription requires that the property in question remain in Switzerland for five

15  continuous years, but that transitory periods in which the property is outside of

16  Switzerland would not defeat a claim of acquisitive prescription if the property was

17  "bound to" return to Switzerland.  TBC Ex. 46, ¶¶ 44-48; *see also* TBC Br. at 15 n.6

18  (periods of interruption do not disqualify claim of acquisitive prescription if "***the***

19  ***owner intends*** that the property will return to Switzerland.") (emphasis added).

20     Here, TBC cannot make such a showing.  First, TBC admits that the Painting

21  was never in Switzerland for an uninterrupted period of five years in the period from

22  1976-1993.  GIMF 91.  Second, TBC has no evidence of who the putative owners

23  were after the Baron's acquisition from SHG on November 18, 1976 and before the

24  Stichting purported to transfer the Painting to Favorita Trustees on February 15,

25  1989.  *Id.* ¶75.  TBC's expert admits he has not seen documentation of the transfer

26  to the Stichting.  Ex. 46 at ¶ 60; GIMF ¶78.  As representatives of the Thyssen-

27  Bornemisza family still control four seats on TBC's board, TBC had access to and

28  would have produced evidence on this point if it existed.  *Id.* ¶103-104.  As TBC has

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

238519                                                                                              14                                            Case No. CV 05-03459-JFW (Ex)
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1   not done so, TBC cannot show that the entity or entities intended to return the

2   Painting to Switzerland at all relevant times.  Evidence that TBC omitted from this

3   motion indicates that the transferee was likely an entity known as Alpha Collections

4   Limited ("Alpha").  *Id.* ¶79.  TBC has submitted no evidence regarding the

5   ownership and control of Alpha or its intent during the relevant period.  *Id.* ¶80.

6   TBC therefore cannot show an absence of genuine issues of material fact regarding

7   the intent of unknown possessors of the Painting from 1976 to 1993.

8       **D.    TBC Is Not Entitled To Summary Judgment Concerning**

9           **Ownership Under Spanish Law**

10          TBC's motion fails under Spanish law as well.  First, TBC's own experts

11  acknowledge that if the Baron lacked good title, he could not have conveyed valid

12  title to TBC in 1993.  TBC Ex. 50 at 18-19, ¶¶ 24-25.

13          As to acquisitive prescription, TBC's experts fail to address the interaction

14  between the Spanish Civil Code and Criminal Code that is relevant to this case and

15  bars TBC's claim of acquisitive prescription.  TBC's Spanish law opinion also

16  ignores the European Convention on Human Rights, which would render Spanish

17  law of acquisitive prescription unenforceable as applied to the facts of this case.

18          As Plaintiffs' expert on Spanish law, Alfredo Guerrero Righetto, makes clear,

19  beginning in 1995, Spain eliminated the statute of limitations for crimes against

20  humanity and genocide.  Guerrero Decl., Ex. 55 ¶ 4.1-4.2.  This change in law had

21  the effect of eliminating the availability of acquisitive prescription as to moveable

22  property obtained through these crimes by the perpetrators of crimes, ***or***

23  accomplices or accessories, including those who engage in acts of concealment.  *Id.*

24  The change in law also disposes of TBC's argument (TBC Br. at 18:17-20:8) that

25  TBC became vested with ownership by virtue of Spanish statute of limitations as

26  well as acquisitive prescription.  *Id.*  ¶¶ 4.1-4.2; 5.1-5.3.  Because TBC does not

27  claim to have obtained title before 1995, the application of this change in law

28  applies to TBC and does not affect any vested right of TBC.  *Id.* ¶ 4.1-5.3.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

238519                                                    Case No. CV 05-03459-JFW (Ex)
                              15
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    Substantial evidence exists concerning the Baron's and TBC's concealment.

2    *See id* ¶¶ 4.2, 5.2, 5.3, 6.1; *supra* at 8.

3    In addition, if the Spanish law had not been amended to eliminate the

4    availability of acquisitive prescription for the Painting, and if Spanish law were as

5    described by TBC's experts, it would be so extreme as to violate the European

6    Convention of Human Rights.  According to TBC, Spanish law allows a ***bad-faith***

7    ***governmental purchaser of stolen property*** to void the title of a ***victim of a crime***

8    ***against humanity and genocide*** where the victim is a ***non-citizen and non-resident***

9    of Spain (or even the EU) and has ***no ties whatsoever to Spain*** and receives ***neither***

10   ***notice nor an opportunity to be heard***, all after a ***mere six years*** during which time

11   the bad-faith governmental purchaser ***falsifies and conceals information*** to make

12   discovery less likely.  This is not a rule of law that harmonizes with any decent

13   sense of justice as understood in democratic societies that respect basic rights.

