1  Thaddeus J. Stauber (Bar No. 225518)
   tstauber@nixonpeabody.com
2  Aaron M. Brian (Bar No. 213191)
   abrian@nixonpeabody.com
3  Zachary C. Osinski (Bar No. 358770)
   zosinski@nixonpeabody.com
4  NIXON PEABODY LLP
   300 South Grand Avenue, Suite 4100
5  Los Angeles, CA 90071
   Tel: (213) 629-6000
6  Fax: (213) 629-6001

7  Attorneys for Defendant
   Thyssen-Bornemisza Collection Foundation
8

9                UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11

12  DAVID CASSIRER, AVA CASSIRER,        Case No. 05-cv-03459-JFW (Ex)
    and UNITED JEWISH FEDERATION         Honorable John F. Walter
13  OF SAN DIEGO COUNTY, a
    California non-profit corporation,   **DEFENDANT THYSSEN-**
14                                       **BORNEMISZA COLLECTION**
                 Plaintiffs,             **FOUNDATION'S MOTION FOR**
15                                       **SUMMARY JUDGMENT**
             vs.
16                                       Date:       December 15, 2025
    THYSSEN-BORNEMISZA                   Time:       1:30 p.m.
17  COLLECTION FOUNDATION, an            Crtrm:      7A
    agency or instrumentality of the
18  Kingdom of Spain,

19               Defendant.

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES.............................................1

INTRODUCTION ......................................................................................1

UNDISPUTED FACTS RELEVANT TO THE FOUNDATION'S MOTION ......4

I.  Relevant Procedural History ....................................................................4

II.  California Legislature Amends its Code of Civil Procedure ........................5

III.  The Case is Remanded ..........................................................................6

LEGAL STANDARD ................................................................................6

ARGUMENT.............................................................................................6

I.  The Foundation is Immune from Suit under the FSIA ................................6

II.  Section 338 Violates the Foundation's Due Process Rights ........................7

    A.  Section 338 Violates the Foundation's Due Process Rights by
Retroactively Depriving the Foundation of a Vested
Property Right ....................................................................9

    B.  Section 338 Violates the Due Process Clause and Full Faith and
Credit Clause  by Forcing the Application of California Law Based
Solely on a Plaintiff's Residence ......................................10

    C.  Section 338 Is Not Narrowly Tailored to Serve a
Compelling Interest..........................................................13

III.  Section 338 Violates the Commerce Clause ...............................15

    A.  Section 338 Violates the Foreign Commerce Clause by
Preventing the U.S. from Speaking with One Voice .........16

    B.  Section 338 Impermissibly Legislates Extraterritorially by
Attempting to Regulate Conduct Beyond California's Borders........18

    C.  Section 338 Discriminates Against Foreign Commerce...................21

IV.  Section 338 is Federally Preempted.............................................22

i

A.    Section 338 is Preempted Because it Regulates Foreign Affairs,
an Area of Exclusive Federal Control.................................................23

1.    Section 338 Does Not Concern Traditional State
Responsibilities ........................................................23

2.    Section 338 Infringes on the Federal Government's
Exclusive Authority to Conduct Foreign Affairs ....................25

B.    Section 338 is Preempted Because it is an Obstacle to the
Effective Implementation of the HEAR Act and Related Federal
Policy Initiatives ..................................................................28

CONCLUSION.........................................................................30

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Allstate Ins. Co. v. Hague,*
5
    449 U.S. 302 (1981) ............................................................. 3, 10, 11, 25

6

*American Insurance Association v. Garamendi,*
7
    539 U.S. 396 (2003) ................................................................*passim*

8

*Anderson v. Liberty Lobby, Inc.,*
9
    477 U.S. 242 (1986) ........................................................................ 6

10

*Arizona v. U.S.,*
    567 U.S. 387 (2012) ................................................................. 28, 30

11

*Barclays Bank PLC v. Franchise Tax Bd.,*
12
    512 U. S. 298 (1994) ................................................................ 15, 16

13

*Bernhardt v. Cnty. of Los Angeles,*
14
    279 F.3d 862 (9th Cir. 2002) ............................................................ 7

15

*Brown-Forman Distillers Corp. v. N.Y.S. Liquor Auth.,*
16
    476 U.S. 573 (1986) ..................................................................... 18

17

*Campbell v. Holt,*
18
    115 U.S. 620 (1885) .................................................................. 9, 10

19

*Cassirer v. Kingdom of Spain,*
20
    616 F.3d 1019 (9th Cir. 2010) (*en banc*)........................................... 4, 7

21

*Cassirer v. Thyssen-Bornemisza Collection Found.,*
    107 F.4th 882 (9th Cir. 2024) ........................................................... 5
22

*Cassirer v. Thyssen-Bornemisza Collection Found.,*
23
    153 F.Supp.3d 1148 (C.D. Cal. 2015)...........................................*passim*

24

*Cassirer v. Thyssen-Bornemisza Collection Found.,*
25
    737 F.3d 613 (9th Cir. 2013)........................................................ 4, 14

26

*Cassirer v. Thyssen-Bornemisza Collection Found.,*
27
    No. CV 05-03459 GAF EX, 2014 WL 5510996
    (C.D. Cal. Oct. 31, 2014).................................................................. 7
28

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
  No. CV 05-3459-GAF (CTX), 2012 WL 12875771 (C.D. Cal. May
  24, 2012), *aff'd in part*, and *rev'd in part*, 737 F.3d 613 (9th Cir.
  2013) ............................................................................................................ 10

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .......................................................................................... 6

*Crosby v. Nat'l Foreign Trade Council*,
  530 U.S. 363 (2000) ................................................................................. 23, 28

*Deutsch v. Turner Corp.*,
  324 F.3d 692 (9th Cir. 2003) ........................................................................ 26

*Edgar v. MITE Corp.*,
  457 U.S. 624 (1982) ................................................................................. 18, 20

*Federal Republic of Germany v. Philipp*,
  141 S. Ct. 703 (2021) .............................................................................. 1, 3, 7

*Fulton Corp. v. Faulkner*,
  516 U.S. 325 (1996) ........................................................................................ 21

*G and G Productions v. Rusic*,
  902 F.3d 940 (9th Cir. 2018) ........................................................................ 15

*Grosjean v. Am. Press Co.*,
  297 U.S. 233 (1936) .......................................................................................... 7

*Henderson ex rel. Henderson v. Shinseki*,
  562 U.S. 428 (2011) .......................................................................................... 7

*Home Ins. Co. v. Dick*,
  281 U.S. 397 (1930) ........................................................................................ 11

*John Hancock Mutual Life Ins. Co. v. Yates*,
  299 U.S. 178 (1936) ........................................................................................ 11

*Lauritzen v. Larsen*,
  345 U.S. 571 (1953) .............................................................................. 8, 11, 12

*Movsesian v. Victoria Versicherung AG*,
  670 F.3d 1067 (9th Cir. 2012) (*en banc*)........................................ 3, 22, 23, 25

iv

*National Foreign Trade Council v. Natsios*,
   181 F.3d 38 (1st Cir. 1999), *aff'd sub nom.*, *Crosby v. Nat'l
   Foreign Trade Council*, 530 U.S. 363 (2000) ................................21, 22, 29, 30

*Oregon Waste Sys., Inc. v. Department of Envtl. Quality*,
   511 U.S. 93 (1994) ............................................................................21

*Orkin v. Taylor*,
   487 F.3d 734 (9th Cir. 2007) ............................................................15

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ...........................................................................11

*Planned Parenthood of Idaho, Inc. v. Wasden*,
   376 F.3d 908 (9th Cir. 2004) ..............................................................6

*Shelton v. Tucker*,
   364 U.S. 479 (1960) ...........................................................................13

*Simon v. Republic of Hungary*,
   77 F.4th 1077 (D.C. Cir. 2023), *cert. granted*, 144 S. Ct. 2680
   (2024)...................................................................................................7

*Society of Cal. Pioneers v. Baker*,
   43 Cal.App.4th 774 (Cal. App. 1996) ...............................................15

*Von Saher v. Norton Simon Museum*,
   592 F.3d 954 (9th Cir. 2010) .....................................................*passim*

*Wardair Canada, Inc. v. Florida Dep't of Revenue*,
   477 U. S. 1 (1986) ......................................................................15, 16

*Washington v. Glucksberg*,
   521 U.S. 702 (1997) .....................................................................13, 14

**Statutes**

Cal. Code Civ. P. § 338 ...............................................................*passim*

Cal. Code Civ. P. § 338(c) .....................................................................8

Cal. Code Civ. P. § 338(c)(6) ......................................................2, 5, 24

Cal. Code Civ. P. § 338.2(g)...............................................................2, 6

Cal. Code Civ. Proc. § 354.3 ................................................................. 26, 27

California's Holocaust Victim Insurance Relief Act ............................... 17

