**BOIES SCHILLER FLEXNER LLP**
John J. Kucera (Bar No. 274184)
    jkucera@bsfllp.com
Daniel G. Boyle (Bar No. 332518)
    dboyle@bsfllp.com
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

David A. Barrett (admitted *pro hac vice*)
    dbarrett@bsfllp.com
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

**KENDALL BRILL & KELLY LLP**
Laura W. Brill (Bar No. 195889)
    lbrill@kbkfirm.com
Jeffrey M. Chemerinsky (Bar No. 270756)
    jchemerinsky@kbkfirm.com
10100 Santa Monica Blvd., Suite 2500
Los Angeles, CA 90067
Telephone: (310) 556-2700
Facsimile: (310) 556-2705

[Additional counsel on signature page]
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DAVID CASSIRER, *et al.*,<br><br>                    Plaintiffs,<br>    v.<br><br>THYSSEN-BORNEMISZA COLLECTION FOUNDATION, an agency or instrumentality of the Kingdom of Spain,<br><br>                    Defendant. | Case No. CV 05-03459-JFW (Ex)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        December 15, 2025<br>Time:       1:30 p.m.<br>Courtroom: 7A<br>Judge:      Honorable John F. Walter |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on December 15, 2025, at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 7A of the United States Courthouse, located at 350 W. 1st Street, Los Angeles, CA 90012, Plaintiffs David Cassirer, *et al*. will move pursuant to Federal Rule of Civil Procedure 56 for summary judgment in their favor on all claims alleged in the Complaint.

At issue in this action is title to the painting *Rue St. Honoré, Afternoon, Rain Effect* by Camille Pissarro (the "Painting"), which was stolen by the Nazis in 1939 from Lilly Cassirer, the great-grandmother of Plaintiff David Cassirer, and is now in the possession of Defendant Thyssen-Bornemisza Collection Foundation. The Supreme Court has held that California choice-of-law rules govern this case. Under California Code of Civil Procedure section 338(c)(6), enacted in September 2024, and applicable here, California substantive law applies, under which good title can never be acquired to stolen property and it must be returned to the rightful owner.

Accordingly, there are no disputed issues of material fact and Plaintiffs are entitled to judgment as a matter of law on their four causes of action.

The motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, Plaintiffs' Statement of Uncontroverted Facts and Conclusions of Law, the Declaration of Jeffrey M. Chemerinsky and accompanying exhibits, all of the pleadings, files, records, and prior orders in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

Consistent with Local Rule 7-3, Plaintiffs conferred with opposing counsel following remand of this case from the Ninth Circuit. The parties prepared and submitted a joint report to the Court concerning summary judgment practice that was

filed on July 3, 2025 (D.E. 672); this motion is filed pursuant to the July 11, 2025 Order of the Court addressing summary judgment motions (D.E. 676).

Dated:  September 12, 2025                    KENDALL BRILL & KELLY LLP

                                   By:  /s/ Jeffrey M. Chemerinsky

                                        Laura W. Brill (Bar No. 195889)
                                        Jeffrey M. Chemerinsky (Bar No. 270756)
                                        10100 Santa Monica Blvd., Suite 2500
                                        Los Angeles, CA 90067
                                        Telephone: (310) 556-2700
                                        Facsimile: (310) 556-2705

                                        *Attorney for Plaintiffs*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................. vi

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

INTRODUCTION ............................................................................................... 1

STATEMENT OF THE CASE ........................................................................... 3

ARGUMENT ..................................................................................................... 8

I. Pursuant to Section 338(c)(6), California Substantive Law Applies to the
   Cassirers' Claims to Recover the Painting ................................................. 8

    A. Section 338(c)(6) Displaces California's Common Law
          Choice-of-Law Rules ....................................................................... 8

    B. AB 2867 Was Enacted to Definitively Align California
          Choice-of-Law in Stolen Art Cases with Fundamental
          Principles of California and Federal Law ........................................ 9

    C. State Statutory Choice-of-Law Provisions Are Binding on
          Federal Courts under Erie .............................................................. 10

    D. Courts Must Follow the Legislature's Direction to Apply New
          Laws to Pending Cases ................................................................... 10

II. Summary Judgment Should Be Granted Because There Are No Disputed Issues
   of Material Fact or Law for Plaintiffs' Four Causes of Action ........................ 11

    A. Facts Relevant to All Causes of Action ............................................ 12

    B. First Cause of Action – Declaratory Relief ....................................... 13

    C. Second Cause of Action – Imposition of Constructive Trust .......... 14

    D. Third and Fourth Causes of Action – Possession of Personal
          Property and Conversion ............................................................... 15

III. Interpretation of California Law in a Manner that Would Uphold TBC's Claim of
   Title Would Conflict with United States Treaties, Statutes, Policies, and
   International Agreements and Is Preempted ...................................................... 17

iv                    Case No. CV 05-03459-JFW (Ex)

A. Any Choice-of-Law Analysis under California Common Law
   Must Incorporate Federal Treaties, Laws, Policies, and
   International Agreements into Its Analysis ................................ 17

   1.  Hague Convention ................................................... 18

   2. U.S. Military Law in Germany ................................... 19

   3. SNWCC Coordinating Committee and Roberts Committee .... 20

   4. State Department's 1949 Policy Letter ..................................... 20

   5. UNESCO Convention (1970) ..................................... 21

   6. Holocaust Victims Redress Act of 1998 ("HVRA") ............... 21

   7. Washington Principles (1998) and Terezin Declaration
      (2009) ................................................................. 21

   8.  Holocaust Expropriated Art Recovery (HEAR) Act of 2016 .. 21

   9.  Best Practices for the Washington Conference Principles
      (2024) ................................................................. 22

B. The HEAR Act Bars TBC's Adverse Possession Defense ............... 23

C. Federal Interests Pre-Empt Any Application of California Law
   to Award Title to Possessors of Nazi-Looted Art ......................... 25

CONCLUSION ........................................................................ 26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

# **TABLE OF AUTHORITIES**

**Cases**

*Barclays Disc. Bank Ltd. v. Levy*,
   743 F.2d 722 (9th Cir. 1984) ........................................................... 10

*Bernstein v. N.V. Nederlandsche-Amerikaansche Stoomvaart-Maatschappij*,
   210 F.2d 375 (2d Cir. 1954) ............................................................. 21

*Bouley v. Long Beach Memorial Medical Center*,
   127 Cal. App. 4th 601 (2005) .......................................................... 11

*Bourhis v. Lord*,
   56 Cal. 4th 320 (2013) ..................................................................... 25

*Cantor Fitzgerald Inc. v. Lutnick*,
   313 F.3d 704 (2d Cir. 2002) ............................................................ 25

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
   596 U.S. 107 (2022) ("*Cassirer V*") .............................. 4, 5, 10, 24

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
   145 S. Ct. 1331 (2025) ....................................................................... 8

*Cassirer v. Kingdom of Spain*,
   616 F.3d 1019 (9th Cir. 2010) ("*Cassirer I*") ........................... 3, 13

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
   737 F.3d 613 (9th Cir. 2013) ("*Cassirer II*") ............................... 11

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
   862 F.3d 951 (9th Cir. 2017) ("*Cassirer III*") ....................... passim

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
   824 F. App'x 452 (9th Cir. 2020) ("*Cassirer IV*") ................... 4, 23

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
   69 F.4th 554 (9th Cir. 2023) ("*Cassirer VI*") ........................... 5, 14

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
   89 F.4th 1226 (9th Cir. 2024) ("*Cassirer VII*") .................... passim

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
   107 F.4th 882 (9th Cir. 2024) ("*Cassirer VIII*") ........................ 5, 6

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
   2019 WL 13240413 (C.D. Cal. Apr. 30, 2019) ..................... passim

*Cisneros v. Alpine Ridge Group*,
   508 U.S. 10 (1993) .......................................................................... 24

*Communist Party v. 522 Valencia, Inc.*,
   35 Cal. App. 4th 980 (1995) ...................................................... 14, 15

*Crocker Nat'l Bank v. Byrne & McDonnell*,
  178 Cal. 329 (1918) ................................................................. 2, 13

*Crosby v. Nat'l Foreign Trade Council*,
  530 U.S. 363 (2000) ..................................................................... 23

