Thaddeus J. Stauber (Bar No. 225518)
tstauber@nixonpeabody.com
Aaron M. Brian (Bar No. 213191)
abrian@nixonpeabody.com
Zachary C. Osinski (Bar No. 358770)
zosinski@nixonpeabody.com
NIXON PEABODY LLP
300 South Grand Avenue, Suite 4100
Los Angeles, CA 90071
Tel: (213) 629-6000
Fax: (213) 629-6001

Attorneys for Defendant
Thyssen-Bornemisza Collection Foundation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CASSIRER, AVA CASSIRER, and UNITED JEWISH FEDERATION OF SAN DIEGO COUNTY, a California non-profit corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>THYSSEN-BORNEMISZA COLLECTION FOUNDATION, an agency or instrumentality of the Kingdom of Spain,<br><br>Defendant. | Case No. 05-cv-03459-JFW (Ex)<br>Honorable John F. Walter<br><br>**DEFENDANT THYSSEN-BORNEMISZA COLLECTION FOUNDATION'S REPLY IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:    December 15, 2025<br>Time:    1:30 p.m.<br>Crtrm:   7A |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES.............................................. 1

INTRODUCTION ................................................................................................... 1

ARGUMENT........................................................................................................... 2

I.      The Foundation is Immune from Suit under the FSIA ................................. 2

        A.      Post-Philipp, Takings From De Facto Stateless Individuals Do Not Satisfy the Expropriation Exception ....................................... 2

        B.      Plaintiffs' Mandate Law-of-the-Case Arguments are Meritless........... 3

II.     Section 338 Violates the Foundation's Due Process Rights ......................... 4

        A.      The Foundation Has Due Process Rights, as this Court has Found ..... 4

        B.      Section 338 Retroactively Deprives the Foundation of Vested Rights ................................................................................. 7

        C.      Section 338 Impermissibly Bases Forum Law on a Residency Alone ................................................................................. 8

        D.      Section 338 Cannot Pass Strict Scrutiny Review .............................. 10

III.    Section 338 Violates the Commerce Clause ............................................... 10

IV.     Section 338 is Federally Preempted .......................................................... 12

        A.      Section 338 is Subject to Conflict Preemption .................................. 12

        B.      Section 338 is Subject to Field Preemption ....................................... 13

CONCLUSION..................................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Hague*,
  449 U.S. 302 (1981) ................................................................................ 8, 9

*Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*,
  663 F. Supp. 3d 11 (D.D.C. 2023), *rev'd on other grounds*, 143
  F.4th 496 (D.C. Cir. 2025) .................................................................... 6

*Arch Trading Corp. v. Republic of Ecuador*,
  839 F.3d 193 (2d Cir. 2016) .................................................................. 5

*Ass'n for Accessible Medicines v. Bonta*,
  766 F. Supp. 3d 1020 (E.D. Cal. 2025) ........................................... 11, 12

*Astaire v. Best Film & Video Corp.*,
  116 F.3d 1297 (9th Cir. 1997), *amended*, 136 F.3d 1208 (9th Cir.
  1998) .................................................................................................. 14

*AT&T Mobility LLC v. AU Optronics Corp.*,
  707 F.3d 1106 (9th Cir. 2013) ............................................................ 8, 9

*Bernhardt v. Cnty. of Los Angeles*,
  279 F.3d 862 (9th Cir. 2002) ............................................................... 4

*Campbell v. Holt*,
  115 U.S. 620 (1885) ............................................................................ 7, 8

*Cassirer v. Kingdom of Spain*,
  616 F.3d 1019 (9th Cir. 2010) (*en banc*).......................................... 2, 9

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
  737 F.3d 613 (9th Cir. 2013) ........................................................ 2, 10, 14

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
  No. CV 05-03459 GAF EX, 2014 WL 5510996 (C.D. Cal. Oct. 31,
  2014) .................................................................................................. 4

*Cox v. Mariposa Cnty.*,
  No. 119CV0110 5AWIBAM, 2022 WL 4664129 (E.D. Cal. Sept.
  30, 2022) ............................................................................................ 10

ii

*Daniels Sharpsmart, Inc. v. Smith*,
    889 F.3d 608 (9th Cir. 2018) ........................................................................ 12

*de Csepel v. Republic of Hungary*,
    695 F. Supp. 3d 1 (D.D.C. 2023) .................................................................... 3

*DeCastro W. Chodorow & Burns, Inc. v. Superior Ct.*,
    47 Cal. App. 4th 410 (1996) ......................................................................... 14

*Federal Republic of Germany v. Philipp*,
    592 U.S. 169 (2021) ............................................................................... 1, 2, 3

*First Nat'l Bank v. Bellotti*,
    435 U.S. 765 (1978) ...................................................................................... 10

*First National City Bank v. Banco Para El Comercio Exterior de Cuba*
    *("Bancec")*,
    462 U.S. 611 (1983) ................................................................................ 4, 5, 6

*Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan*
    *Republic*,
    582 F.3d 393 (2d Cir. 2009) ........................................................................... 5

*Gater Assets Ltd. v. AO Moldovagaz*,
    2 F.4th 42 (2d Cir. 2021) ........................................................................ 5, 6, 7

*Hall v. City of Los Angeles*,
    697 F.3d 1059 (9th Cir. 2012) .................................................................... 3, 4

*In re Hawaii Island Air, Inc.*,
    640 B.R. 567 (Bankr. D. Haw. 2022) .............................................................. 7

