**BOIES SCHILLER FLEXNER LLP**
John J. Kucera (Bar No. 274184)
    jkucera@bsfllp.com
Daniel G. Boyle (Bar No. 332518)
    dboyle@bsfllp.com
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

David A. Barrett (admitted *pro hac vice*)
    dbarrett@bsfllp.com
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

**KENDALL BRILL & KELLY LLP**
Laura W. Brill (Bar No. 195889)
    lbrill@kbkfirm.com
Jeffrey M. Chemerinsky (Bar No. 270756)
    jchemerinsky@kbkfirm.com
10100 Santa Monica Blvd., Suite 2500
Los Angeles, CA 90067
Telephone: (310) 556-2700
Facsimile: (310) 556-2705

[Additional counsel on signature page]
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DAVID CASSIRER, *et al.*,<br><br>                    Plaintiffs,<br>    v.<br><br>THYSSEN-BORNEMISZA COLLECTION FOUNDATION, an agency or instrumentality of the Kingdom of Spain,<br><br>                    Defendant. | Case No. 2:05-cv-03459-JFW (Ex)<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT**<br><br>Date: December 15, 2025<br>Time: 1:30 p.m.<br>Courtroom: 7A<br>Judge:  Honorable John F. Walter |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......................................................................... iv

INTRODUCTION ................................................................................... 1

ARGUMENT ......................................................................................... 3

I.  TBC Is Subject to Jurisdiction under the FSIA ................................. 3

II. TBC's Constitutional Challenges to Section 338(c)(6) Are Meritless ................... 6

    A.  TBC Has No Due Process Rights, Nor Would Section 338(c)(6) Violate Any Rights if TBC Had Them ........................................ 6

        1.  TBC Has No "Vested Right" in the Painting and Retroactive Application of Section 338(c)(6) Is Proper ................................. 6

        2.  California Has Sufficient Contacts to Mandate Application of its Law   .................................................................... 7

        3.  Strict Scrutiny Is Inapplicable to Section 338(c)(6) ................. 8

    B.  Section 338(c)(6) Does Not Violate the Commerce Clause ................. 9

        1.  Section 338(c)(6) Does Not Violate the "One Voice" Principle .... 9

        2.  Section 338(c)(6) Does Not Discriminate against Foreign Commerce ............................................................ 10

        3.  Any Extraterritorial Impact of Section 338(c)(6) Does Not Violate the Commerce Clause ............................................ 11

    C.  Section 338(c)(6) Is Consistent with Federal Policy, Not Preempted ....... 11

        1.  TBC's Field Preemption Argument Is Meritless ..................... 11

        2.  TBC's Conflict Preemption Argument Is Meritless ................. 12

III.  Prior Decisions that TBC Cites as Law of the Case Should Not Be Followed ............................................................................ 13

    A.  Application of California's Common Law Choice-of-Law Test Must Incorporate Federal Treaties, Laws, Policies, and International Agreements .................................................................. 13

    B.  The HEAR Act Bars TBC's Acquisitive Prescription Defense ............. 14

C.  Federal Interests Preempt Application of California Law to Award Title to TBC ...................................................................................... 14

CONCLUSION ...................................................................................... 15

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF SUMMARY JUDGEMENT

# TABLE OF AUTHORITIES

**Cases**

*Allstate Ins. Co. v. Hague*,
   449 U.S. 302 (1981) ............................................................................. 7, 8

*AT&T Mobility LLC v. AU Optronics Corp.*,
   707 F.3d 1106 (9th Cir. 2013) ................................................................... 7

*Bank Markazi v. Peterson*,
   578 U.S. 212 (2016) ................................................................................... 6

*Cassirer v. Kingdom of Spain*,
   616 F.3d 1019 (9th Cir. 2010) ("*Cassirer I*") ........................................... 4

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
   737 F.3d 613 (9th Cir. 2013) ("*Cassirer II*") .................................. 7, 9, 12

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
   862 F.3d 951 (9th Cir. 2017) ("*Cassirer III*") .................................. 10, 14

*Cassirer v. Thyssen-Bornemisza Collection Found*,
   596 U.S. 107 (2022) ("*Cassirer V*") ............................... 3, 10, 11, 14

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
   89 F.4th 1226 (9th Cir. 2024) ("*Cassirer VII*") ............................ 1, 13, 14

*Cassirer v. Kingdom of Spain*,
   461 F. Supp. 2d 1157 (C.D. Cal. 2006) .................................................... 4

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
   145 S. Ct. 1331 (2025) ............................................................................... 3

*Crosby v. Nat'l Foreign Trade Council*,
   530 U.S. 363 (2000) ................................................................................... 9

*Fed'l Republic of Germany v. Philipp*,
   592 U.S. 169 ....................................................................... 3, 4, 5, 12

*Frontera Resources Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Republic*,
   582 F.3d 393 (2d Cir. 2009) ...................................................................... 6

*Graham v. DaimlerChrysler Corp.*,
   34 Cal. 4th 553 (2004) ............................................................................... 2

*Hauenstein v. Lynham*,
   100 U.S. 483 (1879) ................................................................................. 13

*Haywood v. Drown*,
   556 U.S. 729 (2009) ................................................................................. 13

*In re Rainbow Mag., Inc.*,
   77 F.3d 278 (9th Cir. 1996) ..................................................................... 13

