1   ROB BONTA
    Attorney General of California
2   TODD GRABARSKY
    Supervising Deputy Attorney General
3   CAROLYN DOWNS
    State Bar No. 353455
4   BARBARA HORNE-PETERSDORF
    State Bar No. 327738
5   Deputy Attorneys General
      300 South Spring Street, Suite 1702
6     Los Angeles, CA  90013-1230
      Telephone:  (213) 269-6720
7     Fax:  (916) 731-2124
      E-mail:  Carolyn.Downs@doj.ca.gov
8   *Attorneys for Party-in-Intervention Rob Bonta, in
    his official capacity as Attorney General of
9   California*

10                 IN THE UNITED STATES DISTRICT COURT

11                FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13

14

15  **DAVID CASSIRER, et al.,**          Case No. 2:05-cv-03459-JFW (Ex)

16                        Plaintiffs,    **PARTY-IN-INTERVENTION**
                                         **ATTORNEY GENERAL ROB**
17          **v.**                       **BONTA'S SUPPLEMENTAL**
                                         **BRIEF**
18  **THYSSEN-BORNEMISZA**
    **COLLECTION FOUNDATION, an**        Date:        March 30, 2026
19  **agency or instrumentality of the**  Time:        1:30 p.m.
    **Kingdom of Spain,**                Courtroom:   7A
20                                       Judge:       Hon. John F. Walter
                         Defendant.      Trial Date:  None set.
21                                       Action Filed: May 10, 2005

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

**Page**

Introduction ...................................................................................................... 1

Background ...................................................................................................... 2

Argument ......................................................................................................... 4

I.      Defendant's Challenge to Section 338.2(g) Is Nonjusticiable ............ 4

II.     Section 338(c)(6) Does Not Violate the Due Process Clause .............. 5

      A.     Section 338(c)(6) Is Facially Valid Under the Due Process Clause ...................................................................................... 5

      B.     Defendant's As-Applied Challenge to Section 338(c)(6) Should Be Rejected .............................................................. 6

           1.     As an Instrumentality of a Foreign Nation, Defendant Enjoys No Due Process Rights ...................... 6

           2.     Even If Defendant Has Due Process Rights, Rational Basis Review Applies and Is Satisfied Here ..................................................................................... 11

                 a.     Defendant Has No Vested Property Right that Would Be Deprived Through Application of Section 338(c)(6) ........................ 11

                 b.     Section 338(c)(6) Survives Rational Basis Review ........................................................................ 14

           3.     California Has Significant Contacts to, and Interests in, this Action .................................................. 14

III.    Section 338(C)(6) Does Not Violate the Commerce Clause ............. 15

      A.     Section 338(c)(6) Does Not Impede Federal Government's Ability to Speak with One Voice ..................... 16

      B.     Section 338(c)(6) Does Not Discriminate Against Foreign Commerce ...................................................................... 19

IV.    Section 338(c)(6) Is Not Federally Preempted ............................... 20

      A.     Section 338(c)(6) Is Not Field Preempted ............................... 20

           1.     Section 338(c)(6) Regulates the Treatment of Stolen Property, a Traditional State Responsibility ....... 21

           2.     Section 338(c)(6) Does Not Intrude on the Federal Government's Foreign Affairs Power .......................... 23

      B.     Section 338(c)(6) Is Not Conflict Preempted .......................... 24

Conclusion ................................................................................................... 25

i

1

# TABLE OF AUTHORITIES

2

**Page**

3

CASES

4

*Aetna Life Ins. Co v. Tremblay*

5
    223 U.S. 185 (1912) ...................................................................... 6

6

*Allstate Ins. Co. v. Hague*

7
    449 U.S. 302 (1981) (Stevens, J. concurring) ................................. 6, 15

8

*Altmann v. Republic of Austria*

9
    142 F. Supp. 2d 1187 (C.D. Cal. 2001) ....................................... 7

10

*Am. Ins. Ass'n v. Garamendi*

11
    539 U.S. 396 (2003) ...................................................................... 24

12

*Arizona v. United States*

13
    567 U.S. 387 (2012) ...................................................................... 24

14

*AT&T Mobility LLC v. AU Optronics Corp.*
    707 F.3d 1106 (9th Cir. 2013) .................................................. 14, 15

15

*Bank Markazi v. Peterson*

16
    578 U.S. 212 (2016) ...................................................................... 13

17

*Barclays Bank PLC v. Franchise Tax Bd. of Cal.*

18
    512 U.S. 298 (1994) .................................................................. 17, 18

19

*Campbell v. Holt*

20
    115 U.S. 620 (1885) ...................................................................... 13

21

*Cassirer v. Thyssen-Bornemisza Collection Found.*

22
    107 F.4th 882 (9th Cir. 2024) ....................................................... 2

23

*Cassirer v. Thyssen-Bornemisza Collection Found.*
    145 S. Ct. 1331 (2025) .................................................................. 3

24

*Cassirer v. Thyssen-Bornemisza Collection Found.*

25
    596 U.S. 107 (2022) ...................................................................... 2

26

*Cassirer v. Thyssen-Bornemisza Collection Found.*

27
    737 F.3d 613, 619 (9th Cir. 2013) ............................................ 13, 23

28

**TABLE OF AUTHORITIES**
(continued)

Page

*Cassirer v. Thyssen-Bornemisza Collection Found.*
    862 F.3d 951 (9th Cir. 2017)...................................................25

*Cassirer v. Thyssen-Bornemisza Collection Found.*
    89 F.4th 1226, 1229-34 (9th Cir. 2024) ..............................2, 15

*Cassirer v. Thyssen-Bornemisza Collection Found.*
    No. CV 05-3459, 2019 WL 13240413 (C.D. Cal. Apr. 30, 2019)
    ................................................................................2, 9, 16, 17

*Chase Sec. Corp. v. Donaldson*
    325 U.S. 304 (1945) ...........................................................13

*Clark v. Allen*
    331 U.S. 503 (1947) ...........................................................24

*Container Corp. of Am. v. Franchise Tax Bd.*
    463 U.S. 159 (1983) .....................................................16, 18

*Crocker Nat'l Bank v. Byrne & McDonnell*
    178 Cal. 329 (1918) ...........................................................11

*Crosby v. Nat'l Foreign Trade Council*
    530 U.S. 363 (2000) ...........................................................24

*Cruz v. United States*
    387 F. Supp. 2d 1057 (N.D. Cal. 2005)..................................7

*Deirmenjian v. Deutsche Bank AG*
    548 F. App'x 461, 464 (9th Cir. 2013) .................................21

*Deutsch v. Turner Corp.*
    324 F.3d 692 (9th Cir. 2003).................................20, 22, 23

*DRC, Inc. v. Republic of Hond.*
    71 F. Supp. 3d 201 (D.D.C. 2014) .......................................11

*Dunbar v. Seger-Thomschitz*
    615 F.3d 574 (5th Cir. 2010)..............................................21

iii

1
2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3
4

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petro. Corp.*
   40 F.4th 56 (2d Cir. 2022) ........................................................................ 9

5
6

*First National City Bank v. Banco Para El Comercio Exterior de Cuba*
   462 U.S. 611 (1983) ........................................................... 8, 9, 10

7
8

*Flynt v. Bonta*
   131 F.4th 918 (9th Cir. 2025) ........................................ 16, 18, 19, 20

9
10

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*
   592 U.S. 351 (2021) ........................................................................ 15

11

*Franceschi v. Yee*
   887 F.3d 927 (9th Cir. 2018) ....................................................... 14

12
13

*Frontera Res. Azer. Corp. v. State Oil Co. of the Azer. Republic*
   582 F.3d 393 (2d Cir. 2009) .................................................... 7, 8

14
15

*Fuld v. PLO*
   606 U.S. 1 (2025) (Thomas, J., concurring) ........................................ 7

16
17

*Gelber v. City of Willits*
   No. 23-cv-00681, 2023 WL 7003241 (N.D. Cal. Oct. 23, 2023) ..................... 11

18
19

*Gerling Glob. Reinsurance Corp. of Am. v. Low*
   240 F.3d 739 (9th Cir. 2001) ....................................................... 20

20
21

*Gingery v. City of Glendale*
   831 F.3d 1222 (9th Cir. 2016) ...................................................... 21

22

*Griffith v. Kentucky*
   479 U.S. 314 (1987) ........................................................................ 12

23
24

*GSS Grp. Ltd. v. Nat'l Port Auth.*
   680 F.3d 805 (D.C. Cir. 2012) ...................................................... 10

25
26

*Hammond v. United States*
   786 F.2d 8 (1st Cir. 1986) ............................................................ 12

