1  Rob Bonta
   Attorney General of California
2  Todd Grabarsky
   Supervising Deputy Attorney General
3  Carolyn Downs
   State Bar No. 353455
4  Barbara Horne-Petersdorf
   State Bar No. 327738
5  Deputy Attorneys General
    300 South Spring Street, Suite 1702
6   Los Angeles, CA  90013-1230
    Telephone:  (213) 269-6720
7   Fax:  (916) 731-2124
    E-mail:  Carolyn.Downs@doj.ca.gov
8  *Attorneys for Party-in-Intervention Rob Bonta, in*
   *his official capacity as Attorney General of*
9  *California*

10             IN THE UNITED STATES DISTRICT COURT

11           FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13

14

15  **DAVID CASSIRER, et al.,**            Case No. 2:05-cv-03459-JFW (Ex)

16                          Plaintiffs,   **PARTY-IN-INTERVENTION**
                                          **ATTORNEY GENERAL ROB**
17        **v.**                          **BONTA'S REPLY IN SUPPORT**
                                          **OF SUPPLEMENTAL BRIEF**
18  **THYSSEN-BORNEMISZA**
    **COLLECTION FOUNDATION, an**         Date:       March 30, 2026
19  **agency or instrumentality of the**  Time:       1:30 p.m.
    **Kingdom of Spain,**                 Courtroom:  7A
20                                        Judge:      Hon. John F. Walter
                            Defendant.    Trial Date: None set.
21                                        Action Filed: May 10, 2005

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction..................................................................................................... 1

Argument ........................................................................................................ 1

    I.       Defendant's Challenge to Section 338.2(G) Is Nonjusticiable............ 1

    II.     Section 338(C)(6) Does Not Violate the Due Process Clause.............. 2

            A.     Section 338(c)(6) Is Facially Valid Under the Due Process Clause................................................................................................. 2

            B.     Defendant's As-Applied Challenge to Section 338(c)(6) Fails....................................................................................................... 3

                   1.     Defendant has no due process rights ................................. 3

                   2.     Defendant has no vested property rights........................... 5

                   3.     California's contacts are sufficient to satisfy due process ............................................................................... 6

    III.    Section 338(c)(6) Does Not Offend the Commerce Clause ................ 7

            A.     Section 338(c)(6) Does Not Regulate Extraterritorially............ 7

            B.     Section 338(c)(6) Does Not Discriminate Against Foreign Commerce............................................................................................ 8

             C.     Section 338(c)(6) Does Not Violate "One Voice" Doctrine .............................................................................................. 9

    IV.    Defendant Fails to Establish Section 338(c)(6) Is Preempted ........... 10

            A.     Section 338(c)(6) Not Conflict Preempted............................... 10

             B.     Section 338(c)(6) Is Not Field Preempted................................ 12

Conclusion ................................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

C<span>ASES</span>

*Allstate Ins. Co. v. Hague*
    449 U.S. 302 (1981) ................................................................................... 2

*Am. Beverage Ass'n v. Snyder*
    735 F.3d 362 (6th Cir. 2013) .................................................................... 8

*American Ins. Assn. v. Garamendi*
    539 U.S. 396 (2003) ................................................................................. 12

*Ass'n of Accessible Meds. v. Bonta*
    766 F. Supp. 3d 1020 (E.D. Cal. 2025) .................................................... 8

*AT&T Mobility LLC v. AU Optronics Corp.*
    707 F.3d 1106 (9th Cir. 2013) .................................................................. 6

*Campbell v. Holt*
    115 U.S. 620 (1885) .................................................................................. 6

*Cassirer v. Thyssen-Bornemisza Collection Found.*
    461 F. Supp. 2d 1157 (C.D. Cal. 2006) .................................................... 7

*Cassirer v. Thyssen-Bornemisza Collection Found.*
    596 U.S. 107 (2022) .............................................................................. 4, 9

*Cassirer v. Thyssen-Bornemisza Collection Found.*
    69 F.4th 554 (9th Cir. 2023) ......................................................... 6, 9, 10, 12

*Cassirer v. Thyssen-Bornemisza Collection Found.*
    862 F.3d 951 (9th Cir. 2017) (*Cassirer III*) ....................................... 3, 12

*Cassirer v. Thyssen-Bornemisza Collection Found.*
    89 F.4th 1226 (9th Cir. 2024) ................................................................ 6, 7

*Cassirer v. Thyssen-Bornemisza Collection Found.*
    No. CV 05-3459, 2019 WL 13240413 (C.D. Cal. Apr. 30, 2019) ........... 3, 4, 7

*CC/Devas (Mauritius) Ltd. v. Antrix Corp. Ltd.*
    605 U.S. 223 (2025) .................................................................................. 5

ii

# TABLE OF AUTHORITIES
### (continued)

Page

*Chase Sec. Corp. v. Donaldson*
325 U.S. 304 (1945) ................................................................................ 6

