Stephen G. Larson (SBN 145225)
slarson@larsonllp.com
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone: (213) 436-4888
Facsimile: (213) 623-2000

Amelia L.B. Sargent (SBN 280243)
asargent@larsonllp.com
**LARSON LLP**
900 17th Street NW Suite 200
Washington, DC 20006
Telephone: (202) 795-4900
Facsimile: (202) 795-4888

Attorneys for The Kingdom of Spain

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DAVID CASSIRER, AVA CASSiER. and UNITED JEWISH FEDERATION OF SAN DIEGO COUNTY, a California non-profit corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>THYSSEN-BORNEMISZA COLLECTION FOUNDATION, an agency or instrumentality of the Kingdom of Spain,<br><br>Defendant. | Case No. 2:05-cv-03459-JFW-E<br><br>**THE KINGDOM OF SPAIN'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE BRIEF OF AMICUS CURIAE THE KINGDOM OF SPAIN IN SUPPORT OF DEFENDANT THYSSEN-BORNEMISZA COLLECTION FOUNDATION**<br><br>Judge: Hon. John F. Walter |

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................... 1

II. ARGUMENT ..................................................................................................... 2

    A. The Court Should Grant the Motion Because Plaintiffs Do Not Oppose It and It Presents a Unique Perspective to the Court ................ 2

    B. The Ninth Circuit Already Considered Plaintiffs' Remaining Arguments And Nevertheless Accorded Spain's Brief Respectful Consideration—The Court Should Do Likewise Here ........................... 3

        1. The Ministry of Culture Is a Proper Spokesperson for Spain's Interest in the Application of Its Laws to the Disposition of the Painting ............................................................. 4

        2. Spain's Good-Faith Participation in this Litigation for Twenty Years Does Not Render Its Submission "Questionable"......................................................................................... 6

        3. Spain's Statement is Consistent with its Prior Submissions and Spanish Law............................................................................... 7

        4. Spain's Statement Does Not Lack Clarity, Thoroughness, or Support. ..................................................................................... 8

III. CONCLUSION ................................................................................................ 10

CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1 ......................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Animal Science Products, Inc. v. Hebei Welcome Pharmaceutical Co. Ltd.*
585 U.S. 33 (2018) .................................................................................................. 2

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
153 F.Supp.3d 1148 (C.D. Cal. 2015), *rev'd and remanded* 862 F.3d 951 (9th Cir. 2017) ............................................................................................. 6

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
69 F.4th 554 (9th Cir. 2023) ................................................................................... 3

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
89 F.4th 1226 (9th Cir. 2024) ......................................................................... 3, 6, 7

*Cassirer v. Thyssen-Bornemisza Collection Foundation*,
2019 WL 13240413 (C.D. Cal. Apr. 30, 2019) ....................................................... 9

*Neonatology Associates, P.A. v. C.I.R.*,
293 F.3d 128 (3d Cir. 2002) (Alito, J.) ................................................................... 6

*NGV Gaming, Ltd. v. Upstream Point Molate, LLC*,
355 F.Supp.2d 1061 (N.D. Cal. 2005) .................................................................... 2

**California Cases**

*McCann v. Foster Wheeler LLC*,
48 Cal.4th 68 (2010) ............................................................................................... 9

**Federal Statutes**

20 U.S.C. § 42 ............................................................................................................ 5

**Other Authorities**

Fed. R. App. Proc. 29(a)(4)(D) .................................................................................. 6

Fed. R. Civ. Proc. 44.1 .............................................................................................. 2

Smithsonian, Facts About the Smithsonian Institution, Jun. 18, 2025, https://www.si.edu/newsdesk/factsheets/facts-about-smithsonian-institution-short (last visited Feb. 23, 2026) ......................................................... 5

Smithsonian, Members of the Board of Regents, https://www.si.edu/regents/members (last visited Feb. 23, 2026) ....................... 5

## I. INTRODUCTION

The Court should grant Spain's motion for leave to file its *amicus curiae* brief because Plaintiffs "take no position on whether Spain's Motion should be granted." (Opp., 1:7-8.)[1] Absent any opposition, the Court may and should grant Spain's motion and order the *amicus* brief deemed filed.

