**BOIES SCHILLER FLEXNER LLP**
Daniel G. Boyle (Bar No. 332518)
    dboyle@bsfllp.com
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Telephone:   (213) 629-9040
Facsimile:   (213) 629-9022

David A. Barrett (admitted *pro hac vice*)
    dbarrett@bsfllp.com
55 Hudson Yards
New York, NY 10001
Telephone:   (212) 446-2300
Facsimile:   (212) 446-2350

**KENDALL BRILL & KELLY LLP**
Laura W. Brill (Bar No. 195889)
    lbrill@kbkfirm.com
Jeffrey M. Chemerinsky (Bar No. 270756)
    jchemerinsky@kbkfirm.com
10100 Santa Monica Blvd., Suite 2500
Los Angeles, CA 90067
Telephone: (310) 556-2700
Facsimile: (310) 556-2705

[Additional counsel on signature page]
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DAVID CASSIRER, *et al.*,<br><br>           Plaintiffs,<br><br>  v.<br><br>THYSSEN-BORNEMISZA COLLECTION FOUNDATION, an agency or instrumentality of the Kingdom of Spain,<br><br>           Defendant. | Case No. CV 05-03459-JFW (Ex)<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE HEAR ACT OF 2025**<br><br>Date:    August 24, 2026<br>Time:   1:30 p.m.<br>Crtrm:  7A<br>Judge:  Honorable John F. Walter |

PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE HEAR ACT OF 2025

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES..........................................................................................iii

TABLE OF AUTHORITIES FOR EXHIBITS.........................................................vi

INTRODUCTION .......................................................................................................1

BACKGROUND ..........................................................................................................5

ARGUMENT ...............................................................................................................7

I.      THE 2025 HEAR ACT ELIMINATES OR DEFEATS TBC's SUMMARY JUDGMENT ARGUMENTS.........................................................7

    A.  The 2025 HEAR Act Forecloses TBC's Argument that the Court Lacks Subject Matter Jurisdiction under Cases Applying *Philipp* ..............7

    B.  The 2025 HEAR Act Precludes Application of Spain's Article 1955, Thereby Requiring Judgment for Plaintiffs under both California and Spanish Law ........................................................................................10

    C.  Due Process.........................................................................................17

        1.  TBC admits that the Spanish government controls all decisions about the Painting, further undercutting its due process claim .................17

        2.  Recent Supreme Court decisions further undermine TBC's due process arguments ...........................................................................19

    D.  Commerce Clause, Dormant Commerce Clause, and Federal Preemption...........................................................................................22

        1.  Commerce Clause .........................................................................23

        2.  Dormant Commerce Clause...........................................................26

        3.  Federal Preemption .......................................................................26

CONCLUSION...........................................................................................................27

## **TABLE OF AUTHORITIES**

**Cases**

*Allstate Ins. Co. v. Hague*,
   449 U.S. 302 (1981) ..............................................................................21

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.*,
   480 U.S. 102 (1987) ..............................................................................20

*Cassirer v. Kingdom of Spain*,
   616 F.3d 1019 (9th Cir. 2010) (en banc) ("*Cassirer I*") ......................7, 9

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
   737 F.3d 613 (9th Cir. 2013) ("*Cassirer II*") ........................................6

*Cassirer v. Thyssen-Bornemisza Collection Foundation*,
   862 F.3d 951 (9th Cir. 2017) ("*Cassirer III*") ....................................6, 9

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
   824 F. App'x 452 (9th Cir. 2020) ("*Cassirer IV*") ....................11, 12, 13

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
   596 U.S. 107 (2022) ("*Cassirer V*") ...............................................passim

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
   89 F.4th 1226 (9th Cir. 2024) ("*Cassirer VII*") ..............................passim

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
   107 F.4th 882 (9th Cir. 2024) ("*Cassirer VIII*") ..................................16

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
   145 S. Ct. 1331 (2025) ("*Cassirer IX*") ...........................................5, 14

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
   153 F. Supp. 3d 1148 (C.D. Cal. 2015) ..........................................13, 16

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
   2019 WL 13240413 (C.D. Cal. Apr. 30, 2019) ....................6, 12, 13, 18

*CC/Devas (Mauritius) Ltd. v. Antrix Corp. Ltd.*,
   605 U.S. 223 (2025) ..........................................................................19, 20

*de Csepel v. Republic of Hungary*,
   165 F.4th 572 (D.C. Cir. 2026) ..............................................................8

*Dennis v. Higgins*,
   498 U.S. 439 (1991) ..............................................................................26

*Federal Republic of Germany v. Philipp*,
   592 U.S. 169 (2021). .....................................................................passim

*Frontera Res. Azer. Corp. v. State Oil Co. of the Azer. Republic*,
   582 F.3d 393 (2d Cir. 2009) ..................................................................17

*Fuld v. Palestine Liberation Org.*,
606 U.S. 1 (2025) ..............................................................................................20, 21

*Gater Assets Ltd. v. AO Moldovagaz*,
2 F.4th 42 (2d Cir. 2021) ........................................................................................18

*Holtzman v. Philadelphia Museum of Art*,
2022 WL 2651851 (E.D. Penn. July 7, 2022) .......................................................24

*International Shoe Co. v. Washington*,
326 U.S. 310 (1945) ...............................................................................................19

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal.4th 95 (2006) ..............................................................................................14

*Klaxon v. Stentor Electric Mfg. Co.*,
313 U.S. 487 (1941) ...............................................................................................20

*Naftzger v. Am. Numismatic Soc'y*,
42 Cal.App.4th 421 (1996) .....................................................................................17

*Price v. Socialist People's Libyan Arab Jamahiriya*,
294 F.3d 82 (D.C. Cir. 2002) .................................................................................17

*Turkiye Halk Bankasi A.S. v. United States*,
598 U.S. 264 (2023) ...............................................................................................20

*SAS Inst., Inc. v. Iancu*,
584 U.S. 357 (2018) .................................................................................................4

*Simmons v. Himmelreich*,
578 U.S. 621 (2016) .................................................................................................5

*Strasberg v. Odyssey Group, Inc.*,
51 Cal. App. 4th 906 (1996) ...................................................................................15

*United States v. Bennett*,
232 U.S. 299 (1914) ...............................................................................................21

*United States v. Lopez*,
514 U.S. 549 (1995) ...............................................................................................23

*Verlinden B.V. v. Central Bank of Nigeria*,
461 U.S. 480 (1983) ..........................................................................................23, 24

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
2015 WL 12910626 (C.D. Cal. Apr. 2, 2015) .......................................................14

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
897 F.3d 1141 (9th Cir. 2018) ..................................................................................3

*Zuckerman v Metropolitan Museum of Art*,
928 F.3d 186 (2d Cir. 2019) .................................................................................2, 3

iv

**Statutes**

28 U.S.C. §1603 ................................................................................................23

28 U.S.C. §1605 ..............................................................................................3, 7

28 U.S.C. §1606 .......................................................................................5, 20, 24

28 U.S.C. §2403 ..................................................................................................6

Assem. Bill 2867, 2023–2024 Reg. Sess. (Cal. 2024) ...........................passim

Cal. Code Civ. Proc. §338 .................................................................passim

Holocaust Expropriated Art Recovery (HEAR) Act of 2025, Pub. L. 119-82, 140 Stat. 752 (2026) ........................................................................passim

Holocaust Expropriated Art Recovery (HEAR) Act, Pub. L. No. 114-308, 130 Stat. 1524 (2016) ......................................................................passim

Holocaust Victims Redress Act (HVRA), Pub. L. No. 105-158, 112 Stat. 15 (1998) .........................................................................................................21

Spanish Civil Code Art. 1955 .............................................................passim

**Other Authorities**

Actions - S.1884 - 119th Congress (2025-2026): Holocaust Expropriated Art Recovery Act of 2025, S.1884, 119th Cong. (2026)................................3

