ROB BONTA
Attorney General of California
TODD GRABARSKY
Supervising Deputy Attorney General
CAROLYN DOWNS
State Bar No. 353455
BARBARA HORNE-PETERSDORF
State Bar No. 327738
Deputy Attorneys General
 300 South Spring Street, Suite 1702
 Los Angeles, CA  90013-1230
 Telephone:  (213) 269-6720
 Fax:  (916) 731-2124
 E-mail:  Carolyn.Downs@doj.ca.gov
*Attorneys for Intervenor Rob Bonta, in his official*
*capacity as Attorney General of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DAVID CASSIRER, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**THYSSEN-BORNEMISZA COLLECTION FOUNDATION, an agency or instrumentality of the Kingdom of Spain,**<br><br>Defendant,<br><br>**ROB BONTA, in his official capacity as Attorney General of California,**<br><br>Intervenor. | Case No. 2:05-cv-03459-JFW (Ex)<br><br>**INTERVENOR ATTORNEY GENERAL ROB BONTA'S SUPPLEMENTAL BRIEF RE: HEAR ACT OF 2025**<br><br>Date:　　　August 24, 2026<br>Time:　　　1:30 p.m.<br>Courtroom:　7A<br>Judge:　　　Hon. John F. Walter<br>Action Filed: May 10, 2005 |

# TABLE OF CONTENTS

**Page**

Introduction ...................................................................................................6

Background....................................................................................................7

Argument.......................................................................................................9

I.     Defendant's Challenge to Section 338.2(G) Remains Nonjusticiable .................9

II.    The HEAR Act of 2025 Confirms that Defendant's As-Applied Due Process Challenge Fails as a Matter of Law ..................................10

     A.     As an Instrumentality of Spain, Defendant Enjoys No Due Process Rights ......................................................................10

     B.     The HEAR Act Definitively Closes the Door on Defendant's Due Process Claim Because It Removes Defendant's Claim to a Property Interest in the Painting ......................................10

     C.     Section 338(c)(6) Is Facially Valid Under the Due Process Clause........12

III.   Section 338(c)(6) Is Not Preempted by the HEAR Act of 2025 or Any Other Federal Law or Authority................................13

     A.     Section 338(c)(6) Is Not Field Preempted, and the HEAR Act of 2025 Does Not Change That .................................13

         1.     Section 338(c)(6) Does Not Intrude on the Federal Government's Foreign Affairs Power......................................13

         2.     Section 338(c)(6) Regulates Ownership of Stolen Property, a Traditional State Responsibility...........................................15

     B.     The HEAR Act of 2025 Does Not Conflict with Section 338(c)(6) .......16

IV.   Section 338(c)(6) Does Not Violate the Commerce Clause, Notwithstanding the HEAR Act of 2025 .....................................18

Conclusion...................................................................................................21

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Allstate Ins. Co. v. Hague*
   449 U.S. 302 (1981) ........................................................................ 12

*Am. Beverage Ass'n v. Snyder*
   735 F.3d 362 (6th Cir. 2013) .......................................................... 20

*Am. Ins. Ass'n v. Garamendi*
   539 U.S. 396 (2003) ........................................................................ 16

*Arizona v. United States*
   567 U.S. 387 (2012) ........................................................................ 16

*Barclays Bank PLC v. Franchise Tax Bd. of Cal.*
   512 U.S. 298 (1994) ........................................................................ 19

*Bd. of Regents v. Roth*
   408 U.S. 564 (1972) .................................................................. 11, 12

*Cassirer v. Thyssen-Bornemisza Collection Found.*
   153 F. Supp. 3d 1148 (C.D. Cal. 2015) .......................................... 11

*Cassirer v. Thyssen-Bornemisza Collection Found.*
   596 U.S. 107 (2022) .......................................................................... 8

*Cassirer v. Thyssen-Bornemisza Collection Found.*
   737 F.3d 613 (9th Cir. 2013) (*Cassirer II*) .......................... 14, 15, 19

*Cassirer v. Thyssen-Bornemisza Collection Found.*
   862 F.3d 951 (9th Cir. 2017) (*Cassirer III*) .................................. 12

*Cassirer v. Thyssen-Bornemisza Collection Found.*
   89 F.4th 1226 (9th Cir. 2024) (*Cassirer VII*) ............................. 7, 11

*Cassirer v. Thyssen-Bornemisza Collection Found.*
   No. CV 05-3459, 2019 WL 13240413 (C.D. Cal. Apr. 30, 2019) ................. 8, 11

*Clark v. Allen*
   331 U.S. 503 (1947) ........................................................................ 15

ii

**TABLE OF AUTHORITIES**
(continued)

Page

*Container Corp. of Am. v. Franchise Tax Bd.*
463 U.S. 159 (1983) ...................................................................................... 19, 21

*Daniels Sharpsmart, Inc. v. Smith*
889 F.3d 608 (9th Cir. 2018) .................................................................................. 20

*Deutsch v. Turner Corp.*
324 F.3d 692 (9th Cir. 2003) ............................................................................ 13, 14

