ROB BONTA
Attorney General of California
TODD GRABARSKY
Supervising Deputy Attorney General
CAROLYN DOWNS
State Bar No. 353455
BARBARA HORNE-PETERSDORF
State Bar No. 327738
Deputy Attorneys General
 300 South Spring Street, Suite 1702
 Los Angeles, CA  90013-1230
 Telephone:  (213) 269-6720
 Fax:  (916) 731-2124
 E-mail:  Carolyn.Downs@doj.ca.gov
*Attorneys for Party-in-Intervention, Rob Bonta, in his official capacity as Attorney General of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DAVID CASSIRER, et al.,**<br><br>                                    Plaintiffs,<br><br>        **v.**<br><br>**THYSSEN-BORNEMISZA COLLECTION FOUNDATION, an agency or instrumentality of the Kingdom of Spain,**<br><br>                                    Defendant,<br><br>**ROB BONTA, in his official capacity as Attorney General of California,**<br><br>                                    Intervenor. | Case No. 2:05-cv-03459-JFW (Ex)<br><br>**PARTY-IN-INTERVENTION ATTORNEY GENERAL ROB BONTA'S RESPONDING BRIEF RE: HEAR ACT OF 2025**<br><br>Date:           August 24, 2026<br>Time:           1:30 p.m.<br>Courtroom:   7A<br>Judge:          Hon. John F. Walter<br>Trial Date:    None set.<br>Action Filed: May 10, 2005 |

## INTRODUCTION

Defendant's latest Supplemental Brief takes too broad a view that the Holocaust Expropriated Art Recovery Act of 2025 ("HEAR Act of 2025" or "amended HEAR Act") preempts California's effort to enact a general state property law that also applies to Holocaust-era art claims. But California Code of Civil Procedure Section 338(c)(6) ("Section 338(c)(6)") is not preempted by the HEAR Act of 2025. Section 338(c)(6) is a generally applicable state property law, and it stands in stark contrast to other state laws courts have found preempted for intruding on the federal government's foreign affairs power.

The Court should reject Defendant's challenge to the constitutionality of Sections 338.2(g) and 338(c)(6).

## ARGUMENT

**I.    DEFENDANT'S CHALLENGE TO SECTION 338.2(G) IS NONJUSTICIABLE**

Nothing in Defendant's Supplemental Brief changes the fact that Defendant does not have standing to challenge Section 338.2(g), which allows certain lost property claims to be brought even if they had been previously dismissed on enumerated procedural grounds. Indeed, as in its prior briefing, Defendant makes no effort to distinguish Section 338(c)(6) and Section 338.2(g) even though the latter has not been invoked at any point in this action. *See generally* Pls.' Mot. Summ. J., ECF No. 682. Defendant does not claim it has suffered an injury caused by Section 338.2(g)'s application. *See generally* Def.'s Mot. Summ. J. 2, ECF No. 681-1; Def.'s Opp'n 1, n. 1, ECF No. 725. Nor could it—Section 338.2(g) has simply not been invoked and so any potential injury is too hypothetical or abstract to support standing to challenge it. *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc); *see* Att'y Gen. Suppl. Br. 4–5, ECF No. 722; Att'y Gen. Reply Br. 1–2, ECF No. 728; Att'y Gen. Suppl. Br. re: HEAR Act 9–10, ECF No. 754.

1

**II.   SECTION 338(C)(6) IS NOT PREEMPTED BY THE HEAR ACT OF 2025**

In merely a couple pages of its latest supplemental brief, Defendant argues that in enacting the HEAR Act of 2025, Congress demonstrated its exclusive power to legislate on the recovery of Nazi-era art. Def.'s Suppl. Br. 29–30, ECF No. 752. But neither the HEAR Act of 2025 nor applicable case law supports the sweeping notion that all state laws that also happen to apply to claims for Holocaust-era artwork are preempted. In fact, in cases—including the present litigation—where courts have evaluated the application of similar general state property laws to claims to recover Holocaust-era art, those state laws have been upheld as not preempted. *See Cassirer v. Thyssen-Bornemisza Collection Found.*, 737 F.3d 613, 619 (9th Cir. 2013) (*Cassirer II*); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 754 F.3d 712, 723 (9th Cir. 2014); *see also Dunbar v. Seger-Thomschitz*, 615 F.3d 574, 579 (5th Cir. 2010) (upholding Louisiana's prescriptive laws as not preempted by United States policy on Nazi-stolen artwork because the state laws "apply generally to any challenge of ownership to movable property"); *Schoeps v. Sompo Holdings, Inc.*, 160 F.4th 815, 825 (7th Cir. 2025) (finding state law not preempted by HEAR Act because the state law causes of action did not conflict with United States foreign policy, and HEAR Act "ensure[s] the availability of state law claims"), *cert. denied*, --- S.Ct. ----, 2026 WL 1640875 (June 8, 2026).