14   The European Convention on Human Rights protects against such

15   overstepping.  *See* Declaration of Prof. Carlos M. Vázquez filed 3/23/15 (Ex. 104).

16   The most relevant case on point upheld, by a very thin margin, the U.K. law of

17   adverse possession.  *Id.* at ¶¶ 15-34.  The reasoning applied in that case would

18   invalidate Spanish law as that law is described by TBC's experts.  *Id.* at ¶ 35.

19   **E.    Choice-of-law Analysis Leads To Application Of California Law**

20   Plaintiffs' Memorandum of Points and Authorities Re: Choice of California

21   Law (Dkt. 251) discusses in detail the choice-of-law principles that govern this

22   action.  For the reasons there stated and incorporated herein by reference, were this

23   Court required to resolve choice-of-law issues at this stage, the substantive law of

24   California would govern this case.  This section briefly responds to arguments

25   advanced by TBC concerning choice-of-law principles.

26   *First*, because TBC's motion for summary judgment must be denied

27   regardless of whether California, Swiss, or Spanish law applies, this Court need not

28   resolve the thorny choice-of-law issues raised by TBC in the context of this motion.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

238519
16
Case No. CV 05-03459-JFW (Ex)
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*Second*, in the wake of the Ninth Circuit's en banc opinion in *Sachs v. Republic of Austria*, 737 F.3d 584, 600 (9th Cir. 2013) (en banc), cert. *granted sub nom. OBB Personenverkehr AG v. Sachs*, 135 S. Ct. 1172 (2015), it is not possible to predict with any degree of certainty whether the next Ninth Circuit panel to address choice-of-law in the context of state-law claims at issue in an FSIA case will conclude that federal or state choice-of-law principles apply, or whether the law of the forum applies automatically with no choice-of-law analysis. *Id.* at n. 14. TBC asserts that "courts in this circuit continue to look to federal common law's conflict of law analysis, as defined in the Restatement." TBC Br. at 6 n.2. TBC, however, refers only to pre-*Sachs* cases. Plaintiffs know of no post-*Sachs* case on point.

*Third*, for the reasons stated in *Bakalar v. Vavra*, 619 F.3d 136, 143-45 (2d Cir. 2010) (applying state choice-of-law rules and rejecting law of the situs), Plaintiffs believe it would be legal error to apply federal choice-of-law rules to this case to the extent such rules would lead to an application of substantive law of a jurisdiction different from that which would be selected applying California choice-of-law principles. *See also* 28 U.S.C. § 1606 (where foreign state is not entitled to immunity, "the foreign state shall be liable in the same manner and to the same extent as a private individual in like circumstances.").

*Fourth*, TBC acknowledges that it has the burden to demonstrate that foreign law controls. TBC Br. at 5:11-13. Yet, TBC simply fails to weigh, or even to acknowledge, the compelling interests of the State of California in ensuring the integrity of the art market, discouraging theft of moveable objects and trafficking in looted art, determining the rightful ownership of fine art, eliminating inequitable procedural obstacles to recovery, and ensuring that a thief cannot convey good title. *See* TBC Br. at 12:12-14:2. Nor does TBC make any serious effort to apply the factors listed in Restatement Section 6. *Id.* 10:18-12:22. As just one example, TBC pays lip service to "justified expectations," *id.* at 12:4-11, but wholly fails to account for the facts (1) that TBC's "expectations" were not "justified" since TBC acquired

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

238519

17

Case No. CV 05-03459-JFW (Ex)
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

the Painting in bad faith; and (2) the Cassirer family's expectations that they would be recognized as the owners of the Painting if it were ever found were justified by 10 years of litigation in German after the war and an important published decision by the U.S. CORA.