Foreign Sovereign Immunity Act, 28 U.S.C. § 1330 *et seq.* ..................... 1

FSIA ................................................................................................ *passim*

HEAR Act ...................................................................................... *passim*

HEAR Act § 2(5) ................................................................................... 29

Holocaust Expropriated Art Recovery Act of 2016, Pub. L. No. 114-
308, 130 Stat. 1524 ....................................................................... 3

**Other Authorities**

2023-2024 Reg. Sess. (Cal. 2024) ........................................................... 5

Fourteenth Amendment ................................................................... 7, 13

*Bill Analysis*, at 2 ...................................................................... 22, 24, 27

*Bill Analysis*, at 3 ........................................................................ 5, 14, 20

*Bill Analysis*, at 9 .................................................................. 5, 10, 20, 27

*Bill Analysis*, at 10 ..................................................................... 15, 18, 30

California—*McCann* ............................................................................ 13

Fed. R. Civ. P. 56(a) ............................................................................... 6

Fed. R. Civ. P. 56(c), (e) ......................................................................... 6

Fed. Rule of Civ. Proc. 56 ....................................................................... 1

Jackie Hajdenberg, *California approves law to help Holocaust
survivors and heirs recover Nazi-looted art*.......................................... 2

*Japan Line. Ltd* ................................................................................... 16

Nazi-Confiscated Art, U.S. Dep't of State (Dec. 3, 1998),
https://www.state.gov/washington-conference-principles-on-nazi-
confiscated-art/ ........................................................................... 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Press Release, Jesse Gabriel, Assemblymember, California State
    Assembly, California Passes Legislation to Help Holocaust
    Survivors Recover Stolen Property (Aug. 15, 2024),
    https://a46.asmdc.org/press-releases/20240815-california-passes-
    legislation-help-holocaust-survivors-recover-stolen ............................................ 2

Terezin Declaration on Holocaust Era Assets and Related Issues, U.S.
    Dep't of State (June 30, 2009), https://www.state.gov/prague-
    holocaust-era-assets-conference-terezin-declaration/ ........................................ 17

THE TIMES OF ISREAL, September 24, 2024,
    https://www.timesofisrael.com/california-approves-law-to-help-
    holocaust-survivors-and-heirs-recover-nazi-looted-art/ ...................................... 2

U.S. CONST. amend. XIV, § 1 ...................................................................................... 7

U.S. Const. art. 1, § 8, cl. 3 ......................................................................................... 15

U.S. Const. art. VI, § 2 ................................................................................................ 23

U.S. Constitution Commerce Clause ......................................................................... 15

U.S. Dep't of State (Mar. 5, 2024), https://www.state.gov/office-of-
    the-special-envoy-for-holocaust-issues/best-practices-for-the-
    washington-conference-principles-on-nazi-confiscated-art ("2024
    Best Practices") ..................................................................................................... 17

United States Constitution ......................................................................................... 10

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant Thyssen-Bornemisza Collection Foundation ("Foundation") submits this memorandum of points and authorities in support of its motion for summary judgment pursuant to Fed. Rule of Civ. Proc. 56 ("Motion").

### **INTRODUCTION**

For nearly three decades the Foundation has possessed, exhibited, and conserved Camille Pissarro's *Rue Saint-Honoré, après-midi, effet de pluie* (1897) ("Painting") in Madrid, Spain. The Foundation purchased the Painting in June 1993, and under Spanish civil law the Foundation indisputably acquired perfect title, thereby barring Plaintiffs' claims, no later than June 1999 – either by six years of open, uninterrupted possessory prescription without actual knowledge the Painting was stolen, or by good-faith conveyance and expiration of Spain's applicable three-year statute of limitations. After a full trial, multiple Ninth Circuit appeals (including an *en banc* appeal), and review by the U.S. Supreme Court, those vested property rights have been repeatedly confirmed.

Recent Supreme Court precedent has also confirmed that the Foundation, an agency or instrumentality of Spain, is immune from this suit under the Foreign Sovereign Immunity Act, 28 U.S.C. § 1330 *et seq.* ("FSIA"). While the Ninth Circuit previously found that the expropriation exception to the FSIA applied to permit jurisdiction over the Foundation, the Supreme Court in 2021 found the expropriation exception incorporates the domestic takings rule which states that "what a country does to property belonging to its own citizens within its own borders is not the subject of international law", and held that such a taking does not satisfy the expropriation exception. *Federal Republic of Germany v. Philipp*, 141 S. Ct. 703 (2021). For this reason alone, to the extent this case moves forward at all, the Court must first decide this jurisdictional issue, which requires dismissal of Plaintiffs' claims against the Foundation.

After the Foundation prevailed on the merits, and nearly a decade after this Court found that Spanish law applied under either the Restatement's or California's choice of law rules, Plaintiffs persuaded the California legislature to amend its Code of Civil Procedure and pass legislation admittedly intended to "correct" the Ninth Circuit's decision and "make it crystal clear that California law must triumph over foreign law[.]" (*Bill Analysis*, Bill AB 2867, prepared for the Assembly Committee on Judiciary, April 27, 2024 ("*Bill Analysis*"), at 3.)[1]

The recent amendments categorically mandate application of California substantive law to "any action" brought by a California resident (or representative) seeking the recovery of fine art or other property lost through "political persecution," irrespective of where the property is located, where the events occurred, or the interests of any other jurisdiction. *See* Cal. Code Civ. Proc. §§ 338(c)(6), 338.2.[2]    The newly enacted § 338.2(g) also revives previously dismissed actions—including, specifically, actions dismissed based on the defense of "acquisitive prescription"—thus providing Plaintiffs with a procedural mechanism to commence a second lawsuit once this case is finally dismissed, in further violation of the Foundation's due process rights.

Amended Section 338 is constitutionally indefensible.  Under binding Supreme Court precedent, a State may not, by legislative fiat, reopen time-

---

[1] *See also* Press Release, Jesse Gabriel, Assemblymember, California State Assembly, California Passes Legislation to Help Holocaust Survivors Recover Stolen Property (Aug. 15, 2024), https://a46.asmdc.org/press-releases/20240815-california-passes-legislation-help-holocaust-survivors-recover-stolen ("Gabriel – Press Release"); Jackie Hajdenberg, *California approves law to help Holocaust survivors and heirs recover Nazi-looted art*, THE TIMES OF ISREAL, September 24, 2024, https://www.timesofisrael.com/california-approves-law-to-help-holocaust-survivors-and-heirs-recover-nazi-looted-art/ ("Times of Isreal Article") (noting the legislation is "aimed at advancing the restitution of Nazi-looted art" and was passed "in response to [the Ninth Circuit's] ruling").)

[2] For ease of reference, the 2024 amendments to California's Code of Civil Procedure § 338 and which added § 338.2 are collectively referred to herein as "Section 338" unless otherwise noted.

barred claims and transfer property whose ownership is already vested. As this Court previously held, such legislation "deprives the party of his property without due process of law." *See Cassirer v. Thyssen-Bornemisza Collection Found.*, 153 F.Supp.3d 1148, 1167 (C.D. Cal. 2015) (quoting *Campbell v. Holt*, 115 U.S. 620 (1885)). The Due Process Clause and Commerce Clause also forbid a State from projecting its law extraterritorially based on slight connections to a dispute, like a party's change of residence to the forum state. *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 319 (1981). Section 338 furthermore intrudes upon the federal government's exclusive foreign-affairs domain, displacing carefully negotiated international frameworks—including the Holocaust Expropriated Art Recovery Act of 2016, Pub. L. No. 114-308, 130 Stat. 1524 ("HEAR Act")—and thus is pre-empted under *American Insurance Association v. Garamendi*, 539 U.S. 396 (2003), *Von Saher v. Norton Simon Museum*, 592 F.3d 954 (9th Cir. 2010), and *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067 (9th Cir. 2012) (*en banc*).

Section 338 also directly contradicts the public policy concerns expressed by the Supreme Court in *Philipp* in determining the scope of the expropriation exception—the jurisdictional basis for this suit—where it noted that courts should "interpret the FSIA" the same way courts interpret any statute, "to avoid, where possible, 'producing friction in our relations with [other] nations and leading some to reciprocate by granting their courts permission to embroil the United States in expensive and difficult litigation[.]'" 141 S. Ct. at 713. As the Supreme Court emphasized, "***United States law governs domestically but does not rule the world***[.]" *Id.* (emphasis added).

Plaintiffs' claims depend entirely on the validity of these recent amendments to Section 338. Because Section 338 violates the Constitution on multiple, independent grounds, both facially and as applied in this case, Plaintiffs' claims fail as a matter of law.

**UNDISPUTED FACTS RELEVANT TO THE FOUNDATION'S MOTION**

The facts of this dispute are well known to the Court and the parties, and have been established and detailed in the earlier decisions issued by this Court, the Ninth Circuit, and the U.S. Supreme Court.[3]  The Foundation incorporates those prior factual findings, and will only briefly discuss those facts relevant to the instant Motion.