*Culp v. Signal Van & Storage*,
  142 Cal. App. 2d. Supp. 859 (1956) ............................................. 16

*Foster v. Sexton*,
  61 Cal. App. 5th 998 (2021) ......................................................... 15

*Frontier Oil Corp. v. RLI Ins. Co.*,
  153 Cal. App. 4th 1436 (2007) ..................................................... 10

*Granny Purps, Inc. v. Cnty. of Santa Cruz*,
  53 Cal. App. 5th 1 (2020) ............................................................. 25

*Hauenstein v. Lynham*,
  100 U.S. 483 (1879) ............................................................... 18, 23

*Haywood v. Drown*,
  556 U.S. 729 (2009) ..................................................................... 18

*Hines v. Davidowitz*,
  312 U.S. 52 (1941) ....................................................................... 23

*Kearney v. Salomon Smith Barney, Inc.*,
  39 Cal.4th 95 (2006) ...................................................................... 5

*Klaxon v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941) ................................................................. 5, 10

*Kunstsammlungen Zu Weimar v. Elicofon*,
  536 F. Supp. 829 (E.D.N.Y. 1981) ............................................... 19

*Matter of Flamenbaum*,
  22 N.Y.3d 962 (2003) ................................................................... 19

*Menzel v. List*,
  267 N.Y.S.2d 804 (N.Y. Sup. Ct. 1966) .................................. 18, 19

*Naftzger v. Am. Numismatic Soc.*,
  42 Cal. App. 4th 421 (1996) ......................................................... 14

*People v. Bunn*,
  27 Cal.4th 1 (2002) ...................................................................... 10

*Pit River Home & Agr. Co-op. Ass'n v. United States*,
  30 F.3d 1088 (9th Cir. 1994) ........................................................ 11

*Plaut v. Spendthrift Farms*,
  514 U.S. 211 (1995) ............................................................... 10, 11

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

*Quality Cleaning Prod. R.C., Inc. v. SCA Tissue N. Am., LLC,*
    794 F.3d 200 (1st Cir. 2015) ...................................................................... 25

*Starr Indem. & Liability Co. v. Peerless Ins. Co.,*
    2015 WL 3843526 (C.D. Cal. 2015) ............................................................ 13

*Strasberg v. Odyssey Group, Inc.,*
    51 Cal. App. 4th 906 (1996) ........................................................................ 14

*Testa v. Katt,*
    330 U.S. 386 (1947) ..................................................................................... 18

*United States v. Novak,*
    476 F.3d 1041 (9th Cir. 2007) ..................................................................... 24

*United States* v. *Pink,*
    315 U.S. 203 (1942) ................................................................................ 25, 26

*Vineberg v. Bissonnette,*
    529 F. Supp. 2d 300 (1st Cir. 2008) ....................................................... 18, 19

*von Saher v. Norton Simon Museum,*
    2015 WL 12910626 (C.D. Cal. Apr. 2, 2015) ......................................... 14, 16

*von Saher v. Norton Simon Museum,*
    754 F.3d 712 (9th Cir. 2014) ....................................................................... 11

*Voris v. Lampert,*
    7 Cal. 5th 1141 (2019) ................................................................................ 15

*Voss v. Sutardja,*
    2015 WL 349444 (N.D. Cal. Jan. 26, 2015) ................................................ 10

**Statutes**

18 U.S.C. §2314 ................................................................................................ 20

28 U.S.C. §1605 ............................................................................................. 3, 4

28 U.S.C. §1606 ........................................................................................... 5, 10

28 U.S.C. §1652 ............................................................................................... 10

28 U.S.C. §2201 ............................................................................................... 13

Cal. Civ. Code §2223 .................................................................................. 14, 15

Cal. Civ. Code §2224 .................................................................................. 14, 15

Cal. Code Civ. Proc. §338 ....................................................................... passim

Cal. Code Civ. Proc. §667 .......................................................................... 15, 17

Holocaust Expropriated Art Recovery (HEAR) Act, Pub. L. No. 114-308, 130 Stat. 1524 (2016) ..................................................................................passim

Holocaust Victims Redress Act (HVRA), Pub. L. No. 105-158, 112 Stat. 15 (1998) ...........................................................................................10, 21

**Other Authorities**

Hague Convention (IV), arts. 46, 47, 56, 36 Stat. 2277, 2306–07, 2309 (Oct. 18, 1907)..........................................................................9, 18, 19

U.S. Military Law No. 52, 12 Fed. Reg. 2189, 2196 (Apr. 3, 1947), 10 C.F.R., 1947 Supp. §3.15 (1947) ......................................................................19

U.S. Military Law No. 59, 12 Fed. Reg. 7983 (Nov. 29, 1947), 10 C.F.R., 1947 Supp. §3.75 (1947) ......................................................................19

**Rules**

Fed. R. App. P. 28...................................................................................24

Fed. R. Civ. P. 56...................................................................................11

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs David Cassirer, *et al.*, ("Plaintiffs" or "Cassirers") respectfully submit this memorandum in support of their motion for summary judgment. Plaintiffs' Complaint alleges causes of action for declaratory relief, imposition of a constructive trust, recovery of personal property, and conversion. D.E. 1 ("Compl.") at 13–15. With respect to these claims there is no genuine dispute as to any material fact, and Plaintiffs are entitled to judgment as a matter of law under applicable California law.

## INTRODUCTION

Defendant Thyssen-Bornemisza Collection Foundation ("TBC") has fought for 25 years against returning a masterpiece Paris streetscape by Jacob Abraham Camille Pissarro, *Rue St. Honoré, Afternoon, Rain Effect* (the "Painting"), that was stolen by the Nazis from Lilly Cassirer in 1939.[1] A decade of litigation relating to choice of applicable substantive law resulted in multiple decisions of this Court, including after a one-day bench trial, the Ninth Circuit, and the U.S. Supreme Court. This Court and the Ninth Circuit held that Spanish substantive law applies in the case. The Supreme Court has twice vacated those decisions, first rejecting the use of "federal common law" to decide choice-of-law, and most recently, remanding "for further consideration in light of" a 2024 California statute that directs application of California substantive law in cases involving stolen artworks.

The statute cited by the Supreme Court has resolved the choice-of-law issue. It enacted Section 338(c)(6) of the Code of Civil Procedure, which mandates California law as the applicable substantive law for litigation to recover stolen art in the hands of museums, or subject to the Federal Holocaust Expropriated Art Recovery (HEAR) Act of 2016.

---

[1] A photo in evidence, which the Supreme Court appended to its 2022 decision, shows the Painting hanging over the sofa in Lilly's home in Germany. SUF No. 57.

The choice of substantive law is case-dispositive. "[U]nder California law, thieves cannot pass good title to anyone, including a good faith purchaser." *Cassirer v. Thyssen-Bornemisza Collection Found.*, 89 F.4th 1226, 1232 n.6. (9th Cir. 2024) ("*Cassirer VII*") (citing *Crocker Nat'l Bank v. Byrne & McDonnell*, 178 Cal. 329, 332 (1918)). "[I]f California law applied, TBC would not have title to the Painting. The Cassirers, as successors to Lilly Neubauer and Claude Cassirer would have title." *Cassirer VII*, 89 F.4th at 1229 n.3. The "plaintiff would recover the art while under Spanish law, the plaintiff would not." *Id.* at 1229.

In its April 2019 post-trial Findings of Fact and Conclusions of Law (the "Decision"), this Court recognized that TBC's refusal to return the Painting to the Cassirers "is inconsistent" with Spain's international commitments under the Washington Principles and Terezin Declaration to return Nazi-looted art to the original owners or their heirs. It concluded, however, that "the Court has no alternative but to apply Spanish law and cannot force the Kingdom of Spain or TBC to comply with its moral commitments." *Cassirer v. Thyssen-Bornemisza Collection Found.*, 2019 WL 13240413, at *26 (C.D. Cal. Apr. 30, 2019).