*Henderson ex rel. Henderson v. Shinseki*,
    562 U.S. 428 (2011) ........................................................................................ 4

*In re J.W.*,
    29 Cal. 4th 200 (2002) .................................................................................. 14

*In re Korean Ramen Antitrust Litig.*,
    No. 13-CV-04115-WHO, 2017 WL 235052 (N.D. Cal. Jan. 19,
    2017) ............................................................................................................... 9

*Meza-Carmona v. Garland*,
    113 F.4th 1163 (9th Cir. 2024) ....................................................................... 7

*Movsesian v. Victoria Versicherung AG*,
  670 F.3d 1067 (9th Cir. 2012) (*en banc*)................................................13, 14, 15

*Nat'l Shooting Sports Found. v. Bonta*,
  718 F. Supp. 3d 1244 (S.D. Cal. 2024), *reconsideration denied*, No.
  23-CV-0945-AGS-KSC, 2025 WL 1012326 (S.D. Cal. Mar. 31,
  2025)..........................................................................................................11

*National Pork Producers Council v. Ross*,
  598 U.S. 356 (2023) ...............................................................................11, 12

*Nguyen v. United States*,
  92 F.2d 1500 (9th Cir.1986) .........................................................................4

*People v. Padilla*,
  13 Cal. 5th 152 (2022)..................................................................................8

*Philipp v. Federal Republic of Germany*,
  894 F.3d 406 (D.C. Cir. 2018) ....................................................................13

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ..................................................................................9, 10

*Republic of Argentina v. Weltover, Inc.*,
  504 U.S. 607 (1992) ......................................................................................5

*Sam Francis Found. v. Christies, Inc.*,
  784 F.3d 1320 (9th Cir. 2015).................................................................11, 12

*Simon v. Republic of Hungary*,
  77 F.4th 1077 (D.C. Cir. 2023), *cert. granted*, 144 S. Ct. 2680
  (2024).....................................................................................................1, 2, 3

*TIG Ins. Co. v. Republic of Argentina*,
  110 F.4th 221 (D.C. Cir. 2024) .....................................................................6

*TMR Energy Ltd. v. State Prop. Fund of Ukraine*,
  411 F.3d 296 (D.C. Cir. 2005) ......................................................................5

*Von Saher v. Norton Simon Museum*,
  592 F.3d 954 (9th Cir. 2010).....................................................................13, 14

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
  754 F.3d 712 (9th Cir. 2014) .....................................................................13, 14

iv

*In re World War II Era Japanese Forced Labor Litig.*,
  164 F.Supp.2d 1160 (N.D. Cal. 2001), *aff'd sub nom. Deutsch v.
  Turner Corp.*, 317 F.3d 1005 (9th Cir. 2003), *opinion amended and
  superseded on denial of reh'g*, 324 F.3d 692 (9th Cir. 2003) ........................... 15

*Zschernig v. Miller*,
  389 U.S. 429 (1968) ..................................................................................... 14, 15

**Statutes**

California Code of Civil Procedure §§ 338(c)(6) and 338.2 ........................... *passim*

Foreign Sovereign Immunity Act, 28 U.S.C. § 1330 *et seq.* ...................... 1, 2, 3, 5

**Other Authorities**

*Bill Analysis*, Bill AB 2867, prepared for the Assembly Committee on
  Judiciary, April 27, 2024 ..................................................................................... 14

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

The Foundation's motion should be granted for two independent reasons: first, the Foundation is immune from suit under the Foreign Sovereign Immunity Act, 28 U.S.C. § 1330 *et seq.* ("FSIA"); and second, the 2024 amendments to California's Code of Civil Procedure[1] cannot constitutionally be applied in this case.

*Federal Republic of Germany v. Philipp*, 592 U.S. 169 (2021) confirmed the domestic-takings rule embedded in the FSIA's expropriation exception: there is no jurisdiction over claims arising from a sovereign's taking of its own national's property. That is precisely the case here, where the alleged taking was by Germany, from its own national, within Germany's borders. As the D.C. Circuit subsequently clarified, *Philipp*'s holding applies where a state's nationals were rendered *de facto* stateless through discriminatory or genocidal measures. *Simon v. Republic of Hungary*, 77 F.4th 1077, 1098-1099 (D.C. Cir. 2023), *cert. granted*, 144 S. Ct. 2680 (2024), and *cert. denied sub nom. Friedman v. Republic of Hungary*, 144 S. Ct. 2686 (2024). Moreover, subject-matter jurisdiction is never waived, may be raised at any time, and must be addressed when intervening law alters the analysis.

On the merits, Plaintiffs' opposition underscores the constitutional defects of Section 338. While Plaintiffs emphasize Section 338's legislative findings in asserting that this Court must "follow a statutory directive of its own state on choice of law" (Pls.' Opp. Br. at 10), Plaintiffs ignore that the Legislature, quoting the Restatement (Second), acknowledged that any such directive operates "subject to constitutional restrictions." This case is the paradigm of those constitutional restrictions. California cannot, by statute, displace the forum's choice-of-law analysis and mandate the application of its law in a dispute with minimal California

---

[1] The amendments to §§ 338(c)(6) and 338.2 are referred to herein, collectively, as "Section 338." Both § 338.2(e) and § 338(c)(6) are unconstitutional, as both provisions impermissibly provide that "California substantive law shall apply" in any dispute brought pursuant to the statute.

connection; cannot retroactively unsettle vested property rights; and cannot enact an extraterritorial rule that collides with federal foreign policy.[2]

## ARGUMENT

### I. The Foundation is Immune from Suit under the FSIA

The FSIA establishes a "baseline principle of foreign sovereign immunity" in U.S. courts, subject only to enumerated exceptions. *Cassirer,* 596 U.S. at 113. Post-*Philipp*, the expropriation exception does not confer jurisdiction here.