*Japan Line, Ltd. v. Los Angeles Cnty.*,
  441 U.S. 434 (1979) .................................................................................... 9

*Kearney v. Salomon Smith Barney, Inc.*,
  39 Cal. 4th 95 (2006).......................................................................... 13, 14

*Kingdom of Spain v. Est. of Cassirer*,
  564 U.S. 1037 (2011) .................................................................................. 4

*Martinez v. Regents of Univ. of California*,
  50 Cal. 4th 1277 (2010)............................................................................. 2

*National Pork Producers Council v. Ross*,
  598 U.S. 356 (2023) ............................................................................ 10, 11

*New York Cent. R. Co. v. White*,
  243 U.S. 188 (1917) .................................................................................... 8

*Oregon Waste Sys. v. Dept of Env't Quality*,
  511 U.S. 93 (1994) .................................................................................... 11

*People v. Bunn*,
  27 Cal.4th 1 (2002)...................................................................................... 6

*Philipp v. Fed'l Rep. of Germany*,
  894 F.3d 406 (D.C. Cir. 2018) ................................................................ 12

*Plaut v. Spendthrift Farm*,
  514 U.S. 211 (1995) .................................................................................... 6

*Price v. Socialist People's Libyan Arab Jamahiriya*,
  294 F.3d 82 (D.C. Cir. 2002) .................................................................... 6

*Simon v. Republic of Hungary*,
  77 F.4th 1077 (D.C. Cir. 2023) ............................................................. 3, 5

*United States v. Jingles*,
  702 F.3d 494 (9th Cir. 2012)...................................................................... 3

*Von Saher v. Norton Simon Museum*,
  592 F.3d 954 (9th Cir. 2010) ("*Von Saher I*") ..................................... 9, 12

*Von Saher v. Norton Simon Museum*,
  754 F.3d 712 (9th Cir. 2014) ("*Von Saher II*")........................... 7, 9, 10, 12

*Washington v. Glucksberg*,
  521 U.S. 702 (1997) ................................................................................ 8, 9

*Young v. Superior Court*,
  79 Cal. App. 5th 138 (2022)...................................................................... 2

**Statutes**

28 U.S.C. §1605................................................................................... 4, 5, 6

Cal. Civ. Proc. Code §338 ............................................................................passim

California Assembly Bill 2867 ....................................................................3, 12

Holocaust Expropriated Art Recovery (HEAR) Act, Pub. L. No. 114-308, 130 Stat.
  1524 (2016) ...................................................................................3, 10, 12, 14

**Other Authorities**

Best Practices for the Washington Conference Principles on Nazi-Confiscated Art,
  U.S. Dep't of State (March 5, 2024) ..................................................... 15

Lea Brilmayer & Charles Norchi, *Federal Extraterritoriality and Fifth Amendment
  Due Process*, 105 Harv. L. Rev. 1217 (1992) .......................................... 7

*Yearbook of the International Law Commission, 2006*, Vol. II, Part Two. .................. 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **INTRODUCTION**

Plaintiffs David Cassirer, *et al*. submit this memorandum in reply to Defendant Thyssen-Bornemisza Collection's ("TBC's") Opposition to Plaintiffs' Motion for Summary Judgment. D.E. 691 ("Opp.").

Plaintiffs' motion is simple and straightforward.  Plaintiffs are entitled to recover the painting by Camille Pissarro titled *Rue Saint-Honoré, Afternoon, Rain Effect* (1897) (the "Painting") from TBC, under pleaded legal theories, because the Painting was expropriated by the Nazis from Plaintiff David Cassirer's great-grandmother, Lilly Cassirer.  Under California substantive law, which now applies under CCP §338(c)(6), TBC never acquired title to the stolen Painting.  Rather, the Painting belongs to Plaintiffs and must be returned.

TBC's Response to Plaintiffs Statement of Uncontroverted Material Facts and Conclusions of Law does not dispute the underlying facts necessary to establish Plaintiffs four causes of action. *See* D.E. 691-1 ("SUF-P Resp.") ¶¶ 1–14, 16–22, 26–28, 36–38, 57. Moreover, every court that has considered the case has ruled that under California law, the Painting belongs to Plaintiffs. *See, e.g.*, *Cassirer v. Thyssen-Bornemisza Collection Found.*, 89 F.4th 1226, 1229 & n.3. (9th Cir. 2024) ("*Cassirer VII*").  Nor does TBC dispute that if California law applies, the Painting belongs to Plaintiffs.

In the face of this conclusive showing of Plaintiffs' ownership, TBC's response is to argue that CCP §338(c)(6) is unconstitutional. TBC is wrong, as Plaintiffs demonstrated in their Opposition to Defendant's Motion for Summary Judgment (D.E. 692 ("Pl. Opp.")) and summarize here.

In addition, TBC attempts to relitigate subject matter jurisdiction (Opp. 7–11), an issue it lost over a decade ago after litigating it exhaustively for nearly six years.  As Plaintiffs have demonstrated (Pl. Opp. at 3–7), TBC is barred from relitigating this issue under both the law of the case doctrine and the mandate rule, particularly because

1    TBC could have raised its current argument when jurisdiction was being actively

2    litigated, but failed to do so.