27
28

1
2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3
4
5

*Holtzman as Tr. of Elizabeth McManus Holtzman Irrevocable Tr. v.*
   *Phila. Museum of Art*
   No. 22-cv-0122, 2022 WL 2651851 (E.D. Pa. July 7, 2022)............................25

6

*In re 650 Fifth Ave. and Related Props.*
   881 F. Supp. 2d 533 (S.D.N.Y. 2012) ...................................................10

7
8

*Johnston v. Cigna Corp.*
   14 F.3d 486 (10th Cir. 1993) ...............................................................12

9
10

*Ledbetter v. Goodyear Tire & Rubber Co.*
   550 U.S. 618 (2007) ..........................................................................13

11
12

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992) ...........................................................................4

13
14

*McCleskey v. Kemp*
   481 U.S. 279 (1987) ..........................................................................13

15
16

*Movsesian v. Victoria Versicherung AG*
   670 F.3d 1067 (9th Cir. 2012) ...........................................17, 20, 21, 23

17
18

*N.Y. Cent. R. R. Co. v. White*
   243 U.S. 188 (1917) ..........................................................................12

19

*Nat'l Foreign Trade Council v. Natsios*
   181 F.3d 38 (1st Cir. 1999) ................................................................16

20
21

*Nat'l Pork Producers Council v. Ross*
   598 U.S. 356 (2023) ...................................................................16, 18, 19

22
23

*Pac. Nw. Venison Producers v. Smitch*
   20 F.3d 1008 (9th Cir. 1994).............................................................18

24
25

*Paul v. Davis*
   424 U.S. 693 (1976) ..........................................................................11

26
27

*Philipp v. Fed. Republic of Ger.*
   248 F. Supp. 3d 59 (D.D.C. 2017) ....................................................24

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Phillips v. Wash. Legal Found.*
    524 U.S. 156 (1998) ........................................................... 11

4

5

*Plaut v. Spendthrift Farm, Inc.*
    514 U.S. 211 (1995) ........................................................... 12

6

7

*Republic of Arg. v. Weltover, Inc.*
    504 U.S. 504 (1992) ........................................................... 7

8

9

*Robertson v. Seattle Audubon Soc'y*
    503 U.S. 429, 440 (1992) ................................................... 13

10

11

*Schoeps v. Sompo Holdings, Inc.*
    736 F. Supp. 3d 582 (N.D. Ill. 2024) ............................... 24, 25

12

13

*South Carolina v. Katzenbach*
    383 U.S. 301 (1966) ........................................................... 7

14

15

*Starks v. S.E. Rykoff Co.*
    673 F.2d 1106 (9th Cir. 1982) ........................................... 13

16

17

*Thomas v. Anchorage Equal Rts. Comm'n*
    220 F.3d 1134, 1138-39 (9th Cir. 2000) ............................ 4, 5

18

19

*TMR Energy Ltd. v. State Prop. Fund of Ukr.*
    411 F.3d 296 (D.C. Cir. 2005) ........................................... 8

20

*Trojan Techs., Inc. v. Commw. of Pa.*
    916 F.2d 903 (3d Cir. 1990) ............................................. 18

21

22

*United States v. California*
    No. 2:19-cv-02142, 2020 WL 4043034 (E.D. Cal. July 17, 2020) ................... 24

23

*United States v. Rahimi*
    602 U.S. 680 (2024) ........................................................... 5, 6

24

25

*Von Saher v. Norton Simon Museum of Art*
    592 F.3d 954 (9th Cir. 2010) ........................................ *passim*

26

27

*Wardair Can., Inc. v. Fla. Dep't of Revenue*
    477 U.S. 1 (1986) ........................................................ 16, 17, 18

28

**TABLE OF AUTHORITIES**
(continued)

Page

*Wash. State Grange v. Wash. State Republican Party*
    552 U.S. 442 (2008) ........................................................................... 5

*Westfall v. Erwin*
    484 U.S. 292 (1988) ......................................................................... 13

*Young v. Super. Ct. of Solano Cnty.*
    79 Cal. App. 5th 138 (2022) ....................................................... 12, 13

*Zschernig v. Miller*
    389 U.S. 429 (1968) .................................................................... 21, 23

*Zuckerman v. Metro. Museum of Art*
    928 F.3d 186 (2d Cir. 2019) .......................................................... 25

STATUTES

California Code of Civil Procedure
    § 338 ..........................................................................20, 21, 23
    § 338(c)(3) .......................................................................... 23
    § 338(c)(6) ..................................................................*passim*
    § 338.2 ..........................................................................3, 5, 19
    § 338.2(f) ........................................................................... 4
    § 338.2(g) ....................................................................*passim*

California Racial Justice Act .................................................................. 13

Federal Tort Claims Act ........................................................................ 13

Foreign Sovereign Immunity Act ........................................................ 7, 10

HEAR Act
    ..................................................................................*passim*
    § 2(7) ................................................................................. 13
    § 5 ..................................................................................... 17
    § 5(a) ................................................................................. 25

Holocaust Expropriated Art Recovery Act ............................................ 13

Lilly Ledbetter Act .............................................................................. 13

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

Royal Law Decree 11/1993 of 18 June 1993 ....................................................... 9, 10

4

U.S. Military Law 52 ................................................................................................. 15

5

**CONSTITUTIONAL PROVISIONS**

6

7

U.S. Const.
   Fifth Amendment........................................................................................ 7

8

   Fourteenth Amendment ............................................................................. 6
   Fourteenth Amendment § 1 ...................................................................... 6

9

   Article I, § 8, cl. 3 ..................................................................................... 15

10

**OTHER AUTHORITIES**

11

12

Assembly Bill 2867 ...................................................................................... *passim*

13

"Best Practices for the Washington Conference Principles on Nazi-
   Confiscated Art" ("Best Practices") .................................................... 16

14

15

*Best Practices for the Washington Conference Principles on Nazi-
   Confiscated Art*, U.S. Dep't of State (Mar. 5, 2024),

16

   https://tinyl.co/4BPm........................................................................... 17

17

*Normativa de Aplicación*, https://museothyssen.org (last visited Jan. 7,

18

   2026)....................................................................................................... 10

19

Presidential Authority to Settle the Iranian Crisis, 4A Op. OLC 248,

20

   260 n.9 (1980)......................................................................................... 7

21

*The Thyssen-Bornemisza Collection Foundation*,

22

   https://museothyssen.org ..................................................................... 10

23

24

25

26

27

28

**INTRODUCTION**

In 2024, the California Legislature amended state law to clarify that when California residents or their heirs bring a claim of stolen property of cultural significance, California substantive law applies. That includes the longstanding claim in the present matter, in which Plaintiffs David Cassirer, the Estate of Ava Cassirer, and the Jewish Federation of San Diego County seek to recover a painting by French Impressionist Camille Pissarro ("the Painting"), which was stolen by the Nazi regime during World War II and is now in the possession of Defendant Thyssen-Bornemisza Collection Foundation, an agency or instrumentality of the Kingdom of Spain. The California Attorney General has intervened here to defend the constitutionality of California Code of Civil Procedure Section 338(c)(6),[1] as well as Section 338.2(g)—a newly enacted statute that creates a cause of action to revive claims for stolen property that were dismissed based on certain defenses. Defendant's attempt to unwind the protections California deems necessary to ensure the just and fair adjudication of its residents' stolen property claims should be rejected.

As an initial matter, Defendant does not have standing to challenge Section 338.2(g) because Plaintiffs have not invoked it against Defendant. Since Section 338.2(g) is not at issue in this case, any speculative injury Defendant claims under this section is not ripe. To adjudicate the constitutionality of this provision would result in the Court issuing an improper advisory opinion on a non-justiciable matter.

As for Section 338(c)(6), Defendant's arguments fail on the merits. Defendant has failed to demonstrate that Section 338(c)(6) violates the Due Process Clause. Defendant lacks due process rights as an agency or instrumentality controlled by Spain. In any event, it has no vested property right in the Painting and application of Section 338(c)(6) comports with due process based on California's

---

[1] Unless otherwise indicated, all statutory references are to the California Code of Civil Procedure.

ATTORNEY GENERAL'S SUPPLEMENTAL BRIEF
Case No. 2:05-cv-03459-JFW (Ex)

significant contacts to this action.

Section 338(c)(6) also does not violate the Commerce Clause, primarily because it does not interfere with the federal government's ability to speak with "one voice" on foreign affairs. Nor does Section 338(c)(6) discriminate against foreign commerce facially or in its purpose or effect; at most, it has merely an incidental effect on foreign commerce, which is constitutionally permissible.

Finally, Section 338(c)(6) is not preempted under either the foreign affairs doctrine or conflict preemption. The law regulates in an area of traditional state responsibility and does not encroach on any definite federal foreign policy, and it poses no conflict with any clear federal law.