*Clark v. Allen*
331 U.S. 503 (1947) .............................................................................. 12

*Clay v. Sun Ins. Office, Ltd.*
377 U.S. 179 (1964) ................................................................................ 7

*Container Corp. of Am. v. Franchise Tax Bd.*
463 U.S. 159 (1983) ........................................................................... 9, 10

*Crosby v. Nat'l Foreign Trade Council*
530 U.S. 363 (2000) .............................................................................. 10

*Cruz v. United States*
387 F. Supp. 2d 1057 (N.D. Cal. 2005) ................................................. 4

*Daniels Sharpsmart, Inc. v. Smith*
889 F.3d 608 (9th Cir. 2018) ................................................................. 8

*Deutsch v. Turner Corp.*
324 F.3d 692 (9th Cir. 2003) .......................................................... 10, 12

*Duke Power Co. v. Carolina Env't Study Grp., Inc.*
438 U.S. 59 (1978) ............................................................................. 5, 6

*Dunbar v. Seger-Thomschitz*
615 F.3d 574 (5th Cir. 2010) .......................................................... 11, 12

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*
462 U.S. 611 (1983) ................................................................................ 3

*Fuld v. PLO*
606 U.S. 1, 29-30 (2025) ................................................................ 3, 5, 7

*Gerling Glob. Reinsurance Corp. of Am. v. Low*
296 F.3d 832 (9th Cir. 2002) ............................................................... 12

*Hartford Accident & Indem. Co. v. Delta & Pine Land Co.*
292 U.S. 143 (1934) ................................................................................ 2

1

2

# TABLE OF AUTHORITIES
## (continued)

Page

3

4

*Helmerich & Payne Int'l Drilling Co. v. Venez.*
  754 F. Supp. 3d 29 (D.D.C. 2024) .................................................................. 4

5

6

*In re 650 Fifth Ave. and Related Props.*
  881 F. Supp. 2d 533 (S.D.N.Y. 2012) ............................................................ 4

7

8

*In re Korean Ramen Antitrust Litig.*
  No. 13-cv-04115, 2017 WL 235052 (N.D. Cal. Jan. 19, 2017) .......................... 6

9

10

*Movsesian v. Victoria Versicherung AG*
  670 F.3d 1067 (9th Cir. 2012) ...................................................................... 10

11

*Nat'l Foreign Trade Council v. Natsios*
  181 F.3d 38 (1st Cir. 1999) ............................................................................ 9

12

13

*Nat'l Pork Producers Council v. Ross*
  598 U.S. 356 (2023) ...................................................................................... 8

14

15

*Plaut v. Spendthrift Farm, Inc.*
  514 U.S. 211 (1995) ...................................................................................... 6

16

17

*Sam Francis Found. v. Christies, Inc.*
  784 F.3d 1320 (9th Cir. 2015) ........................................................................ 8

18

19

*Schoeps v. Sompo Holdings, Inc.*
  160 F.4th 815 (7th Cir. 2025) .................................................................. 10, 11

20

21

*Schoeps v. Sompo Holdings, Inc.*
  736 F. Supp. 3d 582 (N.D. Ill. 2024) ............................................................. 11

22

*Starks v. S.E. Rykoff Co.*
  673 F.2d 1106 (9th Cir. 1982) ........................................................................ 6

23

24

*Thomas v. Anchorage Equal Rts. Comm'n*
  220 F.3d 1134 (9th Cir. 2000) ........................................................................ 2

25

26

*United States v. Rahimi*
  602 U.S. 680 (2024) ...................................................................................... 2

27

28

*Valley Bank of Nev. v. Plus Sys., Inc.*
  914 F.2d 1186 (9th Cir. 1990) ........................................................................ 9

iv

# TABLE OF AUTHORITIES
## (continued)

Page

*Von Saher v. Norton Simon Museum of Art*
    592 F.3d 954 (9th Cir. 2010) (*Von Saher I*) ....................................10, 12

*Von Saher v. Norton Simon Museum of Art*
    754 F.3d 712 (9th Cir. 2014) ........................................................11, 12

*Zschernig v. Miller*
    389 U.S. 429 (1968) ...............................................................................12

*Zuckerman v. Metro. Museum of Art*
    928 F.3d 186 (2d Cir. 2019) ........................................................11, 12

**STATUTES**

28 United States Code
    § 1606 ....................................................................................................5

California Code of Civil Procedure
    § 338(c)(3) ...........................................................................................12
    § 338(c)(6) ....................................................................................*passim*
    § 338.2(e) ..........................................................................................1, 2
    § 338.2(g) ......................................................................................1, 2, 13

Holocaust Expropriated Art Recovery Act...............................................11

**CONSTITUTIONAL PROVISIONS**

Fourteenth Amendment of the U.S. Constitution ....................................3, 6

**OTHER AUTHORITIES**

*The Thyssen Bornemisza Collection Foundation*,
    https://museothyssen.org (last visited Feb. 26, 2026) ...........................4