Plaintiffs instead use their response to attack the substance and weight the Court should accord Spain's interest in this case. But their attacks miss the mark: All Spain requests it that this Court accept the brief as filed, and recognize it as Spain's statement of its interest and injury regarding the potential application of AB 2867 to determine the disposition of the Painting, *Rue Saint-Honoré, après midi, effet de pluie*. The Court may and should accept Spain's proposed *amicus* brief under the approved procedural roadmap laid out by the Supreme Court, and because Spain offers a unique perspective to this Court about how AB 2867 infringes a foreign sovereign's rights to self-determination and violates principles of international comity.

Indeed, Plaintiffs' response merely re-packages arguments they presented to the Ninth Circuit in 2022 when opposing Spain's interest in the context of California's governmental interest/comparative impairment test. The Ninth Circuit nevertheless accorded the statement of Spain's Ministry of Culture respectful consideration and ruled Spanish law applied because Spain's interest was greater than California's, affirming this Court's ruling. The Court here should likewise reject Plaintiffs' claims, deem the brief filed, and grant Spain's statement respectful consideration in its analysis.

---

[1] "Opp." refers to Plaintiffs' Response to Spain's Motion to File Amicus Brief. (Dkt. 724.)

## II. ARGUMENT

### A. The Court Should Grant the Motion Because Plaintiffs Do Not Oppose It and It Presents a Unique Perspective to the Court

Plaintiffs state that they "take no position on whether Spain's Motion should be granted." (Opp., 1:7-8.)  This is effectively a non-opposition.  And by arguing the merits of what weight it claims the Court should apply to Spain's statement, Plaintiffs effectively concede the directive in *Animal Science Products, Inc. v. Hebei Welcome Pharmaceutical Co. Ltd.*, that *amicus* briefs are a proper procedural vehicle for submitting a foreign sovereign's views.  *Animal Sciences*, 585 U.S. 33, 42-43 (2018); *see also* Fed. R. Civ. Proc. 44.1 (permitting a court to consider "any relevant material or source . . . whether or not submitted by a party or admissible under the Federal Rules of Evidence" when determining issues of foreign law).

Further, "[d]istrict courts frequently welcome amicus briefs from non-parties concerning legal issues that have potential ramifications beyond the parties directly involved or if the amicus has 'unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide.'" *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F.Supp.2d 1061, 1067 (N.D. Cal. 2005) (citing *Cobell v. Norton*, 246 F.Supp.3d 59, 62 (D.D.C. 2003)).  Plaintiffs do not dispute this, and do not dispute that AB 2867 has potential ramifications far beyond the parties involved—including, as outlined in the proposed *amicus* brief, for foreign states like Spain, who have an overwhelming interest in having their own laws apply to transactions and property located within their borders.  Spain's brief offers this unique perspective on comity considerations not otherwise addressed in the parties' papers.  (Br., 2-3; Ministry Rept. ¶¶ 1-2.)[2]  It further addresses its own public and private interest in the Painting, and how AB 2867 would undermine the

---

[2] "Br." refers to Brief of *Amicus Curiae* The Kingdom of Spain.  (Dkt. 689-1.) "Ministry Rept." refers to Attachment 1 thereto.  (Dkt. 689-2.)

principle of legal certainty (*seguridad jurídica*) and otherwise be contrary to Spanish law. (Br., 3-4; Ministry Rept. ¶¶ 3-11.) In recognition of this, and in light of Plaintiffs' not opposing the same, Spain respectfully requests the Court grant its motion for leave.

### B. The Ninth Circuit Already Considered Plaintiffs' Remaining Arguments And Nevertheless Accorded Spain's Brief Respectful Consideration—The Court Should Do Likewise Here

Plaintiffs present a variety of arguments which, if the Court were engaging in a weighing-of-interest test (it is not), Plaintiffs claim compel the Court to grant Spain's statement little weight. But here, in light of the present question before the Court regarding the constitutionality of AB 2867—including whether it is preempted by federal law and the foreign affairs doctrine as addressed in the TBC's motion for summary judgment—Plaintiffs' critiques simply miss the mark.

As an initial matter, Plaintiffs made each one of its arguments previously to the Ninth Circuit in a submission dated August 1, 2022 in response to Spain's most recent *amicus* brief. (Plaintiffs-Appellants' Response to Kingdom of Spain's Motion to File Amicus Brief, *Cassirer et al. v. Thyssen-Bornemisza Collection Foundation*, No. 19-55616, Dkt. 119.) Notwithstanding those arguments, the Ninth Circuit ultimately determined Spain had the dominant interest in the comparative analysis under California's choice-of-law test. *See, e.g.*, *Cassirer v. Thyssen-Bornemisza Collection Found.*, 69 F.4th 554, 565 (9th Cir. 2023) (citing *amicus* brief on behalf of Spain through its Ministry of Culture and certifying question to California Supreme Court); *Cassirer v. Thyssen-Bornemisza Collection Found.*, 89 F.4th 1226, 1238 (9th Cir. 2024) (weighing Spain's interest in the comparative impairment test). Plaintiffs attempt to re-package those arguments here, but they are similarly unpersuasive.