*Congressional Record*, U.S. House of Representatives, March 16, 2026, H2497-H2500 .......................................................................................3, 25, 26

*Congressional Record*, U.S. Senate, December 10, 2025, S8628-S8629 ...................3

**Rules**

Fed. R. App. P. 24.................................................................................................6

Fed. R. App. P. 5...................................................................................................6

PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE HEAR ACT OF 2025

## TABLE OF AUTHORITIES FOR EXHIBITS

| Description | Page and Line |
|---|---|
| Plaintiff's Supplemental Brief Exhibit No. 1: Public Law 119-82 | 1:13-16 |
| Plaintiff's Supplemental Brief Exhibit No. 2: Revised HEAR Act | 1:13-16 |
| Plaintiff's Summary Judgment Exhibit No. 1: Assembly Bill 2867 (D.E. 687-1) | 5:17, 6:25, 13:12, 17:23 |

PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE HEAR ACT OF 2025

# **INTRODUCTION**

Plaintiffs David Cassirer, *et al*. ("Plaintiffs" or "Cassirers") respectfully submit this brief addressing the application to this case of the Holocaust Expropriated Art Recovery Act of 2025, Public Law 119-82, 140 Stat. 752 (2026) ("2025 HEAR Act") which became effective when President Trump signed S. 1884 into law on April 13, 2026.[1]  As relevant to this case, the 2025 HEAR Act provides that art thefts due to Nazi persecution are considered violations of international law for purposes of FSIA jurisdiction, regardless of the victim's citizenship or nationality.  It also eliminates acquisitive prescription as a defense in Nazi-looted art cases.  Congress expressly provided that the law is applicable to pending cases.[2]

---

[1]   In this brief, Plaintiffs refer to the legislation and resulting new law as the 2025 HEAR Act, Public Law 119-82, and S. 1884, as appropriate.  Attached as Exhibits 1 and 2 to this brief, respectively, are copies of the Public Law, https://www.congress.gov/119/plaws/publ82/PLAW-119publ82.pdf; and the HEAR Act as revised to include the 2025 amendments, https://www.govinfo.gov/content/pkg/COMPS-16517/pdf/COMPS-16517.pdf.

[2]   "The amendments made by subsection (a) shall apply with respect to any civil claim or cause of action that is . . . pending in any court on the date of enactment of this Act, . . . ."  2025 HEAR Act,  §6(b)(1).

Changes in applicable law must be applied to pending cases when the legislation so provides.  *Bank Markazi v. Peterson*, 578 U.S. 212, 215 (2016) ("Congress, our decisions make clear, may amend the law and make the change applicable to  pending cases, even when the amendment is outcome determinative."); *Plaut v. Spendthrift Farm*, 514 U.S. 211, 226 (1995) ("When a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly.").  The Ninth Circuit applied the HEAR Act of 2016 to this case in *Cassirer v. Thyssen-Bornemisza Collection Found.*, 862 F.3d 951, 959–60 (9th Cir. 2017) ("*Cassirer III*") (applying the six-year limitations period beginning with claimant's actual discovery of artwork's location under the Act's §5(a), enacted while the appeal was pending, to find this action was timely).

1

In prior summary judgment briefing pursuant to the Supreme Court's direction in *Cassirer v. Thyssen-Bornemisza Collection Found.*, 145 S. Ct. 1331 (2025) ("*Cassirer IX*"), Plaintiffs demonstrated that California's adoption of AB 2867 compels summary judgment in their favor, and that TBC's objections to the statute are meritless.[3]  Congress's subsequent adoption of the 2025 HEAR Act both reinforces Plaintiffs' arguments concerning AB 2867, and provides an independent basis—whether or not AB 2867 is deemed constitutional—to grant summary judgment to Plaintiffs.

The 2025 HEAR Act conclusively resolves, in Plaintiffs' favor, all issues now advanced by Defendant TBC in opposition to Plaintiffs' motion for summary judgment, and in support of TBC's summary judgment motion.  Indeed, in express findings made in the 2025 HEAR Act, Congress stated its intent to eliminate defenses and arguments based on the passage of time, and on the "citizenship or nationality" of Holocaust victims, that it deemed inconsistent with its purpose in the 2016 HEAR Act "to permit claims to be resolved on the merits." These include the very arguments that TBC has made in its summary judgment filings.  TBC argues (a) (belatedly) that the Court lacks subject matter jurisdiction under the "domestic takings" rule emanating from circuit decisions applying *Federal Republic of Germany v. Philipp,* 592 U.S. 169 (2021) ; and (b) that Spain's law of acquisitive prescription in Article 1955—granting title to stolen property after three years of possession—displaces California law, which precludes subsequent acquirers of stolen property from gaining good title.  Congress's intent is clear and specific:

> (8)  **The intent of this Act is to permit claims to recover Nazi looted art to be brought notwithstanding the passage of time since World War II.  Some courts have frustrated this purpose by dismissing recovery lawsuits in reliance on defenses based on the passage of time, such as** laches (for example, Zuckerman v Metropolitan Museum of Art,

---

[3]  *See* D.E. 682; D.E. 692; D.E. 694; *see also* D.E. 722; D.E. 728.

928 F.3d 186 (2d Cir. 2019); or **adverse possession, acquisitive prescription, or usucapion (for example, Cassirer v. Thyssen-Bornemisza Foundation, 89 F.4th 1226 (9th Cir. 2024);** or on other non-merits discretionary defenses, such as the act of state doctrine (for example, Von Saher v Norton Simon Museum of Art at Pasadena, 897 F.3d 1141 (9th Cir. 2018); forum non-conveniens, international comity, or prudential exhaustion.  In order to effectuate the purpose of the Act to permit claims to recover Nazi-looted art to be resolved on the merits, these defenses must all be precluded.

(9)  **This Act is also intended to allow claims in accordance with the procedures under this Act for the recovery of artwork or other property lost during the covered period because, or as a result, of Nazi persecution,** including by a covered government (as defined in section 1605(h)(3)(B) of Title 28, United States Code) or an agent or associate of a covered government, **regardless of the nationality or citizenship of the alleged victim, notwithstanding the "domestic takings" rule of Federal Republic of Germany v. Philipp, 592 U.S. 169 (2021).**

2025 HEAR Act, §2(a) (emphasis added).  The operative provisions eliminating these defenses are set forth at p. 10, *infra*.

The 2025 HEAR Act passed the U.S. Senate on unanimous consent on December 10, 2025.  It passed the House of Representatives by voice vote on the suspension calendar on March 16, 2026.[4]  During deliberations on S. 1884 in the Senate Judiciary Committee (which endorsed the bill by a 22-0 vote)[5] Senator Ted Cruz, one of the sponsors (as he was of the HEAR Act of 2016), summed up the bill's intent:

I strongly supported and helped write the HEAR Act in 2016, and I continue to strongly support the 2025 extension of the HEAR Act. The

---

[4]    *See Congressional Record*, U.S. Senate, December 10, 2025, S8628-S8629; *Congressional Record*, U.S. House of Representatives, March 16, 2026, H2497-H2500.

[5]  *See* Actions - S.1884 - 119th Congress (2025-2026): Holocaust Expropriated Art Recovery Act of 2025, S.1884, 119th Cong. (2026), available at: https://www.congress.gov/bill/119th-congress/senate-bill/1884/all-actions?hl=S.+1884&s=1&r=1&overview=closed#tabsv.

HEAR Act was written to make sure that justice for Holocaust victims is not lost to paperwork, procedure, or the passage of time.

It ensures that their families can seek restitution on the merits, not be turned away on a technicality.   Since the passage of the original HEAR act, some courts unfortunately have chipped away at that promise, twisting the law to protect institutions instead of victims, to prize possession over justice.

Let me say right now, if you are a museum, if you are a corporation, if you are a railroad, if you are a family or an individual and you are displaying the art that was pilfered by Nazis, you ought to be ashamed.
And you have no right to keep that stolen art.   You are glorifying in evil.