*Dunbar v. Seger-Thomschitz*
615 F.3d 574 (5th Cir. 2010) .................................................................................. 16

*Fed. Home Loan Mortg. Corp. v. SFR Invs. Pool 1, LLC*
893 F.3d 1136 (9th Cir. 2018) ................................................................................ 11

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*
462 U.S. 611 (1983) ............................................................................................... 10

*Flynt v. Bonta*
131 F.4th 918 (9th Cir. 2025) ................................................................................. 18

*Frontera Res. Azer. Corp. v. State Oil Co. of the Azer. Republic*
582 F.3d 393 (2d Cir. 2009) ................................................................................... 10

*Gingery v. City of Glendale*
831 F.3d 1222 (9th Cir. 2016) ................................................................................ 13

*Japan Line, Ltd. v. Cnty of Los Angeles*
441 U.S. 434 (1979) ............................................................................................... 18

*Movsesian v. Victoria Versicherung AG*
670 F.3d 1067 (9th Cir. 2012) ..................................................................... 13, 14, 15

*Nat'l Foreign Trade Council v. Natsios*
181 F.3d 38 (1st Cir. 1999) .................................................................................... 18

*Nat'l Pork Producers Council v. Ross*
598 U.S. 356 (2023) ............................................................................................... 18

*NCAA v. Miller*
10 F.3d 633 (9th Cir. 1993) .................................................................................... 21

**TABLE OF AUTHORITIES**
(continued)

Page

*Schoeps v. Sompo Holdings, Inc.*
  160 F.4th 815 (7th Cir. 2025)...............................................................14

*Schoeps v. Sompo Holdings, Inc.*
  736 F. Supp. 3d 582 (N.D. Ill. 2024).............................................17, 18

*United States v. Rahimi*
  602 U.S. 680 (2024) .............................................................................12

*Valley Bank of Nev. v. Plus Sys., Inc.*
  914 F.2d 1186 (9th Cir. 1990)..............................................................20

*Von Saher v. Norton Simon Museum of Art at Pasadena*
  592 F.3d 954 (9th Cir. 2010) (*Von Saher I*)........................................16

*Von Saher v. Norton Simon Museum of Art at Pasadena*
  754 F.3d 712 (9th Cir. 2014) *(Von Saher II)*.......................................16

*Wardair Can., Inc. v. Fla. Dep't of Revenue*
  477 U.S. 1 (1986) ...........................................................................18, 19

*Wedges/Ledges of Cal., Inc. v. City of Phx., Ariz.*
  24 F.3d 56 (9th Cir. 1994).....................................................................11

*Zschernig v. Miller*
  389 U.S. 429 (1968) ........................................................................13, 14

*Zuckerman v. Metro. Museum of Art*
  928 F.3d 186 (2d Cir. 2019).............................................................17, 18

**STATUTES**

22 U.S.C.
  § 1621 .....................................................................................................8
  § 1621 n. 5(i) .........................................................................................18
  § 1621 n. § 2(8)........................................................................................8
  § 1621 n. § 5(f) ........................................................................................9
  § 1621 n. § 5(f)(1).................................................................................12

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

C.C.P.
  § 338.2(g)........................................................................................6, 7, 9, 21
  § 338(c)(6) ..............................................................................................*passim*

Holocaust Expropriated Art Recovery Act of 2025, Pub. L. 119-82,
  140 Stat. 752 (2026) .......................................................8, 9, 12, 17, 19

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Amendment XIV
  § 1 ......................................................................................................10

**OTHER AUTHORITIES**

Assemb. B. 2867, § 1(k) (Cal. 2024).....................................................16

**INTRODUCTION**

In April 2026, the President signed the Holocaust Expropriated Art Recovery Act of 2025 ("HEAR Act of 2025" or "amended HEAR Act") into law. The HEAR Act of 2025 amends the Holocaust Expropriated Art Recovery Act of 2016, which set a uniform six-year statute of limitations for claims to recover artwork stolen by the Nazi regime. The HEAR Act of 2025 keeps the six-year statute of limitations and adds, among other things, prohibitions against certain non-merits defenses—including those based on the passage of time—for claims to recover Holocaust-era art. Specifically, the law prohibits several defenses including laches, forum non conveniens, and, relevant here, adverse possession and acquisitive prescription—defenses that Defendant has relied on to retain possession of the Nazi-stolen painting by French Impressionist Camille Pissarro ("the Painting").

As an initial matter, the HEAR Act of 2025 does not impact the Attorney General's arguments regarding Defendant's constitutional challenge to California Code of Civil Procedure section 338.2(g).[1] That provision, which permits a claimant to bring a claim that has been previously dismissed on procedural grounds, has not been raised in this case. Thus, as explained in the Attorney General's Supplemental Brief and Reply, Defendant lacks standing to challenge its constitutionality.