As the Attorney General has made clear, Section 338(c)(6) is a generally applicable state property law; its choice-of-law mandate applies generally to all claims of stolen property brought by Californians or their heirs, not just those brought to recover property stolen during the Holocaust. *See* Att'y Gen. Suppl. Br. 21–22; Att'y Gen. Reply Br. 11–12; Att'y Gen. Suppl. Br. re: HEAR Act 15–16. Nothing in the amended HEAR Act or case law calls for preempting such general state laws. And although Defendant relies on cases like *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954 (9th Cir. 2010) (*Von Saher I*) and *National Foreign Trade Council v. Natsios*, 181 F.3d 38 (1st Cir. 1999) to argue

2

that Section 338(c)(6)'s mandate conflicts with the federal government's policy on Holocaust-era art reclamation, Def.'s Suppl. Br. 29–30, the laws found preempted in both cases are easily distinguishable; and what these cases do show is the importance of the scope of both the state laws and the relevant federal laws to the preemption analysis. *See* Att'y Gen. Suppl. Br. re: HEAR Act 17.

In *Von Saher I*, the Ninth Circuit held preempted a California statute that created a cause of action for "any owner, or heir or beneficiary of an owner, of Holocaust-era artwork . . . to recovery Holocaust-era artwork" from certain entities, such as museums. 592 F.3d at 958. The court ruled that because the California law created a special class of plaintiffs with the specific aim of remedying wartime wrongs, it directly intruded on the federal government's ability to resolve wartime disputes. *See id.* at 966, 968. What *Von Saher I* therefore stands for is that "states may not *create their own remedies* to the problem of looted Holocaust-era art or other wartime injuries, and they may not require their courts to make politically sensitive determinations on matters of foreign policy." *Cassirer II*, 737 F.3d at 618 (emphasis original). Section 338(c)(6) does neither of those things. California's choice-of-law mandate applies to all victims of stolen property (or their heirs) no matter the type of property (so long as it is of certain cultural or historical significance), and regardless of when it was stolen in the last 100 years. The statute does not create a special class of plaintiffs or vehicle geared specifically towards the recovery of Holocaust-era artwork. And while it may have the effect of permitting recovery of such property, whether a statute "*may* permit Holocaust-era claims is not the test for preemption." *Id.* at 619 (emphasis original).

Nor is Section 338(c)(6) comparable to the Massachusetts law found preempted in *Natsios*. In *Natsios*, a Massachusetts law restricted the state's ability to purchase goods or services from individuals or companies engaged in business in Burma (now known as Myanmar). 181 F.3d at 45. The law was an attempt by Massachusetts to express its disapproval of human rights violations committed by

3

the Burmese government, and to exert indirect economic pressure against the regime. *Id.* at 46–47. Not only did Massachusetts attempt to directly enter the sphere of foreign affairs, but the law was in direct conflict with federal law that imposed sanctions on Burma, allowing sanctions where the federal law prohibited them. *Id.* at 76. The federal law also gave the President express authority to impose additional sanctions and develop a comprehensive, multilateral strategy to address human rights abuses in Burma with foreign partners, leaving no room for state action. *Id.* at 47–48; *see also id.* at 75 ("Some actions lawful under federal law would be unlawful under the state statute."). Section 338(c)(6)'s interaction with the HEAR Act of 2025 is hardly the same as the laws at issue in *Natsios*. Section 338(c)(6) applies to all claims for stolen property that fall within its scope, including those to reclaim Holocaust-era artwork. Where Massachusetts' law targeted a distinct foreign conflict, Section 338(c)(6) protects property rights regardless of the context in which the property was stolen. Section 338(c)(6)'s limited application does not rise to the level of interfering with foreign affairs such that the state law is preempted. And in the event Section 338(c)(6) and the amended HEAR Act apply to a case—such as this one—there is minimal intrusion on foreign affairs. Section 338(c)(6) mandates that California law apply to claims brought by California residents or their heirs to recover stolen property, including property stolen during the Holocaust. In that case, the HEAR Act of 2025 would simply prevent the use of available state law defenses prohibited under the federal Act, such as adverse possession or acquisitive prescription, but it does not prohibit the requirement that California law apply to such claims to the extent it does not apply a defense prohibited under the amended HEAR Act.