*Fifth*, TBC suggests that even under California choice-of-law principles, the "situs rule" regarding the "where the property was situated at the time of the conveyance" would determine valid title. TBC Br. at 11:10-18 (citing *Auto Auction Inc. v. Riding Motors,* 187 Cal. App. 2d 693, 696 (1960) and two secondary sources that cite *Auto Auction* without analysis). TBC's reliance on these authorities is misplaced. As of 1967, California has adopted the governmental interest test and rejected rules that base the choice-of-law selection on a single factor. *See*, *e.g.*, *Reich v. Purcell*, 67 Cal. 2d 551 (1967); *see also* 12 Cal. Jur. 3d Conflict of Laws § 27 (describing governmental interest approach under "fundamental principle") (citing *Hurtado v. Superior Court*, 11 Cal. 3d 574 (1974), and numerous other authorities); *id.*, at § 93 (describing governmental interest approach as the "modern" rule for torts) (citing *Reich*). In addition, *Auto Auction* did not address, much less decide, that the situs rule applies to a defense of adverse possession raised by a bad faith acquirer of stolen property. The claim at issue was breach of warranty, not conversion, and the issue was whether a transaction concerning transfer of a car in Louisiana qualified as a "sale" between people who were also in Louisiana at the time of the transaction. *Auto Auction*, 187 Cal. App. 2d at 694-698. The location of property and application of Louisiana law were "conceded." *Id.* at 696. Nothing in *Auto Auction* remotely stands for the proposition that California courts today would apply the situs rule in this case, which raises entirely different policy issues.[7]

*Sixth*, TBC ignores the evidence that is relevant to choice-of-law analysis

---

[7] TBC also asks the Court to consider choice-of-law rules of Spain and Switzerland. TBC Br. at 11:19-12:3. It is undisputed however, that the choice-of-law rules of foreign countries do not apply to this case.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

238519
18
Case No. CV 05-03459-JFW (Ex)
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

here, including evidence that (1) the Baron obtained the Painting in bad faith; (2) The Painting was not in Switzerland at the time the Baron purported to acquire it; (3) TBC obtained the Painting in bad faith; (4) The Painting was not located in Switzerland during significant stretches of time from 1976-1993, and TBC has not substantiated putative ownership during that time or intent to return the Painting to Switzerland throughout that period; (5) Spain is a signatory of the Washington Principles and the Terezin Declaration which promote the voluntary return of looted art; (6) TBC is a member of the International Council of Museums, and has thereby accepting its Code of Ethics, which dictates against the acquisition and ongoing exploitation of looted art; (7) Claude and his family had no ties to Spain or Switzerland; (8) Lilly was declared to be the owner of the Painting in a published CORA opinion that TBC should respect; (9) TBC and the Baron together decided not to select either Spanish nor Swiss law to govern the acquisition agreement; (10) California has an especially strong interest in this case because a Beverly Hills gallery participated in having the Painting transported out of Germany after the war and participated in two separate sales that undermined the integrity of the art market, prevented Lilly from obtaining the return of the Painting in the German litigation and ultimately prevented Claude Cassirer, who lived in California for the last 30 years of his life from ever recovering the Painting; (11) TBC's and the Baron's falsification of the provenance of the Painting (feigning as if the Painting had been in France at all times prior to the Baron's acquisition and concealment of the Painting's ties to Germany and the U.S.) substantiate the damage to the integrity of the art market.  GIMFs ¶¶48-49, 62-71, 82, 87, 88-90, 106, 125-129, 134-143, 152.

### F.     TBC's Due Process and Statute of Limitations Arguments Fails

Because TBC is not entitled to summary judgment that it has a vested property right under Spanish or Swiss law, it also is not entitled to summary judgment that application of California's statute of limitations would violate its due process rights. *Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 311-316 (1945);

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

238519                                                                    Case No. CV 05-03459-JFW (Ex)
                                          19
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1   *Campbell v. Holt*, 115 U.S. 620 (1885); Cal. S. Judiciary Comm., Bill Analysis (AB

2   2765), 2009-10 Reg. Sess., at 5 (2010).

3       In addition, even if TBC had a vested property right according to Swiss or

4   Spanish law, TBC has not shown that an amendment to California's statute of

5   limitations would violate principles of due process on the facts of this case.

6   Property rights, for purposes of the due process clause, are not defined by reference

7   to foreign law but "by reference to state law."  *Portman v. Cnty. of Santa Clara*, 995

8   F.2d 898, 904 (9th Cir. 1993); *see also Bd. of Regents of State Colleges v. Roth*, 408

9   U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972) (dimensions of

10  property interests "are defined by existing rules or understandings that stem from an

11  independent source such as state law").  "[F]ederal constitutional law …determines

12  whether that interest rises to the level of a legitimate claim of entitlement protected

13  by the Due Process Clause."  *Samson v. City of Bainbridge Island*, 683 F.3d 1051,

14  1057 (9th Cir. 2012).