**I.    Relevant Procedural History**

This case was filed against the Foundation, an agency or instrumentality of Spain, in 2005.  The Ninth Circuit previously found that the expropriation exception to FSIA applied to permit jurisdiction over the Foundation.  *See Cassirer,* 616 F.3d at 1028-32.

In cross motions for summary judgment, this Court was asked to determine whether Spanish or California substantive law should apply. Recognizing a split of decision among the federal circuits, the Court analyzed the federal *and* California's choice-of-law test and found they *both* resulted in application of Spanish law.  *Cassirer,* 153 F. Supp. 3d at 1154.

On appeal, the Ninth Circuit found the federal choice-of-law rules applied and that Spanish law governed this dispute.  *Cassirer,* 862 F.3d at 961-64.  On remand and following a trial on the merits, the Court found the Foundation did not have actual knowledge that the painting was stolen, and that it acquired title to the painting through Spanish acquisitive prescription. *Cassirer,* 2019 WL 13240413, at *20-22.  The Court's factual findings and determination that Spanish law applied were unanimously affirmed by the Ninth Circuit.  *Cassirer,* 824 F. App'x 452.

---

[3] *See Cassirer v. Kingdom of Spain,* 616 F.3d 1019 (9th Cir. 2010) (*en banc*).  *See also Cassirer v. Thyssen-Bornemisza Collection Found.,* 737 F.3d 613 (9th Cir. 2013); 153 F. Supp. 3d 1148 (C.D. Cal. 2015); 862 F.3d 951 (9th Cir. 2017); 2019 WL 13240413 (C.D. Cal. Apr. 30, 2019); 824 F. App'x 452 (9th Cir. 2020); 596 U.S. 107 (2022); 69 F.4th 554 (9th Cir. 2023); 89 F.4th 1226 (9th Cir. 2024).

After the Supreme Court reversed the Ninth Circuit's decision—without comment on the result, and simply holding that California's choice-of-law test should have been applied (*Cassirer,* 596 U.S. at 114-17)—the Ninth Circuit affirmed that California's choice-of-law test also mandates the application of Spanish law, again affirming judgment in favor of the Foundation. *See Cassirer*, 89 F.4th at 1235-45. The Ninth Circuit subsequently denied Plaintiffs' request for rehearing (*Cassirer v. Thyssen-Bornemisza Collection Found.*, 107 F.4th 882 (9th Cir. 2024)), and again affirmed this Court's order granting judgment in favor of the Foundation.

## II.   California Legislature Amends its Code of Civil Procedure

On September 16, 2024, after the Foundation prevailed on the merits of this dispute, the California legislature signed into law Assem. Bill 2867, 2023-2024 Reg. Sess. (Cal. 2024) and amended Section 338 to target this case with the expressed goal of making "it crystal clear that California law must triumph over foreign law[.]" (*Bill Analysis*, at 3.) Section 338 was specifically passed to "[a]void[] the 'choice of law' problem" and "circumvent" the choice-of-law analysis that this Court and the Ninth Circuit previously applied (*Bill Analysis*, at 9), and simply mandates the application of California substantive law:

> Notwithstanding any other law or prior judicial decision, in any action brought by a California resident, or by an heir, trustee, assignee, or representative of the estate of a California resident, involving claims relating to title, ownership, or recovery of personal property as described in paragraph (2) or (3), or in the [HEAR Act] . . . California substantive law shall apply. This paragraph shall apply to all actions pending on the date this paragraph becomes operative . . . including any action in which the judgment is not yet final or the time for filing any appeal, including a petition for a writ of certiorari in the United States Supreme Court, has not expired, or, if filed, has not been decided.

Cal. Code Civ. P. § 338(c)(6).

In addition, the newly drafted Section 338.2 creates a new cause of action and allows a claimant to file a new lawsuit for recovery of the same property, even if their prior action was dismissed by a final judgment:

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No.: 05-cv-03459-JFW (Ex)

An action may be brought by a claimant who, prior to the enactment of this section, brought a claim to recover personal property that was stolen or lost due to political persecution, and the case was dismissed by a court based on any of the defenses listed in subdivision (f) [which includes acquisitive prescription], or based on any procedural basis such as standing, personal jurisdiction, or subject matter jurisdiction [as long as the new action is] commenced within two years of the effective date of this section or the ***entry of a final judgment*** and the termination of all appeals, including any petition for a writ of certiorari, whichever is later.

Cal. Code Civ. P. § 338.2(g) (emphasis added).

### III.    The Case is Remanded

On March 10, 2025, the Supreme Court remanded this action to the Ninth Circuit for further consideration in light of the 2024 amendments to Section 338.  (*See* Dkt. 676.)   After the Ninth Circuit entered an Order granting Plaintiffs' motion to remand the case to this Court (*id.*), this Court entered an Order permitting the parties to move for summary judgment in accordance with their proposed briefing schedule (Dkt. 671).  This Motion follows.

### LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Once a movant meets its burden, summary judgment must be granted if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); Fed. R. Civ. P. 56(c), (e).  "The constitutionality of a state statute is a question of law," and is thus suitable for summary disposition.  *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 920 (9th Cir. 2004).

### ARGUMENT

### I.    The Foundation is Immune from Suit under the FSIA

As an initial matter, while the Ninth Circuit previously found that the expropriation exception to the FSIA applied to permit jurisdiction over the

6

Foundation (*Cassirer,* 616 F.3d at 1028-32), the Foundation is immune from suit under the FSIA pursuant to the Supreme Court's recent precedent in *Philipp*.  While Plaintiffs have relied exclusively on the expropriation exception to the FSIA for subject matter jurisdiction in this case,  the Supreme Court held in *Philipp* that the expropriation exception does not apply to a state's taking of property from its own nationals, and subsequent courts—applying "the analytic framework established by *Philipp*"—have held that a state's taking from its own national, even if rendered *de facto* stateless through discriminatory measures and treatment, does not violate the international law of expropriation and, therefore, does not satisfy the expropriation exception.  *Simon v. Republic of Hungary*, 77 F.4th 1077, 1098-1099 (D.C. Cir. 2023), *cert. granted*, 144 S. Ct. 2680 (2024), and *cert. denied sub nom. Friedman v. Republic of Hungary*, 144 S. Ct. 2686 (2024).

This Court previously found Plaintiffs' predecessor lost her German citizenship as of 1939 (*Cassirer,* 616 F.3d at 1023), and thus was rendered *de facto* stateless.  However, those findings do not support a finding that the expropriation exception applies post-*Philipp*.  *See Philipp*, 592 U.S. 180; *Simon*, 77 F.4th at 1098.  Because the Foundation is immune from suit, this lawsuit must be dismissed.[4]

## II.    Section 338 Violates the Foundation's Due Process Rights

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  Due Process rights are not limited to natural persons (*see Grosjean v. Am. Press Co.*, 297 U.S. 233, 244 (1936)), and  when an agency or instrumentality of a foreign sovereign is subject to the jurisdiction of U.S.

---

[4] As this Court previously noted, "subject matter jurisdiction is never waived." *Cassirer v. Thyssen-Bornemisza Collection Found.*, No. CV 05-03459 GAF EX, 2014 WL 5510996, at *3 (C.D. Cal. Oct. 31, 2014).  *See also Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002) (court "must raise issues concerning our subject matter jurisdiction *sua sponte*"); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) (same).

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No.: 05-cv-03459-JFW (Ex)

1   Courts under the FSIA, it is liable "in the same manner" as a private individual under
2   like circumstances and is "subject to the same rules of liability" as a private party.
3   *Cassirer*, 596 U.S. at 117 (quoting 28 U.S.C. § 1606).

4       The glaring Due Process violations associated with Section 338's choice-of-
5   law mandate are not new to this Court.  In its 2015 decision, this Court reasoned that
6   because the Foundation's title in the Painting had vested by June 21, 1999, "to the
7   extent that application of amended California Code of Civil Procedure § 338(c)
8   would result in depriving the Foundation of its vested property interest in the
9   Painting, the statute violates the Foundation's due process rights." *Cassirer*, 153 F.
10  Supp. 3d at 1168.

11      The Due Process Clause further limits a forum state's ability "to draw into
12  control of its law otherwise foreign controversies, on slight connections, because it
13  is a forum state." *Lauritzen v. Larsen*, 345 U.S. 571, 590–591 (1953).  Both this
14  Court and the Ninth Circuit have repeatedly emphasized California's tenuous
15  connection to this litigation, which "rest[s] solely on the fortuitous decision of Lilly's
16  successor-in-interest to move to California long after the Painting was unlawfully
17  taken." *Cassirer*, 153 F. Supp. 3d at 1159; *see also Cassirer*, 89 F.4th at 1236
18  ("California's governmental interest rests solely on the fortuity that Claude Cassier
19  moved to California in 1980").  Here, Section 338 is facially unconstitutional
20  inasmuch as it mandates the application of California law regardless of the State's
21  interests or relevant contacts to a case, so long as the plaintiff is a California resident,
22  or "an heir, trustee, assignee, or representative of the estate of a California resident[.]"