In light of the enactment of §338(c)(6), and the Supreme Court's holding that California's choice-of-law rules apply, the legally required outcome now aligns with moral commitments made by the United States and governments worldwide, including Spain, to Nazi victims and their families.[2]

---

[2]    As Circuit Judge Callahan wrote in a concurring opinion in *Cassirer VII*, 89 F.4th at 1246, the Ninth Circuit's decision "is at odds with our moral compass." *See* Editorial, *Finally, the Supreme Court can help a California family get back art stolen by Nazis*," L.A. Times (Feb. 23, 2025), https://www.latimes.com/opinion/story/2025-02-23/camille-pissarro-painting-supreme-court-lilly-cassirer.

# STATEMENT OF THE CASE

Claude Cassirer discovered in 2000 that Spain and TBC had possession of his grandmother's Painting, and immediately asked that they return it. Plaintiffs' Statement of Uncontroverted Facts and Conclusions of Law ("SUF"), No. 38, 39.[3] When appeals to Spain's goodwill and commitments under international agreements failed, Claude filed this action under the Foreign Sovereign Immunities Act ("FSIA") in May 2005. Initially, after six years of litigation, jurisdiction under the FSIA, 28 U.S.C. §1605(a)(3), was upheld because the Painting was taken in violation of international law, and because TBC engages in extensive commercial activities in the United States and California. *See Cassirer v. Kingdom of Spain*, 461 F. Supp. 2d 1157, 1169–76 (C.D. Cal. 2006), *aff'd in part, appeal dismissed in part*, 616 F.3d 1019 (9th Cir. 2010) (en banc), *cert. denied*, 564 U.S. 1037 (2011) ("*Cassirer I*").

After further litigation on other issues, the Ninth Circuit addressed the choice-of-law issue in a 2017 decision, affirming this Court's ruling that Spanish substantive law applied under federal common law choice-of-law rules. *Cassirer v. Thyssen-Bornemisza Collection Found.*, 862 F.3d 951, 961–64 (9th Cir. 2017) ("*Cassirer III*"). The Court of Appeals nevertheless reversed summary judgment for TBC under Spain's Article 1955 rule of acquisitive prescription. It remanded for a trial on two issues: (i) whether the Baron purchased the Painting in "good faith" under Swiss law, and (ii) whether, under Spanish law, TBC had "actual knowledge" the painting was stolen such that it was an accessory-after-the-fact ("*encubridor*") to the Painting's theft under

---

[3]    In preparing the Statement of Uncontroverted Facts and Conclusion of Law and this Memorandum, Plaintiffs follow the convention noted by the Court in the 2019 Decision: "Any finding of fact that constitutes a conclusion of law is hereby adopted as a conclusion of law, and any conclusion of law that constitutes a finding of fact is hereby adopted as a finding of fact." *Cassirer*, 2019 WL 13240413 at *2 n.3.

1   Article 1956, which would have extended the prescription period to 26 years and

2   defeated TBC's acquisitive prescription defense.

3       After a one-day bench trial in December 2018, this Court found that the Baron

4   was aware of multiple red flags of theft, yet failed to investigate the Painting's

5   provenance, such that he did not acquire it in good faith under Swiss law.[4]   It also found

6   TBC was aware of the same red flags as the Baron, but while TBC's conduct "may

7   have been irresponsible," it lacked "actual knowledge" the Painting was stolen under

8   Spanish law. *See Cassirer*, 2019 WL 13240413, at *22.  The Court also considered and

9   rejected TBC's laches defense under California and Spanish law. *Id.* at *24–25.

10  Applying Spain's acquisitive prescription rule, the Court awarded TBC the Painting.

11  *Id.* at *19–22.  The Ninth Circuit affirmed. *See Cassirer v. Thyssen-Bornemisza*

12  *Collection Found.*, 824 F. App'x 452, 454–55 (9th Cir. 2020) ("*Cassirer IV*").

13      The Supreme Court granted the Cassirers' petition for certiorari.  The Court's

14  opinion first found jurisdiction under 28 U.S.C. §1605(a)(3):

15      At a prior stage of this litigation, the courts below held that the Nazi
16      confiscation of *Rue Saint-Honoré* brought Claude's suit against the
        Foundation within the expropriation exception. See 461 F.Supp.2d 1157,
17      1176–77 (C.D. Cal. 2006), aff'd, 616 F.3d 1019, 1037 (9th Cir. 2010) (en
18      banc), cert. denied, 564 U.S. 1037 (2011).  That determination, which is
        no longer at issue, meant that the suit could go forward.
19

20  *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 111–12 (2022)

21  ("*Cassirer V*").

22  ---

    [4]   The red flags included "(1) the presence of intentionally removed labels and a torn
23  label demonstrating that the Painting had been in Berlin; (2) the minimal provenance
24  information provided by the Stephen Hahn Gallery, which included no information
    from the crucial World War II era and which, contrary to the partial label, did not show
25  that the Painting had ever been in  Berlin or in Germany; (3) the well-known history
    and pervasive nature of the Nazi looting of fine art during the World War II; and (4) the
26  fact that Pissarro paintings were often looted by the Nazis." *Cassirer*, 2019 WL
27  13240413, at *16.

On the merits, the Court unanimously held that under the FSIA and *Erie* principles as applied in *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941), the Ninth Circuit's use of federal common law to decide choice-of-law in an FSIA case raising state law claims was error:

> Section 1606 requires the use of California's choice-of-law rule—because that is the rule a court would use in comparable private litigation. . . . A foreign state or instrumentality in an FSIA suit is liable just as a private party would be. See §1606. That means the standard choice-of-law rule must apply. In a property-law dispute like this one, that standard rule is the forum State's (here, California's)—not any deriving from federal common law.

*Cassirer V*, 596 U.S. at 115, 117. The Court remanded for application of California choice-of-law rules. *Id.* at 117.

On remand, the Ninth Circuit initially certified the choice-of-law issue to the California Supreme Court, *see Cassirer v. Thyssen-Bornemisza Collection Found.*, 69 F.4th 554 (9th Cir. 2023) ("*Cassirer VI*"), but the certification request was declined. The Ninth Circuit then affirmed this Court's 2019 judgment in favor of TBC. *Cassirer VII*, 89 F.4th at 1245. It ruled that under California's common law "governmental interest" and "comparative impairment" choice-of-law tests, *see Kearney v. Salomon Smith Barney, Inc.,* 39 Cal.4th 95, 100, 107–08 (2006), Spanish substantive law applied.

The Ninth Circuit denied the Cassirers' Petition for Rehearing and Rehearing En Banc on July 9, 2024. Judge Graber, joined by Judge Paez, filed a vigorous dissenting statement, which disputed the Panel's application of California choice-of-law criteria and rued the court's departure from the federal and international consensus "that artwork stolen by Nazis should be returned to the rightful owner," and its "unnecessary effect of perpetuating the harms caused by the Nazis during World War II." *Cassirer*

*v. Thyssen-Bornemisza Collection Found.*, 107 F.4th 882, 884, 893 (9th Cir. 2024)
("*Cassirer VIII*").[5]

---

[5]    Judge Graber observed: "The case also has attracted unusually intense media
coverage the world over," including "essentially every major newspaper in the United
States along with many smaller domestic papers, as well as publications in Spain,
Germany, the United Kingdom, France, the Netherlands, Italy, Mexico, Canada,
Colombia, Brazil, Argentina, Australia, New Zealand, Israel, South Africa, Hong
Kong, Bangladesh, [and] Thailand," which "have recognized the moral dimension, . . .
and have characterized the case as 'perhaps the highest-profile case of World War II
art restitution.'" 107 F.4th at 893.

   *See, e.g.*, Kevin Rector, *A shocking turn:  Nazi-looted Pissarro painting won't
return    to    Jewish    family***,**    L.A.    Times    (Jan.    9,    2024),
https://www.latimes.com/california/story/2024-01-09/9th-circuit-rejects-familys-plea-
for-paintings-return-in-high-profile-nazi-looting-case; Alex Riggins, *La Mesa heirs of
Nazi-looted Pissarro painting lose legal battle to Spanish museum,* The San Diego
Union-Tribune    (Jan.    10,    2024),
https://www.sandiegouniontribune.com/2024/01/10/la-mesa-heirs-of-nazi-looted-
pissarro-painting-lose-legal-battle-to-spanish-museum/; Editorial,  *It's outrageous that
a Spanish museum refuses to return Nazi-looted art to the rightful heirs*, L.A. Times
(Jan.    13,    2024),    https://www.latimes.com/opinion/story/2024-01-13/editorial-
outrageous-nazi-stolen-painting-spanish-museum; *U.S. Court Rules Madrid museum
can    keep    painting    stolen    by    Nazis*,    NBC    News    (Jan.    11,    2024),
https://www.nbcnews.com/now/video/-u-s-court-rules-madrid-museum-can-keep-
painting-stolen-by-nazis-201802821870; David Jimenez, *My country's fight to keep
Nazi-looted    art    is    shameful*,    Wash.    Post    (Mar.    6,    2025),
https://www.washingtonpost.com/opinions/2025/03/06/nazi-art-stolen-pissarro-
california/ ("Returning the painting to Lilly Cassirer's last living descendant would be
an act of justice and would send a clear message that Spain takes the memory of the
victims of the Holocaust seriously.").