#### A. Post-*Philipp*, Takings From *De Facto* Stateless Individuals Do Not Satisfy the Expropriation Exception

*Philipp* forecloses Plaintiffs' theory that Germany's Nazi-era taking from its own national qualifies as "rights in property taken in violation of international law." As the Supreme Court clarified, while claims concerning "Nazi-era art takings could be brought under the expropriation exception ***where the claims involve the taking of a foreign national's property***", this exception to immunity does not extend to "any Nazi-era claim." *Philipp,* 141 S. Ct. at 185-86 (emphasis added). The D.C. Circuit in *Simon*, 77 F.4th at 1098-99 has since applied the "analytic framework established by *Philipp*" and held, on substantially identical facts to those here, that the expropriation exception does not apply where a state's own nationals were rendered *de facto* stateless through discriminatory or genocidal measures.[3]

Plaintiffs do not challenge that the facts of this case preclude a finding that the expropriation exception applies post-*Philipp*, but contend that prior decisions in this

---

[2] Nor can Plaintiffs avoid these issues by re-litigating factual issues the Court has already resolved after trial and that are otherwise immaterial to the purely legal issues now before the Court. The Foundation incorporates by reference the prior decisions, which established the undisputed facts and law of the case. *See Cassirer v. Kingdom of Spain*, 616 F.3d 1019 (9th Cir. 2010) (*en banc*); *Cassirer v. Thyssen-Bornemisza Collection Found.*, 737 F.3d 613 (9th Cir. 2013); 153 F. Supp. 3d 1148 (C.D. Cal. 2015); 862 F.3d 951 (9th Cir. 2017); 2019 WL 13240413 (C.D. Cal. Apr. 30, 2019); 824 F. App'x 452 (9th Cir. 2020); 596 U.S. 107 (2022); 69 F.4th 554 (9th Cir. 2023); 89 F.4th 1226 (9th Cir. 2024); 107 F.4th 882 (9th Cir. 2024)

[3] Notably, while the Supreme Court subsequently granted cert on the issue of whether commingling funds can satisfy the nexus requirement of the expropriation exception (*Simon*, 604 U.S. 115), it denied plaintiffs' cert petition seeking review of the court's *de facto* stateless holdings (*Friedman*, 144 S. Ct. 2686).

2

case "all assumed that the domestic takings rule applied" and nevertheless found jurisdiction. (Pls.' Opp. Br. at 3.)  But such "assumptions" are no longer relevant, as this Court's finding that the taking at issue was "in violation of international law" because "the Nazis stripped the Jews of their citizenship and took their property" (*Cassirer*, 461 F. Supp. 2d at 1170) is no longer good law post *Philipp* and *Simon*.

### B.    Plaintiffs' Mandate and Law-of-the-Case Arguments are Meritless

Plaintiffs argue the "mandate rule" and the law of the case bar the Foundation's immunity defense.  Plaintiffs are wrong, and the cases they cite provide that the law of the case doctrine does not apply where, as here, there is intervening controlling authority that makes reconsideration appropriate.  (Pls.' Opp. Br. at 6 (citing *E. Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1106 (N.D. Cal. 2018).)  The Foundation has repeatedly raised its immunity defense since *Philipp* was decided, and reconsideration of the Foundation's immunity defense is entirely appropriate at this procedural juncture.  *See de Csepel v. Republic of Hungary*, 695 F. Supp. 3d 1, 29 (D.D.C. 2023) ("In the aftermath of *Philipp*, a new question arose as to whether a sovereign state's taking of property from stateless persons could amount to a taking 'in violation of international law' within the meaning of the FSIA.").

Plaintiffs' "mandate rule" argument is equally meritless.  The single case cited by Plaintiffs in support of this argument, *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012), does not support their position.  As the Ninth Circuit noted, "when a court is confronted with issues that the remanding court never considered, the 'mandate[] require[s] respect for what the higher court decided, ***not for what it did not decide***.'"  *Id.* at 1067 (emphasis added).  Here, the Supreme Court's one sentence "'remand[] for further consideration in light of' AB 2867" (*Cassirer*, 145 S. Ct. 1331 (2025))[4] did not relieve this Court of its continuing obligation to ensure

---

[4] Nor does the Supreme Court's passing comment that a prior FSIA ruling "meant that the suit could go forward" foreclose reconsideration of this Court's subject matter jurisdiction.  (*See* Pls.' Opp. Br. at 4 (quoting *Cassirer*, 596 U.S. 107

subject matter jurisdiction exists. *Hall*, 697 F.3d at 1094; *see also Nguyen v. United States*, 92 F.2d 1500, 1502 (9th Cir.1986) (holding mandate ordering entry of summary judgment did not preclude plaintiff from amending complaint).[5]

## II. Section 338 Violates the Foundation's Due Process Rights

### A. The Foundation Has Due Process Rights, as this Court has Found

Plaintiffs' new threshold contention—that the Foundation lacks due process protections altogether—fails as a matter of law. Despite this Court previously finding the prior version of Section 338 "would result in depriving the Foundation of its ownership of the Painting, [and therefore] . . . violates the Foundation's due process rights" (*Cassirer*, 153 F. Supp. 3d at 1168), Plaintiffs never challenged the existence of the Foundation's due process rights, until now.[6]