3         TBC also asserts that law of the case bars certain of Plaintiff's' arguments that

4    were previously raised unsuccessfully. *See* Opp. 23–28.  While Plaintiffs acknowledge

5    these earlier rulings, the issues have not been addressed by the Supreme Court and

6    Plaintiffs preserve them here.  Moreover, the "clearly erroneous" exception to law of

7    the case applies, as shown below.

8         As Plaintiffs noted in opposing TBC's summary judgment motion, TBC

9    repeatedly attempts to ascribe intent or admissions to the California Legislature by

10   misusing quotations from reports by legislative staff members. Pl. Opp. at 1–2.  TBC

11   repeats that practice in its Opposition. *See* Opp. at 13, 16, 20–23.  This reliance on the

12   "Bill Analysis" has been rejected by the California Supreme Court, which has decried

13   attempts at "strategic manipulations of legislative history," *Martinez v. Regents of*

14   *Univ. of California*, 50 Cal. 4th 1277, 1293 (2010), and precluded use of staff reports

15   to contradict statutory language. *See* Pl. Opp. at 1–2 (citing cases).  What controls are

16   the formal statutory findings of purpose and intent, "voted upon by the entire legislative

17   body." *Young v. Superior Court*, 79 Cal. App. 5th 138, 157 (2022); *see Graham v.*

18   *DaimlerChrysler Corp.*, 34 Cal. 4th 553, 572 n.5 (2004) ("Material showing the motive

19   or understanding of an individual legislator, including the bill's author, his or her staff

20   . . . is generally not considered . . . because such materials are generally not evidence

21   of the Legislature's *collective* intent.") (emphasis in original).

22        Moreover, TBC again bases parts of its argument on CCP §338.2. *See* Opp. at 6.

23   As Plaintiffs demonstrated (Pl. Opp. at 3), these arguments are irrelevant because

24   Plaintiffs are not asserting any claims involving §338.2.[1]

---

25   [1] For example, TBC asserts that "[t]he California Legislature expressly acknowledged
26   that the amendments 'go[] substantially beyond both existing California law and the
27   federal HEAR Act.'" SUF-P Resp. ¶ 48. This is seriously misleading for two reasons.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# ARGUMENT

## I.  TBC Is Subject to Jurisdiction under the FSIA

TBC's Opposition ignores that it litigated—and lost—the issue of FSIA immunity years ago.  Indeed, just a year after the Supreme Court decided *Philipp*, on which TBC heavily relies, the Court expressly recognized that jurisdiction exists in this case. Pl. Opp. at 4 (quoting *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 111–12 (2022) ("*Cassirer V*")).  Nothing in TBC's Opposition undermines Plaintiffs' showing that TBC's jurisdictional argument is barred by the law of the case doctrine and the mandate rule. *See* Pl. Opp. at 5–7.

As Plaintiffs discussed, *Simon v. Republic of Hungary*, 77 F.4th 1077 (D.C. Cir. 2023), also key to TBC's argument (Opp. at 9–11), is a D.C. Circuit case that is not "intervening *controlling* authority" that might justify an exception to law of the case. *United States v. Jingles*, 702 F.3d 494, 502–03 (9th Cir. 2012).[2]  No Ninth Circuit decision has addressed the issue and *Simon* itself recognized that *Philipp* did not decide the "stateless person" issue which TBC now raises. *Simon*, 77 F. 4th at 1096.

Nor can TBC avoid the preclusive effect of the mandate rule. *See* Pl. Opp. at xx. The Supreme Court has twice vacated the lower court decisions in this case, and in both instances, its mandate was limited to considering choice-of-law—first by directing application of California choice-of-law rules (*Cassirer V*, 596 U.S. at 112); and second, by directing consideration of AB 2867's statutory choice-of-law rule. *Cassirer v. Thyssen-Bornemisza Collection Found.*, 145 S. Ct. 1331 (2025).

TBC's argument that earlier decisions in this case are "no longer good law post-*Philipp*" is wrong. Opp. at 9.  *Philipp* held that the FSIA's expropriation exception, 28

---

First, it quotes from and relies solely on the Bill Analysis, which as noted, has no legal significance.  Second, the language quoted by TBC refers only to the irrelevant §338.2.

[2] Throughout this brief, unless otherwise indicated, all emphases in quotations are added and all citations are omitted.

1  U.S.C. §1605(a)(3), does not grant jurisdiction for takings that solely violate

2  international human rights law. *Fed'l Republic of Germany v. Philipp*, 592 U.S. 169,

3  180–84 (2021). But none of the decisions in the instant case relied on human rights law

4  in finding that the Painting was "taken in violation of international law" under

5  §1605(a)(3).

6    *Philipp* held that the "domestic takings" rule precluded §1605(a)(3) claims by a

7  country's citizens based on takings by their own government, and both this Court and

8  the Ninth Circuit *applied* that rule in upholding jurisdiction. *See Cassirer v. Kingdom*

9  *of Spain*, 461 F. Supp. 2d 1157, 1165–66 (C.D. Cal. 2006), *aff'd*, *Cassirer v. Kingdom*

10 *of Spain*, 616 F.3d 1019, 1022 (9th Cir. 2010) ("*Cassirer I*") (en banc), *cert. denied*,

11 564 U.S. 1037 (2011).  And because—as the Supreme Court recognized—the meaning

12 of "taken in violation of international law" has not changed since the FSIA's enactment,

13 *Philipp*, 592 U.S. at 172, TBC could have argued years ago—as it belatedly does

14 now—that Lilly was stateless, but it failed to do so.