The Court should find Defendant's challenge to Section 338.2(g) nonjusticiable and uphold the constitutionality of Section 338(c)(6).

**BACKGROUND**

The full background and procedural history of this case is set forth in prior decisions from this Court, the Ninth Circuit Court of Appeals, and the United States Supreme Court, *see Cassirer v. Thyssen-Bornemisza Collection Found.*, 89 F.4th 1226, 1229–34 (9th Cir. 2024) (*Cassirer VII*); *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 110–13 (2022); *Cassirer v. Thyssen-Bornemisza Collection Found.*, No. CV 05-3459, 2019 WL 13240413, at *1–15 (C.D. Cal. Apr. 30, 2019), as well as the parties' cross-Motions for Summary Judgment, *see* ECF Nos. 681–82. What follows is a summary of recent developments relevant to the Attorney General's defense of the state statutes at issue.

In 2024, the Ninth Circuit held that under California's choice-of-law test, Spanish law rather than California law applied to Plaintiffs' claims, affirming judgment in favor of Defendant and allowing it to retain possession of and title to the Painting. *Cassirer VII*, 89 F.4th at 1230; *see also Cassirer v. Thyssen-Bornemisza Collection Found.*, 107 F.4th 882 (9th Cir. 2024) (denying rehearing en banc). Shortly thereafter, the California Legislature unanimously passed Assembly

ATTORNEY GENERAL'S SUPPLEMENTAL BRIEF
Case No. 2:05-cv-03459-JFW (Ex)

1  Bill 2867 ("AB 2867"), which Governor Newsom signed into law on September 16,

2  2024. Assemb. B. 2867 (Cal. 2024). AB 2867 made two changes to the California

3  Code of Civil Procedure. First, it amended section 338(c) to add subsection (6):

> (6) Notwithstanding any other law or prior judicial decision, in any
> action brought by a California resident, or by an heir, trustee,
> assignee, or representative of the estate of a California resident,
> involving claims relating to title, ownership, or recovery of personal
> property as described in paragraph (2) or (3) [involving, *inter alia*,
> stolen artwork], or in the Holocaust Expropriated Art Recovery Act of
> 2016 (HEAR) (Pub. L. No. 114-308), including claims for money
> damages, California substantive law shall apply.

10  § 338(c)(6); Assemb. B. 2867, § 2 (Cal. 2024). Section 338(c)(6)'s choice of law

11  rule applies to all actions pending on its effective date. *Id.* §§ 2(c)(3)(B), 5. Second,

12  AB 2867 added Section 338.2, which, under subsection (g), allows a claimant to

13  bring an action when the claimant, prior to the provision's enactment, brought a

14  claim to recover personal property stolen or lost due to political persecution, and

15  the case was dismissed by a court based on certain defenses or any procedural basis.

16  *Id.* § 3. An action under subdivision (g) must be brought within two years of the

17  statute's enactment or entry of a final judgment and the termination of all appeals,

18  including any petition for a writ of certiorari, whichever is later. *Id.* § 3(g); §

19  338.2(g).

20       On March 10, 2025, the Supreme Court vacated judgment and remanded the

21  case for further consideration in light of AB 2867. *Cassirer v. Thyssen-Bornemisza

22  Collection Found.*, 145 S. Ct. 1331 (2025). Following remand from the Ninth

23  Circuit to this Court for further proceedings, both parties moved for summary

24  judgment on September 12, 2025. ECF Nos. 681–82. In its summary judgment

25  motion, Defendant challenges the constitutionality of Sections 338(c)(6) and

26  338.2(g), seeking to prevent application of either provision to Plaintiffs' claims.

27  Def's Mot. Summ. J. 2–3, ECF No. 681. The cross-Motions for Summary Judgment

28

are now fully briefed. The Attorney General sought to intervene in the case on
November 17, 2025, for the limited purpose of defending the constitutionality of
Sections 338(c)(6) and 338.2(g); the Court granted that request. ECF Nos. 701, 713.

## ARGUMENT

### I.   DEFENDANT'S CHALLENGE TO SECTION 338.2(G) IS NONJUSTICIABLE

Defendant challenges the constitutionality of Sections 338(c)(6) and
338.2(g). *See* Not. Atty. Gen., ECF No. 686. However, Plaintiffs only invoke
Section 338(c)(6) in this action. Pls' Opp'n 3, 19, ECF No. 692. Unlike Section
338(c)(6), which applies to pending actions like the present one, Section 338.2(g)
permits a claimant to bring a claim that had been previously dismissed based on
procedural grounds or any of the defenses enumerated in Section 338.2(f). *Compare*
§ 338(c)(6) *with* § 338.2(g). Defendant only refers to Section 338.2(g) to say that *if*
that law is invoked, its "procedural mechanism to commence a second lawsuit once
this case is finally dismissed" would violate Defendant's due process rights. Def's
Mot. Summ. J. 2. Thereafter, Defendant refers to Section 338.2(g) collectively with
Section 338(c)(6), making few clear distinctions between the two. *See, e.g.*, *id*. at 2
n.2. Defendant's apparent challenge to Section 338.2(g) should be rejected for lack
of standing or ripeness.

The "irreducible constitutional minimum" of Article III standing has three
elements: (1) the claimant must have suffered an "injury in fact," meaning a
concrete and particularized injury that is actual or imminent; (2) the injury must be
causally related to the challenged actions; and (3) it must be "likely" that the injury
will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504
U.S. 555, 560 (1992) (internal citations omitted). Overlapping with the injury-in-
fact element is the ripeness doctrine, which requires that the issues presented be
"definite and concrete, not hypothetical or abstract." *Thomas v. Anchorage Equal
Rts. Comm'n*, 220 F.3d 1134, 1138–39 (9th Cir. 2000) (en banc). 

Here, Defendant lacks standing to challenge Section 338.2(g) because

ATTORNEY GENERAL'S SUPPLEMENTAL BRIEF
Case No. 2:05-cv-03459-JFW (Ex)

Defendant has not alleged any actual or imminent injury from Section 338.2(g). *See generally* Def's Mot. Summ. J. Defendant's assertion that Section 338.2 *could* be invoked against it is not sufficient to establish an imminent injury in fact; in the present litigation, Section 338.2(g) is simply not at issue. For the same reason, any challenge to Section 338.2(g) is not ripe. It is undisputed that Plaintiffs' action has not been dismissed, making Section 338.2(g) inapplicable to their claims, and, thus, any possible injury that Defendant could allege would be "hypothetical or abstract." *Thomas*, 220 F.3d at 1139. Accordingly, the remainder of this brief focuses on the California law actually at issue—Section 338(c)(6)—and Defendant's challenge to Section 338.2(g) should be rejected.

## II.    SECTION 338(C)(6) DOES NOT VIOLATE THE DUE PROCESS CLAUSE

### A.    Section 338(c)(6) Is Facially Valid Under the Due Process Clause

Defendant contends that Section 338(c)(6) is facially unconstitutional because it mandates application of California law where the plaintiff is a California resident, regardless of the State's interests or contacts to the case. Def's Mot. Summ. J. 11. Facial challenges to statutes are the "'most difficult challenge to mount successfully,' because it requires a defendant to 'establish that no set of circumstances exists under which the [statute] would be valid.'" *United States v. Rahimi*, 602 U.S. 680, 693 (2024) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). To defeat a facial challenge, the State "need only demonstrate that [the statute] is constitutional in some of its applications." *Id*. Facial challenges are "disfavored" because they "often rest on speculation," raising "the risk of premature interpretation of statutes on the basis of factually barebones records" and "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied."

1  *Republican Party*, 552 U.S. 442, 450 (2008) (internal citations and quotations

2  omitted).

3      Here, Section 338(c)(6) is facially valid because it is constitutional as applied

4  to the facts of this case, as discussed below, and in numerous other applications,

5  such as where the stolen property is presently located in California, where the

6  property was stolen from within California, or where the parties have business

7  dealings, residence, or other contacts in California. The hypothetical analyses the

8  Court would have to engage in to consider whether "no set of circumstances exists

9  under which [Section 338(c)(6)] would be valid" illustrates why facial challenges

10 are disfavored and why the Court should decline to engage in that analysis here.