**INTRODUCTION**

Defendant's Opposition to the Attorney General's Supplemental Brief fails to establish that California Code of Civil Procedure Sections 338(c)(6) and 338.2(g)[1] are constitutionally infirm. Defendant provides no reason for the Court to find that Section 338.2(g)—which Plaintiffs have not invoked—stands to cause a concrete injury that this Court can remedy, and thus it has no standing to challenge that provision. As for Section 338(c)(6), Defendant's arguments fail on the merits. As Spain's agent, Defendant has no due process rights. And even if it did, it has no vested right in the painting at issue (the "Painting"), and application of Section 338(c)(6) comports with due process. Nor does Section 338(c)(6) violate the Commerce Clause as an extraterritorial regulation that impermissibly discriminates against foreign commerce, or as one that interferes with the federal government's ability to speak with "one voice" on a matter of foreign affairs. Finally, Section 338(c)(6) is not preempted because its application does not threaten any federal policy or the federal government's power over foreign affairs.

The Court should reject Defendant's challenges to the constitutionality of Sections 338.2(g) and 338(c)(6).

**ARGUMENT**

**I.    DEFENDANT'S CHALLENGE TO SECTION 338.2(G) IS NONJUSTICIABLE**

Defendant offers no argument to support that it has standing to challenge Section 338.2(g). Instead, Defendant simply contends that if Section 338(c)(6) is unconstitutional, then so is Section 338.2(g) because it "is identical to § 338(c)(6) inasmuch as it mandates the application of California law in any dispute brought pursuant to the statute."[2] Def.'s Opp'n 1, n.1, ECF No. 725. However, this is

_____

[1] Unless otherwise indicated, all statutory references are to the California Code of Civil Procedure.
[2] Defendant is incorrect in this assertion. Section 338.2(g) does not discuss application of California law whatsoever and cannot be challenged on the same grounds as Section 338(c)(6). While Section 338.2(e) references application of
(continued…)

1

insufficient to establish that Defendant has suffered an actual injury from Section
338.2(g) or that its challenge is ripe. *See Thomas v. Anchorage Equal Rts. Comm'n,
220 F.3d 1134, 1138–39 (9th Cir. 2000) (en banc).* Accordingly, Defendant's
challenge to Sections 338.2(g) should be rejected for the reasons already stated in
the Attorney General's Supplemental Brief. Att'y Gen. Suppl. Br. 4–5, ECF No.
722. The remainder of this Reply focuses on the statute at issue: Section 338(c)(6).[3]

## II.    SECTION 338(C)(6) DOES NOT VIOLATE THE DUE PROCESS CLAUSE

### A.    Section 338(c)(6) Is Facially Valid Under the Due Process Clause

Defendant argues that Section 338(c)(6) is facially unconstitutional, but its
challenge sounds in an as-applied challenge. Def.'s Opp'n 5–6. Defendant relies on
cases analyzing as-applied challenges, not facial challenges, and focuses on a single
hypothetical circumstance where a law applies based on a claimant's residence
alone. *Id.* at 6 (citing *Allstate Ins. Co. v. Hague, 449 U.S. 302 (1981), Hartford
Accident & Indem. Co. v. Delta & Pine Land Co., 292 U.S. 143 (1934)*[4]).
Defendant does not even attempt to demonstrate that "no set of circumstances
exist[] under which [Section 338(c)(6)] would be valid," and it ignores the various
circumstances under which Section 338(c)(6)'s application would be indisputably
constitutionally proper, such as where the stolen property is located in California,
was stolen from within California, or where the parties have business dealings,
residence, or other contacts in California. *United States v. Rahimi, 602 U.S. 680,
693 (2024).* In the absence of any argument or authority addressing the standard for

---

California law, Defendant does *not* challenge that subsection. *See* Not. Att'y Gen.,
ECF No. 686 (challenging only Sections 338.2(g) and 338(c)(6)); § 338.2(e).
[3] Defendant also argues that it is immune under the Foreign Sovereign Immunities
Act (FSIA). Def.'s Opp'n 2–5. Due to California's limited role in defending the
constitutionality of the challenged statutes, the Attorney General does not address
this argument and notes that Plaintiffs addressed Defendant's immunity arguments
in their Motion for Summary Judgment briefing. *See* Pls' Opp'n to Def.'s Mot.
Summ. J. 3–7, ECF No. 692; Pls' Reply 3–5, ECF No. 694.
[4] In any event, Defendant's reliance on *Hartford* is misplaced. As *Allstate* clarified,
*Hartford* "has scant relevance for today" because rather than considering a state's
contacts in the choice-of-law analysis, the Court "gave an isolated event . . .
controlling constitutional significance." *Allstate, 449 U.S. at 309, n.11.*

1    a facial challenge, the Court should reject this claim.