1. <u>The Ministry of Culture Is a Proper Spokesperson for Spain's Interest in the Application of Its Laws to the Disposition of the Painting</u>

Plaintiffs first argue that Spain's Ministry of Culture lacks authority to present Spain's interest in this case. Based on a community *amicus* brief filed eight years ago,[3] Plaintiffs suggest Spain should have instead picked its Council of State, the supreme advisory body of the Spanish Government, to "provide any official opinions on Spanish law." (Opp., 5:5.)

First, the Ninth Circuit has implicitly rejected Plaintiffs' argument by accepting two previous submissions by the Ministry of Culture on behalf of Spain in this case, which are attached as Attachments 2 and 5 to Spain's brief.

Second, the Ministry of Culture is the appropriate entity to speak on behalf of the Spanish Government on issues touching cultural policy, including in the international context. Here, Spain has chosen its Ministry of Culture as the appropriate entity to articulate the interests Spain has in the application of Spanish law to cultural property within its borders, and the potential injury to interests presented by AB 2867. This articulation of Spain's state interest does not require a complicated legal analysis. For prior submissions that did, for example when Spain presented its discussion of the application of Spanish acquisitive principles and principles of Spanish constitutional law, Spain chose to speak through its Solicitor General's office (*see* Attachments 3 and 4). Indeed, while Plaintiffs claim that the Council of State is necessary to opine on Spanish law, they also incongruously state that Spain's brief has "an absence of meaningful legal analysis[.]" (Opp., 7:11-12.)

---

[3] On February 24, 2026, well after the parties' summary judgment briefing closed, proposed *amici* Comunidad Judía de Madrid and Federación de Comunidades Judías de España filed a motion for leave to file an *amicus* brief that again raises this same argument. (Dkt. 727.) That argument should be rejected for the same reasons as presented here.

Precisely because this is a statement of policy interest and injury, not a complex legal analysis, the Ministry of Culture is appropriate to speak here.

What is highly *inappropriate* is Plaintiffs' argument that Spain failed to present and consider "the interests of the United States and California, as well as of the Cassirer family," when articulating the statement of its own interest to the Court. (Opp., 2:9-11, *see also* Opp., 8:6-15; 12:5-6; 18:18-20.)  This criticism simply illustrates Plaintiffs' misguided response to Spain's submission.  Spain seeks to speak *for Spain* via its *amicus* brief; California has intervened and may speak on its own behalf (and TBC did not oppose the intervention); and the Cassirer family is able to speak their interests as a represented party in this case.  Indeed, that is precisely *why* the Court should grant Spain's motion:  Spain has a clear and legitimate interest in having its laws apply, but no means other than with this Court's leave to express that interest.  Plaintiffs may make their substantive arguments about California and the Cassirers' interests to this Court in their own briefing; Spain only seeks to speak—and indeed *could* only speak, is only authorized to speak—to its own interest.

Nor does the presence of Spanish officials on TBC's board, or legislative interest in the ownership in the Painting as part of Spain's inalienable cultural heritage, render Spain "compromised" by bias. (Opp., 6-7.)  It is no secret that the Minister of Culture serves on TBC's Board of Trustees—just as the Chief Justice of the Supreme Court and the Vice President of the United States serve on the Smithsonian Institution's Board of Regents, along with three sitting members of the Senate and three members of the House. *See* 20 U.S.C. § 42; *see also* Smithsonian, Members of the Board of Regents, https://www.si.edu/regents/members (last visited Feb. 23, 2026).  Just like the TBC, over half of the Smithsonian's budget is federally funded.  *See* Smithsonian, Facts About the Smithsonian Institution, Jun. 18, 2025, https://www.si.edu/newsdesk/factsheets/facts-about-smithsonian-institution-short (last visited Feb. 23, 2026).  Would that alone render the United States too

hopelessly "biased" to present an interpretation of U.S. law if the Smithsonian found itself in litigation in a foreign forum? The federal rules *require* an *amicus* to have a demonstrated and stated interest in the matter before the court. Fed. R. App. Proc. 29(a)(4)(D) (requiring an *amicus* to state "its interest in the case"). This interest is not improper; the "amicus who makes a strong but responsible presentation in support of a party can truly serve as the court's friend." *Neonatology Associates, P.A. v. C.I.R.*, 293 F.3d 128, 131 (3d Cir. 2002) (Alito, J.). That is what Spain has always done in this case, and what the proposed *amicus* does here.