This legislation that we are soon, I expect to vote and pass unanimously restores what Congress intended, that the law should never be a shield for theft, especially theft born of genocide. . . .

Supporting and strengthening the HEAR Act is not just about restitution. It's about remembrance.  It's about telling the truth and refusing to let history or its victims be brushed aside because justice delayed is not justice denied unless we let it be. . . .

Through the HEAR Act, we hear the pleas of the victims of the Holocaust and we are acting as a Congress and as a nation to deliver justice in the shadow of one of humanity's greatest atrocities.

https://www.cruz.senate.gov/newsroom/videos/watch/sen-ted-cruz-delivers-remarks-in-support-of-the-hear-act.

The provisions of the 2025 HEAR Act are clear.  Together with pre-existing California substantive law governing actions to recover stolen works of art held by museums, as well as California's AB 2867 enacted in 2024, the 2025 HEAR Act requires granting Plaintiffs' Motion for Summary Judgment on all pleaded claims, and awarding title to *Rue St. Honoré, Afternoon, Effect of Rain,* to the Cassirers. *See SAS Inst., Inc. v. Iancu,* 584 U.S. 357, 370 (2018) ("Our duty is to give effect to the text that

PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE HEAR ACT OF 2025

535 *actual* legislators (plus one President) enacted into law.") (emphasis in original); *Simmons v. Himmelreich*, 578 U.S. 621, 627 (2016) ("[W]e presume Congress says what it means and means what it says.").

## BACKGROUND

In 2022, the Supreme Court, applying 28 U.S.C. §1606 and *Erie* principles, vacated the Ninth Circuit's "federal common law" ruling that resulted in the choice of Spanish substantive law and decision in TBC's favor. *See Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 117 (2022) ("*Cassirer V*"). It remanded the case for application of California choice of law rules. *Id.* On remand, the Ninth Circuit concluded that under California's common law "governmental interest test," Spanish law nevertheless applied. *Cassirer v. Thyssen-Bornemisza Collection Found.*, 89 F.4th 1226, 1229 (9th Cir. 2024) ("*Cassirer VII*"). Soon after rehearing was denied, the California Legislature passed a new statute, California Code of Civil Procedure ("CCP") §338(c)(6) (part of AB 2867), which mandates that "California substantive law shall apply" in pending and future cases brought by California residents or their heirs to recover stolen artworks held by museums, or covered by the HEAR Act. Governor Newsom signed AB 2867 into law on September 16, 2024. D.E. 687-1 at 5.

All parties, and the courts, agree that under California substantive law, title must be awarded to the rightful owner's heir, in this case David Cassirer, Lilly Cassirer's great-grandson, and her last surviving family member. *See, e.g.*, *Cassirer VII*, 89 F.4th at 1229 & n.3. Plaintiffs filed a second petition for certiorari, asking that the Supreme Court vacate the Ninth Circuit's 2024 *Cassirer VII* decision because it was irreconcilable with CCP §338(c)(6), California's new choice of law statute.

On March 10, 2025, the Supreme Court agreed and granted certiorari, vacated the Ninth Circuit's January 2024 decision, and remanded "for further consideration in light of Assem. Bill 2867." *Cassirer IX*, 145 S. Ct. 1331. On April 30, 2025, the Court

5                                                  Case No. CV 05-03459-JFW (Ex)

PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE HEAR ACT OF 2025

of Appeals granted Plaintiffs' motion to remand to this Court for further proceedings. No. 19-55616 (9th Cir.), D.E. 184; *see also* D.E. 668. The parties then filed cross-motions for summary judgment. In addition, the California Attorney General intervened as of right under 28 U.S.C. §2403(b) and Rules 5.1(c) and 24(a), Fed. R. Civ. P., for the purpose of defending the constitutionality of the California statute. D.E. 701; D.E. 713.

Plaintiffs moved for summary judgment on all the California law causes of action: possession of personal property, conversion, imposition of a constructive trust, and declaratory relief, because under California substantive law, title to the stolen Painting belongs to them. D.E. 682 at 8–17. As this Court explained in its 2019 decision: "It is undisputed that the Nazis stole the Painting from Lilly. Under California law and common law, thieves cannot pass good title to anyone, including a good faith purchaser. *See Cassirer v. Thyssen-Bornemisza Collection Foundation*, 862 F.3d 951, 960 (9th Cir. 2017)." *Cassirer v. Thyssen-Bornemisza Collection Found.*, 2019 WL 13240413, at *15 (C.D. Cal. Apr. 30, 2019). *See also Cassirer VII*, 89 F.4th at 1229 ("[U]nder California law as it currently stands, the plaintiff would recover the art while under Spanish law, the plaintiff would not.") (internal citation omitted).

TBC's opposition to Plaintiffs' Motion for Summary Judgment and Motion for Summary Judgment boil down to an argument that only Federal law or policy, not California's general stolen property law, can apply to claims to recover art stolen in the Holocaust. D.E. 681-1 at 15–30; D.E. 691 at 16–28; D.E. 693 at 10–15.[6] Although

---

[6] As set forth in detail in Sections 1(a)–(e) of AB 2867, CCP §338(c)(6) was the California Legislature's second response (the first was 2010) to the Ninth Circuit's failure to apply California's long-standing State policy of supporting stolen art victims' recovery rights, and its rejection of constructive knowledge as a defense to stolen art claims. D.E. 682 at 8–9; D.E. 687-1 at 6; D.E. 692 at 26–28; *Cassirer v. Thyssen-Bornemisza Collection Found., 737 F.3d 613, 619 (9th Cir. 2013)* ("*Cassirer II*") (upholding CCP §338(c)(3), California's general 2010 six-year statute of limitations

PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE HEAR ACT OF 2025

Plaintiffs and the State of California have vigorously opposed TBC's position and should prevail on those grounds alone, with Congress's passage the 2025 HEAR Act, and the President's signature enacting it into law, TBC's arguments all the more certainly must be rejected.

## ARGUMENT

### I.    THE 2025 HEAR ACT ELIMINATES OR DEFEATS TBC's SUMMARY JUDGMENT ARGUMENTS

The provisions of the 2025 HEAR Act applicable to the issues in this case definitively foreclose TBC's arguments on summary judgment based on (a) sovereign immunity under 28 U.S.C. §1605(a)(3); (b) application of Spain's law of acquisitive prescription under Art. 1955 of the Spanish Civil Code; (c) due process; and (d) the Commerce Clause and federal preemption.

#### A.  The 2025 HEAR Act Forecloses TBC's Argument that the Court Lacks Subject Matter Jurisdiction under Cases Applying *Philipp*

TBC's opposition to Plaintiffs' Motion for Summary Judgment, and its own Motion for Summary Judgment, argue that the Court should now, 20 years after TBC's and Spain's original unsuccessful attack on FSIA jurisdiction,[7] dismiss the case for lack of subject matter jurisdiction.  They assert that "*Philipp* forecloses Plaintiffs' theory that Germany's Nazi-era taking *from its own national* qualifies as 'rights taken in violation of international law'" for purposes of the expropriation exception to sovereign

for stolen works of art held by museums, commencing upon actual discovery, against federal preemption challenge).

[7]    *See Cassirer v. Kingdom of Spain*, 616 F.3d 1019 (9th Cir. 2010) (en banc) ("*Cassirer I*").

PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE HEAR ACT OF 2025

immunity under 28 U.S.C. §1605(a)(3) (emphasis added).[8] D.E. 693 at 2; *see also* D.E. 681-1 at 1, 6–7; D.E. 691 at 7–11.