At issue in this case is Section 338(c)(6), which states that California law applies when a California resident or their heir brings a claim to recover property of certain cultural significance, including Nazi-looted art. Defendant contends this provision violates the Due Process Clause. But even aside from the fact that Defendant is not entitled to due process protections as an agent or instrumentality controlled by Spain, the HEAR Act of 2025 forecloses Defendant's claim. This is because Defendant's theory of ownership over the Painting relies on having

---

[1] Unless otherwise indicated, all statutory references are to the California Code of Civil Procedure.

obtained title via acquisitive prescription. But the HEAR Act of 2025 eliminates that theory. Thus, Defendant lacks any property interest protected by the Due Process Clause and cannot maintain a deprivation of a constitutionally protected interest.

In addition, nothing about the HEAR Act of 2025 changes the fact that Section 338(c)(6) is not federally preempted. Section 338(c)(6) does not violate the foreign affairs doctrine for the same reasons explained in the Attorney General's Supplemental Brief and Reply: it regulates an area of traditional state responsibility and, as a general state law, does not impede the federal government's power over foreign affairs. And Section 338(c)(6) is not in conflict with the HEAR Act of 2025 because the amended HEAR Act does not legislate on choice-of-law issues, leaving Section 338(c)(6)'s substantive law mandate intact in claims to recover Holocaust-era artwork.

Finally, nothing about the amended HEAR Act indicates that Section 338(c)(6) violates the Commerce Clause. Like foreign affairs preemption, foreign dormant Commerce Clause analysis focuses on the state statute at issue, not the existence or text of any federal statute. The Attorney General's prior arguments still stand—Section 338(c)(6) does not interfere with the federal government's ability to speak with "one voice" on foreign affairs, and the HEAR Act of 2025 does not change that conclusion. Nor does Section 338(c)(6) discriminate against foreign commerce facially or in its purpose or effect; at most, it has merely an incidental or indirect effect on foreign commerce—well within constitutional bounds.

The Court should uphold the constitutionality of Section 338(c)(6) and find Defendant's challenge to Section 338.2(g) nonjusticiable.

## BACKGROUND

The full background and procedural history of this case is set forth in prior decisions from this Court, the Ninth Circuit Court of Appeals, and the United States Supreme Court, *see Cassirer v. Thyssen-Bornemisza Collection Found.*, 89 F.4th

1226, 1229–34 (9th Cir. 2024) (*Cassirer VII*); *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 110–13 (2022); *Cassirer v. Thyssen-Bornemisza Collection Found.*, No. CV 05-3459, 2019 WL 13240413, at *1–15 (C.D. Cal. Apr. 30, 2019), as well as the parties' cross-Motions for Summary Judgment, *see* ECF Nos. 681-1, 682, and the Attorney General's supplemental briefing, *see* ECF Nos. 722, 728. What follows is a summary of recent developments relevant to the enactment of the HEAR Act of 2025.

The HEAR Act of 2025 unanimously passed the United States House of Representatives on March 16, 2026, after having passed the Senate in December 2025. *See* ECF No. 736. The bill was a bipartisan effort "[t]o clarify the Holocaust Expropriated Art Recovery Act of 2016, to appropriately limit the application of defenses based on the passage of time and other non-merits defenses to claims under that Act." Holocaust Expropriated Art Recovery Act of 2025, Pub. L. 119-82, 140 Stat. 752 (2026) ("HEAR Act of 2025"). The intent of the law is clear:

> The intent of this Act is to permit claims to recover Nazi-looted art to be brought, notwithstanding the passage of time since World War II. Some courts have frustrated the intent of this Act by dismissing recovery lawsuits in reliance on defenses based on the passage of time, such as laches, . . . adverse possession, acquisitive prescription, or usucapion (for example, Cassirer v. Thyssen-Bornemisza Foundation, 89 F.4th 1226 (9th Cir. 2024)) or on other non-merits discretionary defenses, such as the act of state doctrine (for example, Von Saher v[.] Norton Simon Museum of Art at Pasadena, 897 F.3d 1141 (9th Cir. 2018)), forum non conveniens, international comity, or prudential exhaustion. In order to effectuate the purpose of the Act to permit claims to recover Nazi-looted art to be resolved on the merits, these defenses must be precluded.

*Id.* § 2(a)(8), 140 Stat. 752; *see also* 22 U.S.C. § 1621 note § 2(8) (Holocaust Expropriated Art Recovery) ("22 U.S.C. § 1621"). To effectuate this intent, the HEAR Act of 2025 provides that "all defenses or substantive doctrines based on

the passage of time, including laches, adverse possession, acquisitive prescription, and usucapion, may not be applied with respect to" "any claim that is otherwise timely under this Act." HEAR Act of 2025 § 2(f), 140 Stat. 753; 22 U.S.C. § 1621 note § 5(f). Similarly, "all non-merits discretionary bases for dismissal, including the act of state doctrine, international comity, forum non conveniens, prudential exhaustion, and similar doctrines unrelated to the merits, may not be applied with respect to the claim." HEAR Act of 2025 § 2(f)(2), 140 Stat. 753. The HEAR Act of 2025 applies to any civil claim or cause of action "pending in any court on the date of enactment of this Act" or "filed on or after the date of enactment of this Act." *Id.* § 6(b), 140 Stat. 754.

Upon the parties' request, the Court ordered the parties to file supplemental briefs addressing the impact the HEAR Act of 2025 may have on this case. ECF No. 743.