Defendant claims that the HEAR Act of 2025's mention of the Washington Conference Principles and Terezin Declaration—a part of the HEAR Act of 2016 unchanged in the 2025 amendment—makes the conflict between the HEAR Act of 2025 and Section 338(c)(6) "even more pronounced." Def.'s Suppl. Br. 29. As

4

discussed in the Attorney General's prior briefing, brief affirmance of these non-binding international documents does not foreclose application of generally applicable state laws to claims to recover artwork stolen in the Holocaust. Att'y Gen. Suppl. Br. 24–25; Att'y Gen. Reply Br. 10–11. It remains true that "[t]here can be no serious doubt that Congress has made the judgment that reliance on claims based on state law was consistent with these United States foreign policy objectives." *Schoeps*, 160 F.4th at 825. Defendant's repeated arguments to the contrary are unpersuasive.

At bottom, the HEAR Act of 2025 does not support preempting state choice-of-law mandates. Att'y Gen. Suppl. Br. re: HEAR Act 16–17. The amended HEAR Act precludes, among other things, non-merits discretionary defenses and defenses based on the passage of time. HEAR Act of 2025 § 2(a)(8), 140 Stat. 752. It does not mandate a choice-of-law procedure, nor can it be read as Congress intending to mandate a uniform choice-of-law procedure such that state choice-of-law mandates would not apply. *See* Att'y Gen. Suppl. Br. re: HEAR Act 15–16.

**CONCLUSION**

For the reasons stated, and together with the arguments presented in the Attorney General's prior briefing, the Court should uphold the constitutionality of Section 338(c)(6) and find Defendant's challenge to Section 338.2(g) nonjusticiable.

Dated:  July 13, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
TODD GRABARSKY
Supervising Deputy Attorney General


*/s/ Carolyn Downs*
CAROLYN DOWNS
BARBARA HORNE-PETERSDORF
Deputy Attorneys General
*Attorneys for Party-in-Intervention*
*Rob Bonta, in his official capacity as*
*Attorney General of California*

SA2025306474

6

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Attorney General Rob Bonta, certifies that this brief contains no more than 30 (thirty) pages, which:

__ complies with the word limit of L.R. 11-6.1.

 X  complies with the page limit set in the Court's order dated April 29, 2026, ECF No. 743.

Dated:  July 13, 2026                              Respectfully submitted,

ROB BONTA
Attorney General of California
TODD GRABARSKY
Supervising Deputy Attorney General


*/s/ Carolyn Downs*
CAROLYN DOWNS
Deputy Attorney General
*Attorney for Party-in-Intervention Rob Bonta, in his official capacity as Attorney General of California*

7

# CERTIFICATE OF SERVICE

| | | | |
|---|---|---|---|
| Case Name: | **Cassirer, David, et al. v. Thyssen-Bornemisza Collection Foundation** | Case No. | **2:05-cv-03459-JFW** |

I hereby certify that on <u>July 13, 2026</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**PARTY-IN-INTERVENTION ATTORNEY GENERAL ROB BONTA'S RESPONDING BRIEF RE: HEAR ACT OF 2025**

I certify that **all** participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct, and that this declaration was executed on <u>July 13, 2026</u>, at Los Angeles, California.

| | |
|---|---|
| Martha Ochoa | */s/ Martha Ochoa* |
| Declarant | Signature |

SA2025306474
68069619.docx