15      TBC has not cited any case suggesting, much less establishing, that where

16  foreign law treats as "vested" the interests of a bad faith acquirer of stolen property

17  who claims to have dispossessed the rightful owner of title without notice or an

18  opportunity to be heard, and in disregard of a prior published U.S. opinion

19  adjudicating the issue of lawful ownership in favor of the plaintiff, that such interest

20  would be recognized as "property" under state law or that such an interest has a

21  "legitimate claim of entitlement" to protection under the Due Process Clause.  The

22  implications of any such rule would be far-reaching and troubling.

23      Finally, even if TBC's interests did qualify as a vested property interest in

24  California, application of CCP section 338(c)(3)(A) still would not violate due

25  process because extending the statute of limitations where a sophisticated museum

26  acquires stolen property in bad faith, ignores a published U.S. opinion declaring

27  another person to be the owner, and does not give the rightful owner notice or an

28  opportunity to be heard regarding its plan to misappropriate the property for itself, is

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

narrowly tailored to meet compelling state interests in protecting the integrity of the art market and protecting the valid interests of rightful owners over the illegitimate interests of sophisticated bad faith actors who know better.

### G.   TBC's Laches Arguments Fail

"[L]aches requires unreasonable delay in bringing suit plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay." *Miller v. Eisenhower Med. Ctr.*, 27 Cal. 3d 614, 624, 614 P.2d 258, 264 (1980) (citation and internal quotation marks omitted).  "[L]aches is not technical and arbitrary and is not designed to punish a plaintiff." *Bono v. Clark*, 103 Cal. App. 4th 1409, 1418, 128 Cal. Rptr. 2d 31, 36-37 (2002).  Prejudice is never presumed[.]" *Id.*; *see also Bono v. Clark*, 103 Cal. App. 4th 1409, 1420, 128 Cal. Rptr. 2d 31, 38 (2002).  The defendant has the burden of proof and the burden of production of evidence on the issue of prejudice.  *Miller*, 27 Cal. 3d at 624.

The issue of laches is highly fact-intensive.  *Id.* (consideration of "all of the applicable circumstances.").  Courts routinely deny summary judgment concerning laches due to the existence of disputed issues of fact.[8]  Laches does not apply where a defendant's prejudice is caused by factors other than the plaintiff's delay.[9]  The death of a witness is not enough to demonstrate prejudice.  The defendant must

---

[8] *See, e.g.*, *Alphaville Design, Inc. v. Knoll, Inc.*, 627 F.Supp.2d 1121, 1133 (N.D. Cal. 2009); *Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, No. 10-CV-419-GPC (WVG), 2012 WL 6553403 at *11 (S.D. Cal. Dec. 13, 2012); *In re Katz Interactive Call Processing Patent Litig.*, 882 F. Supp. 2d 1123, 1146, 1152 (C.D. Cal. 2010); *ViaSat, Inc. v. Space Sys./Loral, Inc.*, No. 3:12-CV-00260-H WVG, 2014 WL 868594, at *3 (S.D. Cal. Jan. 31, 2014); *Directors of Motion Picture Indus. Pension Plan v. Nu Image Inc.*, No. 2:13-CV-03224-CAS, 2014 WL 6066105, at *8 (C.D. Cal. Nov. 10, 2014); *Danjaq LLC v. Sony Corp.*, No. CV 97-8414-ER (MCX), 1999 WL 317629, at *2 (C.D. Cal. Mar. 11, 1999).

[9] *Farahani v. San Diego Cmty. Coll. Dist.*, 175 Cal. App. 4th 1486, 1495 (2009) (no laches where prejudice claimed by defendant was caused by its own conduct); *Pac. Hills Homeowners Ass'n v. Prun*, 160 Cal. App. 4th 1557, 1565 (2008) (same; defendant failed to show it would have acted differently).

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

"demonstrate whether and how [it] was prejudiced by decedent's unavailability." *Bono v. Clark*, 103 Cal. App. 4th 1409, 1420, 128 Cal. Rptr. 2d 31, 38 (2002).

The issue of unreasonable delay is also highly fact-intensive and turns on the equities and reasons for delay.  Even lengthy delays do not lead to an automatic finding of laches.[10]  A plaintiff's reasonable but mistaken belief concerning the facts at issue can avoid a finding of laches.[11]  The focus is on the equities of the complainant and on whether any delay "is satisfactorily explained."  *Cahill v. Superior Court*, 145 Cal. 42, 47 (1904) (citation and internal quotation marks omitted).  Courts appropriately reject the defense of laches where a plaintiff acts diligently after discovering the identity of one who is in wrongful possession of the plaintiff's property.  *Strasberg v. Odyssey Group, Inc.,* 51 Cal. App. 4th 906, 922 n.11 (1996).  The date a cause of action accrues as to a defendant is also relevant.[12]

As an equitable defense, laches does not apply to actions at law or where the defendant has unclean hands.  *Quick v. Pearson*, 186 Cal. App. 4th 371, 380 (2010).