23      In sum, Section 338 (i) retroactively deprives the Foundation of a vested
24  property interest; (ii) subordinates the agency of a foreign sovereign to California law
25  based on nothing more than Claude Cassier's decision to move to California in 1980;
26  and (iii) is not narrowly tailored to achieve a compelling state interest.  This Court
27  should accordingly conclude that the amended statute, like its prior versions, violates
28  the Fourteenth Amendment's Due Process Clause.

**A.    Section 338 Violates the Foundation's Due Process Rights by Retroactively Depriving the Foundation of a Vested Property Right**

The Supreme Court has conclusively held that legislative acts that retroactively strip ownership of vested property rights violate the Due Process Clause.  *Campbell*, 115 U.S. at 623.  This Court previously held the Foundation has a "'fundamental' liberty interest" in its ownership of the Painting, and, consequently, California's prior version of § 338[5] was subject to strict scrutiny and would only be constitutionally permissible if it was "narrowly tailored to serve a compelling state interest."  *Id.* (citing *Reno v. Flores*, 507 U.S. 292, 302 (1993); *Washington v. Glucksberg*, 521 U.S. 702, 711 (1997)).  In concluding that "there is no persuasive argument that the statute is narrowly tailored to serve a compelling state interest" (*id.*), this Court quoted from *Campbell*, where the Supreme Court aptly reasoned:

> [I]n an action to recover real or personal property, where the question is as to the removal of the bar of the statute of limitations by a legislative act passed after the bar has become perfect, that such act deprives the party of his property without due process of law.  The reason is that, ***by the law in existence before the repealing act, the property had become the defendant's***.  Both the legal title and the real ownership had become vested in him[.]

*Id.* at 1167-68 (quoting *Campbell*, 115 U.S. at 623) (emphasis added).

Under Article 1955 of the Spanish Civil Code, the Foundation owns the Painting, and the Foundation's ownership rights in the Painting vested no later than 1999.  *See Cassirer*, 153 F. Supp 3d at 1167 ("under Spain's adverse possession laws, the Foundation acquired ownership of the Painting as of June 21, 1999, six years after it purchased the Painting"); *Cassirer,* 89 F.4th 1226, 1230 ("Applying Spanish law, TBC has gained prescriptive title to the Painting pursuant to Article 1955 of the Spanish Civil Code.  We therefore affirm the district court's order which granted judgment in favor of TBC.")

---

[5]  The prior version of § 338 "(1) retroactively extend[ed] the statute of limitations for specific recovery of a work of fine art from three to six years if the action is brought against a museum, gallery, auctioneer or dealer; and (2) clarifie[d] that such claims do not accrue until 'actual discovery' rather than 'constructive discovery' of both the identity and whereabouts of the work and information supporting a claim of ownership.'"  *Cassirer*, 153 F.Supp.3d at 1157, n.8.

By design, Section 338 seeks to change the law, change the outcome of this case, and retroactively strip the Foundation of its vested property rights. The intention of the California legislature could not be clearer; its author, Jesse Gabriel, stated that "we think that the 9th Circuit got it wrong, and this law is going to make that crystal clear." (Gabriel – L.A. Times; *see also Bill Analysis,* at 9 (noting the bill "was introduced in response to the Ninth Circuit [2024] opinion").) Section 338 disregards this nation's well-established concern regarding the dubious constitutionality of retroactive laws, and flies in the face of this Court's acknowledgement of "the long-standing proposition that retroactive revival of time-barred claims contravenes foundational notions of due process when the effect of such revival is to interfere with vested title to real or personal property." *Cassirer v. Thyssen-Bornemisza Collection Found.*, No. CV 05-3459-GAF (CTX), 2012 WL 12875771, at *19 (C.D. Cal. May 24, 2012), *aff'd in part*, and *rev'd in part*, 737 F.3d 613 (9th Cir. 2013). The United States Constitution protects the due process rights of all individuals brought into its court system, and California cannot deprive the Foundation of its vested property rights in the Painting without due process of law. This Court should accordingly conclude, consistent with *Campbell*, that the retroactive application of Section 338 violates the Due Process Clause.

**B.    Section 338 Violates the Due Process Clause and Full Faith and Credit Clause[6] by Forcing the Application of California Law Based Solely on a Plaintiff's Residence**

Section 338 also violates the Foundation's due process rights and the Full Faith and Credit Clause by mandating the application of California law to this dispute

---

[6] As the Supreme Court has noted in striking down a "state court's choice of forum law on both due process . . . and full faith and credit grounds . . . no clear analytical distinction between the two constitutional provisions has emerged." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 321 n.4 (1981). And while the Full Faith and Credit Clause is "inapplicable . . . [where] the law of a foreign nation, rather than of a sister State, [is] at issue" (*id.*), the Foundation would submit that Section 338 is nonetheless facially unconstitutional under the Full Faith and Credit Clause to the extent it mandates the application of California law in "any action" regardless of the interests of any other jurisdiction, whether those interests be of another state or, here, a foreign sovereign.

based on tenuous connections to the state. The Supreme Court has repeatedly concluded that for a state's substantive law to be constitutionally permissible, "that State must have a significant contact or significant aggregation of contacts to the claims asserted . . . , contacts creating state interests, in order to ensure that the choice of law is not arbitrary or unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821–22 (1985). Similarly, in *Lauritzen*, 345 U.S. at 590–91, the Supreme Court held that a state violates the Due Process Clause when it "attempts to draw into control of its law otherwise foreign controversies, on slight connections, because it is a forum state." As the Supreme Court reasoned, "[t]he purpose of a conflict-of-laws doctrine is to assure that a case will be treated n (*sic*) the same way under the appropriate law regardless of the fortuitous circumstances which often determine the forum." *Id.*

Thus, to apply its laws to a controversy without violating the Due Process Clause, the forum state must have a "significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308 (1981). To elaborate on this point, the Supreme Court in *Allstate* highlighted two "instructive examples" of when it invalidated a State's choice of law: *Home Ins. Co. v. Dick*, 281 U.S. 397, 408 (1930) and *John Hancock Mutual Life Ins. Co. v. Yates*, 299 U.S. 178 (1936):

> *Dick* and *Yates* stand for the proposition that if a State has only an insignificant contact with the parties and the occurrence or transaction, application of its law is unconstitutional. **Dick *concluded that nominal residence—standing alone—was inadequate;* Yates *held that a postoccurrence change of residence to the forum State—standing alone—was insufficient to justify application of forum law*.**

*Allstate Ins.*, 449 U.S. at 310 (emphasis added).

Here, Section 338 is facially unconstitutional inasmuch as it mandates the application of California law regardless of the State's interests or relevant contacts to the case, so long as the plaintiff is a California resident. And Section 338, as written, would force this Court to apply California law regardless of Spain's interest, or any

11

other jurisdiction's interest, and regardless of "any other law or prior judicial decision[.]" *Id.*  Rather than providing a constitutionally permissible choice-of-law test, Section 338 simply forces the application of California law to, *inter alia*, "any action brought pursuant to . . . the [HEAR] Act[.]"  As such, the statute is facially unconstitutional and violates the Due Process Clause by "attempt[ing] to draw into control of [California] law otherwise foreign controversies, on slight connections, because it is a forum state." *Lauritzen*, 345 U.S. at 590–91.

The United States Solicitor General, in its 2021 *Amicus* Brief to the Supreme Court in this case, cautioned against states enacting laws like Section 338 that would be "hostile to or improperly dismissive of a foreign state's interests—especially its interests in regulating certain matters within its own territory[.]"  Brief for the United States as *Amicus Curiae* in *Cassirer v. Thyssen-Bornemisza Collection Foundation (No. 20-1566) (2021), 2021 WL 5513717, at \*21*.  This is exactly what Section 338 does: it subjects Spain to hostile and impermissibly dismissive California laws that retroactively regulate property matters within Spanish territory.   The Solicitor General's *Amicus* Brief expressly warned that such a choice-of-law rule would violate a variety of constitutional limitations, including the Due Process Clause:

> [T]he Constitution limits a State's ability "to draw into control of its law otherwise foreign controversies, on slight connections, because it is a forum state." [citing *Lauritzen*, 345 U.S. at 590-591.]    Other constitutional provisions provide additional limits. *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 304 (1981) (recognizing that the Due Process Clause and the Full Faith and Credit Clause of the Constitution limit a State's ability to select a particular law under its choice-of-law analysis).