Shortly after the Ninth Circuit denied rehearing, the California Legislature unanimously passed Assembly Bill 2867 ("AB 2867").[6]  The law amended California Code of Civil Procedure ("CCP") §338(c) to add a new subsection (6):

> (6) Notwithstanding any other law or prior judicial decision, in any action brought by a California resident, or by an heir, trustee, assignee, or representative of the estate of a California resident, involving claims relating to title, ownership, or recovery of personal property as described in paragraph (2) or (3) [involving, *inter alia*, stolen artwork], or in the Holocaust Expropriated Art Recovery Act of 2016 (HEAR) (Pub. L. No. 114-308), including claims for money damages, **California substantive law shall apply.**

*See* AB 2867 (Ex. 1),[7] §2 (emphasis added).[8]

Governor Newsom signed the bill into law on September 16, 2024.  By its express terms, the law became effective immediately, *see id.* §5, and applies "to all actions pending" on its effective date, which includes this action, *see id.* §2.

Plaintiffs timely filed a second petition for certiorari, asking that the Supreme Court vacate the *Cassirer VII* decision and remand for application of California's new statute.  The petition also raised alternative grounds for certiorari based on Federal pre-emption and the Supremacy Clause.

---

[6]    The legislative history of AB 2867 is available at: https://leginfo.legislature.ca.gov/faces/billHistoryClient.xhtml?bill_id=202320240AB2867.

[7]    Unless otherwise indicated, references to "Ex." are to the exhibits to the Declaration of Jeffrey M. Chemerinsky, filed concurrently herewith.

[8]    Paragraph (3) of §338(c), referenced in §338(c)(6), encompasses "an action for the specific recovery of a work of fine art brought against a museum. . . ." CCP §338(c)(6).  The reference to the HEAR Act is to the fact that it covers claims "to recover any artwork or other property that was lost during the covered period [1933–1945] because of Nazi persecution." Holocaust Expropriated Art Recovery (HEAR) Act, Pub. L. No. 114-308, 130 Stat. 1524 §5(a) (2016) (Ex. 9).

On March 10, 2025, the Supreme Court issued its decision:

> The petition for a writ of certiorari is granted. The judgment is vacated, and the case is remanded to the United States Court of Appeals for the Ninth Circuit for further consideration in light of Assem. Bill 2867, 2023–2024 Reg. Sess. (Cal. 2024)

*Cassirer v. Thyssen-Bornemisza Collection Found*., 145 S. Ct. 1331 (2025).  On April 30, 2025, the Ninth Circuit granted Plaintiffs' motion to remand to this Court for further proceedings. No. 19-55616 (9th Cir.), D.E. 184; *see also* D.E. 668.

## <u>ARGUMENT</u>

## I. Pursuant to Section 338(c)(6), California Substantive Law Applies to the Cassirers' Claims to Recover the Painting

### A. Section 338(c)(6) Displaces California's Common Law Choice-of-Law Rules

In enacting CCP §338(c)(6), the California Legislature directed that California substantive law must be applied to determine title to stolen art held by a museum.  It is undisputed that California substantive law mandates the award of title here to the Cassirer family, as Lilly's heirs, of which Plaintiff David Cassirer is the last surviving member.

As courts have repeatedly concluded, under California law, "a thief cannot convey good title to stolen works of art, and the true owner cannot be divested of ownership without actual discovery of their rights in, and the location and possessor of, the artwork." Ex. 1, §§1(a), (k); *see Cassirer VII*, 89 F.4th at 1229 & n.3.  The Legislature cited the history of California's common law and statutory law in rejecting the principles underlying Spain's 1889 law of acquisitive prescription based on the legal fiction of constructive knowledge.  Ex. 1, §§1(a), (b), (c).

The Legislature's findings in AB 2867 confirm its intent that California substantive law must be applied in pending cases for recovery of stolen art against museums, or which involve claims as described in the HEAR Act.  This case fits both criteria. *See* Ex. 9; *Cassirer III*, 862 F.3d at 960 (applying HEAR Act to hold this action was timely filed).

Emphasizing the long-standing historical importance of California's interests, the Legislature further found in §1(k) that adding subsection (6) to §338(c):

> effectuates California's established laws and public policies against theft and trafficking in stolen property; precluding a thief from passing good title to any subsequent purchaser of stolen property; protecting the rights of true owners to recover stolen artwork and other items of cultural property; and precluding the true owners of stolen property from being divested of title without actual knowledge of their rights in and the location of the property.

**B.  AB 2867 Was Enacted to Definitively Align California Choice-of-Law in Stolen Art Cases with Fundamental Principles of California and Federal Law**

The Legislature referenced the *Cassirer VII* decision as an example of the problem that it was addressing.  It found that in applying California's governmental interest test, "the court refused to credit California's laws and interests supporting owners of stolen art," and "applied Spain's law of acquisitive prescription or adverse possession, which is based on the principle of constructive notice that the California courts and Legislature have rejected." Ex. 1, §§1(b), (c), (d), (e).

The Legislature's findings in AB 2867 also underscore that the statute is intended to align with U.S. law relating to stolen artworks:

> This law aligns California law with federal laws, federal policies, and international agreements prohibiting pillage and seizure of works of art and cultural property and calling for restitution of seized property, as

embodied in the Hague Convention of 1907 (and 1899), the UNESCO 1970 Convention on the Means of Prohibiting and Preventing the Illicit Import, Export and Transfer of Ownership of Cultural Property, the National Stolen Property Act of 1934, the Holocaust Victims Redress Act, the Holocaust Expropriated Art Recovery Act of 2016, and related federal executive branch policies and international agreements.

Ex. 1, §1(k).

## C. State Statutory Choice-of-Law Provisions Are Binding on Federal Courts under Erie

The Legislature's enactment of a statutory choice-of-law rule supersedes California's common law "governmental interest" analysis. *See Barclays Disc. Bank Ltd. v. Levy*, 743 F.2d 722, 725 & n.3 (9th Cir. 1984) (quoting and relying on Restatement (Second) of Conflict of Laws §6(1) (1971): "A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law."); *Voss v. Sutardja*, 2015 WL 349444, at *7 (N.D. Cal. Jan. 26, 2015) ("In general, the governmental interest analysis, which is a product of the common law, . . . does not apply when the California legislature has passed a statute that unambiguously resolves the choice of law issue."); *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1442–43 (2007) (applying same principle). Under *Erie* principles and the Rules of Decision Act, 28 U.S.C. §1652, California's statutory choice-of-law rule in CCP §338(c)(6) must be applied in Federal court. *See Klaxon*, 313 U.S. at 496; *Cassirer V*, 596 U.S. at 115 (federal court must apply the same choice-of-law rule under 28 U.S.C. §1606 as would apply in a diversity action).

## D. Courts Must Follow the Legislature's Direction to Apply New Laws to Pending Cases

Under both Federal and California law, courts must follow the Legislature's express direction to apply new laws to pending cases. *See, e.g., Plaut v. Spendthrift*

*Farms*, 514 U.S. 211, 226 (1995)  ("When a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly."); *People v. Bunn*, 27 Cal.4th 1, 21 (2002)  (citing *Plaut*); *Bouley v. Long Beach Memorial Medical Center*, 127 Cal. App. 4th 601, 612 (2005)  ("Legislative expressions of retroactivity have withstood challenges in any number of statutes, some of which, like the amendments before us, may be said to change the rules of a lawsuit midstream.").[9]

## II. Summary Judgment Should Be Granted Because There Are No Disputed Issues of Material Fact or Law for Plaintiffs' Four Causes of Action

Based on California law, Plaintiffs are entitled to summary judgment on all four causes of action pleaded in the Complaint. Fed. R. Civ. P. 56(a).