Citing non-binding authority, Plaintiffs now contend the Foundation "has no due process rights "'if the state so "extensively control[s]" the instrumentality "that a relationship of principal and agent is created."'" (Pls.' Opp. Br. at 8.) The cases Plaintiffs cite derive from the Supreme Court's decision in *First National City Bank v. Banco Para El Comercio Exterior de Cuba ("Bancec")*, 462 U.S. 611 (1983), where the Supreme Court was addressing a separate issue of whether a bank established and owned by the Cuban Government could be held liable for the acts of the Cuban state. The Supreme Court recognized that "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such," and that this presumption could only be overcome if the instrumentality is effectively the alter ego or agent of the foreign state. *Id.* at 629;

---

(2022)).) The Court's comment was *dicta* and not a ruling on the merits, as immunity was not an issue that was briefed or otherwise before the Court.

[5] Plaintiffs' arguments further disregard the nonwaivable nature of this Court's subject matter jurisdiction. *See Cassirer v. Thyssen-Bornemisza Collection Found.*, No. CV 05-03459 GAF EX, 2014 WL 5510996, at *3 (C.D. Cal. Oct. 31, 2014); *Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

[6] Plaintiffs first raised this argument in their reply brief, filed earlier this year, in support of their petition for a writ of certiorari. *See* 2024 WL 574679.

632.  Applying the Court's logic from *Bancec*, the D.C. and Second Circuits have since found that an "alter ego" of a foreign state may lack due process rights *when challenging personal jurisdiction* under the FSIA. *See TMR Energy Ltd. v. State Prop. Fund of Ukraine*, 411 F.3d 296, 302 (D.C. Cir. 2005) (deciding if instrumentality lost its "separate juridical status" and therefore "not a 'person' for purposes of the due process clause and cannot invoke the minimum contacts test to avoid . . . personal jurisdiction"); *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 401 (2d Cir. 2009) (same).

The cases Plaintiffs cite do not address the issues before the Court—the Foundation's vested, property rights in the Painting—and neither the Supreme Court nor the Ninth Circuit (or any other circuit) have adopted *TMR*/*Frontera*'s analysis. *See Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 619 (1992) ("Assuming, without deciding, that a foreign state is a 'person' for purposes of the Due Process Clause").  Even if this Court were to consider this theory, Plaintiffs' have not (and cannot) meet their burden of showing the Foundation is Spain's alter ego.

In *Bancec*, the Supreme Court "explained that basic legal principles, the FSIA's legislative history, and considerations of comity and respect for foreign sovereigns all dictate that 'duly created instrumentalities of a foreign state are to be accorded a presumption of independent status.'"  *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 55 (2d Cir. 2021) (quoting *Bancec*).  "This 'presumption of separateness is a strong one[,]'" and may only be overcome if Plaintiffs can demonstrate the Foundation is the alter ego of Spain, which "is not easily established" and has only been found "in two circumstances: 'where a corporate entity is so extensively controlled . . . that a relationship of principal and agent is created' or where recognizing the instrumentality's separate juridical status 'would work fraud or injustice.'"  *Id.*  Plaintiffs bear the burden to prove the Foundation "should not be presumed distinct" from Spain.  *Frontera*, 582 F.3d at 401; *Arch Trading Corp. v.*

1   *Republic of Ecuador*, 839 F.3d 193, (2d Cir. 2016) ("those suing the sovereign

2   shoulder the burden of rebutting the *Bancec* presumption").

3       Plaintiffs assert that Spain "dominates" the Foundation's board of trustees

4   because its members include government ministers or appointees.  (Pls.' Opp. Br. at

5   9.)  Not only have Plaintiffs failed to allege or otherwise establish such "domination"

6   by the Spanish government, "'courts have consistently rejected the argument that the

7   appointment or removal of an instrumentality's officers or directors, standing alone,

8   overcomes the *Bancec* presumption because the exercise of such powers is not

9   synonymous with control over the instrumentality's day-to-day operations.'" *Gater,*

10  2 F.4th at 58 (quoting *Arch Trading Corp.*, 839 F.3d at 203).  Nor is Plaintiffs' vague

11  reference to "onerous conditions" imposed by the Acquisition Agreement sufficient

12  to support Plaintiffs' alter ego theory.  *See* *TIG Ins. Co. v. Republic of Argentina*, 110

13  F.4th 221, 239 (D.C. Cir. 2024) (holding plaintiff failed to meet its burden on alter

14  ego theory by claiming government's "resolutions 'confirm' a controlling

15  relationship and vaguely assert[ing]—without specific connection even to the

16  resolutions—that [the instrumentality] was undercapitalized").  As the court in *TIG*

17  reasoned, these assertions were "plainly insufficient" and the cited government

18  resolutions addressing the instrumentalities operations could not answer "key

19  questions" of "whether Argentina exerted 'complete domination' over [the

20  instrumentality], or whether [the instrumentality] was effectively Argentina's 'agent'

21  . . . [The] resolutions do not speak to those questions at all." *Id.*

22      Plaintiffs' conclusory assertions that Spain exerted "extensive control over the

23  creation and operation of TBC, including by paying hundreds of millions of dollars

24  to buy the Baron's collection and create the museum building" also do not establish

25  that the Foundation is Spain's alter ego.  *Amaplat Mauritius Ltd. v. Zimbabwe Mining*

26  *Dev. Corp.*, 663 F. Supp. 3d 11, 22 (D.D.C. 2023), *rev'd on other grounds*, 143 F.4th

27  496 (D.C. Cir. 2025). (finding assertions of "financial interdependence" "inadequate"

28

and failed to "support the inference that [the instrumentality's] and the Republic's finances are 'so intermingled that no distinct corporate lines are maintained'").