15    Even if the jurisdictional issue were not foreclosed, TBC's argument rests on the

16 claim that Lilly Cassirer was "*de facto* stateless" when the Nazis stole the Painting.

17 Opp. at 9–11.  But whether Lilly was stateless and whether international law protects

18 stateless persons from expropriation are, at a minimum, highly debatable as a matter of

19 fact and law.[3]  Because TBC failed to timely raise these claims, there has been no

20 factual development or legal argument concerning them.  If the Court were inclined to

21 consider the issue at all, months, if not years, of further litigation would ensue.  For

22

23 [3]  For example, according to the International Law Commission Commentary to Article

24 8 of the Draft Articles on Diplomatic Protection, the view that a State does not commit
   a legal wrong by taking property of a stateless person "no longer reflects the accurate

25 position of international law for both stateless persons and refugees.  Contemporary
   international law reflects a concern for the status of both categories of persons."

26 *Yearbook of the International Law Commission, 2006*, Vol. II, Part Two.

27 https://legal.un.org/ilc/publications/yearbooks/english/ilc_2006_v2_p2.pdf, at 36.

28

1    example, the Court in *Philipp* remanded for determination of the plaintiff's status as a

2    German citizen, *Id.* at 187, which would have made no sense unless the Court believed

3    there may be circumstances in which expropriation from "stateless" Jews would

4    support jurisdiction under §1605(a)(3).

5        Similarly, the *Simon* opinion itself, 77 F.4th at 1096, even if applicable here,

6    recognizes multiple open questions that would apply to TBC's claims about Lilly's

7    nationality or statelessness:

8        What *Philipp* did not do … is limit the underlying facts a court may
         consider in identifying whether the expropriation exception applies or the
9        domestic takings rule is a bar. *Philipp* did not opine on, let alone foreclose,
         the possibility that conduct that could give rise to a claim of genocide
10       might also bear on the nationality inquiry for purposes of the expropriation
         exception or the domestic takings rule.  Rather, *Philipp* left open for lower
11       courts to resolve what conduct is relevant to the nationality inquiry.

12

13       The public record shows that Lilly and her husband, Professor Otto Neubauer,

14   were issued British visas in 1939 at the invitation of prominent members of the English

15   medical establishment so they could escape Nazi Germany and he could conduct

16   important medical research.[4]  Plaintiffs are entitled to show that Lilly was considered

17   a British national under international law principles, or had British ties sufficient to

18   place her under U.K. protection or not be considered stateless (even assuming stateless

19   persons have no rights under international law as TBC claims) and therefore, even

20   under TBC's argument, jurisdiction exists under §1605(a)(3).

21

22   _____

     [4]    Geni.com, Prof. Otto Neubauer (1874-1957): "The process for Neubauer's
23   emigration to England was started by Dr. Egan Radvany and Sir Ernest L. Kennaway
     of the Society of the Protection of Science and Learning and secured for him and his
24   wife      Lily      in      1939."      https://www.geni.com/people/Prof-Otto-
     Neubauer/6000000002765263904.  Lilly and Otto lived in England until he died in
25   1957, when Lilly came to the U.S. and lived in Cleveland with her grandson Claude
     and his family, including her great-grandson David Cassirer, Plaintiff here and her sole
26   surviving heir, until she passed away in 1962.

27

28

**II. TBC's Constitutional Challenges to Section 338(c)(6) Are Meritless**

    **A. <u>TBC Has No Due Process Rights, Nor Would Section 338(c)(6) Violate Any Rights if TBC Had Them</u>**

    As an instrumentality extensively controlled by a foreign government, TBC is not a "person" entitled to due process protections. *See Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 96 (D.C. Cir. 2002) ("foreign states are not 'persons' protected by the Fifth Amendment"); *Frontera Resources Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Republic*, 582 F.3d 393, 400 (2d Cir. 2009) (no due process rights where "the state so extensively controls the instrumentality that a relationship of principal and agent is created"). TBC cites nothing to the contrary. Accordingly, TBC's arguments based on cases that address due process rights of persons (Opp. at 12–16) are meaningless here. And even if TBC had due process rights, §338(c)(6) would not violate them for the reasons set forth below.

    **1. TBC Has No "Vested Right" in the Painting and Retroactive Application of Section 338(c)(6) Is Proper**

    TBC's assertion it has "vested property rights" to the Painting (Opp. at 12) rests on prior decisions in this case that applied Spanish law, but those decisions were twice vacated by the Supreme Court. There has never been any final judgment establishing the parties' ownership rights, and nothing has "vested" in TBC. *See* Pl. Opp. at 10.

    In any event, "[w]hen a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly." *Plaut v. Spendthrift Farm*, 514 U.S. 211, 226 (1995) (relied on in *People v. Bunn*, 27 Cal.4th 1, 5 (2002)). This rule applies "even when the amendment is outcome determinative." *Bank Markazi v. Peterson*, 578 U.S. 212, 215 (2016).