11 *Rahimi*, 602 U.S. at 693. Instead, the Court should find Defendant's facial

12 challenge defeated because Defendant has not shown, and cannot show, that

13 Section 338(c)(6) is unconstitutional in all of its applications.[2] *See id*.

**B.    Defendant's As-Applied Challenge to Section 338(c)(6) Should Be Rejected**

**1.    As an Instrumentality of a Foreign Nation, Defendant Enjoys No Due Process Rights**

17     Defendant's as-applied procedural due process challenge to Section 338(c)(6)

18 should be rejected because, as an instrumentality or agency of a foreign nation, due

19 process does not apply to Defendant. The Due Process Clause of the Fourteenth

20 Amendment provides that States shall not "deprive any person of life, liberty, or

21 property, without due process of law." U.S. Const. amend. XIV § 1. Because

22 foreign governments are not "persons" within the meaning of the Due Process

23 Clause, they can claim no due process protections.

---

24  [2] Defendant also invokes the Full Faith and Credit Clause in its facial challenge to
25  Section 338(c)(6). Def's Mot. Summ. J. 10–13. This provision, however, is
    "inapplicable" where "the law of a foreign nation, rather than of a sister State [is] at
26  issue," and therefore does not apply to Defendant here. *Allstate Ins. Co. v. Hague*,
    449 U.S. 302, 321 n.4 (1981) (Stevens, J. concurring); *see also Aetna Life Ins. Co v.*
27  *Tremblay*, 223 U.S. 185, 190 (1912) (explaining that the Full Faith and Credit
    Clause does not extend to judgments of foreign states). In any event, there are
    numerous applications of the statute that would not implicate the Full Faith and
28  Credit Clause.

6

The Supreme Court has expressed skepticism about whether the Due Process Clause would protect a foreign sovereign, citing to *South Carolina v. Katzenbach*, 383 U.S. 301, 323–34 (1966) for the proposition that "States of the Union are not 'persons' for purposes of the Due Process Clause." *Republic of Arg. v. Weltover, Inc.*, 504 U.S. 504, 619 (1992); *see Fuld v. PLO*, 606 U.S. 1, 29–30 (2025) (Thomas, J., concurring). It would be incongruous to afford due process protections to foreign nations and not domestic states. *See id.* at 30; *Frontera Res. Azer. Corp. v. State Oil Co. of the Azer. Republic*, 582 F.3d 393, 399 (2d Cir. 2009). In fact, the "'consensus of circuit courts'" has "'definitively held that foreign states are not entitled to the protections of the Due Process Clause.'" *Fuld*, 606 U.S. at 29–30 (Thomas, J., concurring) (quoting *CC/Devas (Mauritius) Ltd. v. Antrix Corp.*, 91 F.4th 1340, 1350 (9th Cir. 2024) (Bumatay, J., dissenting from denial of rehearing en banc)) (surveying decisions from the Second, Seventh, and D.C. Circuit Courts of Appeal that conclude foreign states are not protected by due process). And district courts in this Circuit have likewise held that foreign sovereigns are not "persons" protected by the Due Process Clause. *See Cruz v. United States*, 387 F. Supp. 2d 1057, 1067 (N.D. Cal. 2005); *Altmann v. Republic of Austria*, 142 F. Supp. 2d 1187, 1207 (C.D. Cal. 2001).[3]

It is undisputed that Defendant is an agent or instrumentality of Spain. Def's Resp. to Pls' Stmnt. Undisputed Fact (SUF-P) 32, at 27, ECF No. 691-1. Presumably, Defendant's emphasis on its closeness to the Spanish government was an effort to enjoy the benefits of the Foreign Sovereign Immunity Act ("FSIA"). Def's Opp'n 1, ECF No. 691 ("the Foundation, an agency or instrumentality of Spain, is immune from this suit under the [FSIA]"); *see id.* at 11. But Defendant's avowed status as an agency or instrumentality of Spain cannot be reconciled with a

---

[3] The Executive Branch has also long held this view. *See* Presidential Authority to Settle the Iranian Crisis, 4A Op. OLC 248, 260 n.9 (1980) ("A foreign nation, . . . unlike a foreign national, does not have rights under the Fifth Amendment.").

7

theory that it enjoys due process rights, which would require it to be an independent, private actor. As discussed below, ample evidence in the record and proffered facts show that Spain has exerted extensive control over Defendant, creating an agency relationship. As such, Defendant cannot claim due process protections.

Defendant argues that it should nevertheless be afforded due process protections because it acts independently from the nation of Spain. Def's Reply 5–7, ECF No. 693. In determining whether due process protections extend to a foreign sovereign's entity, courts employ "the same analysis" as that required under *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) (*Bancec*) to determine whether a foreign nation may be sued under federal law for the acts of its instrumentality. *TMR Energy Ltd. v. State Prop. Fund of Ukr.*, 411 F.3d 296, 301 (D.C. Cir. 2005). Thus, a foreign nation's entity receives no due process protection if either of two conditions apply: "if the state so 'extensively controls' the instrumentality 'that a relationship of principal and agent is created,' or if 'adhering blindly to the corporate form . . . would cause . . . injustice.'" *Frontera*, 582 F.3d at 400 (quoting *Bancec*, 462 U.S. at 629, 632) (internal brackets omitted). The first prong of this test reflects a logical principle: "If the [foreign nation] exert[s] sufficient control over the [instrumentality] to make it an agent of [that nation], then there is no reason to extend to the [instrumentality] a constitutional right that is denied to the sovereign itself." *TMR Energy*, 411 F.3d at 301. The second prong reflects "'the broad[] equitable principle that the doctrine of corporate entity, recognized generally and for most purposes, will not be regarded when to do so would work fraud or injustice.'" *Bancec*, 462 U.S. at 629 (quoting *Taylor v. Standard Gas Co.*, 306 U.S. 307, 322 (1939)). And while there is "no mechanical formula for determining the circumstances under which the normally separate juridical status of a government instrumentality is to be disregarded," *id.* at 633, courts consider numerous factors implicating a foreign nation's control, such

8

1      as where it uses the instrumentality's property as its own, deprives the

2      instrumentality of independence, requires approvals from government actors, or

3      controls the entity's finances, *see, e.g.*, *id*. at 624; *Esso Expl. & Prod. Nigeria Ltd.*

4      *v. Nigerian Nat'l Petro. Corp.*, 40 F.4th 56, 69 (2d Cir. 2022) (listing examples of

5      factors); *In re 650 Fifth Ave. and Related Props.*, 881 F. Supp. 2d 533, 549–52

6      (S.D.N.Y. 2012) (finding foundation was effectively Iran's agent where Iran drove

7      decisions on charitable strategy, building operations, creation of the company, and

8      board leadership; foundation took direction from government officials and required

9      government approval to take significant actions).

10          Defendant fails both prongs of the *Bancec* test. First, under the first *Bancec*

11      prong, the initial loan and subsequent sale of the art collection that included the

12      Painting ("the Collection") to Defendant was entirely negotiated and funded by, and

13      subject to the control of, the Spanish government. Def's Resp. SUF-P 31, 34–35, at

14      26–29, ECF No. 691-1; *Cassirer*, 2019 WL 13240413, at *7–10. Through Spanish

15      Royal Decree ratified by the Spanish legislature, Spain financed the purchase and

16      maintenance of the Collection and provided the palace to house it. Royal Law

17      Decree 11/1993 of 18 June 1993, Ex. 239, ECF No. 478-12 (1993 Royal Decree).

18      As this Court previously recognized, "the Kingdom of Spain created [Defendant] to

19      maintain, conserve, publicly exhibit, and promote the Loan Collection's artworks."

20      *Cassirer*, 2019 WL 13240413, at *7. Spain then exerted its control by imposing

21      numerous conditions on Defendant "to ensure that the collection and the palace will

22      be used for the purpose for which they are to be acquired," including that Defendant

23      cannot sell the Collection and that Spain is its ultimate beneficiary. 1993 Royal

24      Decree, ECF No. 478-12, at 9; *Cassirer*, 2019 WL 13240413, at *8. In fact, Spain

25      contends that it has a vested property interest in the Painting, highlighting Spain

26      and Defendant's interconnectedness in managing the Collection. *See* Prop. Br.