2    **B.    Defendant's As-Applied Challenge to Section 338(c)(6) Fails**

3    **1.    Defendant has no due process rights**

4    Defendant does not dispute that foreign nations are not "persons" protected by

5    the Fourteenth Amendment's Due Process Clause. *See Fuld v. PLO*, 606 U.S. 1,

6    29–30 (2025) (Thomas, J., concurring). Rather, Defendant contends that, although

7    it is as an agency or instrumentality of Spain, it is a separate entity that enjoys due

8    process protections even though Spain itself does not. Def.'s Opp'n 7–9. But the

9    Court should disregard this argument because Defendant acted as Spain's agent at

10   all relevant times underlying this dispute. *See First Nat'l City Bank v. Banco Para*

11   *El Comercio Exterior de Cuba*, 462 U.S. 611, 629, 632 (1983) (*Bancec*).

12   Defendant was created, funded, and controlled by Spain for the purpose of

13   maintaining the Spanish-owned art collection (the "Collection") that includes the

14   Painting, and Spain's control over Defendant continues to this day. *See Cassirer v.*

15   *Thyssen-Bornemisza Collection Found.*, No. CV 05-3459, 2019 WL 13240413, at

16   *7–14 (C.D. Cal. Apr. 30, 2019); Br. for Amicus Curiae State of Cal. at 17,

17   *Cassirer v. Thyssen-Bornemisza Collection Found.*, 862 F.3d 951 (9th Cir. 2017)

18   (*Cassirer III*). Although Defendant asserts that Spain does not "direct daily

19   decisions concerning acquisitions, conservation, loans, or programming," Def.'s

20   Opp'n 9, the record shows that Spain, not Defendant, was solely responsible for

21   negotiating with the Baron for the sale of the Collection, and imposed specific

22   conditions on Defendant for the Collection's maintenance, such as prohibiting the

23   removal or addition of any work and requiring continuous display of every piece.

24   Decl. of Fernando J. Pérez de la Sota ¶¶ 75, 79, ECF No. 405. Defendant's Director

25   Guillermo Solana recently stated that, though this case could have been handled

26   differently by negotiating with the Cassirer family, Defendant "never had the

27   ability" to consider a different approach and that "these decisions have always been

28   decisions of the government of Spain" "because the [C]ollection is a public

3

1  collection that cannot be disposed of, that belongs to the Spanish State, and it has

2  always been . . . Spain that decided to go to trial in the United States to defend the

3  property." *See* Cremades Firm's Mot. for Leave to File Amicus Br., Ex. 1, at 3,

4  ECF No. 727-3.

5      Defendant also contends that Spain does not have control over the Foundation

6  because the Thyssen family comprises one-third of its Board of Directors and

7  maintains veto power over certain matters. Def.'s Opp'n 9–10. Yet, the remaining

8  two-thirds of the Board are Spanish ministry officials or appointees, and the

9  Board's President is Spain's Minister of Culture. *See* *The Thyssen Bornemisza*

10  *Collection Foundation*, https://museothyssen.org (last visited Feb. 26, 2026).

11  Moreover, Spain funds Defendant, is the ultimate beneficiary of Defendant's assets,

12  and claims a vested property interest in the Painting. *See* Att'y Gen. Suppl. Br. 9–

13  10 (citing 1993 Royal Decree §§ 2, 4, 6, Ex. 239, ECF No. 478-12); *Cassirer*, 2019

14  *WL 13240413, at *7–8*); *cf, e.g.*, *Helmerich & Payne Int'l Drilling Co. v. Venez.*,

15  754 F. Supp. 3d 29 (D.D.C. 2024) (finding foreign bank to be Venezuela's alter ego

16  where, even though bank was responsible for daily management, it was under the

17  government-appointed board president's control and Venezuela set its budget and

18  was the real beneficiary of the bank's activities), *aff'd*, 153 F.4th 1316 (D.C. Cir.

19  2025); *In re 650 Fifth Ave. and Related Props.*, 881 F. Supp. 2d 533, 550–52

20  (S.D.N.Y. 2012) (finding foundation was effectively Iran's agent where foundation

21  took direction from government officials and required government approval to take

22  significant actions including board leadership). Defendant's relationship with Spain

23  is that of an agent acting on Spain's behalf, and Defendant cannot claim a separate

24  juridical identity to obtain due process protections Spain would not be afforded.

25  *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 114 (2022); *see*

26  *Cruz v. United States*, 387 F. Supp. 2d 1057, 1068 (N.D. Cal. 2005) (declining to

27  recognize Mexican bank as a person under Due Process Clause because it "acted at

28  all relevant times as [an] agenc[y] and instrumentalit[y] of the Mexican

1    government").

2       It would be unjust to treat Defendant as a "person" under the Due Process

3    Clause where Spain itself does not receive such protections. Defendant argues that

4    when not immune under the FSIA, a foreign state or instrumentality "is to be held

5    liable 'in the same manner' and 'subject to the same rules of liability' as a private

6    party." Def.'s Opp'n 10–11 (quoting *Cassirer*, 596 U.S. at 117, 28 U.S.C. § 1606).