### 2. Spain's Good-Faith Participation in this Litigation for Twenty Years Does Not Render Its Submission "Questionable"

The Kingdom of Spain has participated early on as a party and later as an *amicus curiae* in this litigation for two decades. That does not turn its submissions into a litigation tactic of the type *Animal Science* cautions against. Plaintiffs' insinuation that Spain is driven only by "its own desire to keep the Painting," Opp., 7:22, misrepresents Spain's history of good-faith participation in this forum and prior *amicus* briefs. So too does Plaintiffs' argument that the instant issue does not implicate "the kind of *sovereign* interest that is worthy of special consideration by the Court," as opposed to a private issue related to a property holder. (Opp., 9:2-3 (emphasis in original).)

As clearly explained in the *amicus* brief and the Kingdom of Spain's many other submissions, Spain's interest above all is that its laws are correctly interpreted and properly applied to property and transactions within its own borders and between and among its own citizens and instrumentalities. (Br., 1.) This Court and the Ninth Circuit have recognized that, absent California's new AB 2867, Spain has the dominant interest over California in having its laws apply to this dispute. *Cassirer v. Thyssen-Bornemisza Collection Found.*, 153 F.Supp.3d 1148, 1155-1160 (C.D. Cal. 2015), *rev'd and remanded* 862 F.3d 951 (9th Cir. 2017); *Cassirer v. Thyssen-Bornemisza Collection Foundation*, 89 F.4th 1226, 1238, 1245 (9th Cir.

2024). That is a sovereign interest. California's attempt to "circumvent" that interest and to nullify it by legislative fiat in fact infringes on Spain's sovereignty in violation of international comity principles. Further, that AB 2867 is "patently unconstitutional" is precisely the argument presented in the TBC's brief in support of which Spain presents its perspective. Plaintiffs' semantic complaint that Spain does not repeat these arguments, or characterizes them too sweepingly, Opp. 7:25-8:5, is incorrect,[4] as well as of no consequence.

### 3. Spain's Statement is Consistent with its Prior Submissions and Spanish Law.

Nor again does *Animal Science* compel this Court to treat Spain's submission as having "virtually no credibility" because Plaintiffs claim it is inconsistent with international policies and principles regarding the restitution of art looted during the Holocaust and/or the export and trade of cultural property. (Opp., 9:14.) Plaintiffs' characterizations have little to do with the issue currently before the Court—and ignore the many Royal Decree-Laws that actually govern the disposition of the Painting in Spain. Further, in the context in which it was originally raised, the Ninth Circuit considered Plaintiffs' argument and rejected it as "an invalid basis upon which to weigh the scope of Spain's interest" under California law. *Cassirer v. Thyssen-Bornemisza Collection Found.*, 89 F.4th 1226, 1238 (9th Cir. 2024).[5]

---

[4] *Compare* Plaintiffs' claim that "[e]ven TBC's briefs do not go so far as to claim 'patent' unconstitutionality," Opp., 8:2-3, *with* TBC's opening summary judgment brief at p. 2:19 ("Amended Section 338 is constitutionality indefensible.") and p. 3:26-28 ("Section 338 violates the Constitution on multiple, independent grounds, both facially and as applied in this case . . . .").

[5] Proposed *amici* Comunidad Judía de Madrid and Federación de Comunidades Judías de España make similar arguments in their February 26, 2026 submission [Dkt. 757], which are misplaced for similar reasons.

### 4. Spain's Statement Does Not Lack Clarity, Thoroughness, or Support.

Plaintiffs' final argument is that Spain's statement lacks "clarity, thoroughness, or support" because (1) Spain and/or TBC lacks due process rights; (2) Spain characterizes its investigation of the Painting's origin differently from what this Court found; and (3) Spain again "ignores" the "sovereignty" of California and California's "interests" in the matter and refers to the Cassirers as a third-party to the transaction between the Baron and TBC. (Opp., 12:8-18:20.) These arguments lack merit. At the end of the day, Plaintiffs admit that "the interests that Spain asserts in protecting contractual and property rights are generally legitimate[.]" (Opp., 15:25-26.) This is the conclusion that should carry the day.