The 2025 HEAR Act definitively precludes TBC's belatedly-raised argument that the Court lacks subject matter jurisdiction.  The Act specifically eliminates, for cases under the HEAR Act, the "domestic takings" argument accepted by some courts after *Philipp* in cases to recover Nazi-looted art.[9]  It provides that actions covered by the HEAR Act (*i.e.*, claims to recover artworks lost because of persecution between 1933 and 1945 by the Nazis or their allies or collaborators) are deemed to be actions in which rights in violation of international law are in issue for purposes of FSIA

---

[8]   In summarizing arguments relevant to the issues resolved by the 2025 HEAR Act, Plaintiffs do not waive any facts or arguments presented in their Motion for Summary Judgment, Opposition to TBC's Motion for Summary Judgment, or Reply in Support of Plaintiffs' Motion for Summary Judgment. *See* D.E. 682; D.E. 682-2; D.E. 692; D.E. 692-1; D.E. 694.

[9]   Some decisions after *Philipp* have concluded that thefts by a Holocaust victim's own government were "domestic takings" and not a violation of international law for purposes of FSIA jurisdiction under §1605(a)(3).  *See, e.g.*, *de Csepel v. Republic of Hungary*, 165 F.4th 572, 584–87 (D.C. Cir. 2026).  At the same time, the Court in *de Csepel* opined that application of the "domestic takings rule" to Holocaust cases was unjust, and it invited Congress to change the law:

> The Herzogs were innocent victims of war and genocide, some of the millions of people for whom no measure of justice has ever been granted. Their family heirlooms now hang on the walls of public institutions in Hungary that, to date, have shown no real interest in atoning for the depredations of that country's World War II−era government. *The only question we face today, however, is not whether these plaintiffs deserve justice—they surely do—but whether Congress has granted U.S. courts the jurisdiction to provide it. As explained above, it has not. Unless and until it does, the responsibility for redressing such historic wrongs must lie elsewhere.*

*Id.* at 592 (emphasis added).

jurisdiction under 28 U.S.C. §1605(a)(3), without regard to the citizenship or nationality of the victim.[10]

The 2025 HEAR Act amended Section 5 of the 2016 HEAR Act "by inserting after subsection [5](a)" the following:

> (b)  Relation to Foreign State Immunities.—**Notwithstanding any other law or prior judicial decision**, any civil claim or cause of action covered by subsection (a) shall be deemed to be an action in which rights in violation of international law are in issue for purposes of section 1605(a)(3) of title 28, United States Code, **without regard to the nationality or citizenship of the alleged victim**.

2025 HEAR Act, §2(a)(3)(D) (emphasis added).  It is undisputed that the Cassirers' claims are covered by the referenced subsection (5)(a), as the Ninth Circuit expressly held. *See Cassirer III, 862 F.3d at 959–60*.

TBC's argument on summary judgment to the effect that TBC is entitled to invoke sovereign immunity, and thereby deprive the Court of jurisdiction, is predicated on the assertion that Lilly remained a German national in 1939 despite her having been stripped of German citizenship. D.E. 681-1 at 1, 6–7; D.E. 691 at 7–11; D.E. 693 at 2–3.  By failing to make this argument during the exhaustive proceedings in 2006–2011 in which TBC and Spain challenged jurisdiction (when they could readily have done so), TBC is bound by the law of the case doctrine and the mandate rule. D.E. 692 at 3–

---

[10]    Under §1605(a)(3), plaintiffs bringing actions against a foreign sovereign instrumentality also have to show the defendant "is engaged in a commercial activity in the United States."  Two decades ago, this Court held that Plaintiffs met this requirement and the Ninth Circuit affirmed in an en banc decision. *Cassirer v. Kingdom of Spain*, 461 F.Supp.2d 1157, 1170–76 (C.D. Cal. 2006), *aff'd in part, appeal dismissed in part*, 616 F.3d 1019, 1058–59 (9th Cir. 2010) (en banc).

9                                    Case No. CV 05-03459-JFW (Ex)

PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE HEAR ACT OF 2025

7.[11]  In any event, however, TBC's belated challenge to subject matter jurisdiction is eliminated by the express terms of the 2025 HEAR Act.

**B.    The 2025 HEAR Act Precludes Application of Spain's Article 1955, Thereby Requiring Judgment for Plaintiffs under both California and Spanish Law**

The 2025 HEAR Act also conclusively precludes application of Spain's law of acquisitive prescription under Article 1955 of the Spanish Civil Code, irrespective of whether it is deemed a "defense or substantive doctrine."  Section 2(a)(3)(G) of the Act establishes a new Section 5(f) of the HEAR Act which provides (emphasis added):

> (f) DEFENSES BASED ON PASSAGE OF TIME AND OTHER NON-MERITS DEFENSES.—With respect to any claim that is otherwise timely under this Act—
>
> (1) all defenses or substantive doctrines based on the passage of time, including laches, adverse possession, acquisitive prescription, and usucapion, **may not be applied with respect to the claim**. . . .

(emphasis added).

TBC's summary judgment arguments inextricably rely on Spain's law of acquisitive prescription, Article 1955 of the Spanish Civil Code: "Under Article 1955 of the Spanish Civil Code, the Foundation owns the Painting, and the Foundation's ownership rights in the Painting vested no later than 1999." D.E. 681-1 at 9.  The centrality of Spain's now-precluded acquisitive prescription law is also evident in TBC's reliance on a quotation from the Ninth Circuit's now-vacated 2024 choice-of-law decision, which held: "Applying Spanish law, TBC has gained prescriptive title to

---

[11]    Plaintiffs' opposition to summary judgment showed, and the U.S. Government in its 2021 amicus brief agreed, that TBC had previously never "disputed that the Nazis took the painting in violation of international law." D.E. 692 at 3–7 (citing, *inter alia*, U.S. Amicus Curiae Brief, 2021 WL 5513717, at *5 n.2).  And in *Cassirer V*, 596 U.S. at 111–12, the Supreme Court explicitly recognized that the lower courts' "determination" that "the expropriation exception" of §1605(a)(3) applies "is no longer at issue."

10                                    Case No. CV 05-03459-JFW (Ex)
PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE HEAR ACT OF 2025

the Painting pursuant to Article 1955 of the Spanish Civil Code." D.E. 681-1 at 9, quoting *Cassirer VII*, 89 F.4th at 1230, which in turn quoted *Cassirer v. Thyssen-Bornemisza Collection Found.*, 824 F. App'x 452, 456-57 (9th Cir. 2020) ("*Cassirer IV*"). *See also* D.E. 681-1 at 19; D.E. 691 at 12, 18, 26; D.E. 693 at 10, 15.

Article 1955 provides:

Ownership of movable goods prescribes by three years of uninterrupted bona fide possession. Ownership of movable goods also prescribes by six years of uninterrupted possession, without any other condition.

Spanish Civil Code Art. 1955 (Ministry of Justice, official English translation), https://www.mjusticia.gob.es/es/AreaTematica/DocumentacionPublicaciones/Documents/Spanish%20Civil%20Code.pdf at 347.  Accordingly, Article 1955 is a "defense or substantive doctrine based on the passage of time," whether it is labeled "adverse possession," "acquisitive prescription," or "usucapion." *See Cassirer VII*, 89 F.4th at 1230 ("Applying Spanish law, TBC has gained prescriptive title to the Painting pursuant to Article 1955 of the Spanish Civil Code.").[12]

**Application of Spanish Law**.  Plaintiffs have, of course, argued that CCP §338(c)(6) mandates application of California substantive law. *See* D.E. 682 at 8–12; D.E. 692 at 10–11; D.E. 694 at 1.  As discussed below, Plaintiffs continue to advocate that position. *See* pp. 13–17 *infra*.  However, even if the Court were to conclude on some basis that Spanish substantive law still applies in this case, Plaintiffs must prevail.

Without the acquisitive prescription rule under Article 1955, which the Court is barred from applying by the 2025 HEAR Act, this Court's 2019 findings and conclusions after trial demonstrate that TBC never acquired good title to the Painting.