## ARGUMENT

### I.   DEFENDANT'S CHALLENGE TO SECTION 338.2(G) REMAINS NONJUSTICIABLE

The HEAR Act of 2025 does not change that Defendant lacks standing to challenge Section 338.2(g). As explained in prior briefing, Defendant's challenge to Section 338.2(g) is nonjusticiable because Defendant has not alleged sufficient injury-in-fact from its application as required for standing, and any challenge to Section 338.2(g) is not ripe. Att'y Gen. Suppl. Br. 4–5, ECF No. 722; Att'y Gen. Reply Br. 1–2, ECF No. 728. Indeed, Plaintiffs do not invoke Section 338.2(g), and it is not otherwise relevant to this action. *See generally* Pls.' Mot. Summ. J., ECF No. 682. Defendant does not dispute that it has not been harmed by any application of Section 338.2(g). *See generally* Def.'s Mot. Summ. J. 2, ECF No. 681-1; Def.'s Opp'n 1, n.1, ECF No. 725. Without establishing a concrete or imminent injury, Defendant's attack on Section 338.2(g) is "hypothetical or abstract" and therefore unripe and insufficient to establish Defendant's standing to this challenge.

*v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).

## II.    THE HEAR ACT OF 2025 CONFIRMS THAT DEFENDANT'S AS-APPLIED DUE PROCESS CHALLENGE FAILS AS A MATTER OF LAW

### A.    As an Instrumentality of Spain, Defendant Enjoys No Due Process Rights

The Due Process Clause of the Fourteenth Amendment provides that States shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. For the reasons previously discussed in the Attorney General's briefing, Defendant is not a "person" entitled to protections under the Due Process Clause because it is an agency or instrumentality controlled by Spain. *See* Att'y Gen. Suppl. Br. 7–11; Att'y Gen. Reply Br. 3–5. The HEAR Act of 2025 does not impact this conclusion.

A foreign nation's entity receives no due process protection if either of two conditions apply: "if the state so 'extensively controls' the instrumentality 'that a relationship of principal and agent is created,' or if 'adhering blindly to the corporate form . . . would cause . . . injustice.'" *Frontera Res. Azer. Corp. v. State Oil Co. of the Azer. Republic*, 582 F.3d 393, 400 (2d Cir. 2009) (quoting *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 629, 632 (1983) (*Bancec*)) (internal brackets omitted). The HEAR Act of 2025 does not change the record in this case, which is replete with examples of Spain's control over Defendant. Based on this record, the Attorney General has previously explained that Defendant, as an instrumentality of the Kingdom of Spain, is not a "person" for purposes of the Due Process Clause, and it would be unjust to find otherwise. Att'y Gen. Suppl. Br. 7–11; Att'y Gen. Reply Br. 3–5.

### B.    The HEAR Act Definitively Closes the Door on Defendant's Due Process Claim Because It Removes Defendant's Claim to a Property Interest in the Painting

Even if Defendant were entitled to due process protections, the HEAR Act of 2025 definitively closes the door on the next threshold issue of Defendant's due process claim: whether Defendant has a property interest in the Painting.

Defendant's claim of title to the Painting is solely based on the application of Spain's acquisitive prescription rules, a defense now precluded by the amended HEAR Act. Without such a property interest, Defendant's due process claim is not cognizable.

"A threshold requirement to a substantive or procedural due process claim is the [defendant's] showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phx., Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972)). To have a constitutionally protected property interest, a person "must . . . have a legitimate claim of entitlement" to the property. *Fed. Home Loan Mortg. Corp. v. SFR Invs. Pool 1, LLC*, 893 F.3d 1136, 1147 (9th Cir. 2018) (quoting *Roth*, 408 U.S. at 577). Courts must first "look to see if the [defendant's] interest is within the Fourteenth Amendment's protection of liberty and property." *Roth*, 408 U.S. at 571. Only if there has been a deprivation of such an interest may Defendant claim the denial of due process. *Id.*

Here, to assert ownership over the Painting, Defendant relies exclusively on a theory of acquisitive prescription based on the application of Spanish law. *See* Def.'s Mot. Summ. J. 9 ("Under Article 1955 of the Spanish Civil Code, the Foundation owns the Painting[.]"). Defendant asserts no other theory for its claim of ownership to the Painting. Nor could it—this Court previously found that Defendant did not acquire good title to the Painting under its acquisition agreement with the Baron because the Baron did not acquire good title when he purchased the Painting in 1976. *Cassirer*, 2019 WL 13240413, at **19, 17. Instead, title was determined in Defendant's favor based only on the application of Spain's acquisitive prescription laws. *See id.* at *19; *Cassirer VII*, 89 F.4th at 1245 ("[P]ursuant to Article 1955 of the Spanish Civil Code, TBC has acquired prescriptive title to the Painting."); *Cassirer v. Thyssen-Bornemisza Collection Found.*, 153 F. Supp. 3d 1148, 1167 (C.D. Cal. 2015) ("[U]nder Spain's adverse

possession laws, the Foundation acquired ownership of the Painting . . . .").