---

[10] *Miller v. Ash*, 156 Cal. 544, 549, 563-64 (1909) (45 yrs); *Golden Gate Wtr. Ski Club v. Contra Costa Cnty.*, 165 Cal. App. 4th 249, 254, 263-64 (2008) (35 yrs); *Huddleson v. Huddleson,* 178 Cal. App. 3d 1564, 1568, 1573-74 (1986) (12 yrs).

[11] *Barndt v. Cnty. of LA*, 211 Cal. App. 3d 397, 402-03 (1989); *Kelly v. San Francisco*, No. C 05-1287 SI, 2005 WL 3113065, at *3 (N.D. Cal. Nov. 21, 2005) (analyzing "reasons" for delay).

[12] *Zakaessian v. Zakaessian*, 70 Cal. App. 2d 721, 726 (1945) ("cause of action had not yet accrued."); *Maguire v. Hibernia Sav. & Loan Soc.*, 23 Cal. 2d 719, 736 (1944) (no laches in case of "rights originating many years past").  TBC's laches cases are distinguishable.  In *Jarrow*, the plaintiff waited four years after expiration of statute of limitations to have lab tests done, 304 F.3d at 835.  In *Miller v. Glenn Miller Prods.*, years of financial statements put plaintiff on notice, 454 F.3d at 980.  In *Boone*, a Title VII case, EEOC officials repeatedly informed the plaintiff of his right to sue, 609 F.2d at 958.  In *Piper*, the Seventh Circuit rejected the laches defense, 741 F.2d at 933-934.  In addition, as Plaintiffs' causes of action do not arise under substantive federal law, the defense of laches is governed by California law.  28 U.S.C. § 1606.  TBC does not argue that either Swiss or Spanish law recognizes the doctrine of laches.  Dkt. 249-1 (TBC MSJ); Dkt. 249-27 (Rule 44.1 Notice re foreign law).  Disputed issues of fact exist even if federal law were applied.

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

238519

22

Case No. CV 05-03459-JFW (Ex)

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### H.     <u>TBC Cannot Meet Its Burden As To Laches</u>

Genuine issues of material fact preclude summary judgment with respect to the fact-intensive issues of prejudice and reasonableness of delay.

As to prejudice, TBC utterly fails to substantiate any evidentiary prejudice, TBC Br. at 25:21-23, and while TBC's Statement of Uncontroverted Facts asserts that Spain provided funds to purchase the Baron's *entire Collection*, and provided a building to house the *entire Collection*, and agreed to provide operational funding for the *museum as a whole*, SUF ¶¶ 14, 17, 19, 20, 22, TBC points to no evidence of prejudice that is tied to the Painting itself.

TBC admits that the acquisition of the Baron's Collection was a deal of grand scale, including ***775 works and dedication of a palace***. SUF ¶¶ 17, 19. The Painting is just one of the works (a tiny fraction of a percent of the Collection). TBC offers no evidence whatsoever that the Painting takes up more than a miniscule amount of space in Villahermosa Palace, that the palace, or any part of it, would have been excluded from the deal but for the Painting, that the financial terms (or any other terms) of the acquisition agreement would have been different but for the Painting, or that inclusion of the Painting had any other material impact on the museum or the deal that is now causing prejudice. SUF ¶¶ 1-34.

In any event, TBC itself (and the Baron who controlled half of its board) are responsible for any prejudice and knowingly took a risk. GIMF ¶ 113. Both TBC and the Baron had reason to know that the provenance of the Painting was questionable. *Id.* ¶¶62-71. The Painting had been in Berlin. *Id.* ¶64. Their documentation provided no explanation for how the Painting got to the United States. *Id.* Pissarros were known to be frequent subjects of Nazi looting. *Id.* ¶66. The Baron had paid a below-market price. *Id.* ¶¶62-63. They withheld information from the lawyers conducting the title investigation, *id.* ¶¶95-97, and the lawyers notified them of the risks, *id.* ¶¶100-102. The cause of any prejudice is their own.