*Id.* at \*21–22.

As applied in this case, the statute's constitutional failings are even more pronounced.  As this Court and the Ninth Circuit have repeatedly noted, the purchase, display, and all relevant conduct at issue took place in Spain, or, at a minimum not in California.  *See, e.g., Cassirer*, 89 F.4th at 1242; *Cassirer,* 153 F. Supp. 3d 1148; *Cassirer, 89 F.4th at 1242* ("because the relevant conduct ([the Foundation's]

12

1  purchase of the painting and its display in the museum) occurred in Spain—or at least

2  not in California—*McCann* teaches that Spain has the 'predominant interest' in

3  applying its laws to that conduct").

4  California's only connection to this litigation is the fortuitous decision of

5  Claude Cassirer to move to California in 1980, decades after the painting was lost.

6  *See Cassirer*, 89 F.4th at 1236; *Cassirer,* 153 F.Supp.3d at 1159.   Conversely,

7  Spain's interest is premised on the fact that this dispute concerns property located

8  and purchased in Spain with Spanish public funds, as Spain's government has

9  explained in four separate amicus briefs.   *See, e.g.*, Brief of *Amicus Curiae* The

10  Kingdom of Spain in Support of Appellee Thyssen-Bornemisza Collection

11  Foundation, July 15, 2022 (detailing Spain's interest in "ensuring the application of

12  its constitutional and substantive laws to its own citizens and instrumentalities").

13  As the Ninth Circuit previously held, applying California law based "only on

14  Claude Cassirer's decision to move to California would 'strike at the essence of a

15  compelling [Spanish] law' . . . [and] would contradict the principles from *McCann*

16  and *Offshore Rental* which recognize the strong interest that Spain has in ensuring its

17  laws will predictably regulate conduct that occurs within its borders." *Cassirer*, 89

18  F.4th at 1243.  The California legislature cannot alter that holding or the outcome of

19  this case no more than it can change the facts of this case to support the application

20  of California law, and it certainly cannot do so with a facially unconstitutional statute

21  like Section 338.  This Court should accordingly find Section 338 unconstitutional

22  and again affirm judgment in favor of the Foundation.

23  **C.   Section 338 Is Not Narrowly Tailored to Serve a Compelling Interest**

24  The Supreme Court maintains that "the Fourteenth Amendment forbids the

25  government to infringe fundamental liberty interests *at all*, no matter what process is

26  provided, unless the infringement is narrowly tailored to serve a compelling state

27  interest." *Glucksberg*, 521 U.S. at 721 (citing *Reno v. Flores*, 507 U.S. 292, 302

28  (1993) (cleaned up) (emphasis original); *see also Shelton v. Tucker*, 364 U.S. 479,

13

488 (1960) ("Even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved."). Thus, to be Constitutional under *Glucksberg*, Section 338 must be narrowly tailored to serve a compelling state interest. *See Cassirer*, 153 F.Supp.3d at 1167–68; *see also Cassirer*, 737 F.3d at 620 (rejecting Plaintiffs' argument that the prior "§ 338(c)(3) need only pass rational basis review if, in fact, the Foundation had a vested interest in the Painting").

The language of Section 338 belies any argument that the law is narrowly tailored. Section 338 applies broadly to "any action" brought by a California resident, and requires application of California law to cases regardless of their connection to the state. The statute is not limited to cases where the artwork is in California, where the defendant has significant contacts with California, or where any of the underlying events occurred in California. *Id.* In eliminating the traditional governmental interest analysis, Section 338's categorical approach mandates that California substantive law apply "[n]otwithstanding any other law or prior judicial decision" and regardless of whether the property or relevant transactions have any connection to California.

While California has expressed an interest in "ensur[ing] that Holocaust survivors and other victims of persecution can get justice through our legal system" (*Bill Analysis* at 3), the Ninth Circuit has already concluded that California cannot pass legislation to create "a friendly forum for litigating Holocaust restitution claims" (*Von Saher*, 592 F.3d at 665). Moreover, this Court—in examining a prior, less extreme version of Section 338 that similarly sought to retroactively extend California's statute of limitations—found there was "no persuasive argument that the statute is narrowly tailored to serve a compelling state interest." *Cassirer*, 153 F.Supp.3d at 1168. The Court must reach the same conclusion here, as the current Section 338, by definition, "goes substantially beyond both existing California law and the federal HEAR Act" by barring common defenses (acquisitive prescription,

14

laches, etc.), mandating application of California law regardless of the facts, and creating a new cause of action with retroactive effect. (*Bill Analysis*, at 10.)[7]

## III.    Section 338 Violates the Commerce Clause

The Commerce Clause of the U.S. Constitution gives Congress the power "to regulate commerce with foreign Nations and among the several States."  U.S. Const, art. 1, § 8, cl. 3.  Because the Commerce Clause grants this power exclusively to Congress, the "so-called dormant Commerce Clause" necessarily limits the power of states to enact laws regulating interstate or foreign commerce. *Wardair Canada, Inc. v. Florida Dep't of Revenue*, 477 U. S. 1, 7-8 (1986).  Thus, "even in the absence of specific action taken by the Federal Government," the Commerce Clause prohibits "action taken by state or local authorities [that] unduly threatens the values the Commerce Clause was intended to serve." *Id.* at 7.  Additionally, in the context of foreign commerce, there is a "special need for federal uniformity," in regulation. *Id.* at 8.  Consequently, state laws burdening foreign commerce are "subjected to a more rigorous and searching scrutiny" than are regulations of interstate commerce. *See*, *e.g.*, *Barclays Bank PLC v. Franchise Tax Bd.*, 512 U. S. 298, 310 (1994).

Based on these well-established constitutional principles, California simply is not permitted to project its law extraterritorially to regulate foreign conduct, especially when such legislation contradicts the U.S. government's efforts to resolve the same, WWII-era claims.  For this reason alone, Section 338 is unconstitutional and violates the Commerce Clause by (1) preventing the federal government from

---

[7] As a final point, the amended version of Section 338 is unduly broad considering the dearth of art cases litigated under previous versions of the law and the potential application and reach of the recent amendments to Section 338.  In over 100 years before the statute's amendment in 1983, there were no Section 338 claims that involved art ownership. *See Society of Cal. Pioneers v. Baker*, 43 Cal.App.4th 774, 781–783 (Cal. App. 1996) (giving a history of § 338 claims). Following extensive review, the Foundation was able to identify three disputes, outside of this litigation, brought in federal court since 1983. *See e.g.*, *G and G Productions v. Rusic*, 902 F.3d 940 (9th Cir. 2018); *Von Saher*, 592 F.3d 954; *Orkin v. Taylor*, 487 F.3d 734 (9th Cir. 2007).  There are similarly few art claims in state courts involving Section 338. *See e.g.*, *Cal. Pioneer*, 43 Cal.App.4th 774.

acting with a single voice with respect to matters in foreign commerce; (2) directly and intentionally regulating wholly extraterritorial conduct; and (3) discriminating against foreign commerce, or, at a minimum, imposing a burden on foreign commerce that is substantially outweighed by any local interests purportedly served by the statute.

### A.  Section 338 Violates the Foreign Commerce Clause by Preventing the U.S. from Speaking with One Voice

In the context of foreign commerce and international relations, the people of the U.S. "speak with one voice" through a single national government, and the Foreign Commerce Clause requires that this "policy of uniformity" prevail. *Wardair Canada, Inc.*, 477 U.S. at 8.  A state statute thus violates the Foreign Commerce Clause when it contradicts federal foreign policy and thereby harms "federal uniformity in an area where federal uniformity is essential." *Japan Line. Ltd.*, 441 U.S. at 448-49; *see also Barclays Bank PLC*, 512 U.S. at 311.  A principal purpose of the Commerce Clause, as articulated by the Framers, is to prevent individual states from embroiling the U.S. in disputes with foreign nations, a prospect that could lead to retaliation by foreign countries against American interests.  *See* Federalist Papers, No. 42 (Madison) (describing the power "to regulate foreign commerce" as an "obvious and essential branch of the federal administration" and that failure to vest these powers in the general government would "consequently leave it in the power of any indiscreet member [State] to embroil the Confederacy with foreign nations").  As the Founders concluded, "[i]f we are to be one nation in any respect, it clearly ought to be in respect to other nations."  *Id.*

Section 338 infringes on the U.S.'s ability to act with one voice as it relates to the significant, federal and international efforts that have been taken to restitute Nazi-looted assets, which "affects the international art market, as well as foreign affairs." *Von Saher*, 592 F.3d at 967 (detailing the "documented history of federal action addressing the subject of Nazi-looted art" and noting "[t]his history of federal action

16

is so comprehensive and pervasive as to leave no room for state legislation"). As the Ninth Circuit in *Von Saher* noted, "[o]nly the federal government possesses the power to negotiate and establish these or other remedies with the international community . . . [and] the federal government has initiated discussions with other countries, which will hopefully yield a comprehensive remedy for all Holocaust victims and their heirs." *Id.* Notably, as recently as 2024, the federal government once again confirmed its commitment to the Terezin Declaration[8] and Washington Principles[9] by endorsing the Best Practices for the Washington Conference Principles on Nazi-Confiscated Art, and again emphasized the U.S. government's stated policy of recognizing "there are differing legal systems and that states act within the context of their own laws. Countries will apply the best practices that follow in accordance with national laws."[10]

This would not be the first time California enacted a law that "'compromise[s] the very capacity of the President to speak for the Nation with one voice in dealing with other governments' to resolve claims against European companies arising out of World War II." *Garamendi*, 539 U.S. at 424 (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000)). In holding that California's Holocaust Victim Insurance Relief Act ("HVIRA") created "an obstacle to the success of the National Government's chosen 'calibration of force' in dealing with the Europeans" (*id.* at 425), the Supreme Court did not question the efficacy of California's approach to resolving these issues nor did it question California's asserted interest in seeking to

---

[8] Terezin Declaration on Holocaust Era Assets and Related Issues, U.S. Dep't of State (June 30, 2009), https://www.state.gov/prague-holocaust-era-assets-conference-terezin-declaration/ ("Terezin Declaration").