In demonstrating the absence of any material factual disputes, Plaintiffs' Statement of Uncontroverted Facts and Conclusions of Law is based largely on the Court's April 2019 Findings of Fact and Conclusions of Law, which are law of the case,[10] as well as other facts incorporated in the parties' filings and prior decisions and subject to judicial notice.

---

[9]     The Ninth Circuit applied a similar express retroactivity provision that was contained in the California Legislature's 2010 amendment of CCP §338(c)(3), which extended the statute of limitations in stolen art cases to six years from the date of plaintiff's actual knowledge, in two ongoing, non-final cases, including this one. *See Cassirer v. Thyssen-Bornemisza Collection Found.*, 737 F.3d 613, 616–17 (9th Cir. 2013) ("*Cassirer II*"); *von Saher v. Norton Simon Museum*, 754 F.3d 712, 716–19 (9th Cir. 2014) .

[10]    *See Pit River Home & Agr. Co-op. Ass'n v. United States*, 30 F.3d 1088, 1096–97 (9th Cir. 1994)  ("'The 'law of the case' rule ordinarily precludes a court from re-examining an issue previously decided by the same court, or a higher appellate court, in the same case.' . . . A decision on a factual or legal issue 'must be followed in all subsequent proceedings in the same case . . ., unless the evidence on a subsequent trial

1    The Court effectively summarized the determinative uncontroverted facts and

2    law in the Decision:

3        The Painting was wrongfully taken from Plaintiffs' ancestor Lilly Cassirer
         Neubauer ("Lilly"), by the Nazi regime, and is currently in the possession
4        of Defendant Thyssen-Bornemisza Collection Foundation ("TBC"), an
         agency or instrumentality of the Kingdom of Spain. . . .
5

6        It is undisputed that the Nazis stole the Painting from Lilly. Under
         California law and common law, thieves cannot pass good title to anyone,
7        including a good faith purchaser. *See Cassirer v. Thyssen-Bornemisza
         Collection Foundation*, 862 F.3d 951, 960 (9th Cir. 2017).
8

9

10   *Cassirer,* 2019 WL 13240413, at *1, *15.

11       Moreover, the Court expressly held that "because the Baron (and Favorita) did

12   not have good title to the Painting at the time of TBC's purchase, the Court concludes

13   that TBC did not become the lawful owner of the Painting via the 1993 Acquisition

14   Agreement." *Id*. at *19.  Title was awarded to TBC only because the Court went on to

15   apply the Spanish law of acquisitive prescription.  Under §338(c)(6), however, only

16   California law may be applied, so the Court's finding that TBC never became "the

17   lawful owner" now precludes any claim of title by TBC.

18   **A. Facts Relevant to All Causes of Action**

19       A Stipulation of Facts for the 2018 trial describes the Cassirer family's history

20   as a prominent German family of Jewish descent, their acquisition of the Painting, and

21   Lilly Cassirer's persecution and escape from Nazi Germany in 1939. SUF No. 2–8.  It

22   is undisputed that the Painting was confiscated from Lilly Cassirer Neubauer by the

23   Nazi regime in 1939 when she was forced to "sell" the Painting to a Nazi art appraiser

24   _____

was substantially different, controlling authority has since made a contrary decision of
25   the law applicable to such issues, or the decision was clearly erroneous and would work
     a manifest injustice.'" (citations omitted)).  None of these exceptional circumstances
26   exist here with respect to the facts and conclusions on which Plaintiffs rely.

27

28

for a nominal sum paid into a blocked account. SUF No. 6.  And TBC admits that the Painting is in its possession. *See* Compl. ¶ 6 *and* First Amended Answer ¶ 6 (D.E. 222).

Claude Cassirer petitioned Spain and TBC to return the Painting to him as Lilly's heir and the rightful owner, but they refused. SUF No. 37–39.

**B. First Cause of Action – Declaratory Relief**

Plaintiffs allege a claim for declaratory relief pursuant to 28 U.S.C. §2201, which grants the Court power to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Compl. ¶¶ 36–38; *id.* at 14.

Because "[f]ederal courts sitting in diversity must apply the substantive law of the forum state," they have "generally . . . applied California's declaratory judgment statute, California Civil Procedure Code §1060, rather than the federal statute." *Starr Indem. & Liability Co. v. Peerless Ins. Co.*, 2015 WL 3843526, at *4 (C.D. Cal. 2015). However, the provisions are "substantially similar" and both require that "there must be a 'substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality.'" *Id.*

Twenty-five years after Spain and TBC rejected Claude Cassirer's request to return the Painting, leading to over twenty years of intense litigation including eight decisions from the Ninth Circuit, two from the Supreme Court, and enactment of a California statute, the "immediacy and reality" of the parties' dispute is incontrovertible, proving just what the Complaint alleged: "An actual controversy exists between Cassirer on the one hand, and the Kingdom of Spain and the Thyssen-Bornemisza Collection Foundation on the other, as to ownership of the Painting, and Cassirer's right to return of the Painting." Compl. ¶ 37.

On the merits, it is factually undisputed that the Painting was stolen by the Nazis, from whom TBC's claimed title derives. SUF No. 7.  On the law:

> Under California law, thieves cannot pass good title to anyone, including a good faith purchaser. *Crocker Nat'l Bank v. Byrne & McDonnell*, 178 Cal. 329, 332, 173 P. 752 (1918). This is also the general rule at common law. *See Kingdom of Spain*, 616 F.3d at 1030 n.14 (quoting Marilyn E. Phelan, *Scope of Due Diligence Investigation in Obtaining Title to Valuable Artwork*, 23 SEATTLE U. L. REV. 631, 633–34 (2000)) ("One who purchases, no matter how innocently, from a thief, or all subsequent purchasers from a thief, acquires no title in the property. Title always remains with the true owner."). This notion traces its lineage to Roman law (*nemo dat quod non habet*, meaning "no one gives what he does not have").

*Cassirer III*, 862 F.3d at 960–61; *see Cassirer VI*, 69 F.4th at 561 (quoting *Naftzger v. Am. Numismatic Soc.*, 42 Cal. App. 4th 421, 432 (1996)) ("California law 'imposes a continuing affirmative duty to restore stolen property to its rightful owner,' and dictates that 'stolen property remains stolen property, no matter how many years have transpired from the date of the theft.'"); *von Saher v. Norton Simon Museum*, 2015 WL 12910626, at *8 (C.D. Cal. Apr. 2, 2015) (Walter, J.) (quoting *Strasberg v. Odyssey Group, Inc.*, 51 Cal. App. 4th 906, 921 (1996)) ("[T]he subsequent purchaser 'has no lawful claim to this property as against the rightful owner.'").

Accordingly, Plaintiffs are entitled as a matter of law to a judgment declaring that they, not TBC, are the owners of the Painting.

### C.  Second Cause of Action – Imposition of Constructive Trust

The Cassirers also seek imposition of a constructive trust requiring TBC to return the Painting. *See* Compl. ¶¶ 39–41; *id.* at 14.

"A constructive trust is an involuntary equitable trust created by operation of law as a remedy to compel the transfer of property from the person wrongfully holding it to the rightful owner." *Communist Party v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980, 990 (1995).  Under California Civil Code §2223, a person "who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Cal. Civ. Code

1    §2223.  Section 2224 further provides that a person "who gains a thing by . . . wrongful

2    act" also is an involuntary trustee. Cal. Civ. Code §2224.  A "constructive trust may

3    only be imposed where the following three conditions are satisfied: (1) the existence

4    of a *res* (property or some interest in property); (2) the *right* of a complaining party to

5    that res; and (3) some *wrongful* acquisition or detention of the res by another party who

6    is not entitled to it." *Communist Party*, 35 Cal. App. 4th at 990 (emphasis in original).

7        Plaintiffs meet the elements for imposition of a constructive trust based on

8    TBC's wrongful acquisition of the stolen Painting (Section 2224) and its wrongful

9    retention by TBC (Section 2223).  As this Court found, "The Painting was wrongfully

10   taken from Plaintiffs' ancestor Lilly Cassirer Neubauer [] by the Nazi regime, and is

11   currently in the possession of Defendant Thyssen-Bornemisza Collection Foundation."