Plaintiffs' have not (and cannot) show Spain "exercises significant and repeated control over [the Foundation's] day-to-day operations" (*Gater*, 2 F.4th at 56), and the only evidence of the Foundation's day-to-day operations shows it was "established by the Spanish government as a non-profit, private cultural foundation to promote and provide services for art" and that it has operated independently to perform this role since its founding.[7]  Plaintiffs have not submitted *any* evidence to rebut the Foundation's presumed, separate legal status, and this Court should decline Plaintiffs' invitation to apply this novel legal theory for the first time in this Circuit.[8]

**B.    Section 338 Retroactively Deprives the Foundation of Vested Rights**

Plaintiffs assert that the Foundation cannot have vested rights in the Painting because it is based on prior decisions in this case that have since been vacated.  (Pls.' Opp. Br. at 10.)[9]  Plaintiffs' reductive argument fails to grapple with this Court's prior due process rulings, controlling Supreme Court precedent, and the lack of California contacts rendering Section 338's mandate to apply California law impermissible.

In concluding the Foundation has a vested property interest in the Painting, this Court quoted from the Supreme Court in *Campbell v. Holt*, 115 U.S. 620 (1885) in explaining why retroactive legislation depriving a party of vested rights violates

---

[7] *See* Declaration of Evelio Acevedo Carrero, Director Gerente / Managing Director of the Foundation, dated November 20, 2018, and exhibits attached thereto (Dkt. 411).  Mr. Carrero also appeared, in person, in the trial of this action, and Plaintiffs sought no testimony regarding Spain's alleged "control" of the Foundation.

[8] Plaintiffs voluntarily dismissed the Kingdom of Spain from this lawsuit. (Dkt. 313.)  *See also* Brief by Amicus Curiae The Kingdom of Spain (Dkt. 684-1 ("the Foundation is a Spanish instrumentality that is itself devoted to the public trust"); Brief for the United States as Amicus Curiae in Cassirer v. Kingdom of Spain (No. 10-786) (2010) (asserting because the Painting is "owned" by the Foundation, Spain may "not ultimately be subject to the district court's jurisdiction").

[9] Plaintiffs ignore the appellate court decisions left undisturbed this Court's factual findings.  *See generally Meza-Carmona v. Garland*, 113 F.4th 1163, 1167 (9th Cir. 2024) ("Factual findings by the district court, 'whether based on oral or other evidence, must not be set aside unless clearly erroneous.'"); *In re Hawaii Island Air, Inc.*, 640 B.R. 567, 573 (Bankr. D. Haw. 2022) (concluding vacatur of summary judgment did not permit party to challenge prior factual determinations).

DEFENDANT'S REPLY IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT
Case No.: 05-cv-03459-JFW (Ex)

due process: "The reason is that, ***by the law in existence before the repealing act***, the property had become the defendant's." *Cassirer*, 153 F. Supp. 3d at 1167-68 (emphasis added).  Here, the applicable law before Section 338 was enacted resulted in Spanish law applying to this dispute, and under Spanish law "the Foundation acquired ownership of the Painting as of June 21, 1999, six years after it purchased the Painting." *Id.* at 1167.  Plaintiffs' argument that the subsequent enactment of Section 338 in 2024, twenty-five years after the Foundation's rights vested, means that the Foundation "never had legal title to the Painting" (Pls.' Br. at 10) ignores the sound reasoning of this Court and the Supreme Court in *Campbell*.

To support their argument that Section 338 may be applied here, Plaintiffs cite to irrelevant cases for the proposition that passing retroactive legislation is generally within the Legislature's purview.  (Pls. Opp. Br. at 11.)  However, these cases make clear that such legislation may only be applied "in cases in which it is ***constitutionally permissible*** for the new law to control." *People v. Padilla*, 13 Cal. 5th 152, 162 (2022) (emphasis added).  Plaintiffs' reliance on Section 338's "formal legislative findings" is also misplaced and ignores that the Legislature itself acknowledged that "a statutory directive [by the] state on choice of law" is "***subject to constitutional restrictions***."  (Pls.' Opp. Br. at 10 (citing AB 2867, §1(j) (emphasis added).)

**C.    Section 338 Impermissibly Bases Forum Law on a Residency Alone**

Section 338 impermissibly mandates the application of California law regardless of the State's interests or relevant contacts to a case, so long as the plaintiff is a California resident.  That mandate is the antithesis of a constitutionally permissible choice-of-law test.  *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 310 (1981) ("*Dick* concluded that nominal residence—standing alone—was inadequate; *Yates* held that a postoccurrence change of residence to the forum State—standing alone—was insufficient to justify application of forum law").