    Section 338(c)(6) expressly provides that it applies to "all actions pending on the date [it] becomes operative . . .  including any action"—as here—in which "the time

1  for filing any appeal, including any petition for a writ of certiorari . . . has not expired."

2  This explicit legislative directive must be enforced, just as the Ninth Circuit applied

3  2010 California legislation that retroactively extended the statute of limitations in

4  stolen art cases. *See Cassirer v. Thyssen-Bornemisza Collection Found.*, 737 F.3d 613,

5  616–17 (9th Cir. 2013) ("*Cassirer II*"); *Von Saher v. Norton Simon Museum*, 754 F.3d

6  712, 718–19 (9th Cir. 2014) ("*Von Saher II*").

7  **2.  California Has Sufficient Contacts to Mandate Application of its Law**

8  TBC's reliance on *Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981) (Opp. 2, 14-

9  15) is misplaced.  As the Ninth Circuit recognized in *AT&T Mobility LLC v. AU*

10  *Optronics Corp.*, "*Allstate* places only '*modest restrictions* on the application of forum

11  law,' and most commentators have viewed *Allstate* as setting a *highly permissive*

12  standard." 707 F.3d 1106, 1111 & n.10 (9th Cir. 2013) (quoting  Lea Brilmayer &

13  Charles Norchi, *Federal Extraterritoriality and Fifth Amendment Due Process*, 105

14  HARV. L. REV. 1217, 1240 (1992)) ("Hague signaled judicial willingness to allow states

15  *extreme latitude* in applying their own laws.").

16  For example, in *Allstate*, which involved a claim under a Wisconsin insurance

17  policy for the death of a Wisonsin resident in a car crash in Wisconsin, the Court upheld

18  application of Minnesota law.  It did so despite contacts limited to the decedent's

19  employment in Minnesota, his wife's remarriage and move there, and the insurer's

20  operations there.  This established Minnesota's "significant aggregation of contacts

21  with the parties and the occurrence, creating state interests, such that application of its

22  law was neither arbitrary nor fundamentally unfair." *Allstate*, 449 U.S. at 302.

23  Contrary to TBC's claim, California has a "significant aggregation of contacts,"

24  which extend well beyond Plaintiffs' residence that predated litigation by two decades.

25  These include that the Painting was illegally imported into California without the

26  requisite license from the U.S. military government of Germany that was specifically

27  intended to block trafficking in Nazi plunder—a governmental interest that California

28

1  shares in its policies to discourage theft and trafficking in stolen property and to protect

2  theft victims. Pl.'s Opp. at 12–14; SUF-P Resp. ¶ 18 (TBC does not deny absence of a

3  license and that Military Law No. 52 voided unlicensed transactions). *Allstate* is a

4  "highly permissive" threshold, one that California easily meets.

### 3.  Strict Scrutiny Is Inapplicable to Section 338(c)(6)

6      Aside from having no right to claim due process protections, TBC's arguments

7  about strict scrutiny depend entirely on its claim to having a "vested property right."

8  Opp. at 15.  Not only is that argument circular—because it depends on the outcome of

9  the very choice-of-law question that is at issue—but it fails because there has never

10  been a final, non-appealable decision awarding title to TBC.

11      Aside from these fatal flaws, TBC's strict scrutiny argument fails because it

12  mischaracterizes the interest at issue as an "ownership interest" and thus

13  "fundamental." *Id.*  But §338(c)(6) does not govern property rights; it governs choice-

14  of-law.  At most, TBC asserts an interest in application of common-law choice-of-law

15  rules instead of those enacted by the Legislature.  But "[n]o person has a vested interest

16  in any rule of law, entitling him to insist that it shall remain unchanged for his benefit."

17  *New York Cent. R. Co. v. White*, 243 U.S. 188, 198 (1917).

18      For the same reason, TBC's asserted right to rely on an acquisitive prescription

19  defense is not an interest that warrants strict scrutiny. *See Washington v. Glucksberg,*

20  *521 U.S. 702, 720 (1997)* (Court's listing of "certain fundamental rights and liberty

21  interests" that receive "heightened protection" comprises personal rights of

22  individuals).  TBC cites no authority recognizing that there is a fundamental right to

23  possess stolen property and acquire good title through adverse possession, and the law

24  and history of this country preclude any such claim.[5]

---

[5] All States but one generally reject adverse possession for movable personal property
and preclude a thief from conveying good title no matter how many years have passed
or the number of subsequent purchasers. This widespread consensus further

1    **B.  Section 338(c)(6) Does Not Violate the Commerce Clause**

2    **1.  Section 338(c)(6) Does Not Violate the "One Voice" Principle**

3    TBC argues that §338(c)(6) purportedly "infringes on *our country's* ability to

4    act with one voice." Opp. at 17.  Aside from the absurdity of a foreign government's

5    agent claiming to speak for "our country," TBC relies on inapposite cases addressing

6    state taxation of foreign commerce and foreign affairs preemption.  *See, e.g.*, *Japan*

7    *Line, Ltd. v. Los Angeles Cnty.*, 441 U.S. 434, 437 (1979) ("one-voice" principle

8    violated by state tax on shipping containers that U.S. treaty specifically exempted from

9    taxation); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373–76 (2000) (law

10   prohibiting state government from buying Burmese products preempted by Federal

11   statute giving President authority to control economic sanctions against Burma).