27      Amicus Curiae Kingdom of Spain 3, ECF No. 689-1.

28          In addition, Spain controls Defendant's Board of Trustees and its funding.

Two-thirds of Defendant's Board are either Spanish government officials or appointees, with Spain's Minister of Culture serving as the President of the Board. *See The Thyssen Bornemisza Collection Foundation*, https://museothyssen.org (last visited Jan. 7, 2026); Pls' Stmnt. Genuine Disputes of Material Fact in Opp'n to Def's Mot. Summ. J. 18, SUF-D 20, ECF No. 692-1. Over half of Defendant's operating budget is funded by Spain. *Id.* at 18–19, SUF-D 21. The only evidence of separateness Defendant offers is its Managing Director's declaration that Defendant was "established by the Spanish government as a non-profit, private cultural foundation to promote and provide services for art." Def's Reply 7 n.7 (citing Decl. of Evelio Acevedo Carrero, ECF No. 411). However, the Director himself reports to the Board of Trustees controlled by Spain. Acevedo Decl., Ex. A, ECF No. 411-23. And rather than operating as a private foundation, Defendant is an "F.S.P.," a public sector foundation subject to the Spanish government's control. *The Thyssen-Bornemisza Collection Foundation*, https://museothyssen.org, *supra*; *Normativa de Aplicación*, https://museothyssen.org (last visited Jan. 7, 2026) (stating Defendant is an F.S.P.); 1993 Royal Decree §§ 2, 4, 6, Ex. 239, ECF No. 478-12 (providing for government assumption of the Collection and obligations and in the event of Defendant's dissolution, funding by government, and requiring at least two-thirds of board members appointed by government). Taken together, these facts demonstrate that Defendant has no ability to act independently from Spain, which like in *In re 650 Fifth Ave.*, 881 F. Supp. 2d at 551–52, is sufficient to establish that Spain controls Defendant "to such a degree that a principal-agent relationship arises between them." *GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 815 (D.C. Cir. 2012). Accordingly, Defendant "receives the same due process protection as [Spain]: none." *Id*.

Under the second *Bancec* prong, it would be unjust to treat Defendant as a Spanish agency or instrumentality for the purpose of the FSIA and then as a separate entity to afford it due process protections. 462 U.S. at 632. Spain seeks to

10

"gain a benefit" of due process protections "while using the legally separate status of its instrumentality as a shield to guard against concomitant costs or risks" of the absence of due process rights that would otherwise apply to a sovereign nation. *DRC, Inc. v. Republic of Hond.*, 71 F. Supp. 3d 201, 218 (D.D.C. 2014) (citing *Bancec*, 462 U.S. at 630–33). Defendant cannot have it both ways.

### 2. Even If Defendant Has Due Process Rights, Rational Basis Review Applies and Is Satisfied Here

#### a. Defendant Has No Vested Property Right that Would Be Deprived Through Application of Section 338(c)(6)

Defendant's as-applied due process challenge to Section 338(c)(6) should also be rejected because Defendant has no vested property right at issue here. Defendant argues that Section 338(c)(6) "retroactively strip[s] [Defendant] of its vested property rights." Def's Mot. Summ. J. 10. But regardless of how Defendant characterizes its asserted property right, there is no vested right at issue protected by due process. "Because the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to existing rules or understandings that stem from an independent source such as state law." *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998) (internal quotations omitted). In other words, property interests "attain . . . constitutional status by virtue of the fact that they have been initially recognized and protected by state law." *Paul v. Davis*, 424 U.S. 693, 710 (1976). Defendant claims a "liberty interest in its ownership of the Painting." Def's Mot. Summ. J. 9. However, no final judgment has established its ownership rights, and ownership of the Painting is an open question. Moreover, there is no fundamental right to acquire personal property through adverse possession, which is how Defendant claims to own the Painting.[4]

---

[4] California does not recognize adverse possession of personal property, *see Cassirer VII*, 89 F.4th at 1232 n.6, *Crocker Nat'l Bank v. Byrne & McDonnell*, 178 Cal. 329, 332 (1918), and there are no cases recognizing a fundamental right to acquire ownership through adverse possession. *See, e.g.*, *Gelber v. City of Willits*, No. 23-cv-00681, 2023 WL 7003241, at *3 (N.D. Cal. Oct. 23, 2023) (dismissing substantive due process claim in absence of "any case remotely recognizing a fundamental right to acquire property by adversely possessing another's property").

11

In the absence of a fundamental right of ownership to the Painting, Defendant can claim no due process violation from Section 338(c)(6)'s application.

Alternatively, Defendant appears to assert a vested interest in the application of Spanish law pursuant to the choice-of-law rules that existed prior to Section 338(c)(6)'s enactment. Def's Mot. Summ. J. 9 ("Under Article 1955 of the Spanish Civil Code, the Foundation owns the Painting . . ."). However, "[n]o person has a vested interest in any rule of law, entitling him to insist that it shall remain unchanged for his benefit." *N.Y. Cent. R. R. Co. v. White*, 243 U.S. 188, 198 (1917). "This is true after suit has been filed and continues to be true until a final, unreviewable judgment is obtained." *Hammond v. United States*, 786 F.2d 8, 12 (1st Cir. 1986). For retroactive legislation,[5] "a case is final only after the availability of appeal is exhausted, and the time for a petition for certiorari has elapsed or the petition has been denied." *Johnston v. Cigna Corp.*, 14 F.3d 486, 489 n.4 (10th Cir. 1993); *see Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987).

Defendant's arguments that application of Section 338(c)(6) deprives it of its asserted property rights are unpersuasive. Defendant suggests that a Legislator's statement and staff reports demonstrate that Section 338(c)(6) "is not a neutral procedural rule" but rather the Legislature's attempt to "change the outcome of this case." Def's Opp'n 13. However, Defendant reads too much into these statements without giving due weight to the statute's plain text and legislative findings, which are "voted upon by the entire legislative body," and are of "greater weight than traditional legislative history materials." *Young v. Super. Ct. of Solano Cnty.*, 79 Cal. App. 5th 138, 157 (2022). The findings confirm that the legislative intent is to "discourage art theft and trafficking in stolen art" through a generally applicable statute, rather than to retroactively transfer Defendant's asserted property rights.

---

[5] Section 338(c)(6)'s retroactive application is indisputable; the Legislature was clear that it applies to all actions pending on its effective date. *See* § 338(c)(6). Where the "law makes clear that it is retroactive," courts "must apply that law . . . and must alter the outcome accordingly." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 226 (1995).

ATTORNEY GENERAL'S SUPPLEMENTAL BRIEF
Case No. 2:05-cv-03459-JFW (Ex)

1   AB 2867, § 1(f) (Cal. 2024). The mere fact that the legislative findings reference
2   the present litigation does not itself present a due process concern. Def's Mot.
3   Summ. J. 10; Def's Opp'n 13. Legislatures often adopt laws in response to
4   individual cases and the Supreme Court has recognized the validity of statutes that
5   "appl[y] to cases identified by caption and docket number." *Bank Markazi v.*
6   *Peterson*, 578 U.S. 212, 232 (2016) (citing *Robertson v. Seattle Audubon Soc'y*,
7   503 U.S. 429, 440 (1992)). For example, the Holocaust Expropriated Art Recovery
8   Act ("HEAR Act"), Pub. L. No. 114-308, 130 Stat. 1524 (2016), was enacted in
9   response to the Ninth Circuit's holding in *Von Saher v. Norton Simon Museum of*
10  *Art*, 592 F.3d 954 (9th Cir. 2010) (*Von Saher I*) that California's extension of the
11  statute of limitations for claims for Holocaust-era artwork was preempted under the
12  foreign affairs doctrine. *See* HEAR Act, § 2(7).[6]
13          Defendant relies on dicta from *Campbell v. Holt*, 115 U.S. 620 (1885), Def's
14  Mot. Summ. J. 9, but that reliance is misplaced for multiple reasons. First,
15  *Campbell* and its progeny, *see, e.g.*, *Chase Sec. Corp. v. Donaldson*, 325 U.S. 304,
16  309 (1945), *Starks v. S.E. Rykoff Co.*, 673 F.2d 1106, 1109 (9th Cir. 1982), discuss
17  the effect of an amendment to a statute of limitations, which is distinct from, and
18  thus not applicable to, Section 338(c)(6). *See Campbell*, 115 U.S. at 623. Moreover,
19  "*Campbell* applies only when the property at issue had vested and had become the
20  defendant's." *Cassirer v. Thyssen-Bornemisza Collection Found.*, 737 F.3d 613,
21  619 (9th Cir. 2013) (*Cassirer II*). That is not the case here. Every order finding that
22  Defendant owns the Painting has been vacated and thus, ownership of the Painting
23  remains an open question
24
25

---

26  [6] Other examples include the Lilly Ledbetter Act, Pub. L. 111-2 (2009) (response to
27  *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007)), Federal Tort
    Claims Act, Pub. L. 100-694, § 2 (a)(4) (1988) (response to *Westfall v. Erwin*, 484
28  U.S. 292 (1988)), and California Racial Justice Act, *see Young*, 79 Cal. App. 5th at
    149 (explaining Act was response to *McCleskey v. Kemp*, 481 U.S. 279 (1987)).

13

### b.    Section 338(c)(6) Survives Rational Basis Review

Absent a vested property interest or fundamental liberty interest implicated by applying Section 338(c)(6), rational basis review applies. *Franceschi v. Yee*, 887 F.3d 927, 939 (9th Cir. 2018). Section 338(c)(6) passes rational basis review because mandating application of California's substantive law to stolen property claims is rationally related to California's interests in preventing "theft and trafficking in stolen property; precluding a thief from passing good title to any subsequent purchaser of stolen property; protecting the rights of true owners to recover stolen artwork and other items of cultural property; and precluding the true owners of stolen property from being divested of title without actual knowledge of their rights in and the location of the property." AB 2867, § 1(k) (Cal. 2024).