7    However, the FSIA dictates the contours of liability and does not impart the same

8    rights that a private individual would enjoy in the United States. *See generally* 28

9    U.S.C. § 1606. Were it otherwise, foreign nations not immune under the FSIA

10   would enjoy due process rights. Courts have repeatedly rejected this very idea, *see*

11   *Fuld*, 606 U.S. at 29–30 (Thomas, J., concurring) (surveying cases), and the

12   Supreme Court has cautioned courts against reading additional requirements into

13   the FSIA, *see CC/Devas (Mauritius) Ltd. v. Antrix Corp. Ltd.*, 605 U.S. 223, 234

14   (2025). Affording Defendant due process protections "would upset the 'carefully

15   calibrated' system Congress chose" in enacting the FSIA. *Id*. at 235 (internal

16   citations omitted). The Court should decline to take such a step.

17          **2.    Defendant has no vested property rights**

18       Even assuming *arguendo* that Defendant has due process rights, its procedural

19   due process argument fails because it does not have a vested property right.

20   Defendant's claim that it owns the Painting entirely depends on the application of

21   Spain's acquisitive prescription laws, which presupposes the exact outcome of this

22   litigation and what law applies to achieve that outcome.[5] Def.'s Opp'n 12–13. But

23   there has been no final judgment applying Spanish law and awarding Defendant

24   ownership, and Defendant has no "vested interest[] in any rule of the common

25   law"—here, the prior choice of law rules. *Duke Power Co. v. Carolina Env't Study*

26   *Grp., Inc.*, 438 U.S. 59, 88 n.32 (1978) (internal quotations omitted). California is

---

[5] Defendant relies on the Court's prior due process rulings, arguing that prior
factual findings are undisturbed. Def.'s Opp'n 13 n.7. But Defendant points to no
factual findings that establish its vested right in the Painting, and there are none.

1  free to amend its own choice of law rules with retroactive application, "despite the

2  fact that otherwise settled expectations may be upset." *Id*.; *see Plaut v. Spendthrift*

3  *Farm, Inc.*, 514 U.S. 211, 226 (1995).

4      Defendant's reliance on *Campbell v. Holt*, 115 U.S. 620 (1885) is misplaced.

5  In dicta, the Supreme Court in *Campbell* hypothesized about a circumstance where

6  a law removing a statute of limitations might deprive a defendant of property that

7  had become theirs after the bar had been perfected. *Id.* at 623. However, where a

8  party has *not* been vested with a property right, "a state legislature, consistently

9  with the Fourteenth Amendment, may repeal or extend a statute of limitations."

10 *Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 312 (1945); *see Starks v. S.E. Rykoff*

11 *Co.*, 673 F.2d 1106, 1109 (9th Cir. 1982). As such, "*Campbell* applies only when

12 the property at issue had vested and become the defendant's," *Cassirer v. Thyssen-*

13 *Bornemisza Collection Found.*, 737 F.3d 613, 619 (9th Cir. 2013) (*Cassirer II*), and

14 therefore does not apply here.

### 3.    California's contacts are sufficient to satisfy due process

16     Applying Section 338(c)(6) in this case comports with due process also

17 because California has "a significant aggregation of contacts with the parties and

18 the occurrence, creating state interests, such that application of its law [i]s neither

19 arbitrary nor fundamentally unfair."[6] *AT&T Mobility LLC v. AU Optronics Corp.*,

20 707 F.3d 1106, 1111, 1113 (9th Cir. 2013) (quoting *Allstate*, 449 U.S. at 312–13).

21 Defendant does not dispute that the Nazi regime stole the Painting from Lilly

22 Cassirer or that the Painting was trafficked through California. *See* Def.'s Resp. to

23 Pls' Stmnt. Undisputed Facts (SUF-P) 7, 15–18, ECF No. 691-18. This implicates

24 California's significant interests in preventing trafficking of stolen property and

25

26 [6] Defendant points to irrelevant choice-of-law analyses comparing different states' interests to determine which law should apply to a given case. *See* Def.'s Opp'n 15 n.8, 16 (citing *In re Korean Ramen Antitrust Litig.*, No. 13-cv-04115, 2017 WL 235052, at *21 (N.D. Cal. Jan. 19, 2017), *Cassirer v. Thyssen-Bornemisza Collection Found.*, 89 F.4th 1226, 1243 (9th Cir. 2024)). This inquiry is distinct from whether applying a choice-of-law rule offends due process.

protecting the rights of true owners to recover stolen artwork. Assemb. B. 2867, § 1(k) (Cal. 2024); Pls' Stmnt. Genuine Disputes of Material Fact 25, ECF No. 692-1. And as this Court previously found, Defendant has had numerous commercial contacts with California.[7] *See Cassirer*, 461 F. Supp. 2d at 1173–76.