*First*, the argument that Spain lacks due process rights completely misses the mark. Spain raises *comity* issues, not due process issues. Comity requires that this Court give respectful consideration to Spain's interest and views; comity forcefully suggests that California's adoption of AB 2867, which renders Spain's interest (as well as that of any other sovereign in a similar position) a legal nullity, violates federal foreign policy and is therefore preempted.

Plaintiffs' argument that TBC lacks due process rights, or that Spain "so 'extensively control[s]'" it (Opp., 13:4), are more than adequately addressed by TBC in the party briefs, and Spain will not recite them here. But comity, again, compels this Court to treat TBC with the same respect that it would hope the U.S. Government's instrumentalities would be treated in a foreign forum—as independent from the Government itself, and meriting due process rights accordingly.

*Second*, Plaintiffs seize on and misstate a one-line characterization of Spain's pre-acquisition "investigation" of the Painting to attempt to create a fissure with this Court's prior findings. This Court *did* find that neither TBC nor the Baron had actual knowledge that the Painting was stolen. This Court *did* find that there was a

8

"sound basis" for counsel for the Kingdom of Spain and TBC to proceed with the acquisition with the information it had, including:

- No published information about Lilly Cassirer's prior ownership of the Painting or the Nazi's looting of it;

- Legal opinions from reputable law firms to "ensure that the Baron held good title and that the conveyance was lawful";

- No facts regarding any bad faith on the part of the Baron;

- No evidence of bad faith or prior title inconsistencies with respect to other paintings Spain's counsel *did* investigate;

- Knowledge that the Painting had previously been publicly displayed without any claims made as to its ownership; and

- The representations and warranties provided by the Baron's trust.

*See Cassirer v. Thyssen-Bornemisza Collection Foundation*, 2019 WL 13240413, *21 (C.D. Cal. Apr. 30, 2019). This is the "investigation" to which Spain refers. Plaintiffs' hyperbolic accusation that Spain is "art laundering" the Painting through its actual laws—based, apparently, on a blog post (Opp., 15:25-16:1, n. 19)—is a new way of articulating the old argument rejected by both the Ninth Circuit and the California Supreme Court, namely, that the relative "social worthiness" of Spain's and California's laws should be weighed by this Court. *See McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 97 (2010) ("[O]ur task is not to determine whether [the foreign state's] rule or the California rule is the better or worthier rule[.]").

*Finally*, Plaintiffs repeat their complaint that Spain did not articulate the interests of other parties and states, such as the United States, California, or the Cassirers, in its own *amicus* brief. (Opp., 16:11-18:17.) To be clear: It would be highly inappropriate for Spain to even attempt do so in an *amicus* brief regarding its own interest in the outcome of this litigation. Plaintiffs then seize on and misrepresent the fact that Spain refers to the Cassirer heirs as a "third party" into an "attempt[] to dehumanize [the Cassirers'] history as Spain single-mindedly pursues

its financial interests over all else at stake in this action." (Opp., 18:8-10.) Again letting hyperbole do the work of argument, Plaintiffs misread the text of Spain's statement: The Cassirers are referred to as a "third party" to "that transaction" (*esa transacción*) for the Painting, which was in fact only between the Foundation and the Baron's trust. (Ministry Rept., ¶ 6.) Plaintiffs' odd *ad hominem* disparagements of a foreign sovereign based on its misreading of the brief are beneath comment.

### III. CONCLUSION

Because Plaintiffs "take no position" on whether this Court should grant leave for Spain to file its *amicus* brief, and because it is overwhelmingly permitted to do so, the Court should grant Spain's motion and deem its *amicus* brief filed. Plaintiffs' remaining arguments regarding the weight with which this Court should receive Spain's interest should be rejected.

Dated: February 27, 2026        LARSON LLP

By:    /s/ Amelia L.B. Sargent
       Stephen G. Larson
       Amelia L.B. Sargent
       Attorneys for The Kingdom of Spain

## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1

The undersigned, counsel of record for The Kingdom of Spain, certifies that this brief is under 15 pages in length, which complies with the page limit set by court order dated July 11, 2025 (Dkt. 676).

Dated: February 27, 2026         LARSON LLP

By:    */s/ Amelia L.B. Sargent*
      Stephen G. Larson
      Amelia L.B. Sargent
      Attorneys for The Kingdom of Spain