---

[12]   As the Ninth Circuit made clear: "Acquisitive prescription is 'a mode of acquiring ownership or other legal rights through possession for a specified period of time.'" *Cassirer VII*, 89 F.4th at 1233 n.8 (citation omitted).

*See Cassirer*, 2019 WL 13240413, at *15–19. In its decision, the Court found that the Baron, from whom TBC acquired the Painting, did not acquire good title when he purchased it from the Stephen Hahn Gallery in 1976. *Id*. at *18–19. Rather, the Baron was aware of multiple red flags of theft, yet failed to investigate the Painting's provenance, such that he did not acquire it in good faith under Swiss law. *Id*. at *15–19.[13] The Court then explicitly held that "because the Baron (and Favorita) did not have good title to the Painting at the time of TBC's purchase, the Court concludes that TBC **did not become the lawful owner of the Painting** via the 1993 Acquisition Agreement." *Id*. at *19 (emphasis added).

The Court thereafter awarded the Painting to TBC only because under Article 1955, ownership "by prescription" vested in TBC after six years of uninterrupted possession:

> However, the Court concludes, based on all of the evidence, that TBC acquired lawful ownership of the Painting under Spain's laws of acquisitive prescription. . . . TBC has possessed the property as owner publicly, peacefully, and without interruption for more than 6 years (from 1993 to at least 1999). Thus, Article 1955, read in isolation, would seem to bar the Cassirers' action for recovery of the Painting.

*Id*. at 19, *aff'd, Cassirer IV*, 824 F. App'x at 457 (internal quotation and citation omitted).

In its 2024 decision after the Supreme Court's remand in *Cassirer V*, the Ninth Circuit held that TBC acquired title based on prescription under Article 1955 after three

---

[13] The Court found that the red flags included "(1) the presence of intentionally removed labels and a torn label demonstrating that the Painting had been in Berlin; (2) the minimal provenance information provided by the Stephen Hahn Gallery, which included no information from the crucial World War II era and which, contrary to the partial label, did not show that the Painting had ever been in Berlin or in Germany; (3) the well-known history and pervasive nature of the Nazi looting of fine art during the World War II; and (4) the fact that Pissarro paintings were often looted by the Nazis." *Cassirer*, 2019 WL 13240413, at *16.

years of "good faith" possession. *Cassirer VII*, 89 F.4th at 1233, 1245.[14]  But as noted, whether based on three years or six years of possession, in bad faith or good faith, under the 2025 HEAR Act, the Court cannot apply Spain's acquisitive prescription rule, and thus TBC lacks good title *even under Spanish law*.

**Application of California Law**.  California choice-of-law rules apply in this case. *Cassirer V*, 596 U.S. at 117.  As Plaintiffs have shown, California now has established the applicable choice-of-law rule by enacting CCP §338(c)(6), which provides that California substantive law applies "in any action brought by a California resident, or by an heir of a California resident, relating to title, ownership, or recovery of personal property described in paragraph (2) or (3) [involving, *inter alia*, stolen artwork]," held by a museum or described in the HEAR Act of 2016. *See, e.g.*, D.E. 682 at 1, 7–12; D.E. 687-1 at 9; D.E. 692 at 1, 26–30.  Under California substantive law, the Cassirers prevail.[15]

TBC's argument on summary judgment is that because, it claims, CCP §338(c)(6) is unconstitutional, then the determination of choice-of-law reverts to the

---

[14]  Prior to the Ninth Circuit's *Cassirer VII* decision in 2024, the findings as to TBC's title were based on Article 1955's six-year prescription period for possession even absent good faith, not three years of "bona fide possession" under Art. 1955. *See Cassirer v. Thyssen-Bornemisza Collection Found.*, 153 F. Supp. 3d 1148, 1162–63 (C.D. Cal. 2015) (TBC "acquired ownership under the longer six-year time period"); *Cassirer*, 2019 WL 13240413, at *19, *aff'd, Cassirer IV*, 824 F. App'x at 457.  The assertion of "bona fide possession" cannot be squared with this Court's 2019 findings that TBC was aware of the same "red flags" of theft as the Baron, *see* n.13, *supra*, and that "failing to investigate the provenance of the Painting may have been irresponsible under these circumstances. . . ." 2019 WL 13240413, at *22.

[15]  "[U]nder California law, thieves cannot pass good title to anyone, including a good faith purchaser." *Cassirer VII*, 89 F.4th at 1232 n.6.  "[I]f California law applied, TBC would not have title to the Painting.  The Cassirers, as successors to Lilly Neubauer and Claude Cassirer, would have title." *Id.* at 1229 n.3.  The "plaintiff would recover the art while under Spanish law, the plaintiff would not." *Id.* at 1229.

previously applicable governmental interest test and, under that test, the Ninth Circuit held in *Cassirer VII* that Spanish substantive law, including Article 1955 applies. *Cassirer VII*, 89 F.4th at 1230.

Putting aside that *Cassirer VII* was vacated by the Supreme Court in *Cassirer IX*, 145 S.Ct. 1331, and therefore is no longer controlling, even if CCP §338(c)(6) were somehow out of the picture, application of the prior governmental interest test would still necessarily conclude that California substantive law applies, due to the fact that the 2025 HEAR Act eliminates the "acquisitive prescription" defense or doctrine under Article 1955.  This is so for at least two reasons.

**First**, under the California common law governmental interest test, the initial inquiry is to ascertain whether there is in fact a conflict between the two potential legal regimes being considered. *See Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th 95, 107 (2006) ("First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.").  Only if there is such a conflict and each jurisdiction has an interest in the application of its law in the circumstances of the particular case, is any balancing of interests performed. *Id.* at 107–08. If there is no conflict, then the law of California, as the forum state, must be applied. *Id.*  Applying this framework, there is no conflict between Spanish and California law.  As shown above (pp. 11–12), when this Court applied Spanish property law, it found that TBC never acquired good title from the Baron.  Without application of acquisitive prescription under Article 1955, which is now precluded by the 2025 HEAR Act, that finding is entirely consistent with California law, which also holds that good title can not be acquired from a thief.[16]

---

[16]   Under California law: "[s]tolen property remains stolen property, no matter how many years have transpired from the date of the theft." *von Saher v. Norton Simon Museum of Art at Pasadena*, 2015 WL 12910626, at *8 (C.D. Cal. Apr. 2, 2015) (Walter, J.); *see id.* ("[T]he subsequent purchaser 'has no lawful claim to this property

14   Case No. CV 05-03459-JFW (Ex)
PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE HEAR ACT OF 2025

Accordingly, under the governmental interest test, no balancing of interests is required and California law applies.  As noted, under California law, the Painting belongs to the Cassirers.

**Second**, with acquisitive prescription under Article 1955 not applicable, and because TBC lacks good title under Spanish law since it acquired the Painting from a bad-faith purchaser, Spain's sovereign interest under the California governmental interest test no longer turns on domestic property law, but rather is defined  by Spain's accession to many international agreements calling for Nazi-looted art to be returned to the rightful owners and heirs.[17]  Plaintiffs have described these pronouncements at length, as well as the policies they express which Spain has adopted. *See* Plaintiffs-Appellants' Supplemental Brief (Dkt. 86) at 25–27, *Cassirer v. Thyssen-Bornemisza Collection Found.*, No. 19-55616 (9th Cir. June 27, 2022); D.E. 682 at 18–22.[18]

_____

as against the rightful owner.'") (quoting *Strasberg v. Odyssey Group, Inc.*, 51 Cal.App.4th 906, 921 (1996)).

[17]   As described in the amicus curiae brief of the Spanish and Madrid Jewish Communities:  "For over a century, Spain has been unequivocal in its endorsements and ratifications of international agreements calling for the return of pillaged private property, and, for the past 50+ years, conventions calling for the return of Nazi-looted artwork." D.E. 727-5, at 13.  These agreements are described at pages 13-19 of the amicus brief, and include the Hague Convention of 1899, the Washington Principles for Nazi-Confiscated Art, the Terezin Declaration, the UNESCO Convention on Means Prohibiting the Illicit Import, Parliamentary Assembly of the Council of Europe, Vilnius Forum on Holocaust Era Looted Cultural Assets, European Parliament Resolution of December 17, 2003, Regulation (EU) 2019/880 of the European Parliament and the Council of 17 April 2019.