The HEAR Act of 2025 forecloses Defendant's only theory of ownership to the Painting because it precludes Defendant's assertion of acquisitive prescription or similar defenses to establish a property interest in the Painting. Without a property interest in the Painting, Defendant cannot then allege a deprivation of that interest. Whereas the Ninth Circuit previously stated that the prior version of the HEAR Act did "not foreclose the possibility that TBC is entitled to summary judgment because TBC has acquired title to the Painting via Article 1955," *Cassirer v. Thyssen-Bornemisza Collection Found.*, 862 F.3d 951, 965 (9th Cir. 2017) (*Cassirer III*), the HEAR Act of 2025 expressly precludes the use of acquisitive prescription and adverse possession as defenses, theories Defendant has relied on to claim it acquired ownership of the Painting. *See* HEAR Act of 2025 §§ 2(a)(8), (f)(1), 140 Stat. 752, 753; 22 U.S.C. § 1621 note § 5(f)(1). Without the ability to claim an interest in the Painting based on acquisitive prescription or adverse possession—or any other defense based on the passage of time—Defendant has no interest in the Painting at all and, accordingly, cannot claim that applying Section 338(c)(6) deprives it of a protected interest. *See Roth*, 408 U.S. at 579. Thus, Defendant's due process challenge fails as a matter of law.[2] *See id.*

    **C.   Section 338(c)(6) Is Facially Valid Under the Due Process Clause**

The HEAR Act of 2025 does not bear on the facial validity of Section 338(c)(6). Defendant argues that Section 338(c)(6) is facially unconstitutional, but does not even attempt to satisfy the standard for a facial challenge, which requires establishing that "no set of circumstances exists under which [Section 338(c)(6)] would be valid." *United States v. Rahimi*, 602 U.S. 680, 693 (2024) (quoting *United*

---

[2] For this reason, the Court also should disregard Defendant's argument that applying Section 338(c)(6) here violates its due process rights under *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 321 n.4 (1981). Def.'s Mot. Summ. J. 11; *see* Att'y Gen. Suppl. Br. 14–15; Att'y Gen. Reply Br. 6–7.

*States v. Salerno*, 481 U.S. 739, 745 (1987)). Instead, Defendant focuses on a single hypothetical circumstance where the law applies based on a claimant's residence alone while ignoring the various circumstances under which Section 338(c)(6)'s application would be indisputably constitutionally proper, such as if the stolen property is located in California, was stolen from within California, or if the parties have business dealings, residence, or other contacts in California. Def.'s Opp'n 5–6. In the absence of any argument or authority addressing the standard for a facial challenge, the Court should reject this facial challenge.

III. SECTION 338(C)(6) IS NOT PREEMPTED BY THE HEAR ACT OF 2025 OR ANY OTHER FEDERAL LAW OR AUTHORITY

"Foreign affairs preemption encompasses two related, but distinct, doctrines: conflict preemption and field preemption." *Movsesian v. Victoria Versicherung AG,* 670 F.3d 1067, 1071 (9th Cir. 2012). The HEAR Act of 2025 does not preempt Section 338(c)(6) under either doctrine.

### A. Section 338(c)(6) Is Not Field Preempted, and the HEAR Act of 2025 Does Not Change That

Field preemption is "applied sparingly," *Deutsch v. Turner Corp.*, 324 F.3d 692, 710 (9th Cir. 2003), and there must be "more than some incidental or indirect effect" on foreign affairs to invalidate a state law, *Zschernig v. Miller*, 389 U.S. 429, 434 (1968). A state statute is only preempted where, even in the absence of an express federal policy, "(1) its real purpose does not concern an area of traditional state responsibility, *and* (2) it intrudes on the federal government's foreign affairs power." *Gingery v. City of Glendale*, 831 F.3d 1222, 1229 (9th Cir. 2016) (emphasis added).

#### 1. Section 338(c)(6) Does Not Intrude on the Federal Government's Foreign Affairs Power

"To intrude on the federal government's foreign affairs power, a [state] statute must have 'more than some incidental or indirect effect on foreign affairs.'"

*Cassirer v. Thyssen-Bornemisza Collection Found.*, 737 F.3d 613, 617 (9th Cir. 2013) (*Cassirer II*) (quoting *Movsesian*, 670 F.3d at 1076). "[W]hen there is no evidence that the application of state law would interfere with the foreign policy of the United States, state law can govern the dispute." *Schoeps v. Sompo Holdings, Inc.*, 160 F.4th 815, 824 (7th Cir. 2025), *cert. denied*, --- S. Ct. ----, 2026 WL 1640875 (June 8, 2026).

The enactment of the amended HEAR Act does not impact the Attorney General's prior briefing on the issue because foreign affairs preemption focuses on the state statute itself, asking whether the statute intrudes on the federal foreign affairs power by "creat[ing] a remedy for wartime injuries by creating a new cause of action for the recovery of artwork" or requiring "courts to make politically sensitive determinations on matters of foreign policy." *Cassirer II*, 737 F.3d at 618. The analysis does not depend on whether an "express federal policy" exists, just whether the state statute impedes the federal government's "general foreign affairs power." *See Movsesian*, 670 F.3d at 1072; *see also Deutsch*, 324 F.3d at 711–12 (basing foreign affairs preemption analysis of California law on constitutional provisions giving federal government the power to make and resolve war, not federal legislation). Thus, passage of the HEAR Act of 2025 does not alter the foreign affairs preemption analysis.