Because TBC cannot show undisputed facts as to prejudice, it is not entitled

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

238519

23

Case No. CV 05-03459-JFW (Ex)

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1   to summary judgment regardless of the issue of delay.  In any event, the record also

2   precludes a finding that it is undisputed that any delay here was unreasonable.

3       TBC does not contend that Plaintiffs unreasonably delayed prior to 1958 or

4   after Claude learned that the Painting might actually still exist.  TBC Br. at 25:12.

5   Any such argument would have no merit.  *See supra* section IV.G.

6       Nor is there merit in the contention that Lillie or Claude unreasonably delayed

7   in the intervening years.  Lilly died in 1962, and by the time she moved to the

8   United States in 1958, she was in poor health.  GIMF 143.  At the time of her death,

9   her earlier efforts (maintaining a Berlin Cassirer Gallery label on the back of the

10  Painting and obtaining an influential, published CORA opinion identifying her as

11  the owner and identifying the Painting by name), were more than adequate to put

12  any subsequent acquirer on notice of her claim.  *Id.* ¶¶48-49, 62-71.

13      Claude, for his part, reasonably believed the Painting had been lost or

14  destroyed during the war.  *Id.* ¶145.  Neither Shoenberg nor SHG exhibited the work

15  publicly at any time.  *Id.* ¶55.  After its transfer to the Baron, neither he nor TBC

16  ever publicly exhibited it in the United States.  *Id.* ¶81, 122.  In Switzerland, the

17  Baron kept the Painting in a bedroom, not on public display.  *Id.* ¶107.  Claude had

18  no connection to Spain or Switzerland.  *Id.* ¶136-141, .  He was not a sophisticated

19  art collector.  *Id.* ¶146.  He did not speak Spanish, and English was not his first

20  language.  *Id.* ¶148.  He was not a college graduate.  *Id.* ¶147.  Claude had no

21  connection to Cassirer family members who had given the Painting to Lilly; indeed,

22  they had passed away decades earlier.  *Id.* ¶149.[13]

23  _____

24      [13] TBC contends that the Frick library in New York contained a typed
    catalogue card identifying Shoenberg's possession of the Painting.  SUF ¶ 2 & TBC

25  Ex. 17.  TBC, however, has provided no evidence that this card existed or was
    publicly available at the Frick at any time relevant to establishing laches.  GIMF 56.

26
    In addition, TBC has provided no evidence that a reasonable search would

27  have uncovered either the Frick card or a 1954 article from the London-based *The*

28  *Connoisseur* periodical that TBC also has cited.  SUF ¶ 2 & TBC Ex. 17 & 18;

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

238519                                                          Case No. CV 05-03459-JFW (Ex)
                              24
              PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1      TBC and the Baron, for their part, disseminated false provenance information

2  about the Painting, making it less likely that anyone would link the Painting to Nazi

3  looting and the Cassirer family.  They concealed that the Painting had passed though

4  Germany and the United States and instead created the false impression that it had

5  remained in France at all times prior to the Baron's acquisition.  *Id.* ¶¶125-129.

6  These statements were knowingly false given that they had within their possession

7  the Berlin label on the back of the Painting and the paltry provenance information

8  from SHG, directly contradicting the information they disseminated.  *Id.* ¶¶64-73.

9  Had the Baron and TBC not been dishonest, Claude may well have learned of his

10  claim earlier.  Their dishonesty prevents a finding of unreasonable delay and shows

11  sufficient unclean hands to preclude summary judgment on laches.

## V.    CONCLUSION

13      For the foregoing reasons, TBC's Motion should be denied.

14  DATED:  April 20, 2015         KENDALL BRILL & KLIEGER LLP

17              By:       /s/ Laura W. Brill

18                   Laura W. Brill

                 Attorneys for Plaintiffs

---

(footnote continued)

GIMF ¶56.  The Frick is not a leader in provenance research for Pissarros and to this day the Frick maintains incorrect provenance information concerning the Painting. *Id.* ¶59.  Neither SHG (located less than a 10-minute walk from the Frick), nor the Baron, nor TBC obtained these materials in connection with their acquisitions.  *Id.* ¶60.  The parties involved in the Germany proceedings – including the German government – did not find it, despite their extensive efforts in litigating the issue of ownership.  *Id.*  Even as of 2005, TBC did not identify Shoenberg as part of the Painting's provenance or identify either the Frick photo card or 1954 article from *The Connoisseur* in its official list of the Painting's provenance and publications. *Id.* ¶106.

   Newspaper articles that refer to TBC's acquisition of the Baron's collection did not identify the Painting.  *Id.* ¶86.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067