[9] Washington Conference Principles on Nazi-Confiscated Art, U.S. Dep't of State (Dec. 3, 1998), https://www.state.gov/washington-conference-principles-on-nazi-confiscated-art/ ("Washington Principles").

[10] *Best Practices for the Washington Conference Principles on Nazi-Confiscated Art*, U.S. Dep't of State (Mar. 5, 2024), https://www.state.gov/office-of-the-special-envoy-for-holocaust-issues/best-practices-for-the-washington-conference-principles-on-nazi-confiscated-art ("2024 Best Practices").

17

vindicate claims for its resident-Holocaust survivors.  Rather, it found those issues "besides the point" to the fundamental Constitutional inquiry:

> The basic fact is that California seeks to use an iron fist where the President has consistently chosen kid gloves.  We have heard powerful arguments that the iron fist would work better, and it may be that if the matter of compensation were considered in isolation from all other issues involving the European Allies, the iron fist would be the preferable policy.  ***But our thoughts on the efficacy of the one approach versus the other are beside the point, since our business is not to judge the wisdom of the National Government's policy; dissatisfaction should be addressed to the President or, perhaps, Congress.***

*Id.* at 427 (emphasis added).

As the California legislature admits, Section 338 "goes substantially beyond both existing California law and the federal HEAR Act" by barring common defenses, mandating application of California law regardless of the facts, and creating a new cause of action with retroactive effect.  (*Bill Analysis*, at 10.)  As California has once again chosen to "use an iron fist" over the federal government's measured approach to resolving WWII-era restitution claims, there can be no doubt that Section 338 violates the Commerce Clause by interfering with the federal government's ability to speak with one voice.  *Garamendi*, 539 U.S. at 427.

## B.    Section 338 Impermissibly Legislates Extraterritorially by Attempting to Regulate Conduct Beyond California's Borders

A state statute also violates the dormant Commerce Clause if the statute attempts to control conduct occurring wholly outside the state.  "[T]he critical inquiry is whether the practical effect of the regulation is to control conduct beyond the boundaries of the State."  *Healy*, 491 U.S. at 336 (holding the Commerce Clause "precludes the application of a state statute to commerce that takes place wholly outside of the State's borders"); *see also Edgar v. MITE Corp.*, 457 U.S. 624 (1982).  As the Supreme Court has recognized, "***the most important issue was whether the statute regulated out-of-state transactions***."  *Brown-Forman Distillers Corp. v. N.Y.S. Liquor Auth.*, 476 U.S. 573 (1986).

18

The Ninth Circuit has repeatedly recognized that California law should not apply to regulate foreign conduct, and that application of California law in this case would significantly impair Spain's sovereign interest in "ensuring its laws will predictably regulate conduct that occurs within its border." *Cassirer*, 89 F.4th at 1242 ("when California's sole contact to the dispute was the happenstance of the plaintiff's residence there, California's interest in facilitating recovery for that resident was minimal and the extraterritorial reach of its laws was restrained"); *see also* *Cassirer*, 862 F.3d at 964-65.  Section 338 now attempts to regulate wholly foreign commerce by mandating the application of California law despite California's lack of any interest or connection to this specific transaction, illustrating the constitutional infirmity of Section 338's extraterritorial reach.  As the Ninth Circuit aptly summarized, even before Section 338 was amended, the extraterritorial application of California law in this case would have the practical effect of regulating foreign conduct that took place primary within Spain's borders:

> [A]pplying California law based only on the Cassirers' choice of residence would mean that Spain could not provide any "reasonable assurance[s]" to persons who possess property within Spain's borders that Article 1955 would ever protect them from replevin or damages actions by California claimants . . . [and] would mean that Spain's law would not apply to property possessed within Spain's borders, so long as the initial owner (1) happened to be a California resident (a fact over which, as in *McCann*, the defendant has "no way of knowing or controlling"), and (2) the California resident did not know where the property is located and who possessed it—contrary to Article 1955 of the Spanish Civil Code.

*Cassirer*, 89 F.4th at 1243.

As the Ninth Circuit's 2024 decision in this case illustrates, the amended Section 338 effectively requires foreign parties to submit to California law in any case where the plaintiff later moved to California before filing suit, even if, as is the case here, "none of the relevant conduct occurred in California." *Id.* at 1241.  Section 338 makes no attempt to tailor the application of California law based on the specific facts and circumstances of the case, and in fact it was specifically passed to "[a]void[]

the 'choice of law' problem" and "circumvent" the choice-of-law analysis that the
Constitution requires. (*Bill Analysis*, at 9.) Even the California legislature that
supported and approved these amendments noted "that a court could find that a
statute asserting that its own state's substantive law must be the applicable law
violates the principle of separation of powers, overriding the court's long-standing
rules for settling conflict of laws issues." *Id.* at 10.

While California may have an interest in "ensur[ing] that Holocaust survivors
and other victims of persecution can get justice through our legal system" (*Bill
Analysis* at 3), that interest does not give California *carte blanche* authority to
regulate wholly foreign transactions and conduct. *See Edgar*, 457 U.S. at 643 ("even
when a state statute regulates interstate commerce indirectly, the burden imposed on
that commerce must not be excessive in relation to the local interests served by the
statute"). In *Edgar*, the Supreme Court struck down an Illinois anti-takeover law that
purported to "protect [Illinois] resident security holders" and which applied to
regulate tender offers involving Illinois corporations. *Id.* at 644. In finding the
Illinois statute violated the Commerce Clause, the Supreme Court reasoned that the
statute, as applied, ultimately regulated transactions that took pace "wholly outside
the State . . . with [persons] living in other States and having no connection with
Illinois." *Id.* at 642. As the Supreme Court concluded:

> It is therefore apparent that the Illinois statute is a direct restraint on
> interstate commerce and that it has a sweeping extraterritorial effect. [.
> . .] The Commerce Clause also precludes the application of a state
> statute to commerce that takes place wholly outside of the State's
> borders, whether or not the commerce has effects within the State. ***The
> limits on a State's power to enact substantive legislation are similar to
> the limits on the jurisdiction of state courts. In either case, "any
> attempt 'directly' to assert extraterritorial jurisdiction over persons or
> property would offend sister States and exceed the inherent limits of
> the State's power."***

*Id.* at 642-43 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 197 (1977)) (emphasis
added).

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Case No.: 05-cv-03459-JFW (Ex)

1    By mandating the extraterritorial application of California law to cases where
2    "none of the relevant conduct occurred in California" (*Cassirer*, 89 F.4th at 1241),
3    there can be no doubt that Section 338 violates the Foreign Commerce Clause.

4    **C.    Section 338 Discriminates Against Foreign Commerce**

5    Section 338 is also rendered unconstitutional due to its discriminatory purpose
6    and effect.   The Commerce Clause prohibits discrimination against foreign or
7    interstate commerce by subjecting non-domestic entities to differential treatment.
8    *See Fulton Corp. v. Faulkner*, 516 U.S. 325, 300-31 (1996); *Oregon Waste Sys., Inc.*
9    *v. Department of Envtl. Quality*, 511 U.S. 93, 99 (1994) ("if a restriction is
10   discriminatory, it is virtually *per se* invalid").   A state law need not be expressly
11   discriminatory to be unconstitutional.   *See National Foreign Trade Council v.*
12   *Natsios*, 181 F.3d 38, 68 (1st Cir. 1999), *aff'd sub nom., Crosby v. Nat'l Foreign*
13   *Trade Council*, 530 U.S. 363 (2000) (finding a state law violated the Foreign
14   Commerce Clause simply because "a chief goal of the Massachusetts law is to affect
15   business decisions pertaining to foreign nations").