12   *Cassirer*, 2019 WL 13240413, at *1.  These findings establish Plaintiffs' right to

13   imposition of a constructive trust.

14   **D. Third and Fourth Causes of Action – Possession of Personal Property**

15   **and Conversion**

16       Under California law, where, as here, a plaintiff is "pursuing an action for the

17   recovery of specific personal property (Code Civ. Proc., §667) [] his cause of action is

18   the tort of conversion." *Foster v. Sexton*, 61 Cal. App. 5th 998, 1020 (2021).  "The

19   essential elements of conversion are '(a) plaintiff's ownership or right to possession of

20   personal property, (b) defendant's disposition of property in a manner inconsistent with

21   plaintiff's property rights, and (c) resulting damages.'" *Id.* at 1020 (quoting *Voris v.

22   Lampert*, 7 Cal. 5th 1141, 1150 (2019)).

23       Further, CCP §667 provides: "In an action to recover the possession of personal

24   property, judgment for the plaintiff may be for the possession or the value thereof, in

25   case a delivery cannot be had, and damages for the detention." CCP §667.

26       As discussed, the undisputed facts establish Plaintiffs' right to ownership and

27   possession of the Painting and that TBC is acting "in a manner inconsistent with

28

1  plaintiff's property rights," *Foster*, 61 Cal. App. 5th at 1020, by refusing to return the

2  Painting and publicly displaying it as the Museum's property.[11]

3      The Cassirers have suffered damages in being deprived of possession of the

4  Painting, and the family's loss of the enjoyment of the Painting is undeniable.  The

5  family has assiduously attempted to recover the Painting. *See Cassirer*, 2019 WL

6  13240413, at *25 ("[O]nce Claude Cassirer learned that the Painting was not lost or

7  destroyed, he acted promptly by filing a Petition with the Kingdom of Spain and TBC

8  in 2001, and then, after that Petition was denied, an action in this Court in 2005.").

9      As this Court held in the *von Saher* case, even though the Norton Simon Museum

10  claimed to be an innocent purchaser, one who "purchases personal property from one

11  having no title thereto or right to sell the same is guilty of conversion." *von Saher*, 2015

12  WL 12910626 at * 7 (quoting *Culp v. Signal Van & Storage*, 142 Cal. App. 2d. Supp.

13  859, 861 (1956) ).  Here, it is undisputed that TBC's transferor, the Baron, lacked good

14  title under Swiss Law. *See Cassirer*, 2019 WL 13240413, at *15–19 (finding the Baron

15  did not have good title under Swiss law because "there were sufficient suspicious

16  circumstances or 'red flags' which should have prompted the Baron to conduct

17  additional inquires" and "the Baron failed to conduct suitable and reasonable inquiries

18  in order to discover the seller's lack of title").

19      Under these principles and the Uncontroverted Facts and Conclusions of Law,

20  the Cassirers are entitled to summary judgment for possession of personal property,

21  that is, an order that TBC return the Painting.  Alternatively, "in case a delivery cannot

22  be had," Plaintiffs are entitled to judgment for the value of the converted property, as

23  well as damages for TBC's illegal possession and use of the Painting (recoverable

24

25

26  [11] *See, e.g.*, https://www.museothyssen.org/en/collection/artists/pissarro-camille/rue-
27  saint-honore-afternoon-effect-rain (TBC online catalogue of its collection, showing
   that the Painting is displayed in "Room 33").

28

whether the Painting is returned or not). *See* CCP §667.  Plaintiffs reserve the right to pursue these damages claims at an appropriate time.

### III.  Interpretation of California Law in a Manner that Would Uphold TBC's Claim of Title Would Conflict with United States Treaties, Statutes, Policies, and International Agreements and Is Preempted

Plaintiffs previously argued that application of Spain's acquisitive prescription law was preempted under the Supremacy Clause for three reasons: (1) California's interests for choice-of-law purposes necessarily encompass Federal treaties, laws, policies, and international agreements, which proscribe pillage of artworks of cultural significance, and call for restitution of Nazi-looted art; (2) the HEAR Act, which precludes "any other provision of Federal or State law or any defense at law relating to the passage of time," Ex. 9 at 11, pre-empts application of Spain's acquisitive prescription law; and (3) federal laws and policies themselves preclude courts from interpreting State choice-of-law principles to allow, much less require, passage of good title to Nazi-looted art.

Although Plaintiffs raised these arguments in the Ninth Circuit and in their 2024 certiorari petition, neither court ruled on them.  If for some reason this Court were to consider not applying §338(c)(6), or California's common law rule that the true owner of stolen property retains title, Plaintiffs respectfully submit that for the reasons discussed below, taking proper account of federal interests would preclude an award of title, possession, or superior rights to TBC.

### A.  Any Choice-of-Law Analysis under California Common Law Must Incorporate Federal Treaties, Laws, Policies, and International Agreements into Its Analysis

If the Court were to find §338(c)(6) inapplicable and revert to California's common law choice-of-law test, the Supremacy Clause requires that relevant Federal

treaties, statutes, policies, and international agreements must be incorporated into application of state law. *See Testa v. Katt*, 330 U.S. 386, 391 (1947); *Haywood v. Drown*, 556 U.S. 729, 734 (2009) ("[F]ederal law is as much the law of the several States as are the laws passed by their legislatures."); *Hauenstein v. Lynham*, 100 U.S. 483, 490 (1879) ("[T]he Constitution, laws, and treaties of the United States are as much a part of the law of every State as its own local laws and Constitution.").

In the Ninth Circuit, the State of California filed amicus briefs urging application of California substantive law and recognizing that its choice-of-law principles are inseparable from Federal and international law and policies: "[U]sing adverse possession to strip the heirs of Holocaust survivors of art Nazis took by force flies in the face of overwhelming state, federal, and international policy supporting its return. . . . California's interests, which Section 338(c) seeks to advance, mirror the commitments of the Federal government and international community." Brief of Amicus Curiae State of California (D.E. 97) at 8–9, *Cassirer v. Thyssen-Bornemisza Collection Found.*, No. 19-55616 (9th Cir. July 5, 2022).

The *Cassirer VII* decision ignored these interests. Incorporating these specific Federal interests protecting the victims of Nazi depredations in weighing California's "governmental interests" for choice-of-law purposes demonstrates that California's interests are far more impaired than Spain's interests in application of its 1889 general rules of adverse possession, which were never amended to address the horrors of genocide in the twentieth century.

These Federal interests are summarized below.

### 1. Hague Convention

The United States is bound by the Hague Convention of 1907, a treaty that outlaws pillage in armed conflicts and calls for the courts to return looted artworks to the rightful owners. *See* Hague Convention (IV), arts. 46, 47, 56, 36 Stat. 2277, 2306–07, 2309 (Oct. 18, 1907) (Ex. 2); *see Menzel v. List*, 267 N.Y.S.2d 804, 811 (N.Y. Sup.

Ct. 1966) (applying Hague Convention under state property law, "[w]here pillage has taken place, the title of the original owner is not extinguished"); *Vineberg v. Bissonnette*, 529 F. Supp. 2d 300, 307–08 (D.R.I. 2007), *aff'd*, 548 F.3d 50 (1st Cir. 2008) (relying on *Menzel*'s discussion of Hague Convention in rejecting good faith buyer's claim to a painting seized by the Nazis); *Matter of Flamenbaum*, 22 N.Y.3d 962, 966 (2003) (citing *Menzel* with approval).