Plaintiffs reliance on *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106 (9th Cir. 2013) to distinguish this well-established line of Supreme Court

DEFENDANT'S REPLY IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT
Case No.: 05-cv-03459-JFW (Ex)

precedent is misplaced and demonstrates Section 338 cannot meet this standard. (Pls.' Opp. Br. at 13.)  In *AT&T Mobility*, the Ninth Circuit, applying *Allstate*, held the Cartwright Act could be "applied without violating a defendant's due process rights ***when more than a*** **de minimis** ***amount of that defendant's alleged conspiratorial activity . . . took place in California*****."** *Id.* at 1113 (emphasis added). As the court concluded, the "***conduct by a defendant within a state that is related to a plaintiff's alleged injuries*** and is not 'slight and casual' establishes a 'significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.'"[10] *Id.* at 1113 (emphasis added).

Here, none of the "relevant" in-state conduct cited by Plaintiffs relates to the Foundation's actions or Plaintiffs' alleged injuries.  (Pls.' Opp. Br. at 13-14 (noting that "Claude and Beverly Cassirer retired to San Diego in 1980", "Claude created a California family trust", and "Claude and Beverly lived in San Diego").)  Plaintiffs' assertion that the Foundation engaged in "numerous" "commercial activities in California" mischaracterizes this Court's prior finding that the Foundation engaged in sufficient "commercial activities ***in the United States***" to support a finding that the expropriation exception applied, and the Ninth Circuit expressly noted this finding was "not 'inextricably intertwined' with a decision that the exercise of personal jurisdiction comports with due process." *Cassirer,* 616 F.3d at 1025.[11]

As the Supreme Court emphasized in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985), "***the underlying theory of a choice-of-law due process claim must be that the parties plan their conduct and contractual relations based upon their legitimate expectations concerning the subsequent legal consequences of***

---

[10] As subsequent courts applying *AT&T Mobility* have made clear, "[e]ven if constitutional concerns are satisfied, however, ***choice of law rules should be considered***[.]" *In re Korean Ramen Antitrust Litig.*, No. 13-CV-04115-WHO, 2017 WL 235052, at *21 (N.D. Cal. Jan. 19, 2017) (emphasis added).

[11] The Painting's brief presence in California before the Foundation purchased it and well-after it was wrongfully taken (*see* Pls.' Opp. Br. at 13) is also irrelevant to determining whether there is sufficient in-state conduct by the Foundation.

*their actions*." *Id.* (emphasis added). Here, "applying California law based only on the Cassirers' choice of residence would mean that Spain could not provide any 'reasonable assurance[s]'" to persons who possess property within Spain's borders that Article 1955 would ever protect them from replevin or damages actions by California claimants." *Cassirer*, 89 F.4th at 1243.[12]

### D. Section 338 Cannot Pass Strict Scrutiny Review

Plaintiffs assert that the Foundation "cites no case that has ever recognized any fundamental right to possess stolen property such as the Painting." (Pls.' Opp. Br. at 15.) Plaintiffs not only ignore the prior decisions in this case rejecting these arguments,[13] but their vague assertion that the Supreme Court's precedent cited by this Court "all involved government actions seriously affecting the personal rights of individual human beings" completely misstates basic Constitutional principles. The Supreme Court has repeatedly and conclusively held corporations are fully entitled to the protection of the Due Process Clause.[14] Plaintiffs' argument that rational basis review applies because the Foundation it is not a "human being" (Pls.' Opp. Br. at 15) ignores these established Constitutional principles. Because Section 338 is not narrowly tailored or necessary to advance any compelling state interest, the new law violates the Foundation's due process rights.

### III. Section 338 Violates the Commerce Clause

Section 338 also violates the Commerce Clause because it directly and intentionally regulates wholly extraterritorial conduct, discriminates against foreign

---

[12] Even though *Phillips* squarely addresses "the underlying theory of a choice-of-law due process claim," the only response Plaintiffs offer is that *Phillips* provides an "irrelevant discussion of choice-of-law in class actions." (Pls.' Opp. Br. at 12.)

[13] *See Cassirer*, 153 F. Supp. 3d at 1167 (recognizing Foundation's fundamental liberty interest in ownership of the Painting); *Cassirer*, 737 F.3d at 620 (rejecting Plaintiffs' argument that prior "§ 338(c)(3) need only pass rational basis review").

[14] *See First Nat'l Bank v. Bellotti*, 435 U.S. 765, 780 n. 15 (1978) ("the Court has not identified a separate source for the right when . . . asserted by corporations"; "It has been settled for almost a century that corporations are persons within the meaning of the Fourteenth Amendment"); *Cox v. Mariposa Cnty.*, No. 119CV01105AWIBAM, 2022 WL 4664129, at *8 (E.D. Cal. Sept. 30, 2022) (collecting cases).

commerce, and prevents the federal government from acting with a single voice with respect to matters of foreign commerce.  In opposition, Plaintiffs argue that the Supreme Court's decision in *National Pork Producers Council v. Ross*, 598 U.S. 356 (2023) "sharply undercuts" the Foundation's arguments.  (Pls.' Opp. Br. at 16.) Plaintiffs provide little explanation for that assertion, and the Court's decision in *National Pork* did nothing to undermine the *Brown-Forman* and *Healy* line of cases the Foundation relied upon; rather, the Court merely found this "precedent does not support a *per se* rule against state laws with 'extraterritorial' effects.'" *National Pork*, 598 U.S. at 394 (Roberts, J., concurring).  As courts have since found, "[t]he Supreme Court did not curtail the *Baldwin-Healy* line of cases but only clarified there is no '*per se*' rule that follows from them.  In so doing, the Supreme Court noted 'each [of these cases] typifies the familiar concern with preventing purposeful discrimination against out-of-state economic interests.'" *Ass'n for Accessible Medicines v. Bonta*, 766 F. Supp. 3d 1020, 1033 (E.D. Cal. 2025); *see also Nat'l Shooting Sports Found. v. Bonta*, 718 F. Supp. 3d 1244, 1256, n.1 (S.D. Cal. 2024), *reconsideration denied*, No. 23-CV-0945-AGS-KSC, 2025 WL 1012326 (S.D. Cal. Mar. 31, 2025) ("The Attorney General hints that plaintiff's dormant Commerce Clause theory may be foreclosed by *National Pork* . . .  It is not.).