12   Even if TBC's "one voice" argument had any basis in the Commerce Clause,

13   TBC fails to identify any federal policy inhibited by §338(c)(6)'s operation. It relies

14   solely on a quotation from *Von Saher v. Norton Simon Museum*, 592 F.3d 954, 967 (9th

15   Cir. 2010) ("*Von Saher I*"), that the "history of federal action is so comprehensive and

16   pervasive as to leave no room for state legislation." Opp. at 17.  But Congress overruled

17   *Von Saher I* by enacting the HEAR Act,[6] and the Ninth Circuit upheld California's

18   amended statute in *Cassirer II* and *Von Saher II. See* Pl. Opp. at 10–11, 22–23.

19   ─────────────────

20   underscores that gaining title to stolen artwork by adverse possession cannot possibly
     be a fundamental right. *See* *Glucksberg*, 521 U.S. at 720–21 (due process "specially

21   protects those fundamental rights and liberties which are, objectively, *deeply rooted* in
     this Nation's *history and tradition*").

22   [6] *See* Holocaust Expropriated Art Recovery (HEAR) Act, Pub. L. No. 114-308, §1–2,

23   130 Stat. 1524–1525 (2016):

24       Federal legislation is needed because the only court that has considered
         the question held that the Constitution prohibits States from making

25       exceptions to their statutes of limitations to accommodate claims

26       involving the recovery of Nazi-confiscated art. . . . In light of [*Von Saher*
         *I*], the enactment of a Federal law is necessary . . . [t]o ensure that claims

27

28

9                    Case No. CV 05-03459-JFW (Ex)

1    In the HEAR Act, Congress preserved the states' role in Holocaust-related
2  litigation even as it enacted uniform nationwide limitations and accrual rules. It
3  understood that such cases were usually brought under state law, which necessarily
4  includes choice-of-law as well as substantive causes of action. *See Cassirer V*, 596 U.S.
5  at 115. The Ninth Circuit applied the HEAR Act in this case. *Cassirer v. Thyssen-*
6  *Bornemisza Collection Found.*, 862 F.3d 951, 960 (9th Cir. 2017) ("*Cassirer III*"). Far
7  from "frustrat[ing] the federal government's uniform, diplomatic strategy on Nazi-
8  looted art" (Opp. at 17), striking down §338(c)(6) would undermine Federal law and
9  policy by excising part of the legal machinery Congress relied on to carry out uniform
10 national policy. *See Von Saher II*, 754 F.3d at 723 (state laws act "in concert" with
11 Federal policies of Washington Principles and Terezin Declaration).

12    **2. Section 338(c)(6) Does Not Discriminate against Foreign Commerce**

13    TBC's argument that §338(c)(6) is "rendered unconstitutional due to its
14 discriminatory purpose and effect" (Opp. at 19) fails because §338(c)(6) applies
15 neutrally irrespective of location and lacks discriminatory purpose. *See National Pork*
16 *Producers Council v. Ross,* 598 U.S. 356, 364 (2023). The "antidiscrimination
17 principle at the 'very core'" of the dormant Commerce Clause prohibits "enforcement
18 of state laws driven by economic protectionism—that is, regulatory measures designed
19 to benefit in-state economic interests by burdening out-of-state competitors." *Id.* at 369.

20    Section 338(c)(6) applies equally to in-state and out-of-state museums.
21 Museums (and other covered entities) that possess stolen artworks are subject to the
22 *same* choice-of-law rule wherever they are located. As TBC's own authority explains,
23 "discrimination simply means *differential* treatment of in-state and out-of-state

24

25

26    to artwork and other property stolen or misappropriated by the Nazis are
       not unfairly barred by statutes of limitations.

27

28                                          10                    Case No. CV 05-03459-JFW (Ex)

economic interests that benefits the former and burdens the latter." *Oregon Waste Sys. v. Dept of Env't Quality*, 511 U.S. 93, 99 (1994).  There is none here.

### 3. Any Extraterritorial Impact of Section 338(c)(6) Does Not Violate the Commerce Clause

TBC argues that §338(c)(6) is an unconstitutional extraterritorial regulation (Opp. 18-19), but the Supreme Court's most recent relevant decision makes clear that the Commerce Clause generally allows state statutes that have significant extraterritorial effects. *See Pork Producers*, 598 U.S. at 374.  Indeed, the Court rejected the "almost *per se*" rule TBC now urges here. *See* Pl. Opp. at 19–20 (citing *Id.* at 367, 371 (no Commerce Clause violation although California statute "impose[d] substantial new costs" and "substantial new capital investments" on out-of-state businesses.)[7]

As Plaintiffs demonstrated (Pl. Opp. at 19–20) in refuting the identical arguments that TBC repeats here, California's interests involved in this case amply meet the requirements of the Commerce Clause, particularly since it is a Federal statute, the FSIA, that subjects TBC to state law, *Cassirer V*, 596 U.S. at 114, which here regulates, in non-discriminatory fashion, traditional areas of state responsibility— choice-of-law and combatting theft and trafficking in stolen property.