### 3.    California Has Significant Contacts to, and Interests in, this Action

As an additional basis for its due process challenge, Defendant separately contends that application of California substantive law pursuant to Section 338(c)(6) offends due process because "all relevant conduct at issue took place in Spain, or, at a minimum not California." Def's Mot. Summ. J. 12. But the due process inquiry is not a balancing test of California's and Spain's interests as Defendant suggests, but rather is a "highly permissive standard" that focuses on whether California has "a significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1111, 1113 (9th Cir. 2013).

Here, California has a significant interest in preventing trafficking in stolen property and protecting the rights of owners to recover stolen artwork. *See* AB 2867, § 1(k) (Cal. 2024); *infra* IV.A.1. And as Plaintiffs highlight, California has significant contacts to this action. Pls' Opp'n 13–15; Pls' Reply 7–8, ECF No. 694. In addition to Plaintiffs' California residence long before they discovered

1    Defendant's possession of the Painting, the Painting was trafficked through

2    California in violation of federal and international laws,[7] Claude Cassirer's

3    California family trust held his interest in the Painting, and Defendant engaged in

4    numerous commercial activities in California and the United States. Pls' Opp'n 13

5    (citing SUF-P 15–18; SUF-D 25); *see also* *Cassirer*, 461 F. Supp. 2d 1157, 1173–

6    76 (C.D. Cal. 2006) (documenting Defendant's sale of a poster of the Painting to a

7    California resident and advertisements featuring the Painting on flights to and from

8    the United States viewed by tens of thousands of airline passengers, in national

9    publications, and tourism offices in California). This case is like *Allstate*, in which

10   the Supreme Court upheld application of Minnesota law where the accident giving

11   rise to the lawsuit occurred in Wisconsin, and Minnesota's only contacts to the

12   action included the decedent's employment, his wife's residence there after the

13   accident, and the insurer's operations. 449 U.S. at 313–20. California has a

14   "significant aggregation of contacts" and interests that satisfies the "highly

15   permissive standard" to apply Section 338(c)(6) to this action, which is all that is

16   required to comport with due process. *AT&T*, 707 F.3d at 1111, 1113; *Cf. Ford*

17   *Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 363–65 (2021)

18   (recognizing widely accepted practice of courts hearing tort claims for out-of-state

19   conduct that causes in-state injuries).

20   **III.   SECTION 338(C)(6) DOES NOT VIOLATE THE COMMERCE CLAUSE**

21           The Constitution provides that "Congress shall have Power . . . To regulate

22   Commerce with foreign Nations[.]" U.S. Const. art. I, § 8, cl. 3. In matters of

23   foreign commerce, the concern "is not with an actual conflict between state and

24   federal law, but rather with the policy of uniformity, embodied in the Commerce

25   Clause, which presumptively prevails when the Federal Government has remained

26   _____

[7] The Painting's transportation into California without an export license required by
27   U.S. Military Law 52 and sale to a Los Angeles resident in 1951, less than a decade
after World War II, implicates California's significant interests in preventing
28   unlawful importation and sale of stolen cultural property within its boundaries and
protecting the rights of true owners to recover stolen property. *See* SUF-P 15–18.

silent." *Wardair Can., Inc. v. Fla. Dep't of Revenue*, 477 U.S. 1, 8 (1986). The Supreme Court has instructed that "'extreme caution' is warranted before a court deploys its 'implied authority' to reject a state law under the dormant Commerce Clause." *Flynt v. Bonta*, 131 F.4th 918, 926 (9th Cir. 2025) (quoting *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 390 (2023)), *petition for cert filed*, No. 25-173 (U.S. Aug. 11, 2025). Courts should only strike down a law under the dormant Commerce Clause "where the infraction is clear." *Nat'l Pork*, 598 U.S. at 390. There is no clear infraction under any of the theories Defendant posits.

### A.    Section 338(c)(6) Does Not Impede Federal Government's Ability to Speak with One Voice

A state law can violate the dormant foreign Commerce Clause by impeding the federal government's ability to "speak with one voice" in foreign affairs when such state action harms "'federal uniformity in an area where federal uniformity is essential.'" *Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 68 (1st Cir. 1999) (quoting *Japan Line Ltd. v. Cnty. of Los Angeles*, 441 U.S. 434, 448–49 (1979) and *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 193 (1983)). A state action will only violate the "one voice" standard if it "either implicates foreign policy issues which must be left to the Federal Government *or* violates a clear federal directive." *Container Corp.*, 463 U.S. at 194. Neither criterion is met here.

Defendant argues the federal government insists on speaking with "one voice" in the area of Nazi-stolen artwork because it enacted the HEAR Act, and "again confirmed its commitment to the Terezin Declaration and Washington [Conference] Principles" when it endorsed the "Best Practices for the Washington Conference Principles on Nazi-Confiscated Art" ("Best Practices"). Def's Mot. Summ. J. 17. The Washington Conference Principles are non-binding principles, joined by forty-four countries acknowledging that countries should take steps "expeditiously to achieve a just and fair solution" for restitution of Nazi-looted artwork. *Cassirer*, 2019 WL 13240413, at *25. The Terezin Declaration, signed by

16

forty-six countries, reaffirmed those countries' commitment to the Washington Conference Principles and the return of "art and cultural property confiscated by the Nazis from Holocaust" victims. *Id.* at *26. However, these "policies" Defendant points to "fail[] to reveal any such federal policy" of excluding states from enacting general laws that apply to Holocaust-era art claims. *Wardair*, 447 U.S. at 9. The "non-binding" Best Practices, for example, "were drafted with the awareness that . . . states act within the context of their own laws," recognizing states' continued role in artwork reclamation cases.[8] The Terezin Declaration and Washington Conference Principles[9] are aspirational. *See id.* at 10 (rejecting application of dormant foreign Commerce Clause to a state's tax on aviation fuel where international agreements showed merely "an international aspiration" to achieve an air travel-related policy). "[I]n not one of these [statements] has the United States agreed to deny the States the power" to enact generally applicable laws that also govern some claims of Holocaust-stolen artwork. *Id.* at 11. The sole federal statute Defendant points to, the HEAR Act, mandates only the application of a uniform statute of limitations, acquiescing to other state involvement in claims for Holocaust-stolen artwork. HEAR Act, § 5; *see Wardair*, 447 U.S. at 10.

Furthermore, Section 338(c)(6) is a generally applicable statute that regulates in an area of traditional *state*, not federal, responsibility. *See Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1074 (9th Cir. 2012) ("[T]he regulation of stolen property[] is traditionally an area of state responsibility."). Defendant has not shown that the regulation of stolen property is a foreign policy issue that must be

---

[8] *Best Practices for the Washington Conference Principles on Nazi-Confiscated Art*, U.S. Dep't of State (Mar. 5, 2024), https://tinyl.co/4BPm.

[9] There is some question as to what weight courts should give to executive action under the dormant foreign Commerce Clause analysis, but Supreme Court precedent suggests courts should look to acts of Congress to determine whether the federal government has acted. *See Barclays Bank PLC v. Franchise Tax Bd. of Cal.*, 512 U.S. 298, 329 (1994) ("The Constitution expressly grants Congress, not the President, the power to regulate Commerce with foreign Nations."); *see also id.* (declining to address "whether the President may displace state law pursuant to legally binding executive agreements with foreign nations made in the absence of either a congressional grant or denial of authority").

left to the federal government. And not every law that touches issues of foreign affairs implicates an area where federal uniformity is essential. *See, e.g.*, *Trojan Techs., Inc. v. Commw. of Pa.*, 916 F.2d 903, 912 (3d Cir. 1990) (finding Pennsylvania law requiring public agencies purchase only American-made steel did not implicate an area where federal uniformity is essential); *Pac. Nw. Venison Producers v. Smitch*, 20 F.3d 1008, 1014 (9th Cir. 1994) (holding Washington law prohibiting importation of certain animals is "not a matter in which national uniformity is important" even though it included animals imported from Canada).

At most, Section 338(c)(6) has an incidental or indirect effect on foreign affairs. Section 338(c)(6) applies to all claims for stolen property, not just claims based in the Holocaust, whereas the HEAR Act, Terezin Declaration, and Washington Conference Principles only pertain to stolen artwork from the Holocaust between 1933 and 1945. Such a "foreign resonance" does not implicate foreign affairs and is insufficient to find that a statute violates the "one voice" doctrine. *See Container Corp.*, 463 U.S. at 194, 196–97 (upholding California state corporate franchise tax levied on foreign and domestic corporations as having mere "foreign resonances"); *Barclays Bank*, 512 U.S. at 303 (holding tax imposed on domestic corporations with foreign parents or subsidiaries did not violate the one voice doctrine); *Wardair*, 477 U.S. at 9 (finding Florida's tax on sale of aviation fuel did not violate one voice doctrine even though it applied to foreign airlines).