Defendant claims it would be unfair to apply Section 338(c)(6) because it has no reasonable expectation that it would be sued in California. Def.'s Opp'n 16. But the international nature of Spain acquiring the Collection from the Baron in Switzerland and sources of the Collection undermine this argument. SUF-P 21. *See Fuld*, 606 U.S. at 23; *Clay v. Sun Ins. Office, Ltd.*, 377 U.S. 179, 182 (1964). It should come as little surprise that claims to items in the Collection may come from forums outside of Spain when Spain "conducted no investigation of the Painting's provenance or title," despite "the presence of red flags."[8] *Cassirer*, 2019 WL 13240413, at *8, *22 (finding Spain's failure to investigate "irresponsible"). The expectation that Spanish law would always govern such claims rings hollow.

## III. Section 338(c)(6) Does Not Offend the Commerce Clause

### A. Section 338(c)(6) Does Not Regulate Extraterritorially

Simply because Section 338(c)(6) also applies to claims against foreign parties does not mean it has impermissible extraterritorial effects. It applies to claims to restitute stolen property brought in California courts by California residents (or their heirs), alleging harms felt by the California claimant. It thus ultimately regulates in-state conduct, rather than prescribing what law or choice-of-law rules other countries or states must apply in their own courts. This does not offend the

---

[7] Contrary to Defendant's assertion, the Attorney General did not mischaracterize the Court's prior findings. Def.'s Opp'n 15. The Court previously identified California's contacts in analyzing Defendant's commercial activities in the United States. *See Cassirer v. Thyssen-Bornemisza Collection Found.*, 461 F. Supp. 2d 1157, 1173–76 (C.D. Cal. 2006) (documenting Defendant's sale of a poster of the Painting to a California resident and advertisements featuring the Painting in California tourism offices).

[8] In fact, prior to acquiring the Collection, Spain knew that Brigham Young University was filing a lawsuit to recover a piece owned by the Baron and obtained a $10 million guarantee to protect against potential "title issues" with the Collection. *See* de la Sota Decl. ¶¶ 98, 101; *Cassirer*, 2019 WL 13240413, at *11.

Commerce Clause, even if it might have some practical effect on extraterritorial behavior. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 374 (2023).

The cases on which Defendant relies in its argument otherwise are inapposite. *See* Def.'s Opp'n 18–19. In those cases, the laws at issue required parties to take affirmative regulatory compliance action or otherwise suffer penalties, even where the transactions covered by the law had no connection to California whatsoever. *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1324–25 (9th Cir. 2015) (law requiring payment of royalties after art sales that took place in California, even when there otherwise was no connection to California); *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 616 (9th Cir. 2018) (law requiring incineration of all medical waste even after transport out of California); *Ass'n of Accessible Meds. v. Bonta*, 766 F. Supp. 3d 1020, 1024, 1032 (E.D. Cal. 2025) (law creating presumption that reverse-payment settlement agreements between drug companies are anticompetitive, even where none of the parties, agreement, or sales have any connection with California). By contrast, Section 338(c)(6) does not regulate art sales or any good at all, nor does it mandate any regulatory compliance action by a party regardless of where that party is located. Rather, it regulates the procedure for California courts to adjudicate claims when property, including artwork, is stolen from a California resident and the harm of that theft is felt in California.

**B.    Section 338(c)(6) Does Not Discriminate Against Foreign Commerce**

Defendant continues to ignore the plain text of the statute in favor of the legislative history to paint Section 338(c)(6) as discriminatory against foreign commerce. The statute's language, and the legislative findings, make clear that Section 338(c)(6) is a generally applicable law that applies evenhandedly to the adjudication of state law claims of stolen property, regardless of where the defendant is located. *See Am. Beverage Ass'n v. Snyder*, 735 F.3d 362, 371 (6th Cir. 2013). While the legislative history discusses the impetus for amending California's property laws—which itself does not make the statute discriminatory, *see* Att'y

Gen. Suppl. Br. 13, n.6—the plain language of the statute and its application do not bear out a discriminatory purpose or effect against foreign commerce.

That the statute applies to claims against foreign and out-of-state parties does not make it discriminatory. *See Valley Bank of Nev. v. Plus Sys., Inc.*, 914 F.2d 1186, 1193 (9th Cir. 1990) ("[A] state law is not discriminatory under the commerce clause simply because it applies most often to out-of-staters" or foreign parties). Contrary to Defendant's argument, Def.'s Opp'n 19–21, to not apply Section 338(c)(6) here would amount to discrimination in *favor* of foreign interests, creating "a mismatch between the Foundation's liability and a private defendant's," *Cassirer*, 596 U.S. at 115, ultimately making foreign defendants liable in a different manner than domestic defendants. *See id.* at 115–17. In this case, such application could lead to the "Foundation keeping the painting when [another] museum would have[] to give it back." *Id.* at 116. Applying Section 338(c)(6) to cases against foreign defendants the same as against private individuals and domestic entities ensures that the statute applies evenhandedly. *See Valley Bank*, 914 F.2d at 1193 ("[A law that] applies evenly certainly passes muster under the commerce clause.").