[18]   At the conclusion of its 2015 Order granting summary judgment to TBC, this Court urged the museum to follow its international commitments:  "Although the Foundation has now prevailed in this prolonged and bitterly contested litigation, the Court recommends that, before the next phase of litigation commences in the Ninth Circuit, the Foundation pause, reflect, and consider whether it would be appropriate to work

15                                    Case No. CV 05-03459-JFW (Ex)
PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE HEAR ACT OF 2025

In this analysis, Spain's interests would not be harmed by application of California's common law and pre-2024 statutory law, under which the Cassirers would have superior title based on common law rules that thieves cannot convey good title to any subsequent purchaser, and CCP §338(c)(3) which provided that stolen art victims cannot be divested of title, provided they file suit within six years of actual discovery of their rights in, and the location of the artwork.  Further, "'[a]ctual discovery' . . .

towards a mutually-agreeable resolution of this action, in light of Spain's acceptance of the Washington Conference Principles and the Terezin Declaration, and, specifically, its commitment to achieve 'just and fair solutions' for victims of Nazi persecution." *Cassirer v. Thyssen-Bornemisza Collection Found.*, 153 F.Supp.3d 1148, 1168 (C.D. Cal. 2015).

Judge Callahan, concurring in the Ninth Circuit's January 2024 decision construing California choice-of-law rules to apply Spanish law, wrote: "Sometimes our oaths of office and an appreciation of our proper roles as appellate judges require that we concur in a result at odds with our moral compass. For me, this is such a situation. . . . Spain, having reaffirmed its commitment to the Washington Principles on Nazi-Confiscate[d] Art when it signed the Terezin Declaration on Holocaust Era Assets and Related Issues, should have voluntarily relinquished the Painting." *Cassirer VII*, 89 F.4th at 1246 (Callahan, J., concurring).

Judge Graber, joined by Judge Paez in a dissenting statement to the Ninth Circuit's July 2024 denial of rehearing en banc, recognized that Spain's interests and policies include its commitments under the Washington Principles and Terezin Declaration: "Spain's interests and policies in this <u>specific</u> context—artwork stolen by Nazis—point in <u>opposing</u> directions. Spain has a generic interest in applying its archaic adverse-possession rules, including with respect to artwork. But Spain <u>also</u> has a stated policy of promoting the recovery of artwork stolen by Nazis. Spain voluntarily signed two treaties—the 1998 Washington Conference Principles on Nazi-Confiscated Art, and the 2009 Terezin Declaration on Holocaust Era Assets and Related Issues—which morally commit Spain to returning artwork stolen by Nazis to the rightful owner." *Cassirer v. Thyssen-Bornemisza Collection Found.*, 107 F.4th 882, 890 (9th Cir. 2024) (en banc) ("*Cassirer VIII*") (Graber, J., dissenting statement).  She added that if those treaties were legally binding, "Spanish law would track California law and there would be no conflicts analysis." *Id.*

Case No. CV 05-03459-JFW (Ex)

PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE HEAR ACT OF 2025

does not include constructive knowledge imputed by law." CCP §338(c)(3)(C)(i); *Naftzger v. Am. Numismatic Soc'y*, 42 Cal.App.4th 421, 428 n.4 (1996).[19]    These aspects of California law, even before CCP §338(c)(6) was enacted, are consistent with Spain's expressed policies in the international treaties and pronouncements that it has signed over many decades.

### C.  Due Process

TBC argued prior to the enactment of the 2025 HEAR Act that application of California CCP §338(c)(6) would violate its "due process rights" and other asserted constitutional protections.  Plaintiffs' filings in support of their motion for summary judgment motion and opposition to TBC's motion extensively refute TBC's arguments. D.E. 692 at 8–15; D.E. 694 at 6–10; D.E. 724 at 12–14; Party-In-Intervention Attorney General Rob Bonta's Supplemental Brief ("Cal. A.G. Brief"), D.E. 722 at 5–15; Cal. A.G. Reply Brief, D.E. 728 at 2–7.  During the time period in which Congress was considering the HEAR Act in 2025 and 2026, important additional developments bearing on TBC's due process arguments occurred, and are briefly addressed here.

> 1.    <u>TBC admits that the Spanish government controls all decisions about the Painting, further undercutting its due process claim</u>

As the Plaintiffs and the Attorney General have shown, TBC has no due process rights because it is an instrumentality that the Spanish government extensively controls.[20]

---

[19]  *See* AB 2867, Sections 1 (a)-(e), which set forth the history of California's common law and 2010 statutory amendments governing the rights of stolen art victims.  D.E. 687-1 at 6.

[20]  *See* *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 96 (D.C. Cir. 2002) ("[F]oreign states are not 'persons' protected by the Fifth Amendment."); *Frontera Res. Azer. Corp. v. State Oil Co. of the Azer. Republic*, 582 F.3d 393, 398–400 (2d Cir. 2009) (no due process rights where "the state so 'extensively control[s]'

In Reply, TBC asserted that "Plaintiffs failed to allege or otherwise establish such 'domination' by the Spanish government," and claiming that "'the exercise of such powers [board control, financial dominance] is not synonymous with control over the instrumentality's day-to-day operations.'"  D.E. 693 at 6 (quoting *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 58 (2d Cir. 2021)).  It argued: "Plaintiffs have not submitted *any* evidence to rebut the Foundation's presumed, separate legal status. . . ."  D.E. 693 at 7.

Although TBC's assertions are inaccurate based on the prior record, they were definitively proven false two weeks after TBC's Reply was filed.  At that time, TBC's Chief Curator and Artistic Director, Guillermo Solana, gave an interview on YouTube in which he admitted that all decisions relating to the Cassirers' painting are in fact controlled by the Spanish government.[21]  When the interviewer raised "that thorny subject of the famous Pissarro," Mr. Solana stated that the Cassirer matter "could have been handled differently, with negotiations with the family, thinking of ways to compensate them."  The interviewer then asked: "And was that considered?"  Mr. Solana answered:

> **Solana**: Ultimately – no, it was never considered because -- and I want to say that, *these decisions have always been decisions of the Spanish*

the instrumentality 'that a relationship of principal and agent is created.'") (internal citation omitted).  Spain dominates TBC's board of trustees with eight of its twelve members, including the Board chair, being government ministers or appointees. Spain has contributed well over half of TBC's operating budget, amounting to tens of millions of euros in recent years. D.E. 692, at 8; Cal. A.G. Brief, D.E. 722, at 6–11. This Court found that Spain extensively controlled the creation and operation of TBC, paying hundreds of millions of dollars to buy the Baron's collection and create the museum building, and imposing "several onerous obligations" dictating how TBC must display, maintain, and promote the collection. *Cassirer*, 2019 WL 13240413, at *9.

[21]  The Jewish Communities of Madrid and Spain, in their amicus filing, attached a certified translation of the interview, from which the quotations in the text are taken. D.E. 727-5 at 3–4; D.E. 727-3.  *See* Cal. AG Reply Brief, D.E. 728 at 3–4.

Case No. CV 05-03459-JFW (Ex)

PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE HEAR ACT OF 2025

*government, . . . not of the Thyssen management. It has always been the government of Spain that decided to go to trial in the United States to defend the property….*

**Host**: …I understand, as you said, that it is not even a decision that is in your hands.

**Solana**: *It has never been an autonomous decision of the Thyssen-Bornemisza Collection Foundation or of the Thyssen-Bornemisza Museum. It has been a decision made by the government of Spain, on behalf of the Spanish State, which is the owner of the property.*

*See* D.E. 727-3, pages 1, 3–4 (emphasis added).  Thus, TBC's professed independence as it pertains to this case is flatly refuted by its own admissions.  The actions at issue are the actions of the Spanish government, which simply has no due process rights.