As explained in the Attorney General's prior briefing, Att'y Gen. Suppl. Br. 21–24, Section 338(c)(6) does not "disturb foreign relations" or "establish its own foreign policy." *Zschernig*, 389 U.S. at 441; *see also Movsesian*, 670 F.3d at 1072. Like the California statute upheld in *Cassirer II*, Section 338(c)(6) is a generally applicable statute that "does not create a remedy for wartime injuries by creating a new cause of action for the recovery of artwork," or "require that . . . claims arise out of wartime injuries." *Cassirer II*, 737 F.3d at 618–19. "Because [Section 338(c)(6)] is silent on matters of foreign affairs, it does not convey 'a distinct juristic personality from that of the United States when it comes to matters of

foreign affairs.'" *Id.* at 619 (quoting *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 965 (9th Cir. 2010) (*Von Saher I*)). And because it is a generally applicable statute, Section 338(c)(6) encompasses claims to recover Holocaust-era art. But just because a state statute "*may* permit Holocaust era-claims is not the test for preemption." *Id.* The incidental or indirect effect Section 338(c)(6) may have in those applications is "true of many state laws which none would claim cross the forbidden line," *Clark v. Allen*, 331 U.S. 503, 517 (1947), and is hardly sufficient to find an intrusion on the federal government's foreign affairs power. The HEAR Act of 2025 has no bearing on this analysis.

### 2. Section 338(c)(6) Regulates Ownership of Stolen Property, a Traditional State Responsibility

Since Section 338(c)(6) does not intrude on the federal government's foreign affairs power, the Court "need not consider whether [the statute] addresses an area of traditional state responsibility." *Cassirer II*, 737 F.3d at 617. But even if it did impermissibly intrude on the foreign affairs power, for similar reasons as discussed *supra*, the HEAR Act of 2025 does not bear on whether Section 338(c)(6) addresses a traditional state responsibility. As discussed in the Attorney General's prior briefing, Section 338(c)(6) addresses a well-established traditional state responsibility, Att'y Gen. Suppl. Br. 21–22; Att'y Gen. Reply Br. 12, and Section 338(c)(6)'s text and purpose to that effect are not altered by the amended HEAR Act.

Section 338(c)(6) regulates claims of stolen property brought by Californians or their heirs—a regulation on the ownership of property within the state, which is "traditionally an area of state responsibility." *Movsesian*, 670 F.3d at 1074. The plain language of subsection (c)(6) is clear that the statute's choice-of-law provision applies to "any action brought by a California resident, or by an heir, trustee, assignee, or representative of the estate of a California resident" involving claims to recover personal property. § 338(c)(6). That the statute also applies to claims to

recover Holocaust-era artwork does not undercut its traditional purpose, which is to "preclud[e] a thief from passing good title," "protect[] the rights of true owners to recover stolen artwork and other items of cultural property," and "preclud[e] the true owners of stolen property from being divested of title without actual knowledge of their rights." Assemb. B. 2867, § 1(k) (Cal. 2024). The stated goals of Section 338(c)(6) are not to "pursu[e] independent policy objectives." *Dunbar v. Seger-Thomschitz*, 615 F.3d 574, 579 (5th Cir. 2010). The law's mandate "appl[ies] generally to any challenge of ownership" to property within its scope. *Id.*

Such protection and regulation of property is a quintessential traditional state responsibility. *See id.* at 579 (finding Louisiana's prescriptive laws are "well within the realm of traditional state responsibilities" and Louisiana had a "strong interest in regulating the ownership of property within the state through these prescriptive laws"); *Von Saher I*, 592 F.3d at 964 ("Property, of course, is traditionally regulated by the state."). Nothing in the HEAR Act of 2025 divests California (or any state) of that responsibility.

### B.    The HEAR Act of 2025 Does Not Conflict with Section 338(c)(6)

A state law may be preempted when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona v. United States*, 567 U.S. 387, 399 (2012). Conflict preemption requires "evidence of clear conflict between the policies adopted by the two." *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 421 (2003). To be preempted, a state law must "produce something more than incidental effect in conflict with express foreign policy of the National Government." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 754 F.3d 712, 720 (9th Cir. 2014) (quoting *Garamendi*, 539 U.S. at 420) (*Von Saher II*).