16   "Discrimination," as the term is used in this context, "simply means
17   differential treatment of in-state and out-of-state economic interests that benefits the
18   former and burdens the latter." *Oregon Waste Sys.*, 511 U.S. at 99.   Section 338
19   discriminates against foreign commerce because it only applies if a choice of law
20   issue arises, which requires another jurisdiction (in addition to California) to have an
21   interest in having its law applied.  *See Cassirer*, 69 F.4th at 564 ("A true conflict
22   exists when each jurisdiction has 'a legitimate interest in the application of its law
23   and policy.'").   Obviously, such "true conflicts" are more likely to occur in cases
24   involving foreign parties, and, regardless, Section 338 discriminates against any such
25   foreign interests by mandating application of California law anytime another
26   jurisdiction has an interest in having its law applied.

27   "Long-standing Supreme Court precedent indicates that the Framers were
28   concerned with 'discriminations favorable or adverse to commerce with particular

21

foreign nations [under] state laws.'" *Natsios*, 181 F.3d at 68.  Section 338 is facially discriminatory because it bars defenses like "acquisitive prescription" (*see* § 338.2(f)), a Spanish legal doctrine applied in this case that has no other application in California or the United States generally (outside of Louisianna).[11]  Moreover, § 338(c)(6) notes that the amended legislation applies to any case with a pending "petition for a writ of certiorari" when the law became effective, and there simply was no other California art restitution case with a pending petition for writ of certiorari to which this provision could apply, let alone another case where the defense of acquisitive prescription would be relevant.  Regardless, the discriminatory intent of Section 338 is obvious from its legislative history and comments from the statute's author (*see, e.g., Bill Analysis*, at 2), and California simply cannot "'impose economic sanctions on violators of its laws with the intent of changing . . . lawful conduct in other [jurisdictions].'" *Natsios*, 181 F.3d at 69.

## IV.  Section 338 is Federally Preempted

Section 338 represents California's most recent efforts to address the subject of Nazi-looted art by providing "potential monetary relief and a friendly forum for those who suffered from certain foreign events." *Movsesian*, 670 F.3d at 1071 (citing *Von Saher*, 592 F.3d at 965; *Garamendi*, 539 U.S. at 425-26).  As applied, Section 338 would allow California to regulate a property transaction that took place in Spain between two non-California residents, and where all "the relevant conduct . . . occurred in Spain—or at least not in California." *Cassirer*, 89 F.4th at 1242.  As written, Section 338 would permit California to govern any case involving the restitution of Nazi-looted art brought by a California resident, an area of foreign affairs which the Ninth Circuit and Supreme Court have found is exclusively

---

[11] While "civil law countries [like Spain] have acquisitive prescription provisions, Louisiana is the only state in the United States with this provision."  Nonprofit Organizations: Law and Taxation § 18:7 (2d) Laws relating to museum acquisitions—Application of state's Commercial Code to acquisitions—Stolen and illegally exported artworks and antiquities.

occupied by the federal government.  *See*, *e.g.*, *Movsesian*, 670 F.3d 1075.  Because Section 338 conflicts with federal policy and also attempts to regulate foreign affairs on the issue of restitution for Nazi-looted art, this Court should find Section 338 is preempted under both doctrines of field and conflict preemption.

## A.    Section 338 is Preempted Because it Regulates Foreign Affairs, an Area of Exclusive Federal Control

Federal law's preemptive power over state law stems from the Supremacy Clause, which states that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, § 2; *Von Saher*, 592 F.3d at 961.  "The Constitution gives the federal government the exclusive authority to administer foreign affairs[,]" and "state laws that intrude on this exclusive[] federal power are preempted." *Movsesian*, 670 F.3d 1071.  Field preemption occurs when a state, "even in the absence of any express federal policy, . . . intrudes on the field of foreign affairs without addressing a traditional state responsibility." *Id.* at 1072.

## 1.    Section 338 Does Not Concern Traditional State Responsibilities

The Supreme Court has consistently found state laws that purport to regulate an area of traditional state responsibility, but in fact regulate foreign affairs, to be unconstitutional and preempted. *See, e.g.*, *Garamendi*, 539 U.S. at 425–26; *Crosby*, 530 U.S. at 373, n.7.  To determine the "real purpose" of a statute, the Supreme Court and Ninth Circuit examine the text of the statute, as well as its legislative history and any legislative pronouncements accompanying it. *Movsesian*, 670 F.3d at 1075 ("the text and legislative history of section 354.4 leave no doubt that the law 'cannot be fairly categorized as a garden variety' insurance regulation"); *Von Saher*, 592 F.3d at 965 (examining "memorandum from the Governor's office provid[ing] further illustration of California's intent" and concluding "[b]y opening its doors as a forum to all Holocaust victims and their heirs to bring Holocaust claims in California against

23

"any museum or gallery" whether located in the state or not . . . California can make 'no serious claim to be addressing a traditional state responsibility'"); *see also Garamendi*, 539 U.S. at 425–26 (rejecting purported state interest in regulating insurance business and blue sky laws, and concluding that the real purpose of the statute was to provide redress for Holocaust victims).

As is evident from the statute's legislative history, the press releases accompanying its passage, as well as the text of the statute itself, Section 338 does <u>not</u> concern a traditional state responsibility.  In the statute's legislative history, the authors and supports of Section 338 expressly acknowledged that they "***are primarily concerned about art stolen by the Nazis during World War II, as the reference to the HEAR Act indicates***."  (*Bill Analysis*, at 2 (emphasis added); *see also* Times of Isreal Article (noting the legislation is "aimed at advancing the restitution of Nazi-looted art" and was passed "in response to [the Ninth Circuit's] ruling").)  Thus, like previously preempted California laws in this area, the stated purpose of the legislation is to "provide relief to Holocaust victims and their heirs." *Von Saher*, 592 F.3d at 964 (holding California law extending the statute of limitations for claims to recover Holocaust-era artwork was not based on a traditional state responsibility – namely, the state's purported interest to regulate property); *see also Garamendi*, 539 U.S. at 426.  This is not an area of traditional state responsibility.

The statutory language of Section 338 also belies and undermines any purported, traditional state interest advanced by the legislation.  Section 338 does not require that the case have any factual connection to California, and it applies broadly to, *inter alia*, "any action brought pursuant to . . . the [HEAR] Act[.]"  And as long as the action is brought by a California resident, Section 338 requires that California substantive law apply, regardless of the state's interest (or lack thereof) in the litigation.  *Id*. §§ 338(c)(6); 338.2(a).

Examining Section 338's potential application in this case further highlights "the weakness of the State's interest" in having its law apply (*Garamendi*, 539 U.S.

24

at 425), which is based solely on Claude Cassier's "fortuitous decision . . . to move to California long after the Painting was unlawfully taken" (*Cassirer*, 153 F.Supp.3d at 1159).  As the Supreme Court has previously emphasized, California's concern for its resident Holocaust survivors "does not displace general standards for evaluating a State's claim to apply its forum law to a particular controversy or transaction," especially where, as here, "the very same objective dignifies the interest of the National Government in devising its chosen mechanism for [resolving restitution claims], there being about 100,000 [Holocaust] survivors in the country, only a small fraction of them in California." *Garamendi*, 539 U.S. at 426 (holding HVIRA was preempted and noting a plaintiff's residence is "generally accorded . . . little or no significance" when assessing the state's purported interest); *see also Allstate Ins.*, 449 U.S. at 311 ("a postoccurrence change of residence to the forum State—standing alone—[i]s insufficient to justify application of forum law").

By broadening the scope of Section 338's applicability to actions that have little to no connection to the state, "California can make 'no serious claim to be addressing a traditional state responsibility.'" *Von Saher*, 592 F.3d at 965 (quoting *Garamendi*, 539 U.S. at 419, n. 11).  Moreover, by mandating the application of California law, Section 338 violates these Constitutional principles by ensuring that individual cases need not be tethered to the state's actual interest.  As a result, "California has [again] created a world-wide forum for the resolution of Holocaust restitution claims," an area that falls outside a traditional state responsibility.  *Id.*

## 2. Section 338 Infringes on the Federal Government's Exclusive Authority to Conduct Foreign Affairs

The field of foreign affairs is under the exclusive authority of the federal government, and any state law that intrudes on this authority is subject to preemption. *Movsesian*, 670 F.3d at 1071; *see also Garamendi*, 539 U.S. at 413 ("an exercise of state power that touches on foreign relations must yield to the National Government's policy, given the concern for uniformity in this country's dealings with foreign

25

nations that animated the Constitution's allocation of the foreign relations power to the National Government in the first place") (internal quotations and citation omitted). The touchstone of field preemption is a "history of federal action [that] is so comprehensive and pervasive [so] as to leave no room for state legislation." *Von Saher*, 592 F.3d at 967.