### 2. <u>U.S. Military Law in Germany</u>

During and after World War II, the United States led the world in invalidating Nazi confiscations and enforcing restitution of looted artworks. For example, Law No. 52 of the post-war Allied Military Government of Germany (in effect when the Painting was moved from Germany to California in 1951) declared "null and void" "[a]ny prohibited transaction effected without a duly issued license or authorization from Military Government" and prohibited "any transfer, contract or other arrangement made . . . with the intent to defeat or evade . . . the restitution of any [such] property to its rightful owner." U.S. Military Law No. 52, 12 Fed. Reg. 2189, 2196 (Apr. 3, 1947), 10 C.F.R., 1947 Supp. §3.15 (1947) (Ex. 3); *Kunstsammlungen Zu Weimar v. Elicofon*, 536 F. Supp. 829, 843–45 (E.D.N.Y. 1981), *aff'd* 678 F.2d 1150, 1160 n.18 (2d Cir. 1982) (rejecting good faith purchaser's claim under German property law because "Military Law No. 52 . . . precluded the transfer of good title"). Moreover, under Military Law 59: "Provisions of law for the protection of purchasers in good faith, which would defeat restitution [to rightful owner of property confiscated by Nazis] shall be disregarded." U.S. Military Law No. 59, 12 Fed. Reg. 7983 (Nov. 29, 1947), 10 C.F.R., 1947 Supp. §3.75 (1947) (Ex. 4) (quoted in *Menzel*, 267 N.Y.S.2d at 819).

Here, invoices in the record show that the Frank Perls Gallery in Beverly Hills imported the Painting. On May 9, 1951, Perls wrote: "The Pissaro is on its way over by air from Germany." SUF No. 15. Invoices indicate that the Painting was acquired from a collector named Urban in Munich. SUF No. 16, 17; *Cassirer*, 2019 WL

13240413, at *3.  But conspicuously absent from the record is any export license.  On this basis alone, TBC's title is "null and void" under the U.S. law that applied to export of the Painting from Germany in 1951.

### 3. SNWCC Coordinating Committee and Roberts Committee

In 1947, the Executive Branch's State-War-Navy Coordinating Committee ("SWNCC") warned that importation of Nazi-looted artworks "is contrary to the general policy of the United States and to the commitments of the United States under the Hague Convention of 1907" and "is a contravention of Federal law [*i.e.*, 18 U.S.C. §2314]" if valued over $5,000. 16 U.S. DEP'T OF STATE BULL. 358, 358 (Feb. 23, 1947) (Ex. 5).[12]  A concurrent letter from a commission chaired by Supreme Court Justice Owen Roberts that was addressed to "Museums," among others, warned:  "It is, of course, obvious that *no clear title can pass on objects that have been looted* from public or private collections abroad." *Id.* at 360 (emphasis added).

### 4. State Department's 1949 Policy Letter

This letter reiterated the U.S. "Government's policy of undoing forced transfers and restituting identifiable property" resulting from "Nazi persecution in Germany." 20 U.S. DEP'T OF STATE BULL. 592, 593 (Apr. 27, 1949) (Ex. 6).  The policy "with respect to claims asserted in the United States for the restitution of identifiable property . . . is to relieve American courts from any restraint upon the exercise of their jurisdiction," and "applies generally despite the existence of purchasers in good faith." *Id.*; *see Bernstein v. N.V. Nederlandsche-Amerikaansche Stoomvaart-Maatschappij,*

---

[12] Given that the Perls Gallery must have been aware of the same "red flags" as the Baron (and was much more closely connected to the German seller), it likely violated domestic U.S. criminal law when it "arranged to move the Painting out of Germany and into California to sell [it] . . . for $14,850." *Cassirer III*, 862 F.3d at 956.  This violation, and the underlying conduct, not only void TBC's title, but concretely establish California's interest in applying its law in this case.

210 F.2d 375, 376 (2d Cir. 1954) (relying on letter as controlling statement of U.S. policy).

### 5. UNESCO Convention (1970)

The signatory countries, including the United States and Spain, undertook "[t]o prevent . . . illicit import or export of [cultural] property . . . [and] facilitat[e] the earliest possible restitution of illicitly exported cultural property to its rightful owner." Convention on the Means of Prohibiting and Preventing the Illicit Import, Export and Transfer of Ownership of Cultural Property (UNESCO Convention 1970), art. 13 (Ex. 7 at 33).

### 6. Holocaust Victims Redress Act of 1998 ("HVRA")

The HVRA expressed the sense of Congress that: "*[C]onsistent with the 1907 Hague Convention*, all governments should undertake good faith efforts to facilitate the return of . . . works of art, to the rightful owners in cases where assets were confiscated from the claimant during the period of Nazi rule and there is reasonable proof that the claimant is the rightful owner." Holocaust Victims Redress Act (HVRA), Pub. L. No. 105-158, 112 Stat. 15 §202 (1998) (Ex. 8 at 40–41) (emphasis added). Here, the proof is undisputed that Plaintiffs are the rightful owners.

### 7. Washington Principles (1998) and Terezin Declaration (2009)

The United States, Spain, Germany and over 40 other countries adopted the Washington Conference Principles on Nazi-Confiscated Art (1998) (Ex. 10) and Terezin Declaration of Holocaust Era Assets and Related Issues (2009) (Ex. 11), which call for Nazi-looted artworks to be returned to the rightful owner, and for disputes to be resolved "on the facts and merits," and not technical defenses such as the passage of time. *See Cassirer*, 2019 WL 13240413, at *25–26.

### 8. Holocaust Expropriated Art Recovery (HEAR) Act of 2016

The HEAR Act, which adopted a national six-year statute of limitations based on "actual discovery" for claims to recover Nazi-looted artworks and as discussed

21

below, preempts any laws or defenses "relating to the passage of time." Ex. 9 at 44. The HEAR Act expressly found that "the enactment of a Federal law is necessary to ensure that claims to Nazi-confiscated art are adjudicated in accordance with **United States policy** as expressed in the Washington Conference Principles on Nazi-Confiscated Art, the Holocaust Victims Redress Act, and the Terezin Declaration." *Id.* at 43 (emphasis added).

9.  Best Practices for the Washington Conference Principles (2024)

On the 25th anniversary of the Washington Principles, the State Department published the Best Practices for the Washington Conference Principles on Nazi-Confiscated Art ("2024 Best Practices"). Ex. 12.  Secretary of State Antony Blinken reiterated fundamental U.S. policy:

> Of the millions of works of art and cultural property stolen by the Nazis, countless objects still have not been returned to their owners.  Today, too many governments, museums, dealers, galleries, and individuals still resist restitution efforts. . . .  These efforts are more important than ever, as Holocaust distortion and denial are again on the rise . . . and societies who downplay or refute the Shoah foster antisemitism and violence against Jews.[13]

The 2024 Best Practices specifically call for rejection of "barriers" to restitution, such as "usucapion (mode of acquiring title to property by uninterrupted possession of it for a definite period)." Ex. 12 at 65.

Although the Ninth Circuit rejected reliance on the Washington Principles and Terezin Declaration as legally "non-binding," *Cassirer IV*, 824 F. App'x at 457 n.3, all Federal laws, policies, and international agreements, including the 2024 Best Practices, are express statements of U.S. policy interests concerning Nazi-looted art and reject

---

[13] Antony J. Blinken, U.S. Secretary of State, Remarks at the 25th Anniversary of the Washington Principles (Mar. 5, 2024), available at: https://2021-2025.state.gov/secretary-of-state-antony-j-blinken-video-remarks-at-the-25th-anniversary-of-the-washington-principles-on-nazi-confiscated-art-and-best-practices-event/.

adverse possession doctrines in particular. These numerous, consistent iterations of Federal interests and policies, dating from 1907 to just last year, are "part of the law of every State," *Hauenstein*, 100 U.S. at 490, including California's common law choice-of-law rules. Applying those rules to select Spain's acquisitive prescription law thus conflicts with express foreign and domestic policy of the United States.

### B. The HEAR Act Bars TBC's Adverse Possession Defense

Under Article 1955 of Spain's Civil Code, "ownership in personal property vests by prescription after" a period of time, *see Cassirer VII*, 89 F.4th at 1232 n.6, and the rightful owners' actual knowledge concerning the existence or location of their stolen property is irrelevant.

In contrast, Section 5(a) of the HEAR Act empowers Holocaust survivors and heirs to recover Nazi-looted art within six years "after the ***actual discovery*** by the claimant" of the artwork's location "[n]otwithstanding ***any other provision of*** . . . ***State law*** or ***any defense at law relating to the passage of time***." Ex. 9 at 44 (emphasis added). The HEAR Act's "purpose . . . is to open courts to claimants to bring covered claims and ***have them resolved on the merits***." S. Rep. No. 114-394, 2016 WL 7156565, at *9 (2016) (emphasis added).