Moreover, binding precedent from the Ninth Circuit further supports the Foundation's Commerce Clause arguments.  In *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320 (9th Cir. 2015), the court held a California statute regulating sales outside the state violated the dormant Commerce Clause because it "facially regulates a commercial transaction that 'takes place wholly outside the State's borders.'" *Id.* at 1322–24.  The statutory language at issue required the payment of royalties to the artist after the sale of fine art "whenever 'the seller resided in California or the sale took place in California.'" *Id.* at 1323.  Notably, defendants only challenged the first part of that clause, on the basis that "it regulates sales. . . [with no] connection with the state other than the residency of the seller." *Id.*  In accepting defendants'

arguments, the Ninth Circuit "easily concluded" that the statute violated the dormant Commerce Clause and provided the following, illustrative example:

> For example, if a California resident has a part-time apartment in New York, buys a sculpture in New York from a North Dakota artist to furnish her apartment, and later sells the sculpture to a friend in New York, the Act requires the payment of a royalty to the North Dakota artist—***even if the sculpture, the artist, and the buyer never traveled to, or had any connection with, California***.  We easily conclude that the royalty requirement, as applied to out-of-state sales by California residents, violates the dormant Commerce Clause.

*Id.* at 1323 (emphasis added).[15]

Similarly in *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 615 (9th Cir. 2018), the Ninth Circuit invalidated a statute regulating the disposal of medical waste after it had been removed from the State, holding the legislature's "attempt to reach beyond the borders of California and control transactions that occur wholly outside of the State" was "little different from *Sam Francis*."  *Id.* at 616 ("California has attempted to regulate waste treatment everywhere in the country, just as it tried to regulate art sales").  In finding the district court correctly held plaintiff was "likely to succeed [on the merits] of its claim that . . . application of the [statute] constitute[d] a '*per se* violation of the Commerce  Clause[,]'" the court aptly concluded: "One state cannot be permitted to dictate what other states must do within their own borders."  *Id.* at 615-16.  Plaintiffs' arguments cannot withstand these controlling precedents, which forbid Section 338's unprecedented, extraterritorial reach.[16]

## IV.    Section 338 is Federally Preempted
### A.    Section 338 is Subject to Conflict Preemption

Plaintiffs contend the Foundation's "argument for conflict preemption is based on the alleged primacy of one single provision of the Washington Principles, Terezin

---

[15] Plaintiffs' reliance on *National Pork* also fails on its own terms, as the Court noted the statute "regulates only products that ***companies choose to sell 'within' California*."  *National Pork*, 598 U.S. at 376, n.16 (emphasis added).

[16] *See also Accessible Medicines*, 766 F. Supp. 3d at 1033 (declaring statute violates the Commerce Clause, and rejecting State's argument that "the Supreme Court curtailed the *Baldwin-Healy* line of cases in *Pork Producers* and that *Sam Francis* and *Sharpsmart* may no longer be good law").

Declaration, and 2024 Best Practices." (Pls.' Opp. Br. at 21.)  Plaintiffs are wrong, as that provision merely serves as one data point in the preemption analysis and the "documented history of federal action addressing the subject of Nazi-looted art" that the Ninth Circuit has found "is so comprehensive and pervasive as to leave no room for state legislation." *Von Saher v. Norton Simon Museum*, 592 F.3d 954, 967 (9th Cir. 2010); *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067 (9th Cir. 2012) .

Plaintiffs' argument is based almost entirely on the Ninth Circuit's decision in *Von Saher v. Norton Simon Museum of Art at Pasadena*, 754 F.3d 712 (9th Cir. 2014), which is easily distinguishable from the preemption cases cited by the Foundation.  As the court in *Von Saher* explained, "unlike *Garamendi,* [plaintiff] *seeks relief from an American museum* that had no connection to the war[.]"  In finding plaintiff's claims did "not conflict with foreign policy," the court emphasized the case "*concerns a dispute between two private parties*" and that "*Von Saher I . . .* [involved] an altogether different issue from the one we now decide, *which is whether Von Saher's specific claims against the Museum—in just this one case— conflict with foreign policy*.  *Id.* at 723–24 (emphasis added).[17]  Nothing in the court's opinion supports Plaintiffs' assertion that it would be consistent with federal policy to ignore Spain's interest and apply California law to a Nazi-era restitution claim against a foreign museum with no meaningful factual connection to California.