### C. Section 338(c)(6) Is Consistent with Federal Policy, Not Preempted

### 1. TBC's Field Preemption Argument Is Meritless

TBC's field preemption argument (Opp. 20–22) is based entirely on laws and cases having no relevance to §338(c)(6).  As Plaintiffs demonstrated previously (Pl. Opp. at 21–24), TBC's argument misleadingly relies on long quotations from *Von*

---

[7] See Pl. Opp. at 19 n.14; *Pork Producers*, 598 U.S. at 374 (distinguishing TBC's cases, *Brown-Forman* and *Healy* (Opp. at 18)*,* because those "challenged statutes had a *specific* impermissible 'extraterritorial effect'—they deliberately 'prevent[ed out-of-state firms] from undertaking competitive pricing' or 'deprive[d] businesses and consumers in other States of 'whatever competitive advantages they may possess''"). No such effects exist here.

1  *Saher I*, which struck down a California law that was *repealed* in 2010 and *replaced*
2  with a new law that did not contain Holocaust-specific provisions and, most
3  importantly, was *upheld* against preemption challenges in *Von Saher II*, 754 F.3d at
4  720–25, and *Cassirer II*, 737 F.3d at 617–19.[8]  TBC's quotes from the staff "Bill
5  Analysis" are irrelevant in the face of exhaustive legislative findings in AB 2867
6  demonstrating the State's interests going far beyond the Holocaust. *See* Pl. Opp. at 26–
7  28 & n.18 (quoting Legislature's Findings).  And TBC's other cases are similarly
8  distinguishable.  *See* Pl. Opp. at 29–30.

9      **2.  TBC's Conflict Preemption Argument Is Meritless**

10      TBC's conflict preemption argument based on "the HEAR Act and related
11  Federal policy" (Opp. 22–23) is wrong for essentially the same reasons.  TBC's fixation
12  on a single provision in Act, the Washington Principles, Terezin Declaration and 2024
13  Best Practices, which acknowledges that "there are differing legal systems and that
14  states act within the context of their own laws" (Opp. 22), entirely ignores the numerous
15  other considerations that are authoritatively recognized by these pronouncements and
16  by caselaw.  Plaintiffs previously summarized these matters, including quotations from
17  *Von Saher II* and the D.C. Circuit in *Philipp v. Fed'l Rep. of Germany*, 894 F.3d 406
18  (D.C. Cir. 2018), *rev'd on other grounds*, 592 U.S. 169 (2021), which unequivocally
19  establish that state court litigation to recover looted art is not only *consistent with* U.S.
20  policy concerning restitution to the rightful owners, but is *encouraged* by federal
21  policy. Pl. Opp. at 22–26.  Plaintiffs respectfully refer the Court to their previous
22  discussion of treaties, laws and policies which further demonstrate that Federal
23  interests support California's enactment of §338(c)(6). *See* Pl. Mot. at 17–23.

24
25  [8] In one egregious example, TBC falsely asserts that "Section 338" opens California
26  "as a forum to all Holocaust victims" (Opp. 21), which was true of the pre-2010 law at
    issue in *Von Saher I*, but not §338(c)(6) or §338.2, which apply only to California
27  residents.

28

### III.  Prior Decisions that TBC Cites as Law of the Case Should Not Be Followed

Relying on the law of the case doctrine, TBC asserts (Opp. at 23–28) that the Court should deny the arguments (based on preemption and the Supremacy Clause) that Plaintiffs included in their moving brief as fallback arguments and would become relevant only if the Court does not apply §338(c)(6). *See* D.E. 682 ("Pl. Mot.") at 17–25.  However, law of the case is subject to an exception where the prior decision "is clearly erroneous and its enforcement would work a manifest injustice." *In re Rainbow Mag., Inc.*, 77 F.3d 278, 281 (9th Cir. 1996).  Respectfully, that exception should be applied here.

#### A.  <u>Application of California's Common Law Choice-of-Law Test Must Incorporate Federal Treaties, Laws, Policies, and International Agreements</u>

Plaintiffs' Supremacy Clause argument is based on the irrefutable principle that "the Constitution, laws, and treaties of the United States are as much a part of the law of every State as its own local laws . . . ." *Hauenstein v. Lynham*, 100 U.S. 483, 490 (1879); *see also Haywood v. Drown*, 556 U.S. 729, 734 (2009) ("federal law is as much the law of the several States as are the laws passed by their legislatures.").  Plaintiffs identified those Federal interests and showed that under California's "governmental interests" test for choice-of-law, *see Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 100, 107–08 (2006), when they are properly weighed in the balance, California's interests clearly outweigh those of Spain in application of their respective substantive laws. Pl. Mot. at 18–23.  The *Cassirer VII* decision, however, ignored these interests in applying the *Kearney* test.  Since the Constitution requires consideration of the interests, it was clearly erroneous for *Cassirer VII* not to do so, and the resulting award of the Painting to TBC was a manifest injustice.

TBC's brief tries to confuse the issue by relying on the Ninth Circuit's balancing of interests under federal common law, but that determination was unequivocally

1    vacated in *Cassirer V*.[9]  The fact that California courts may not have had occasion to

2    consider Federal laws and policies in applying the *Kearney* test cannot possibly

3    overcome the requirements of the Supremacy Clause.  TBC's further reliance on the

4    views of California law expressed in a *dissenting* opinion (Opp. at 25) cannot obscure

5    the fact that neither that opinion nor *Cassirer VII* even addressed the Federal interests.