Finally, Defendant argues that Section 338(c)(6) violates the dormant Commerce Clause because it "attempts to regulate wholly foreign commerce." Def's Mot. Summ. J. 19. But the Supreme Court has held there is no "almost *per se* rule forbidding enforcement of state laws that have the practical effect of controlling commerce outside the State, even when those laws do not purposely discriminate against out-of-state economic interests." *Nat'l Pork*, 598 U.S. at 371; *see also Flynt*, 131 F.4th at 929 (applying *National Pork* to dormant Commerce Clause challenge to casino regulation, rejecting argument that law is invalid

18

because it has practical effect of controlling extraterritorial behavior). Such a rule, the Court explained, "would cast a shadow over laws long understood to represent valid exercises of the States' constitutionally reserved powers." *Nat'l Pork*, 598 U.S. at 375. And it would effectively make unconstitutional "all manner of libel laws, securities requirements, charitable registration requirements, franchise laws, tort laws, and plenty else besides." *Id.* at 374; *see also Flynt*, 131 F.4th at 929 ("[T]he nearly inevitable extraterritorial effects that state laws produce does not mean these laws run afoul of the Commerce Clause's negative proscription."). Defendant asks this Court to do what the Supreme Court would not: find that a valid exercise of state legislative power violates the dormant Commerce Clause merely because it might have a practical effect on extraterritorial behavior. *See Nat'l Pork*, 598 U.S. at 374. This Court should reject Defendant's invitation.

### B. Section 338(c)(6) Does Not Discriminate Against Foreign Commerce

Defendant argues that Section 388(c)(6) discriminates against foreign commerce because its choice-of-law provision mandates California law apply anytime another jurisdiction has an interest in having its law applied.[10] Def's Mot. Summ. J. 21. But Section 338(c)(6) is neither facially discriminatory nor discriminatory in its purpose in this context because it applies California law to all claims brought under the statute, applying with equal force to claims brought against parties located in California, other states, and other countries, not just those involving foreign entities. *See Flynt*, 131 F.4th at 926 (finding California casino ownership regulation did "not implicate the core concern at the heart of the dormant Commerce Clause" because it "appl[ied] evenly" to Californian- and non-Californian entities). And the statute affects trade only to the extent it requires that claims falling within its scope, brought in courts located in California, by California residents, be decided under California law. It does not force courts outside of the

---

[10] To the extent Defendant argues that Section 338.2 discriminates against foreign commerce, its argument is not ripe and should be rejected on that basis. *See supra* I.

state or country to apply California's substantive law to such claims. California treats all claimants, defendants, and claims under Section 338 the same—if a claim for stolen property is brought under Section 338, no matter who the claim is against, California courts are to apply California substantive law to that claim. Simply because claims for Holocaust-era artwork can be included in the law's scope does not show a discriminatory intent against foreign interests or entities.

Defendant argues that statements made by the statute's author demonstrate that Section 338(c)(6) was enacted with discriminatory intent. Def's Mot. Summ. J. 22. They do not; rather, the legislative findings confirm the Legislature's intent is to "discourage art theft and trafficking in stolen art" through a generally applicable statute, not to protect in-state commerce by discriminating against out-of-state interests. AB 2867, § 1(f) (Cal. 2024). But even if those statements were deemed to reflect a discriminatory intent, "the legislature's stated purpose in enacting a statute is not dispositive of a dormant Commerce Clause challenge." *Gerling Glob. Reinsurance Corp. of Am. v. Low*, 240 F.3d 739, 746 (9th Cir. 2001). Rather, "the core concern at the heart of the dormant Commerce Clause" is whether the law "benefit[s] in-state economic interests by burdening out-of-state competitors." *Flynt*, 131 F.4th at 926 (quoting *Nat'l Pork*, 598 U.S. at 369). California's desire to discourage art theft and trafficking in stolen art "does not amount to the kind of economic protectionism that would support a finding of discriminatory purpose." *Id*.

## IV. SECTION 338(C)(6) IS NOT FEDERALLY PREEMPTED

"Foreign affairs preemption encompasses two related, but distinct, doctrines: conflict preemption and field preemption." *Movsesian*, 670 F.3d at 1071. Neither doctrine supports Defendant's federal preemption challenge to Section 338(c)(6).

### A. Section 338(c)(6) Is Not Field Preempted

Field preemption is "applied sparingly," *Deutsch v. Turner Corp.*, 324 F.3d 692, 710 (9th Cir. 2003), and there must be "more than some incidental or indirect

effect on foreign affairs to invalidate a state law on grounds of field preemption," *Zschernig v. Miller*, 389 U.S. 429, 434 (1968). Thus, a state statute may be preempted only where, even in the absence of federal policy, "(1) its real purpose does not concern an area of traditional state responsibility, *and* (2) it intrudes on the federal government's foreign affairs power." *Gingery v. City of Glendale*, 831 F.3d 1222, 1229 (9th Cir. 2016) (emphasis added). Neither element is met here.

### 1. Section 338(c)(6) Regulates the Treatment of Stolen Property, a Traditional State Responsibility

Section 338(c)(6) regulates "the ownership of property within the state," which is a long-recognized traditional state responsibility. *Dunbar v. Seger-Thomschitz*, 615 F.3d 574, 578 (5th Cir. 2010); *see also Von Saher I*, 592 F.3d at 964 ("Property, of course, is traditionally regulated by the state."); *Movsesian*, 670 F.3d at 1074 (noting regulation of stolen property "is traditionally an area of state responsibility"); *see Deirmenjian v. Deutsche Bank AG*, 548 F. App'x 461, 464 (9th Cir. 2013) *also* ("California has a legitimate interest in having a statutory provision that affords a remedy for or a benefit to an injured person or business applied when . . . the injured person or business is a California resident or business, even when the injury-producing conduct occurs outside California." (quoting *McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 95 (2010))). The California Legislature exercised this traditional function when it amended Section 338 to clarify the law applicable to residents' claims of stolen property. The plain language of subsection (c)(6) makes clear the statute's choice-of-law provision applies to "any action brought by a California resident, or by an heir, trustee, assignee, or representative of an estate of a California resident" involving claims for recovery of personal property or money damages. § 338(c)(6). That the statute also covers claims for Holocaust-era artwork does not detract from its traditional purpose, which is to ensure that stolen property claims brought by its residents are adjudicated pursuant to California's law. Therefore, California is well within its constitutional bounds.

1       Defendant likens Section 338(c)(6) to the California statutes found

2 preempted in *Von Saher I* and *Deutsch*. But Section 338(c)(6) is materially different

3 than those two statutes because it does not single out any specific group of people

4 or any discrete foreign conflict or nation. In *Von Saher I*, the Ninth Circuit struck

5 down a California statute that created a cause of action for "any owner, or heir or

6 beneficiary of an owner, of Holocaust-era artwork . . . to recover Holocaust-era

7 artwork" from certain entities. 592 F.3d at 958. The court held that the statute was

8 not "a garden variety property regulation" because it "did not apply to all claims of

9 stolen art, or even all claims of art looted in war." *Id.* at 964. It addressed "only the

10 claims of Holocaust victims and their heirs." *Id.* It was the "scope of the statute,"

11 the court noted, that "belie[d] California's purported interest in protecting its

12 residents and regulating its art trade." *Id.* at 965. Similarly, in *Deutsch*, the Ninth

13 Circuit found preempted a California law that "[b]y its terms" only applied to

14 claims brought by World War II slave victims or forced labor victims against

15 "enslaving individuals or entities," for the sole purpose of redressing wrongs

16 committed during World War II. 324 F.3d at 712.

17       In contrast to those two statutes, Section 338(c)(6) is not geared toward any

18 war or international conflict whatsoever. To the limited extent Section 338(c)(6)

19 applies to claims for Holocaust-era art, it does not modify any existing federal

20 resolution for what law applies to those claims. And far from being limited to

21 claims arising out of World War II, the law sweeps broadly, applying to all victims

22 of stolen property of certain significance regardless of the circumstances in which

23 the theft occurred. This broad scope underscores the State's interest in protecting its

24 residents from property theft and ensuring claims for such property are fairly

25 adjudicated pursuant to state law. Even if this Court finds Section 338(c)(6) has

26 "certain superficial similarities" to the statutes in *Von Saher I* and *Deutsch*, the

27 Ninth Circuit has previously "declined to invalidate" laws with such similarities.

28 *Deutsch*, 324 F.3d at 710. This Court should do the same.