**C.    Section 338(c)(6) Does Not Violate "One Voice" Doctrine**

Section 338(c)(6) does not impede the federal government's "ability to speak with one voice in an area where federal uniformity is essential," *Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 68 (1st Cir. 1999), nor does it violate a "clear federal directive." *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 194 (1983). While it governs claims of stolen property, it "does not require that those claims arise out of wartime injuries, or from any other specific source that might implicate the federal government's foreign affairs power." *Cassirer II*, 737 F.3d at 619; Att'y Gen. Suppl. Br. 17–18. Section 338(c)(6) is like the law upheld in *Cassirer II*, in which California enacted a new statute of limitations for a class of artwork that governed Plaintiffs' claim for return of the Painting. *Cassirer II*, 737 F.3d at 617. Similarly, Section 338(c)(6) "does not create a remedy for

9

wartime injuries by creating a new cause of action for the recovery of artwork." *Id.
at 618–19* (distinguishing statute from those struck down in *Von Saher v. Norton
Simon Museum of Art*, 592 F.3d 954 (9th Cir. 2010) (*Von Saher I*), *Movsesian v.
Victoria Versicherung AG*, 670 F.3d 1067 (9th Cir. 2012), and *Deutsch v. Turner
Corp.*, 324 F.3d 692 (9th Cir. 2003)). Nor does Section 338(c)(6) regulate any
conduct at all—let alone conduct significantly impacting foreign affairs. Again, it
simply governs the adjudication of claims brought under state law; it does not
interfere with the federal government's ability to "negotiate and establish []
remedies with the international community." *Von Saher I*, 592 F.3d at 967.

Importantly, Defendant still fails to establish the existence of a "clear federal
directive" that Section 338(c)(6) violates. *Container Corp.*, 463 U.S. at 194. Instead
of grappling with the case law in this area, *see* Att'y Gen. Suppl. Br. 17–18,
Defendant continues to argue the Washington Principles and Terezin Declaration
prohibit California from enacting a general property law that also applies to cases of
Nazi-stolen art. Def.'s Opp'n 22. However, these non-binding statements do not
stand for anything except that "United States foreign policy supports, as a general
proposition, restitution of Nazi-looted art." *Schoeps v. Sompo Holdings, Inc.*, 160
F.4th 815, 825 (7th Cir. 2025). That is hardly the kind of "clear federal directive"
sufficient to find that a law governing state court procedures violates the "one
voice" doctrine. *See, e.g., contra Crosby v. Nat'l Foreign Trade Council*, 530 U.S.
363, 380–81 (2000) (finding clear federal directive where Congress expressly
commanded President to develop strategy to improve human rights in Burma).

## IV. DEFENDANT FAILS TO ESTABLISH SECTION 338(C)(6) IS PREEMPTED

### A. Section 338(c)(6) Not Conflict Preempted

Rather than posing a sufficient conflict, Section 338(c)(6) is "in concert with
[federal policies]" because it "may provide [Plaintiffs] an opportunity to achieve a
just and fair outcome to rectify the consequences of the forced transaction with
[Cassirer] during the war, even if such a result is no longer capable of being

1  expeditiously obtained." *Von Saher v. Norton Simon Museum of Art*, 754 F.3d 712,
2  723 (9th Cir. 2014); *see id.* at 721 (listing tenets of U.S. policy Nazi-looted art
3  restitution).

4      In arguing otherwise, Defendant continues to fail to identify any binding
5  federal law or policy Section 338(c)(6) obstructs. For example, Section 338(c)(6)'s
6  choice-of-law provision is not incompatible with the Holocaust Expropriated Art
7  Recovery Act ("HEAR Act"), Pub. L. No. 114-308, 130 Stat. 1524, 1526 (2016), §
8  5(a) (cited in Def.'s Opp'n 23–24), which governs statutes of limitations for Nazi-
9  stolen art claims. *See Zuckerman v. Metro. Museum of Art*, 928 F.3d 186, 197 (2d
10  Cir. 2019) (finding HEAR Act does not preempt defendant's use of laches as
11  equitable defense under state law); *Schoeps v. Sompo Holdings, Inc.*, 736 F. Supp.
12  3d 582, 595 (N.D. Ill. 2024) (finding Hear Act does not preempt state property or
13  tort claims), *aff'd*, 160 F.4th at 825. Section 338(c)(6) also does not, nor cannot,
14  conflict with non-binding international statements encouraging the return of such
15  art. *See Dunbar v. Seger-Thomschitz*, 615 F.3d 574, 579 (5th Cir. 2010) (finding
16  Louisiana's prescription periods are "not preempted by the Terezin Declaration,
17  U.S. foreign policy, or the President's foreign affairs power"); *Von Saher*, 754 F.3d
18  at 723, 725 (finding claims brought pursuant to state statute of general applicability
19  do not conflict with foreign policy).