   2. <u>Recent Supreme Court decisions further undermine TBC's due process arguments</u>

   The Supreme Court's decision in *[CC/Devas (Mauritius) Ltd. v. Antrix Corp. Ltd.](#)*, 605 U.S. 223 (2025), further supports the argument that Plaintiffs and the State of California have been making for years about TBC's lack of due process rights. In *Antrix*, the Supreme Court reversed a Ninth Circuit decision that personal jurisdiction over foreign sovereigns and instrumentalities in FSIA cases requires a constitutional "minimum contacts" analysis beyond what the FSIA specifies:

This suit concerns the FSIA's neighboring personal-jurisdiction provision. It provides that "[p]ersonal jurisdiction over a foreign state shall exist" whenever (1) an exception to foreign sovereign immunity applies, and (2) the foreign defendant has been properly served. [28 U.S.C.] §1330(b). In the decision below, however, the Ninth Circuit imposed a third requirement: a plaintiff must also prove that the foreign state has made "minimum contacts" with the United States sufficient to satisfy the jurisdictional test set forth in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny. *Because the Ninth Circuit's additional requirement goes beyond the text of the FSIA, we reverse.*

*Id.* at 226 (emphasis added).  The Court emphasized that "reading such a requirement into the statute would upset the 'carefully calibrated' system Congress chose." *Id.* at 235 (quoting *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 273 (2023)).

While *Antrix* doesn't go so far as to decide whether foreign sovereigns and sovereign instrumentalities have due process rights in the first place, it undermines TBC's unsupported position that there is a "due process" component in every facet of choice-of-law analysis under the FSIA – an analysis based on California law mandated by the Supreme Court in *Cassirer V*.  The *Antrix* decision means, at a minimum, that for issues that are covered by express provisions of the FSIA, such as the applicable substantive law under 28 U.S.C. §1606 (and therefore choice-of-law under *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941), and *Cassirer V*), there is no "due process" overlay.

In addition, TBC's compilation of scattered quotations purportedly raising due process concerns is sharply undermined by the Supreme Court's decision in *Fuld v. Palestine Liberation Org.*, 606 U.S. 1 (2025).  In *Fuld*, the Court held that due process issues in Federal court actions under Federal law are not governed by the Fourteenth Amendment, but rather only the Fifth Amendment applies, under which the issue is "reasonableness," an inquiry that "will depend in each case 'on an evaluation of several factors,' including 'the burden on the defendant, the interest of the forum State, and the plaintiff's interest in obtaining relief.'" 606 U.S. at 24 (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987)).

The Court further held, in explaining the different parameters under the Fourteenth and Fifth Amendments:

> [I]nterstate federalism concerns. . . do not apply to limitations under the Fifth Amendment upon the power of the Federal Government and the corollary authority of the federal courts. The Constitution confers upon the Federal Government—and it alone—both nationwide and extraterritorial authority. While "the limitations of the Constitution are

20

Case No. CV 05-03459-JFW (Ex)

PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE HEAR ACT OF 2025

barriers bordering the States and preventing them from transcending the limits of their authority," there is no equivalent "ground for constructing an imaginary constitutional barrier around the exterior confines of the United States for the purpose of shutting that government off from the exertion of powers which inherently belong to it by virtue of its sovereignty." *United States v. Bennett*, 232 U.S. 299, 306 (1914).

*Id.* at 15.

In *Fuld*, the operative Federal law was the Promoting Security and Justice for Victims of Terrorism Act (PSJVTA); here the issue arises under the FSIA and the 2025 HEAR Act.  Whether the issue is application of California's CCP §338(c)(6) or the HEAR Act's elimination of acquisitive prescription and domestic takings as defenses, the current case clearly satisfies *Fuld*.

As Plaintiffs have shown extensively with respect to CCP §338(c)(6), California's interest in providing a remedy for stolen art victims as set forth in the Legislative Findings in AB 2867, and its significant aggregation of contacts in this case under *Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981), easily satisfy the *Fuld* criteria. D.E. 682 at 7–12; D.E. 682-2 at 6–8, 16-26; D.E. 692 at 12–15, 20–30; D.E. 692-1 at 20–26; Cal. AG Brief, D.E. 722 at 14–15, 20–25; Cal. AG Reply Brief, D.E. 728 at 6–7, 10–12.

Similarly, the HEAR Acts of 2016 and 2025 leave no doubt about reasonableness under the Fifth Amendment as outlined in *Fuld*.  The 2016 HEAR Act provided that one of its goals is to "ensure that claims to Nazi-confiscated art are adjudicated in accordance with United States policy as expressed in the Washintton Conference Principles on Nazi-Confiscated Art, the Holocaust Victims Redress act (HVRA), and the Terezin Declaration." D.E. 687-9 at 43–44.  The HVRA applies the Hague

Case No. CV 05-03459-JFW (Ex)

PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE HEAR ACT OF 2025

Convention rules against pillage in war and for return of stolen artworks[22] to Nazi depredations, and the Washington and Terezin agreements call for looted art to be returned to rightful owners, and for disputes to be resolved based on the facts and merits. *See* D.E. 682 at 21–25; D.E. 692 at 21–26; D.E. 694 at 9–15.

As noted above, Congress's findings in the 2025 HEAR Act emphatically reaffirm these principles:

> (8)  The intent of this Act is to permit claims to recover Nazi looted art to be brought, notwithstanding the passage of time since World War II. Some courts have frustrated the intent of this Act by dismissing recovery lawsuits in reliance on defenses based on the passage of time, such as. . . adverse possession, acquisitive prescription, or usucapion. . . .  In order to effectuate the purpose of the Act to permit claims to recover Nazi-looted art to be resolved on the merits, these defenses must all be precluded.

> (9)  This Act also is intended to allow claims in accordance with the procedures under this Act for the recovery of artwork or other property lost during the covered period because, or as a result, of Nazi persecution. . . , regardless of the nationality or citizenship of the alleged victim, notwithstanding the "domestic takings" rule of *Federal Republic of Germany v. Philipp*, 592 U.S. 169 (2021).

2025 HEAR Act, §2(a).

**D.     Commerce Clause, Dormant Commerce Clause, and Federal Preemption**

TBC argues that CCP §338(c)(6) violates the Commerce Clause, including the "Dormant Commerce Clause," as well as principles of Federal preemption.  Plaintiffs

---

[22]  Plaintiffs' Motion for Summary Judgment demonstrates that in addition to the mandate of CCP §338(c)(6) to apply California law, California's interests for choice-of-law purposes necessarily encompass Federal treaties, laws, policies, and international agreements, which proscribe pillage of artworks of cultural significance, and call for restitution of Nazi-looted art.  Further, any interpretation of California law to allow good title to pass to a possessor of Nazi-looted art would be precluded by these same Federal treaties, laws, policies, and international agreements. D.E. 682, at 17–23.

22                          Case No. CV 05-03459-JFW (Ex)

PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE HEAR ACT OF 2025

have refuted these arguments. *See* DE 692 at 16–21; D.E. 694 at 9–11.  However, enactment of the 2025 HEAR Act eliminates any possible application of these provisions and doctrines.

## 1. Commerce Clause

The only theoretical Commerce Clause argument against a duly enacted Federal statute would be that it exceeds Congress's constitutional authority. *See United States v. Lopez*, 514 U.S. 549 (1995).   The 2025 HEAR Act, which clarifies the application of the FSIA and the HEAR Act of 2016, is clearly within Congress's authority "over foreign commerce and foreign relations." *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493 (1983). *Verlinden* held that Congress's establishment of a statutory framework for sovereign immunity and exceptions to immunity was well within its constitutional authority:

> By reason of its authority over foreign commerce and foreign relations, Congress has the undisputed power to decide, as a matter of federal law, whether and under what circumstances foreign nations should be amenable to suit in the United States. Actions against foreign sovereigns in our courts raise sensitive issues concerning the foreign relations of the United States, and the primacy of federal concerns is evident.
>
> To promote these federal interests, Congress exercised its Article I powers by enacting a statute comprehensively regulating the amenability of foreign nations to suit in the United States. The statute must be applied by the District Courts in every action against a foreign sovereign. . . .