Even though Congress expanded the HEAR Act's scope, the overall reach of the amended HEAR Act remains limited. In 2016, the HEAR Act "create[d] a nationwide statute of limitations for bringing claims to recover artwork and other

property lost during the Holocaust era," and preempted state statutes of limitations for such claims. *Zuckerman v. Metro. Museum of Art*, 928 F.3d 186, 189 (2d Cir. 2019); *Schoeps v. Sompo Holdings, Inc.*, 736 F. Supp. 3d 582, 591 (N.D. Ill. 2024) ("The HEAR Act [of 2016] preempts state law statutes of limitations for actions to recover property stolen or misappropriated by the Nazis between 1933 and 1945."). The HEAR Act of 2025 keeps that nationwide statute of limitations and, to effectuate the original purpose of the Act, precludes, among others, non-merits discretionary defenses and defenses based on the passage of time. HEAR Act of 2025 § 2(a)(8), 140 Stat. 752. The amendment does not mandate a choice-of-law procedure, nor does anything in the amendment support that Congress intended to mandate a uniform choice-of-law procedure or prevent application of state choice-of-law requirements. The HEAR Act of 2025 is concerned with defenses, specifically prohibiting application of certain defenses to claims for Nazi-looted property to facilitate the fair and expeditious resolution of such claims.

The HEAR Act of 2025 would preempt state law property or tort claims only to the extent state law provides for a different statute of limitations or allows for certain defenses. *See Schoeps*, 736 F. Supp. 3d at 595 (finding that by "extending state law statutes of limitations," "the HEAR Act implicitly sanctions the application of state law to claims concerning stolen Nazi art."). That the limited expansion of the amended HEAR Act supports a uniform prohibition on the use of certain defenses only shows that it *permits* the application of state law to claims for Holocaust-era stolen art. *See id.*

Section 338(c)(6) does just that, and thus its requirement that California substantive law apply to stolen property claims does not conflict with the HEAR Act of 2025. None of the defenses Congress precluded are akin to choice-of-law issues, leaving Section 338(c)(6)'s mandate intact. To the extent the HEAR Act of 2025 does preempt California state law, it would only preempt the use of state law defenses prohibited under the federal Act—such as adverse possession or

acquisitive prescription. *See, e.g.*, *Zuckerman, 928 F.3d at 196* (interpreting HEAR Act of 2016 to fulfill limited purpose of overriding state statutes of limitations). But it cannot be read to amount to a federal policy prohibiting application of *all* state laws. *See Schoeps, 736 F. Supp. 3d at 595* (finding "the HEAR Act [of 2016] does not preempt state law property or tort claims"). As discussed in the Attorney General's prior briefing, to preclude application of all state law would lead to absurd results. Att'y Gen. Reply Br. 11. If no state law applied, plaintiffs would have no cause of action under which to bring their claims. *See* 22 U.S.C. § 1621 note 5(i); *see also* Att'y Gen. Reply Br. 11.

## IV. SECTION 338(C)(6) DOES NOT VIOLATE THE COMMERCE CLAUSE, NOTWITHSTANDING THE HEAR ACT OF 2025

In matters of foreign commerce, the concern "is not with an actual conflict between state and federal law, but rather with the policy of uniformity, embodied in the Commerce Clause, which presumptively prevails when the Federal Government has remained silent." *Wardair Can., Inc. v. Fla. Dep't of Revenue*, 477 U.S. 1, 8 (1986). "'[E]xtreme caution' is warranted before a court deploys its 'implied authority' to reject a state law under the dormant Commerce Clause." *Flynt v. Bonta*, 131 F.4th 918, 926 (9th Cir. 2025) (quoting *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 390 (2023)), *cert. denied*, --- S. Ct. ----, 2026 WL79841 (Jan. 12, 2026). A state law should only be struck down under the dormant Commerce Clause "where the infraction is clear." *Nat'l Pork*, 598 U.S. at 390.

The HEAR Act of 2025 does not change the conclusion that Section 338(c)(6) does not violate the "one voice" doctrine. A state law can violate the dormant foreign Commerce Clause only by impeding the federal government's ability to "speak with one voice" in foreign affairs when such state action harms "'federal uniformity in an area where federal uniformity is essential.'" *Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 68 (1st Cir. 1999) (quoting *Japan Line, Ltd. v. Cnty of Los Angeles*, 441 U.S. 434, 448–49 (1979)). Applying Section

338(c)(6) to claims to recover Nazi-stolen artwork does not threaten the federal government's ability to speak with one voice on the issue of Holocaust-era art reclamation, as explained in the Attorney General's prior briefing. *See* Att'y Gen. Suppl. Br. 16–18; Att'y Gen. Reply Br. 9–10.

State law has long provided the avenue for plaintiffs to bring claims against foreign and domestic defendants to recover artwork and other personal property stolen in the Holocaust. Section 338(c)(6) simply clarifies for courts adjudicating California claims that California substantive law must be applied to claims for stolen property that fall under the statute's scope, including claims to recover personal property stolen by the Nazi regime. And there is no indication that by amending the HEAR Act, Congress intended to deny the states the power to enact generally applicable laws that also govern some claims of Holocaust-stolen artwork. In fact, the HEAR Act of 2025 "fails to reveal any such federal policy" preventing the application of state law to these claims, so long as certain state-law defenses are not applied to them. *Wardair*, 477 U.S. at 9; *see* HEAR Act of 2025 § 2(f)(1), 140 Stat. 753.