As the Ninth Circuit previously recognized, "***[i]t is beyond dispute that there was no role for individual states to play in the restitution of Nazi-looted assets during and immediately following the war . . . [the] history of federal action is so comprehensive and pervasive as to leave no room for state legislation.***" *Von Saher, 592 F.3d at 967.* Section 338 plainly encroaches on the federal government's exclusive authority because "[t]he recovery of Holocaust-era art affects the international art market, as well as foreign affairs." *Id.*

In *Von Saher*, the Ninth Circuit held that Cal. Code Civ. Proc. § 354.3—a statute that allowed individuals to bring claims against museums to recover Nazi-looted art by extending the statute of limitations—was preempted under field preemption because it regulated foreign affairs. *Id. at 966.* The Ninth Circuit compared § 354.3 to prior efforts by the California legislature to enact laws "extending the statute of limitations for claims relating to the Holocaust." *Id. at 959* (citing "Section 354.5 (extending statute of limitations for insurance policy claims by Holocaust victims or their heirs); Section 354.6 (creating a cause of action and extending the statute of limitations for slave labor claims arising out of WWII)"). As the Ninth Circuit noted, "[b]oth of these sister statutes [were] found unconstitutional under the foreign affairs doctrine." *Id.* And because § 354.3 similarly attempted to "establish[] a remedy for wartime injuries" (*id. at 966*), the Ninth Circuit concluded that California had again infringed on the national government's exclusive foreign affairs power. *See also Deutsch v. Turner Corp.*, 324 F.3d 692, 712 (9th Cir. 2003) ("Because California lacks the power to create a right of action—or, alternatively, to

resurrect time-barred claims—in order to provide its own remedy for war-related injuries . . . we hold that section 354.6 is unconstitutional.").

Section 338 is analogous to these now preempted statutes, and it too should be found unconstitutional.   In fact, the risk of preemption was anticipated by the California legislature when the new law was drafted:

> **Potential federal preemption issue.** Finally, California's first effort to expand the statute of limitations for actions to recover Nazi-looted art created Code Civil Procedure Section 354.3 in 2002. . . . [I]n 2009 the Ninth Circuit struck down Section 354.3 on federal preemption grounds, reasoning that by singling out art stolen by a foreign regime, the statute was preempted under the "foreign policy field preemption" doctrine. . . . This is not to say that a court will find that the bill is preempted, but only that the bill certainly raises a preemption issue.

(*Bill Analysis*, at 9.)

Although Section 338 aims to resolve property restitution claims, it also explicitly singles out Nazi-looted art by extending to property covered by the HEAR Act.  As the legislative history of the statute makes clear, "the author and supporters are primarily concerned about art stolen by the Nazis during World War II, as the reference to the HEAR Act indicates."  (*Bill Analysis*, at 2.)  In finding § 354.3 unconstitutional, the Ninth Circuit cited remarkably similar "legislative findings accompanying the statute" that made it clear California was seeking "to redress wrongs committed in the course of the Second World War—a motive that was fatal to § 354.6."  *Von Saher*, 592 F.3d at 966; *see also id.* at 968 (concluded this same motive was a "fatal flaw" to § 354.3).

As the Ninth Circuit aptly reasoned in *Von Saher* in rejecting plaintiff's efforts to distinguish California's prior, legislative efforts to regulate WWII-era claims: "the actionable injury at the heart of the statute is the Nazi theft of art.  The California legislature enacted § 354.6 'with the aim of rectifying wartime wrongs' . . . [and] enacted § 354.3 with the same verboten intent."  *Von Saher*, 592 F.3d at 966.  The Ninth Circuit accordingly found the purported "[d]istinctions between the [statutes] irrelevant in light of this fatal similarity" (*id.*):

27

In sum, ***it is California's lack of power to act which is ultimately fatal***. In *Deutsch*, we held that "[i]n the absence of some specific action that constitutes authorization on the part of the federal government, states are prohibited from exercising foreign affairs powers, including modifying the federal government's resolution of war-related disputes." *Deutsch*, 324 F.3d at 714. ***California may not improve upon or add to the resolution of the war***. *Id*. The factual circumstances surrounding this case . . . cannot save § 354.3 from this fatal flaw.

*Id.* at 968 (emphasis added).

Like these prior legislative efforts, Section 338 "at its core, concerns restitution for injuries inflicted by the Nazi regime during World War II." *Id*. at 967. Since California has once again intruded into the field of foreign affairs occupied exclusively by the federal government, this Court must reach the same conclusion: the Supremacy Clause preempts Section 338 and prohibits California from creating its own remedies to the problem of looted art or other wartime injuries.

**B.    Section 338 is Preempted Because it is an Obstacle to the Effective Implementation of the HEAR Act and Related Federal Policy Initiatives**

Under conflict preemption, valid federal law supplants state law to the contrary if the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona v. U.S.*, 567 U.S. 387, 399 (2012). Determining if a state law is an obstacle "is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby*, 530 U.S. at 373.

This Court should find that Section 338 is preempted because it stands as an obstacle to the accomplishment and execution of federal policy, particularly as embodied in the HEAR Act and related federal initiatives. The HEAR Act was enacted to provide a uniform federal statute of limitations for claims to recover Nazi-looted art, reflecting a coordinated federal approach to Holocaust restitution claims in line with international agreements such as the Washington Principles and the Terezin Declaration, while "taking into account the different legal traditions, [to] facilitate just and fair solutions with regard to Nazi-confiscated and looted art[.]"

28

HEAR Act § 2(5); *see also* 2024 Best Practices (noting "awareness that there are differing legal systems and that states act within the context of their own laws").

The United States, and applicable federal law, does not seek to impose its property laws or the property laws of its own states on other foreign sovereigns, but rather expressly acknowledges that different legal traditions and systems must be taken into account to facilitate just and fair solutions with regard to Nazi-looted art cases. Conversely, Section 338 mandates the application of California law in "any action" brought under the HEAR Act, regardless of the case's connection to California and "[n]otwithstanding any other law or prior judicial decision." By unilaterally mandating the application of California law to cases regardless of their connection to California, the amended statute stands as an obstacle to the accomplishment and execution of federal policy, as embodied in the HEAR Act, that expressly accounts for differing legal systems and traditions.

As the court explained in *Natsios*, where the federal government "has considered various mechanisms to accomplish and balance this country's various interests and goals and chose a set of carefully calibrated tools[,]" a state cannot thereafter use "a blunt instrument to further only a single goal, making judgments different from and contrary to the judgments made by Congress and the President." *Natsios*, 181 F.3d at 76. In *Natsios*, the court rejected the state's argument that "the goals of its statute—promoting change in Burma and expressing disapproval of conditions in Burma—are the same as those of the federal legislation," and held the Massachusetts law was nonetheless preempted because it "directly contradict[ed] the federal law's encouragement of a multilateral strategy." *Id.* at 76-77 (reasoning "the conduct of this nation's foreign affairs cannot be effectively managed on behalf of all of the nation's citizens if each of the many state and local governments pursues its own foreign policy").

Like the preempted law in *Natsios*, Section 338 by definition "regulates conduct not covered by the federal law and applies to parties, including foreign

29

[parties], not covered by the federal law[,]"  and Section 338 "therefore has effects more inimical to foreign interests than those of the federal law . . . [and] penalizes the activities of foreign [parties] which are lawful under the laws of those [parties'] home countries and are not prohibited by . . . United States federal law." *Id.* at 76; *Bill Analysis*, at 10.  By using a "blunt instrument" like Section 338 to bar common defenses, mandate the application of California law regardless of the facts, and create a new cause of action with retroactive effect, California has "impede[d] the federal effort" and directly contradicted the HEAR Act's "encouragement of a multilateral strategy" as it relates to the issue of Nazi-looted art. *Natsios*, 181 F.3d at 77.  Section 338's aggressive approach disrupts the federal government's efforts to maintain uniformity and amicable relations with foreign nations, and thus "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 567 U.S. at 399; *see also* *Garamendi*, 539 U.S. at 425.

"Where, as here, the federal government has acted in an area of unique federal concern and has crafted a balanced, tailored approach to an issue, and the state law threatens to upset that balance, the state law is preempted." *Natsios*, 181 F.3d at 77. For these reasons, California's amended Section 338 violates the Supremacy Clause and should be found unconstitutional.

## CONCLUSION

For all the reasons stated above, this Court should grant the Foundation's Motion.

1    Dated: September 12, 2025              NIXON PEABODY LLP

2

3                                          By: */s/ Thaddeus J. Stauber*

4                                              Thaddeus J. Stauber
                                               Aaron M. Brian
5                                              Zachary C. Osinski

6                                              Attorneys for Defendant
                                               Thyssen-Bornemisza Collection
7                                              Foundation

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

31