Interpretation of California law to apply Spain's Article 1955 is pre-empted by the HEAR Act in two ways. *See, e.g., Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73 (2000) (The Court "will find preemption where . . . '[a state law] stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress.'" (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

*First*, interpretation of California's choice-of-law rules to allow Spain's adverse possession law to dictate the outcome is expressly pre-empted by the first clause of Section 5(a): "Notwithstanding any other provision of . . . State law . . ." Ex. 9 at 44. This clause sweeps aside any state law—such as California's "governmental interests" test—that results in thwarting the Act's purpose to allow prosecution of "a civil claim

23

1  or cause of action . . . to recover any artwork . . . that was lost . . . because of Nazi

2  persecution." *Id.*; *see United States v. Novak*, 476 F.3d 1041, 1046 (9th Cir. 2007)

3  ("statutory 'notwithstanding' clauses broadly sweep aside potentially conflicting laws")

4  (citing *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18 (1993)).

5       *Second*, on its face, Spain's Article 1955 is a "defense at law relating to the

6  passage of time." Thus, it cannot be enforced because the HEAR Act's six-year actual

7  discovery rule applies "[n]otwithstanding . . . any defense at law relating to the passage

8  of time." Ex. 9 at 44. In *Cassier III*, the Ninth Circuit refused to apply the plain words

9  of this "notwithstanding" clause because, it said, "HEAR simply supplies a statute of

10  limitations during which such claims are timely. Thus, HEAR does not alter the choice-

11  of-law analysis this Court uses to decide which state's law will govern." 862 F.3d at

12  964.

13       This ruling, however, was made without benefit of plenary argument and was

14  vacated by the Supreme Court's ruling in *Cassier V* that the choice-of-law analysis

15  the Ninth Circuit used was wrong. 596 U.S. at 113–17. The only briefing the *Cassier*

16  *III* court received on the HEAR Act were competing one-page letters under Fed. R.

17  App. P. 28(j).[14] The court overlooked, among other things, that the limitations period

18  in the HEAR Act is not merely a procedural matter having no effect on what the court

19  implicitly assumed was the substantive doctrine of adverse possession. On the

20  contrary, for *Erie* purposes, a statute of limitations is substantive, particularly as it

21  defines when a claim accrues—which the HEAR Act does by adopting an "actual

22  discovery" rule. *See, e.g., Quality Cleaning Prod. R.C., Inc. v. SCA Tissue N. Am., LLC,*

23  794 F.3d 200, 205 (1st Cir. 2015) ("'state substantive law must govern' accrual and

24  the statute of limitations alike" (quoting *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d

25  704 (2d Cir. 2002) ); S. Rep. No. 114-394, 2016 WL 7156565, at *9 ("defenses at law

26

27  [14]  *See Cassier v. Thyssen-Bornemisza Collection Found.*, No. 15-55951 (9th Cir.), D.E. 121 (Jan. 13, 2017), D.E. 122 (Jan. 17, 2017).

28

1    related to the passage of time are not merely procedural"); *Bourhis v. Lord*, 56 Cal. 4th

2    320, 328 (2013)  ("a statute of limitations is a substantive defense"); *Granny Purps,*

3    *Inc. v. Cnty. of Santa Cruz*, 53 Cal. App. 5th 1, 11 (2020)  ("a statute of limitations is

4    a substantive defense, not a procedural matter").

5          Moreover, adverse possession rules for personal property in civil law countries

6    serve the same purpose as statutes of limitations on property rights claims in common

7    law countries—they balance the rights of two presumptively innocent parties—the

8    good faith possessor's interest in certainty of ownership against the original owner's

9    interest in recovering stolen property.  If a Spanish statute of limitations were at issue,

10    it clearly would be pre-empted.  The formalistic distinction drawn by the court ignores

11    the purpose and intent of the Act's clear language.

## C. Federal Interests Pre-Empt Any Application of California Law to Award Title to Possessors of Nazi-Looted Art

14          The Federal treaties, statutes, policies, and international agreements discussed

15    above pre-empt any application of California choice-of-law rules to require application

16    of Spanish law that strips title to a Nazi-looted artwork from the heirs of Holocaust

17    survivors. *See United States* v. *Pink,* 315 U.S. 203, 230–31 (1942)  ("state law must

18    yield when it is inconsistent with or impairs . . . the superior Federal policy evidenced

19    by a treaty or international compact or agreement").

20          As noted, United States law and policy have expressly prohibited acquisition and

21    holding of Nazi-looted artworks since World War II, among other reasons, because it

22    violates "commitments of the United States under the Hague Convention of 1907;" is

23    a Federal crime when valued at over $5,000; and "no clear title can pass on objects that

24    have been looted from public or private collections abroad." *See* p. 20, *supra*.  The

25    HVRA, HEAR Act, and U.S. leadership in adopting the 2024 Best Practices (and its

26    predecessor policies) make clear that those binding Federal interests continue to apply.

27    As in *Pink*, . 315 U.S. at 231, the application of California choice-of-law "as formulated

28

by" the Ninth Circuit does not only "collide with and subtract from" a century of Federal laws and policies, but is in direct conflict with them.

## CONCLUSION

As this brief demonstrates, the reasons why the Cassirers' motion for summary judgment should be granted are straightforward:

- The Supreme Court required application of California choice-of-law principles.
- The California Legislature directed application of California substantive law.
- Under Federal law and policy, the fruits of Nazi persecution must be restored to original owners, not kept by beneficiaries of those atrocities.
- This Court has found that the Painting was looted by the Nazis.
- The Painting should be returned to the Cassirers.

Dated:  September 12, 2025          Respectfully submitted,

                                   **KENDALL BRILL & KELLY LLP**

                                   By:  /s/ *Jeffrey M. Chemerinsky*

                                        Laura W. Brill (Bar No. 195889)
                                        Jeffrey M. Chemerinsky (Bar No. 270756)
                                        10100 Santa Monica Blvd., Suite 2500
                                        Los Angeles, CA 90067
                                        Telephone: (310) 556-2700
                                        Facsimile: (310) 556-2705

                                        **BOIES SCHILLER FLEXNER LLP**
                                        John J. Kucera (Bar No. 274184)
                                        Daniel G. Boyle (Bar No. 332518)
                                        2029 Century Park East, Suite 1520
                                        Los Angeles, CA 90067
                                        Telephone: (213) 629-9040
                                        Facsimile: (213) 629-9022

                                        David Boies (admitted *pro hac vice*)
                                        333 Main Street
                                        Armonk, NY 10504

1    Telephone: (914) 749-8200
     Facsimile: (914) 749-8300
2
3    David A. Barrett (admitted *pro hac vice*)
     55 Hudson Yards
4    New York, NY 10001
     Telephone: (212) 446-2300
5    Facsimile: (212) 446-2350
6
7    Stephen N. Zack (admitted *pro hac vice*)
     100 SE Second Street, Suite 2800
8    Miami, FL 33131
     Telephone: (305) 539-8400
9    Facsimile: (305) 539-1307
10
11   Scott E. Gant
     1401 New York Ave, NW
12   Washington, DC 20005
     Telephone: (202) 237-2727
13   Facsimile: (202) 237-6131
14
15   **DUBBIN & KRAVETZ, LLP**
     Samuel J. Dubbin (admitted *pro hac vice*)
16   1200 Anastasia Avenue, Suite 300
     Coral Gables, FL 33134
17   Telephone: (305) 371-4700
     Facsimile: (305) 371-4701
18
19
20   *Attorneys for Plaintiffs*
     DAVID CASSIRER, *et al.*
21
22
23
24
25
26
27
                              27                    Case No. CV 05-03459-JFW (Ex)
28
     PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1    <u>**CERTIFICATE OF COMPLIANCE**</u>

2    The undersigned, counsel of record for Plaintiffs, certifies that this brief contains

3    26 pages, which complies with the 30-page limit set by court order dated July 11, 2025

4    (D.E. 676).

5

6    Dated:  September 12, 2025

7

8                                                    By: <u>/s/ *Jeffrey M. Chemerinksy*</u>

9                                                    Jeffrey M. Chemerinsky (Bar No.
10                                                   270756)

11                                                   *Attorney for Plaintiffs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28