## B.    Section 338 is Subject to Field Preemption

The Ninth Circuit has repeatedly invalidated California laws that, in substance and effect, sought to craft remedies for World War II–era injuries, looking past nominal subject-matter labels to the statute's real purpose and practical effect, and holding each statute was preempted where it ultimately sought to "provide potential

---

[17] Plaintiffs' reliance on *Philipp v. Federal Republic of Germany*, 894 F.3d 406, 418 (D.C. Cir. 2018) is also misplaced, as no state statute was at issue and that decision merely found the HEAR Act does not preempt state common law property-based claims.  *See id.* ("there is no 'direct conflict between the property-based common law claims raised by Plaintiffs and [United States] foreign policy'").

monetary relief and a friendly forum for those who suffered from certain foreign events." *Movsesian*, 670 F.3d at 1076; *Von Saher*, 592 F.3d at 967. Citing this line of authority, even the Legislature that amended Section 338 readily acknowledged that it "certainly raises a preemption issue." (*Bill Analysis*, Bill AB 2867, prepared for the Assembly Committee on Judiciary, April 27, 2024 ("*Bill Analysis*") at 9.)

Plaintiffs inaccurately characterize *Garamendi*, *Von Saher*, and *Movsesian* as cases where a law was "expressly limited to plaintiffs who were members of a particular group." (Pls.' Opp. Br. at 29.) As those decisions all make clear, to determine whether a statute "concerns an area of traditional state responsibility," this Court's "required inquiry cannot begin and end, as Plaintiffs suggest, with the area of law that the state statute addresses. On the contrary, [the Court] must look further to determine the 'real purpose of the state law.'" *Movsesian*, 670 F.3d at 1071. Here, Section 338's text and legislative history reveal that Section 338 does not concern a traditional state responsibility, as the legislature expressly acknowledged it is "primarily concerned about art stolen by the Nazis during World War II, as the reference to the HEAR Act indicates." (*Bill Analysis*, at 2.)[18]

Moreover, while Plaintiffs note the Ninth Circuit previously upheld a prior version of § 338(c)(3) in *Cassirer*, 737 F.3d at 620, that decision was based, in part, on the fact that there was no "evidence in the record at this stage in the proceedings that California courts, as in *Zschernig*, are applying § 338(c)(3) to 'establish [the State's] own foreign policy.'" The same cannot be said here, however.

In *Zschernig v. Miller*, 389 U.S. 429, 442 (1968), the Supreme Court struck down an Oregon probate law that, in application, "affected international relations in

---

[18] The Ninth Circuit and California Supreme Court have repeatedly held courts "may consider . . . 'the history of the statute, committee reports, and staff bill reports . . . to determine the intent of the Legislature.'" *Astaire v. Best Film & Video Corp.*, 116 F.3d 1297, 1302 (9th Cir. 1997), *amended*, 136 F.3d 1208 (9th Cir. 1998); *DeCastro W. Chodorow & Burns, Inc. v. Superior Ct.*, 47 Cal. App. 4th 410, 418 (1996) ("legislative history of a statute and the wider historical circumstances of its enactment may be considered in ascertaining legislative intent") (cleaned up); *In re J.W.*, 29 Cal. 4th 200, 210 (2002) (same).

a persistent and subtle way."[19]  Acknowledging the law "on its face" simply required courts to "read, construe, and apply laws of foreign nations[,]" the Court went on to assess "the manner of [the law's] application," observing the law compelled state courts to "launch[] inquiries into the type of governments [and laws] in particular foreign nations[.]" *Id.* at 433; *see also id.* at 442 (Stewart, J., concurring) (noting the statute triggered assessments "either expressed or implied, of . . . the policies of foreign governments").  In short, the statute "seemed to make unavoidable judicial criticism of [certain foreign] nations[,]" and "thrust [courts] into these inquiries only because the Oregon Legislature has framed [its law] to the prejudice of nations whose policies it disapproves and thus [] trespassed upon an area where the Constitution contemplates that only the National Government shall operate." *Id.* at 440-42.[20]

Here, by mandating the application of California law while simultaneously dismissing the laws and interests of any other nation, Section 338 affects international relations in a *more* persistent and *less* subtle way than the law at issue in *Zschernig*. Section 338 further expressly "prejudice[s] [Spain's] policies it disapproves" of by barring application of Article 1955 of the Spanish Civil Code or any other "[d]efenses that the defendant acquired the title in good faith, by acquisitive prescription, or by adverse possession[.]" *See* Section 338.2(f).  By mandating California law to a case where California has no interest, Section 338 intentionally, and undoubtedly, affects international relations in violation of these constitutional principles.

## CONCLUSION

For all these reasons, this Court should grant the Foundation's motion.

---

[19] The law prohibited inheritance by nonresident aliens absent a showing, *inter alia*, that the alien's home country would not confiscate the inheritance.  *Id.* at 430–32.

[20] *See also In re World War II Era Japanese Forced Labor Litig.*, 164 F.Supp.2d 1160 (N.D. Cal. 2001), *aff'd sub nom. Deutsch v. Turner Corp.*, 317 F.3d 1005 (9th Cir. 2003), *opinion amended and superseded on denial of reh'g*, 324 F.3d 692 (9th Cir. 2003) (holding California statute preempted where the statute's "terms . . . and legislative history demonstrate a purpose to influence foreign affairs directly . . . [and] target[] particular countries"); *Movsesian, 670 F.3d at 1077* (quoting *Zschernig* and concluding "section 354.4 'has a direct impact upon foreign relations . . . '").

15

Dated: November 12, 2025

NIXON PEABODY LLP


By: */s/ Thaddeus J. Stauber*
    Thaddeus J. Stauber
    Aaron M. Brian
    Zachary C. Osinski

    Attorneys for Defendant
    Thyssen-Bornemisza Collection
    Foundation

DEFENDANT'S REPLY IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT
Case No.: 05-cv-03459-JFW (Ex)