6       **B.  <u>The HEAR Act Bars TBC's Acquisitive Prescription Defense</u>**

7       TBC attempts to justify as "sound reasoning" (Opp. at 26) *Cassirer III*'s reading

8    of the HEAR Act's express preemption language, which overrides any "provision of .

9    . . State law or any defense at law relating to the passage of time," thus precluding

10   TBC's acquisitive prescription defense.  But the only "reasoning" was the *ipse dixit*

11   that "HEAR simply supplies a statute of limitations." *Cassirer III*, 862 F.3d at 964.

12   TBC brushes aside that the Court heard no argument on the issue and had only two

13   pages of briefing before it.  Perhaps as a result, *Cassirer III* failed, among other things,

14   to consider that under *Erie*, a statute of limitations is substantive, particularly where,

15   as in the HEAR Act, it defines when a claim accrues. *See* cases cited in Pl. Mot. at 24–

16   25.  This was clearly erroneous.

17      **C.  <u>Federal Interests Preempt Application of California Law to Award Title to TBC</u>**

18      There is no merit to TBC's argument against Plaintiffs' showing (Pl. Mot. at 25–

19   26) that Federal preemption bars application of California's choice-of-law rules to

20   apply Spanish law. *See* Opp. at 27–28.  Again, TBC focuses entirely on one provision

21   referencing "differing legal systems" in the relevant Federal authorities, to the

22   exclusion of all of the other provisions which favor return of looted artworks to the

23   rightful owners, and have been so interpreted by the Ninth Circuit and other courts. *See*

24   p. 10 above.  In other words, Federal law and policy heavily favor restitution where, as

25

26   [9]  Because *Cassirer V* vacated the lower courts' judgments that were based on federal
     common law, *Cassirer V* also is "intervening controlling authority" which makes law
27   of the case inapplicable. *See In re Rainbow Mag.*, 77 F.3d at 281.

28

here, Plaintiffs have indisputably proven ownership and theft. TBC again relies, fruitlessly, on the vacated decisions that applied federal common law earlier in this case. Opp. at 28. And even if the Federal pronouncements may not be *legally binding*, *id.*, that is not the issue in preemption analysis—the relevant question is defining Federal *policy*, and on that the answer clearly supports Plaintiffs' position.

Indeed, TBC's quotation from the 2024 Best Practices shows that application of California law is consistent with U.S. policy. As TBC quotes: "states act within the context of their own laws. Countries will apply the best practices that follow in accordance with national law." Opp. at 27. But Spain is not even a signatory to the 2024 Best Practices,[10] so TBC cannot claim its protections. Indeed, TBC ignores that the provision does apply to the U.S. as a signatory "state," and accordingly "within the context" of U.S. law as applied by a U.S. court, "best practices . . . in accordance with national law" preclude conveyance of good title by a thief and adverse possession of stolen property. *See* n.5 above.

Finally, on this issue, TBC is wrong that law of the case even applies in the first instance. Neither this Court nor the Ninth Circuit have ever ruled on the parties' preemption arguments as applied to California law. The rulings that TBC quotes were made in other contexts and were vacated by the Supreme Court.

## CONCLUSION

For the foregoing reasons, and those stated in Plaintiffs' opening brief and SUF-P, the Court should grant Plaintiffs' motion for summary judgment.

---

[10] *See* Best Practices for the Washington Conference Principles on Nazi-Confiscated Art, U.S. DEP'T OF STATE (March 5, 2024) https://www.state.gov/office-of-the-special-envoy-for-holocaust-issues/best-practices-for-the-washington-conference-principles-on-nazi-confiscated-art.

Dated:  November 12, 2025

Respectfully submitted,

**KENDALL BRILL & KELLY LLP**

By:  *Jeffrey M. Chemerinsky*

Laura W. Brill (Bar No. 195889)
Jeffrey M. Chemerinsky (Bar No. 270756)
10100 Santa Monica Blvd.
Los Angeles, CA 90067
Telephone: (310) 556-2700
Facsimile: (310) 556-2705

**BOIES SCHILLER FLEXNER LLP**
John J. Kucera (Bar No. 274184)
Daniel G. Boyle (Bar No. 332518)
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

David Boies (admitted *pro hac vice*)
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

David A. Barrett (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

Stephen N. Zack (admitted *pro hac vice*)
100 SE Second Street, Suite 2800
Miami, FL 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Scott E. Gant
1401 New York Ave, NW

16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Washington, DC 20005
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

**DUBBIN & KRAVETZ, LLP**
Samuel J. Dubbin (admitted *pro hac vice*)
1200 Anastasia Avenue, Suite 300
Coral Gables, FL 33134
Telephone: (305) 371-4700
Facsimile: (305) 371-4701

*Attorneys for Plaintiffs*
DAVID CASSIRER, *et al.*

17                                    Case No. CV 05-03459-JFW (Ex)

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2   The undersigned, counsel of record for Plaintiffs, certifies that this brief contains

3 15 pages, which complies with the 15-page limit set by court order dated July 11, 2025

4 (D.E. 676).

5

6   Dated:  November 12, 2025

7

8                                   By:  /s/ *Jeffrey M. Chemerinsky*

9                                        Jeffrey M. Chemerinsky (Bar No.
10                                        270756)

11                                       *Attorney for Plaintiffs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28