1

### 2.    Section 338(c)(6) Does Not Intrude on the Federal Government's Foreign Affairs Power

Section 338(c)(6) is not field preempted also because it does not intrude on the federal government's foreign affairs power. *Cassirer II*, 737 F.3d at 617; *see Movsesian*, 670 F.3d at 1076. For this element to be met, both Supreme Court and Ninth Circuit precedent require that the state action have more than just an incidental or indirect effect on foreign affairs. *Zschernig*, 389 U.S. at 434; *Cassirer II*, 737 F.3d at 617.

Section 338(c)(6) is a generally applicable statute with no direct or appreciable impact on foreign affairs, and Defendant has not provided any evidence to the contrary. As discussed, Section 338(c)(6) does not intrude into foreign affairs on its face; it merely clarifies what law applies to claims of stolen property brought by California residents under the statute. Similar to section 338(c)(3) upheld in *Cassirer II*, Section 338(c)(6) "does not create a remedy for wartime injuries by creating a new cause of action for the recovery of artwork." 737 F.3d at 618. It also "does not convey a distinct juristic personality from that of the United States when it comes to matters of foreign affairs." *Id.* at 619 (internal quotation marks omitted). Nor has Defendant provided any evidence that California courts "are applying [Section 338(c)(6)] to 'establish the State's own foreign policy.'" *Id.* (quoting *Zschernig*, 389 U.S. at 441) (internal brackets omitted).

In contrast to the statutes in *Von Saher I* and *Deutsch*, Section 338(c)(6) involves the process for the adjudication of war-related art claims, not an attempt to resolve war or establish a remedy for wartime injuries. *Von Saher I*, 592 F.3d at 966; *Deutsch*, 324 F.3d at 712. Simply because claims for Holocaust-era artwork can be brought under Section 338 does not mean the statute intrudes on the federal government's foreign affairs power, for whether a statute "may permit Holocaust era-claims is not the test for preemption." *Cassirer II*, 737 F.3d at 619. There is no evidence that, in practice, Section 338(c)(6) is only applied to Holocaust-era claims

1  or that it operates as a declaration by the State on a specific foreign controversy. *Id.*

2  (citing *Zschernig*, 389 U.S. at 441). Nor has California "entered the forbidden

3  domain of negotiating with a foreign country." *Clark v. Allen*, 331 U.S. 503, 517

4  (1947). Although there may be some "incidental or indirect effect in foreign

5  countries," that "is true of many state laws which none would claim cross the

6  forbidden line." *Id.*

7  **B.    Section 338(c)(6) Is Not Conflict Preempted**

8       Under conflict preemption, a state law may be preempted when it "stands as

9  an obstacle to the accomplishment and execution of the full purposes and objectives

10  of Congress." *Arizona v. United States*, 567 U.S. 387, 399 (2012). Conflict

11  preemption requires "evidence of clear conflict between the policies adopted by the

12  two." *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 421 (2003). "What is a sufficient

13  obstacle is a matter of judgment, to be informed by examining the federal statute as

14  a whole and identifying its purpose and intended effects." *Crosby v. Nat'l Foreign

15  Trade Council*, 530 U.S. 363, 373 (2000). Unlike field preemption, the doctrine of

16  conflict preemption requires the existence of a "federal action such as a treaty,

17  federal statute, or express executive branch policy." *Von Saher I*, 592 F.3d at 960.

18  The Ninth Circuit and Supreme Court "have recognized conflict preemption only in

19  the face of a clear and definite foreign policy." *United States v. California*, No.

20  2:19-cv-02142, 2020 WL 4043034, at *7 (E.D. Cal. July 17, 2020).

21       Defendant points exclusively to the HEAR Act and its brief affirmance of the

22  Washington Conference Principles and the Terezin Declaration as the relevant

23  federal action for purposes of conflict preemption.[11] But Defendant paints a federal

---

[11] To the extent Defendant's argument is construed as contending that the
Washington Conference Principles and Terezin Declaration themselves constitute a
federal policy in conflict with Section 338(c)(6), such an argument should be
rejected primarily because those statements are non-binding. *See Schoeps v. Sompo
Holdings, Inc.*,736 F. Supp. 3d 582, 595 (N.D. Ill. 2024) (stating the Terezin
Declaration is a "legally non-binding document" that "has no legal effect"), *aff'd*,
160 F.4th 815 (7th Cir. 2025); *Philipp v. Fed. Republic of Ger.*, 248 F. Supp. 3d 59,
79 (D.D.C. 2017) ("[T]he Washington Principles were agreed-upon, non-binding
(continued...)

1  policy broader than what the language and history of the HEAR Act can support.[12]

2  The HEAR Act has a limited purpose of ensuring only that statutes of limitations do

3  not "unfairly bar[]" claims of Nazi-era property theft or misappropriation. HEAR

4  Act, § 5(a). Indeed, courts have recognized the HEAR Act's limited scope. *See,*

5  *e.g.*, *Schoeps*, 736 F. Supp. 3d at 591, *aff'd*, 160 F.4th at 825; *Holtzman as Tr. of*

6  *Elizabeth McManus Holtzman Irrevocable Tr. v. Phila. Museum of Art*, No. 22-cv-

7  0122, 2022 WL 2651851, at *8 (E.D. Pa. July 7, 2022); *see also Zuckerman v.*

8  *Metro. Museum of Art*, 928 F.3d 186, 195–97 (2d Cir. 2019) (declining to interpret

9  HEAR Act's statute of limitations as precluding use of laches as an equitable

10  defense).

11      In light of that limited scope, there is no conflict. The HEAR Act's statute of

12  limitations provisions and Section 338(c)(6)'s substantive choice-of-law provision

13  can both be applied to Plaintiffs' claims here, as well as to any other claim brought

14  under the statute. In fact, the Ninth Circuit has stated that the HEAR Act does not

15  impact any choice-of-law analysis. *Cassirer v. Thyssen-Bornemisza Collection*

16  *Found.*, 862 F.3d 951, 964–65 (9th Cir. 2017) ("HEAR does not alter the choice of

17  law analysis this Court uses to decide which state's law will govern [Defendant's]

18  claim of title to the Painting . . ."). This Court should reject Defendant's attempt to

19  interpret the HEAR Act so outside of its clear bounds to manufacture a conflict

20  where there is none.

21                              **CONCLUSION**

22      For the foregoing reasons, the Court should uphold the constitutionality of

23  Section 338(c)(6) and find Defendant lacks standing to challenge Section 338.2(g).

---

24  principles entered into by 13 nongovernmental organizations and 44 governments
that encouraged nations to develop national processes . . . to implement these

25  principles. As such, the executive agreement itself did not establish such processes
but only provided guidance for doing so to the stakeholders.").

26  [12] In its Motion for Summary Judgment, Defendant states the HEAR Act stands for
the proposition that "different legal traditions and systems *must* be taken into

27  account." Def's Mot. Summ. J. 29 (emphasis added). The HEAR Act does not use
mandatory language like "must" in describing its purpose. The only mandatory

28  language is tied to the application of the HEAR Act's six-year statute of limitations.

Dated:  January 9, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
TODD GRABARSKY
Supervising Deputy Attorney General


*/s/  Carolyn Downs*
CAROLYN DOWNS
BARBARA HORNE-PETERSDORF
Deputy Attorneys General
*Attorneys for Party-in-Intervention*
*Rob Bonta, in his official capacity as*
*Attorney General of California*

ATTORNEY GENERAL'S SUPPLEMENTAL BRIEF
Case No. 2:05-cv-03459-JFW (Ex)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Attorney General Rob Bonta, certifies
that this brief contains 7946 words, which:

___ complies with the word limit of L.R. 11-6.1.

X complies with the page limit set in the Court's standing order 5(c), dated
November 6, 2018.

Dated:  January 9, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California


/s/  Carolyn Downs
CAROLYN DOWNS
*Attorney for Party-in-Intervention Rob
Bonta, in his official capacity as
Attorney General of California*

27

# CERTIFICATE OF SERVICE

Case Name: **Cassirer, David, et al. v. Thyssen-Bornemisza Collection Foundation**

Case No. **2:05-cv-03459-JFW(Ex)**

I hereby certify that on January 9, 2026, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**PARTY-IN-INTERVENTION ATTORNEY GENERAL ROB BONTA'S SUPPLEMENTAL BRIEF**

I certify that **all** participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct, and that this declaration was executed on January 9, 2026, at Los Angeles, California.

_____
Anthony Conklin
Declarant

_____
*Anthony Conklin*
Signature

SA2025306474
68069619.docx