20      Taking Defendant's argument to its logical conclusion leads to absurd results.
21  If federal action around Nazi-looted artwork leaves no room for state legislation
22  governing the adjudication of such claims (like Section 338(c)(6)), then any state
23  law applied to a Nazi-stolen art claim would be preempted. This would leave
24  victims of this kind of theft with no state law avenue to pursue their claims. *See
25  Schoeps*, 160 F.4th at 825 ("Congress has made the judgment that reliance on
26  claims based on state law was consistent with [] United States foreign policy
27  objectives."); *see also Dunbar*, 615 F.3d at 579; *Zuckerman*, 928 F.3d at 197; *Von
28  Saher*, 754 F.3d at 725.

### B.    Section 338(c)(6) Is Not Field Preempted

In claiming field preemption, Defendant points to the legislative history to imply that Section 338(c)(6) applies only to Nazi-looted art claims, which, Defendant argues, would "affect[] international relations in a persistent and subtle way." Def.'s Opp'n 25 (quoting *Zschernig v. Miller*, 389 U.S. 429, 440 (1968)). But precedent does not support ignoring the plain language of a statute in favor of the legislative history as Defendant does here. *See Clark v. Allen*, 331 U.S. 503, 516–17 (1947); *Von Saher I*, 592 F.3d at 964; *Von Saher*, 754 F.3d at 718–19, 723; *Deutsch*, 324 F.3d at 707–08. Section 338(c)(6)'s text is clear: it applies to all claims to recover stolen property of historical, interpretive, scientific, or artistic significance, not just Nazi-looted art. Again, Section 338(c)(6) is more akin to the amendment to section 338(c)(3) upheld in *Cassirer II*, which simply "extend[ed] the statute of limitations for preexisting claims concerning a class of artwork that is unrelated to foreign affairs on its face." *Cassirer II*, 737 F.3d at 618–19.

Defendant also continues to state that California "has no interest in having its law applied" to claims brought by its citizens for the return of their Nazi-looted art. Def.'s Opp'n 25. But California has time and again asserted its interest in regulating stolen property in its borders, as well as its interest in ensuring its laws are adequately enforced, as amici throughout this case and others.[9] In amending Section 338(c)(6), California acted within its responsibility to ensure stolen property claims brought by its residents are adjudicated pursuant to California's law. In doing so, California is well within its constitutional bounds.

### CONCLUSION

The Court should uphold the constitutionality of Section 338(c)(6) and find that Defendant's challenge to Section 338.2(g) is nonjusticiable.

---

[9] *See, e.g.*, California's amicus briefs in *Cassirer v. Thyssen-Bornemisza Collection Found.*, 69 F.4th 554 (9th Cir. 2023); *Cassirer III*, 862 F.3d 951 (9th Cir. 2017); *Von Saher*, 754 F.3d 712 (9th Cir. 2014); *Cassirer II*, 737 F.3d 613 (9th Cir. 2013); *Von Saher I*, 592 F.3d 954 (9th Cir. 2010); *Garamendi*, 539 U.S. 396 (2003); *Gerling Glob. Reinsurance Corp. of Am. v. Low*, 296 F.3d 832 (9th Cir. 2002).

1    Dated:  February 27, 2026                    Respectfully submitted,

2                                                 ROB BONTA
                                                  Attorney General of California
3                                                 TODD GRABARSKY
                                                  Supervising Deputy Attorney General
4

5
                                                  /s/  Carolyn Downs
6                                                 CAROLYN DOWNS
                                                  BARBARA HORNE-PETERSDORF
7                                                 Deputy Attorneys General
                                                  *Attorneys for Party-in-Intervention*
8                                                 *Rob Bonta, in his official capacity as*
                                                  *Attorney General of California*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTORNEY GENERAL'S REPLY BRIEF
Case No. 2:05-cv-03459-JFW (Ex)

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Attorney General Rob Bonta, certifies that this brief contains 12 pages, which:

___ complies with the word limit of L.R. 11-6.1.

 _X_ complies with the page limit set in the Court's standing order 5(c), dated November 6, 2018.

Dated:  February 27, 2026                     Respectfully submitted,

                                              ROB BONTA
                                              Attorney General of California


                                              /s/  Carolyn Downs
                                              CAROLYN DOWNS
                                              Deputy Attorney General
                                              *Attorney for Party-in-Intervention Rob Bonta, in his official capacity as Attorney General of California*

14

# CERTIFICATE OF SERVICE

Case Name:    **Cassirer, David, et al. v.**          Case    **2:05-cv-03459-JFW**
              **Thyssen-Bornemisza Collection**       No.
              **Foundation**

I hereby certify that on February 27, 2026, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**PARTY-IN-INTERVENTION ATTORNEY GENERAL ROB BONTA'S REPLY IN SUPPORT OF SUPPLEMENTAL BRIEF**

I certify that **all** participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct, and that this declaration was executed on <u>February 27, 2026</u>, at Los Angeles, California.

Anthony Conklin                              *Anthony Conklin*
Declarant                                    Signature

SA2025306474
68069619.docx