461 U.S. at 493 (footnotes and citations omitted).  The FSIA also applies to foreign sovereign instrumentalities, one of which was actually the defendant in *Verlinden*.  28 U.S.C. §1603(a), (b). *See also Cassirer V*, 596 U.S. at 113 ("The FSIA . . . creates a uniform body of federal law to govern the amenability of foreign states and their instrumentalities to suit in the United States.").

The FSIA is not only a jurisdictional statute; it also "codifies the standards governing foreign sovereign immunity as an aspect of substantive federal law." *Verlinden*, 461 U.S. at 497. *See Cassirer V*, 596 U.S. at 114 (applying 28 U.S.C. §1606, which provides that a non-immune "foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances").

As shown above, the 2025 HEAR Act encompasses both the foreign commerce and foreign relations authorities recognized in *Verlinden*. *See Holtzman v. Philadelphia Museum of Art*, 2022 WL 2651851, at *4 (E.D. Penn. July 7, 2022) ("In passing the [2016 HEAR] Act, Congress exercised its authority over foreign affairs, including its authority to resolve war-related crimes."). It addresses sovereign immunity in precluding application of the "domestic takings" rule evolving from post-*Philipp* decisions, as well as eliminating certain non-merits defenses and doctrines that Congress found had been inappropriately used to prevent recovery of Nazi-looted art, including, as relevant here, acquisitive prescription.

Congress enacted these changes in the context of long-standing and overwhelming foreign policy interests of the United States, namely, taking steps to support recovery of works of art lost as a result of Nazi persecution by the rightful owners and heirs. D.E. 692 at 17–22. Congress's intent is spelled out in explicit detail in the legislative findings in the 2025 HEAR Act, and was underscored by the House floor debate on S. 1884.

As lead House sponsor Representative Laurel Lee stated:

> [The HEAR Act of 2016] was designed to ensure that Holocaust survivors and their heirs would have a fair opportunity to pursue claims in court and that those claims would be decided on their merits, not dismissed because too much time had passed. . . .
>
> As someone who previously served as a judge in Florida and now serves on the Judiciary Committee, I believe deeply that Congress must

24                                    Case No. CV 05-03459-JFW (Ex)

speak clearly and provide judges with standards and guidance to apply in their courtrooms. . . .

For many families, these cases are not about the monetary value of the artwork. They are about restoring a piece of history that was taken from them. . . .

This legislation helps to ensure that survivors and their heirs have the opportunity to reclaim those legacies and that their claims are heard fairly in American courts.

*Congressional Record*, U.S. House of Representatives, March 16, 2026, H2497-H2500.

Co-sponsor Representative Brian Fitzpatrick added:

For decades, many survivors and their heirs have fought simply for the chance to have their claims heard in court. The original HEAR Act passed with overwhelming bipartisan support in this Chamber in 2016, tried to ensure that these claims would be decided only on their merits, rather than being dismissed because of technical objections such as the passage of time.

Mr. Speaker, however, the courts did not follow Congress' intent on many issues, and new legal barriers have emerged that threaten to close or have closed the courthouse doors once again.

*Id.*

Representative Jamie Raskin, one of the lead co-sponsors, lamented that "several court decisions since the 2016 HEAR Act's passage have undermined the statute's purpose of trying to give victims a fair hearing on the merits of their cases regardless of the passage of time. These decisions have dismissed numerous cases precisely based on passage of time defenses like laches or adverse possession. . . ." *Id.*

Prime co-sponsor Jerrold Nadler, who was also a lead co-sponsor of the 2016 HEAR Act, added:

Unfortunately, time has demonstrated that the original HEAR Act was not sufficient. In addition to the bill's impending expiration, more than 100,000 of the over 600,000 works of art looted by the Nazis remain

25

Case No. CV 05-03459-JFW (Ex)

PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE HEAR ACT OF 2025

unrecovered. We must confront this unacceptable and repugnant reality, which continues to allow entities and individuals to profit off the Jewish people's pain.

We must reaffirm that, in the United States, every family member with a credible claim deserves to have their day in court, with their case heard on the merits alone. Justice must not be denied due to procedural technicalities and legislative sunset provisions.

While we cannot reverse the horrors of the Holocaust, we can ensure that in an American courtroom, the truth of a family's legacy carries more weight than a legal loophole.

*Id.*

### 2. Dormant Commerce Clause

TBC's "dormant commerce clause" arguments do not apply because the 2025 HEAR Act is a federal statute. "The Commerce Clause provides that 'Congress shall have Power ... [t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes.'" *Dennis v. Higgins*, 498 U.S. 439, 446 (1991) (citing U.S. Const., Art. I, § 8, cl. 3.).

### 3. Federal Preemption

TBC's arguments against California's CCP §338(c)(6) based on federal preemption are entirely refuted by the actions of Congress in the 2016 and 2025 HEAR Acts. California's statutory choice-of-law rule and long-standing legal principles supporting stolen art victims' rights of recovery are consistent with these Federal statutes which establish principles applicable to the recovery of Nazi-looted art. TBC's federal preemption objection that CCP §338(c)(6) compels application of California substantive law, which does not recognize acquisitive prescription for stolen art, is meritless because California's proscription of that defense is consistent with the 2025 HEAR Act's preclusion of acquisitive prescription. TBC lacks standing to challenge

any other provisions of the 2025 HEAR Act because they have no relevance to its position in this case.

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in Plaintiffs' Motion for Summary Judgment, and their Opposition to Defendants' Motion for Summary Judgment, and Reply in Support of Summary Judgment, the Plaintiffs respectfully urge the Court to enter summary judgment on the causes of action in Plaintiffs' Complaint, and award title to the Painting to the Cassirers.

Dated:  June 12, 2026

Respectfully submitted,

**KENDALL BRILL & KELLY LLP**

By:  /s/ *Jeffrey M. Chemerinsky*

Laura W. Brill (Bar No. 195889)
Jeffrey M. Chemerinsky (Bar No. 270756)
10100 Santa Monica Blvd., Suite 2500
Los Angeles, CA 90067
Telephone: (310) 556-2700
Facsimile: (310) 556-2705

**BOIES SCHILLER FLEXNER LLP**
Daniel G. Boyle (Bar No. 332518)
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

David Boies (admitted *pro hac vice*)
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

27                                    Case No. CV 05-03459-JFW (Ex)

PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE HEAR ACT OF 2025

David A. Barrett (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

Stephen N. Zack (admitted *pro hac vice*)
]100 SE Second Street, Suite 2800
Miami, FL 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Scott E. Gant
1401 New York Ave, NW
Washington, DC 20005
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

**DUBBIN & KRAVETZ, LLP**
Samuel J. Dubbin (admitted *pro hac vice*)
1200 Anastasia Avenue, Suite 300
Coral Gables, FL 33134
Telephone: (305) 371-4700
Facsimile: (305) 371-4701

*Attorneys for Plaintiffs*
DAVID CASSIRER, *et al.*

Case No. CV 05-03459-JFW (Ex)
PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE HEAR ACT OF 2025

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 27 pages, which complies with the 30-page limit set by court order dated April 29, 2026 (D.E. 743).


Dated:  June 12, 2026


By:  /s/ *Jeffrey M. Chemerinsky*

Jeffrey M. Chemerinsky (Bar No. 270756)

*Attorney for Plaintiffs*

Case No. CV 05-03459-JFW (Ex)

PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE HEAR ACT OF 2025