There is inevitably some impact on foreign defendants by virtue that some claims to recover stolen property are brought against foreign parties, but any incidental or indirect effect Section 338(c)(6) has on Holocaust-stolen art claims is hardly more than a "foreign resonance[]," not a violation of the foreign dormant Commerce Clause. *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 194 (1983). Just because a generally applicable state statute applies in such cases does not mean its application impedes the federal government's ability to effectuate foreign policy. *See Wardair*, 477 U.S. at 13 ("[W]e have never suggested . . . that the Foreign Commerce Clause *insists* that the Federal Government speak with any particular voice."); *see, e.g.*, *Cassirer II*, 737 F.3d at 619 (upholding California law under foreign affairs preemption as not "implicat[ing] the federal government's foreign affairs powers" despite applying to Holocaust-art claims); *Barclays Bank*

19

*PLC v. Franchise Tax Bd. of Cal.*, 512 U.S. 298, 303 (1994) (finding tax imposed on domestic corporations with foreign parents or subsidiaries did not violate the one voice doctrine).

In addition, the HEAR Act of 2025 does not impact the nondiscriminatory application of Section 338(c)(6) to state law claims for stolen property. To determine whether a law violates the dormant Commerce Clause, courts focus on the text and purpose of the state statute. *See Am. Beverage Ass'n v. Snyder*, 735 F.3d 362, 371 (6th Cir. 2013). Here, the text and purpose of Section 338(c)(6) are not changed by the amendment or enactment of a federal law such as the HEAR Act of 2025. Section 338(c)(6) still does not subject foreign entities to different treatment than in-state entities. *See* Att'y Gen. Suppl. Br. 19–20; Att'y Gen. Reply Br. 8–9. And it applies evenhandedly—it does not discriminate against foreign or in-state defendants or interests, or impose punishment on a foreign defendant but not an in-state defendant. *See Valley Bank of Nev. v. Plus Sys., Inc.*, 914 F.2d 1186, 1193 (9th Cir. 1990) ("[A law] that applies evenhandedly certainly passes muster under the commerce clause."). In fact, Section 338(c)(6) does not impose any punishment or sanction at all. *See* Att'y Gen. Reply Br. 8–9. It regulates how courts must adjudicate claims brought pursuant to California law and in doing so, treats all claimants, defendants, and claims for stolen property within its scope the same.

And finally, the HEAR Act of 2025 does not impact Section 338(c)(6)'s limited effect on interstate and foreign commerce. As discussed in prior briefing, Section 338(c)(6) applies to claims under California law brought by California residents (or their heirs) for harms felt in California. Att'y Gen. Reply Br. 7, 8. The statute does not change how foreign courts, or other state courts, must adjudicate claims for stolen property. It regulates procedure of adjudicating California law claims for stolen property, but it does not "dictate what other states [or nations] must do within their own borders," *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 615 (9th Cir. 2018), or effect control of proceedings in other states or

20

countries, *see NCAA v. Miller*, 10 F.3d 633, 639 (9th Cir. 1993). Where the statute applies to claims brought against foreign defendants, Section 338(c)(6)'s effect is limited. The statute requires courts in California to apply California substantive law, which might diverge from the law of the foreign defendant's country, but so do many state laws that apply equally to in-state and out-of-state or foreign defendants. Section 338(c)(6) poses no more an extraterritoriality concern than any other generally applicable state law. A state law is not unconstitutional because it may have some residual effect on foreign conduct upon a finding adverse to the foreign party. *See Container Corp.*, 463 U.S. at 194, 196–97 (upholding California's corporate franchise tax levied on foreign and domestic corporations as having mere "foreign resonances").

## CONCLUSION

Based on the foregoing, and together with the arguments presented in the Attorney General's prior briefing, the Court should uphold the constitutionality of Section 338(c)(6) and find that Defendant's challenge to Section 338.2(g) is nonjusticiable.

Dated:  June 12, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
TODD GRABARSKY
Supervising Deputy Attorney General

*/s/ Carolyn Downs*
CAROLYN DOWNS
BARBARA HORNE-PETERSDORF
Deputy Attorneys General
*Attorneys for Party-in-Intervention*
*Rob Bonta, in his official capacity as*
*Attorney General of California*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Attorney General Rob Bonta, certifies that this brief contains no more than 30 (thirty) pages, which:

__ complies with the word limit of L.R. 11-6.1.

 X  complies with the page limit set in the Court's order dated April 29, 2026, ECF No. 743.

Dated:  June 12, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
TODD GRABARSKY
Supervising Deputy Attorney General


*/s/ Carolyn Downs*
CAROLYN DOWNS
Deputy Attorney General
*Attorney for Party-in-Intervention Rob Bonta, in his official capacity as Attorney General of California*

# CERTIFICATE OF SERVICE

Case Name: **Cassirer, David, et al. v. Thyssen-Bornemisza Collection Foundation**

Case No. **2:05-cv-03459-JFW**

I hereby certify that on June 12, 2026, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**INTERVENOR ATTORNEY GENERAL ROB BONTA'S SUPPLEMENTAL BRIEF RE: HEAR ACT OF 2025**

I certify that **all** participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct, and that this declaration was executed on June 12, 2026, at Los Angeles, California.

| Anthony Conklin | *Anthony Conklin* |
|---|---|
| Declarant | Signature |

SA2025306474
68069619.docx