**BOIES SCHILLER FLEXNER LLP**
Daniel G. Boyle (Bar No. 332518)
  dboyle@bsfllp.com
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

David A. Barrett (admitted *pro hac vice*)
  dbarrett@bsfllp.com
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

**KENDALL BRILL & KELLY LLP**
Laura W. Brill (Bar No. 195889)
  lbrill@kbkfirm.com
Jeffrey M. Chemerinsky (Bar No. 270756)
  jchemerinsky@kbkfirm.com
10100 Santa Monica Blvd.
Los Angeles, CA 90067
Telephone: (310) 556-2700
Facsimile: (310) 556-2705

[Additional counsel on signature page]
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DAVID CASSIRER, *et al.*,<br><br>          Plaintiffs,<br><br>     v.<br><br>THYSSEN-BORNEMISZA COLLECTION FOUNDATION, an agency or instrumentality of the Kingdom of Spain,<br><br>          Defendant. | Case No. CV 05-03459-JFW (Ex)<br><br>**[PROPOSED] STATEMENT OF DECISION GRANTING PLAINTIFFS' SUPPLEMENTAL STATEMENT OF DECISION ON THE HEAR ACT OF 2025**<br><br>Date: August 24, 2026<br>Time: 1:30 p.m.<br>Courtroom: 7A<br>Judge:  Honorable John F. Walter |

**INTRODUCTION**

The Holocaust Expropriated Art Recovery Act of 2025, Public Law 119-82, 140 Stat. 752 (2026) ("2025 HEAR Act" or "Act") became effective when President Trump signed S. 1884 into law on April 13, 2026. As relevant to this case, the Act provides that art thefts due to Nazi persecution are considered violations of international law for purposes of FSIA jurisdiction, regardless of the victim's citizenship or nationality. It also eliminates acquisitive prescription as a defense in Nazi-looted art cases. Congress expressly provided that the law is applicable to pending cases. §6(b)(1).

In a separate Statement of Decision Granting Plaintiffs' Motion for Summary Judgment, the Court has set out the relevant case history and background, concluding that pursuant to the Supreme Court's direction in *Cassirer v. Thyssen-Bornemisza Collection Found.*, 145 S. Ct. 1331 (2025) ("*Cassirer IX*"), California's enactment of AB 2867 compels summary judgment in Plaintiffs' favor, and rejecting TBC's objections to the statute. D.E.s 698-1, 699-1.[1] The enactment of the 2025 HEAR Act both reinforces Plaintiffs' arguments concerning AB 2867, and provides an independent basis to grant summary judgment to the Cassirers.

**ANALYSIS**

**I.    THE 2025 ACT APPLIES TO FORECLOSE TBC'S ARGUMENTS FOR OWNERSHIP OF THE PAINTING**

**A.  The 2025 HEAR Act Forecloses TBC's Argument that the Court Lacks Subject Matter Jurisdiction under Cases Applying *Philipp***

TBC argues that *"[Federal Republic of Germany v.] Philipp* forecloses Plaintiffs' theory that Germany's Nazi-era taking *from its own national* qualifies as 'rights taken in violation of international law'" for purposes of the expropriation

---

[1] D.E. 698-1 [Plaintiffs' Proposed Statement of Decision Granting Plaintiffs' Motion for Summary Judgment]; 699-1 [Plaintiffs' Proposed Statement of Decision Denying TBC's Motion for Summary Judgment].

exception to sovereign immunity under 28 U.S.C. §1605(a)(3) (emphasis added). D.E. 693 at 2; *see also* D.E. 681-1 at 1, 6–7; D.E. 691 at 7–11.

The Supreme Court held in *Cassirer v. Thyssen-Bornemisza Collection Found. ("Cassirer V")* that "the Nazi confiscation of *Rue Saint-Honoré* brought Claude's suit against the Foundation within the expropriation exception" and that determination was "no longer at issue." 596 U.S. 107, 111–12 (2022). This Court has concluded in denying TBC's motion for summary judgment that TBC's challenge to jurisdiction is precluded under the law of the case doctrine and mandate rule.[2]

In any event, TBC's belated challenge to subject matter jurisdiction is conclusively eliminated by the express terms of §2(a)(3)(D) of the new law. It provides that HEAR Act cases are "deemed to be actions in which rights in violation of international law are in issue for purposes of FSIA jurisdiction under 28 U.S.C. §1605(a)(3), without regard to the citizenship or nationality of the victim." The Cassirers' claims are covered by the referenced provision. D.E. 753 at 3, 10–11; 758 at 5, 9–10.

Further, there can be no doubt that Congress intended in §2(a)(3)(D) to eliminate the precise argument that TBC is making here:

> (9) This Act is also intended to allow claims in accordance with the procedures under this Act for the recovery of artwork or other property lost during the covered period because, or as a result, of Nazi persecution, including by a covered government (as defined in section 1605(h)(3)(B) of Title 28, United States Code) or an agent or associate of a covered government, regardless of the nationality or citizenship of the alleged victim, notwithstanding the "domestic takings" rule of Federal Republic of Germany v. Philipp, 592 U.S. 169 (2021).

§2(a)(9). The Court addresses and rejects TBC's challenge to §2(a)(3)(D) below.

**B.    The 2025 HEAR Act Precludes Application of Spain's Article 1955, Thus Requiring Judgment for Plaintiffs under both California and Spanish Law**

---

[2]    D.E 699-1 at 3–5.

2

The 2025 HEAR Act conclusively precludes application of Spain's law of acquisitive prescription under Article 1955 of the Spanish Civil Code, irrespective of whether it is deemed a "defense or substantive doctrine." Section 2(a)(3)(G) of the Act establishes a new Section 5(f), which provides: "With respect to any claim that is otherwise timely under this Act—(1) all defenses or substantive doctrines based on the passage of time, including laches, adverse possession, acquisitive prescription, and usucapion, may not be applied with respect to the claim." D.E. 753-2 at 5.

Article 1955 provides: "Ownership of movable goods prescribes by three years of uninterrupted bona fide possession. Ownership of movable goods also prescribes by six years of uninterrupted possession, without any other condition." Accordingly, Article 1955 is a "defense or substantive doctrine based on the passage of time," whether it is labeled "adverse possession," "acquisitive prescription," or "usucapion." *See* *Cassirer v. Thyssen-Bornemisza Collection Found.*, 89 F.4th 1226, 1230 (9th Cir. 2024) ("*Cassirer VII*") ("Applying Spanish law, TBC has gained prescriptive title to the Painting pursuant to Article 1955 of the Spanish Civil Code.").

Congress's intent to eliminate Spain's law of acquisitive prescription is clear, and was necessitated because Ninth Circuit decisions in this case "have frustrated" Congress's intent, as explained in §2(a)(8):

> (8) The intent of this Act is to permit claims to recover Nazi looted art to be brought notwithstanding the passage of time since World War II. Some courts have frustrated this purpose by dismissing recovery lawsuits in reliance on defenses based on the passage of time, such as . . . adverse possession, acquisitive prescription, or usucapion (for example, Cassirer v. Thyssen-Bornemisza Foundation, 89 F.4th 1226 (9th Cir. 2024); or on other non-merits discretionary defenses, . . . In order to effectuate the purpose of the Act to permit claims to recover Nazi-looted art to be resolved on the merits, these defenses must all be precluded.

3

As discussed below, without applying the acquisitive prescription doctrine, Spain cannot prevail, under either California or Spanish law.

## II.    THE 2025 HEAR ACT IS A VALID ACT OF CONGRESS THAT THIS COURT MUST APPLY ACCORDING TO ITS TERMS IN THIS CASE

The Court rejects TBC's arguments against application of the 2025 HEAR Act according to its specific terms.  Space prevents addressing all of TBC arguments, but they are rejected for the reasons set forth in Plaintiffs' HEAR Act submissions, D.E. 753, 758.

### A.   The Presumption against Extraterritoriality Does Not Limit the 2025 HEAR Act

Where, as here, "there is a clear indication . . . that [a statute] applies extraterritorially," that is the end of the matter, and the other issues which TBC raises are not even considered. *See RJR Nabisco v. European Community*, 579 U.S. 325, 342 (2016).  "[A]n express statement of extraterritoriality is not essential. 'Assuredly context can be consulted as well.'" *Id.* at 340 (quoting *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 265 (2010)).  This Court finds that as in *RJR Nabisco*, "[c]ontext is dispositive here." *Id.*

The context of the 2025 HEAR Act, as set forth in the Act's findings and substantive provisions, as well as its legislative history, are clear and specific in their intent, to enable victims and heirs to bring actions in U.S. courts to recover artworks looted by the Nazis in Europe, including when those works are currently held in foreign countries. D.E. 758 at 3–6 & note 4.

First, the Act expressly overrules the "domestic takings rule" that *Philipp* applied to §1605(a)(3) of the FSIA. §2(a)(3)(D).  The FSIA amendment would have been unnecessary if the HEAR Act applied only to actions against defendants in the U.S.

Second, the Act eliminates the "act of state doctrine" in cases brought under the HEAR Act: "Some courts have frustrated the intent of this Act by dismissing recovery lawsuits in reliance on . . . non-merits discretionary defenses, such as the act of state

4

doctrine (for example, *Von Saher v Norton Simon Museum of Art at Pasadena*, 897 F.3d 1141 (9th Cir. 2018)). §2(a)(1)(B)(8).  The disapproved act of state doctrine can, however, can only be invoked based on official acts of foreign governments within their own territory. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964). Again, Congress's intent is clear—the Act applies extraterritorially.

Third, in its findings with respect to abrogating the "defense or substantive doctrine" of acquisitive prescription, Congress expressly identified—and disapproved of—*this case* as a reason for doing so. *See* p. 4 *supra*. The reference to this case means that Congress was well aware of the HEAR Act's application to extraterritorial conduct.  Further, the list of "defenses based on the passage of time" includes not only the U.S. law doctrines of "laches" and "adverse possession," but also identifies "acquisitive prescription, or usucapion," which are similar to adverse possession, but are labels used in civil law countries like Spain.  Listing the doctrines of acquisitive prescription and usucapion shows that Congress intended the Act to have extraterritorial effect.

In sum, at least three provisions of the 2025 HEAR Act apply to matters occurring outside the United States. *See also* D.E. 758, at 3–6_(discussing HEAR Act legislative history showing Congress's extraterritorial intent). There is "clear indication at step one [of the *RJR* analysis] that [the HEAR Act] applies extraterritorially." *RJR Nabisco*, 579 U.S. at 342.  The Court accordingly need not consider TBC's arguments concerning step two of the RJR analysis. *Id.*

**B.  There is No Basis to Limit Application of the Act to Domestic Matters**

TBC cites the HEAR Act §3(1) and then quotes selectively from the Washington Principles and Terezin Declaration to assert that "recognizing countries' differing legal traditions," defeats any extraterritorial application of the 2025 HEAR Act. TBC Supp. 4–5.  The isolated phrases upon which TBC rests the weight of its argument must be understood in the full context of United States treaties, laws, and

[PROPOSED] STATEMENT OF DECISION GRANTING PLAINTIFFS'
SUPPLEMENTAL BRIEF ON THE HEAR ACT OF 2025

policies outlawing pillage and calling for restitution of private property pillaged in times of conflict to the rightful owners, including specifically Nazi depredations of Holocaust victims' property.[3]

In the same Section 3(1), Congress recognized that the Holocaust Victims Redress Act ("HVRA") of 1998 "expresse[s]" "United States policy." §§2(7), 3(1).  In the HVRA, Congress provided that:

> [A]ll governments should undertake good faith efforts to facilitate the return of private and public property, such as works of art, to the rightful owners in cases where assets were confiscated from the claimant during the period of Nazi rule and there is reasonable proof that the claimant is the rightful owner.

HVRA, Pub. L. No. 105-158, 112 Stat. 15 §202 (1998).  By referencing the HVRA in the HEAR Act, which also invokes the Hague Convention, Congress embraced extraterritoriality in the duty of "*all* governments" (emphasis added) to facilitate return of "*public property, such as works of art*" (emphasis added). At the same time, Congress disapproved judicial decisions that rested on "non-merits defenses" such as "the passage of time."

Based on alleged "ambiguity" supposedly arising from the "primarily procedural" HEAR Act not "defin[ing] the defenses" it eliminates, TBC claims that a "limiting construction" restricting the law to cases involving "domestic application" is necessary.  The Court disagrees.

The HEAR Act provisions addressing limitations periods and time-based defenses are substantive. *Jinks v. Richland Cty*., 538 U.S. 456, 464–65 (2003) ("statutes of limitations are treated as substantive. . . . the tolling of limitations periods falls on the 'substantive' side of the line."); *Granny Purps, Inc. v. Cnty. of Santa Cruz, 53*

---

[3]  *See* D.E. 682 at 17–26; D.C. 687-2; D.E. 687-3; D.E. 687-4; D.E. 687-5; D.E. 687-7; D.E. 687-8; D.E. 687-9; D.E. 687-10; D.E. 687-11; D.E. 687-12; D.E. 692 at 21–29; D.E. 694 at 11–15; D.E. 753 at 2–5, 21–26.

Cal.App.5th 1, 11 (2020) ("[A]pplication of a statute of limitations is a substantive defense, not a procedural matter.").

Nor is 2025 HEAR Act "ambiguous" as applied here. The Act itself cites the Ninth Circuit as applying "acquisitive prescription" in this case. §2(a)(1)(B)(8). This Court and the Ninth Circuit have consistently referred to TBC's argument as "acquisitive prescription," under Spain's Article 1955. See D.E. 753 at 10–11. The Act expressly precludes application of "acquisitive prescription." It is not ambiguous.

## C.  International Law Does Not Preclude Application of the HEAR Act

The Court rejects TBC's argument that the "*Charming Betsy* canon of statutory construction" requires construing the HEAR Act to "avoid unreasonable interference with the sovereign authority" of Spain. TBC Supp. 9. "The *Charming Betsy* canon comes into play only where Congress's intent is ambiguous." *Serra v. Lappin*, 600 F.3d 1191, 1199–1200 (9th Cir. 2010). *See F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 164 (2004). Here, "there is nothing ambiguous." *Serra*, 600 F.3d at 1199.

Even if the Act did raise concerns about international law, "[i]n enacting statutes, Congress is not bound by international law; if it chooses to do so, it may legislate contrary to the limits posed by international law." *Serra,* 600 F.3d at 1199. "The Court is "bound by a properly enacted statute, provided it be constitutional, even if that statute violates international law." *Id.  See United States v. Thomas,* 893 F.2d 1066, 1068–69 (9th Cir. 1990) ("International law principles, standing on their own, do not create substantive rights or affirmative defenses for litigants in United States courts.").

It was reasonable for Congress to conclude that "[t]he unique and horrific circumstances of World War II and the Holocaust" and "a fragmentary historical record ravaged by persecution, war, and genocide," HEAR Act §2(6), justify limited interference with property law of foreign nations where a country or its sovereign agency or instrumentality, is subject to personal jurisdiction in the U.S. under the FSIA.

## D.  The 2025 HEAR Act Does Not Violate Article III

Under *Bank Markazi v. Peterson*, 578 U.S. 212, 234-35 (2016), Congress does not violate Article III where it acts "to alter a foreign state's immunity and to render the alteration dispositive of judicial proceedings in progress." In this case, the 2025 HEAR Act is an "alter[ation]" in TBC's immunity as a foreign state instrumentality, and there is no Article III violation in "rendering the alteration dispositive."

**E.  The Act Does Not Violate Any Due Process Rights Claimed by TBC**

TBC, as a sovereign instrumentality extensively controlled by the Spanish government, does not have "due process rights." D.E. 699-1 at 4.  Moreover, TBC's own Chief Curator and Artistic Director, Guillermo Solana, recently admitted in an interview that all decisions relating to the Cassirers' painting are in fact controlled by the Spanish government. D.E. 753 at 18–19.  Even if TBC had due process rights, its arguments are not well-founded. D.E. 699-1 at 5–7.

**F.  Retroactive Application of the 2025 HEAR Act Does Not Strip TBC of Vested Property Rights**

TBC's reliance on the Court's 2015 decision which held that application of California's 2010 amendment in CCP §338(c) extending the statute of limitations for stolen art claims to six-years commencing from "actual discovery," "violates the Foundation's due process rights." *Cassirer*, 153 F. Supp. 3d at 1168.  That decision, however, was reversed by the Ninth Circuit in *Cassirer III*. That decision rejected TBC's "vested rights" claim against the 2016 HEAR Act, which adopted a substantively identical limitations rule as CCP §338. *Cassirer III* is controlling on this issue.

**G.  The Act Comports with Fifth Amendment Limits on Extraterritorial Application of U.S. Substantive Law**

Under the "more flexible" inquiry "commensurate with the Federal Government's broader sovereign authority" that applies to Fifth Amendment due

[PROPOSED] STATEMENT OF DECISION GRANTING PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE HEAR ACT OF 2025

process claims, *Fuld v. Palestinian Liberation Org.*, 606 U.S. 1, 16, 23 (2025), the territorial reach of the HEAR Act is proper.

There is nothing "arbitrary or fundamentally unfair," *United States v. Davis*, 905 F.2d 245, 249 (9th Cir. 1990), in applying the Act here. TBC engaged in "numerous" commercial activities in California and the United States, which "easily" satisfied the statutory requirements of 28 U.S.C. §1605(a)(3), *Cassirer v. Kingdom of Spain*, 461 F. Supp. 2d 1157 (C.D. Cal. 2006), *aff'd in part and dism'd in part*, 616 F.3d 1019 (9th Cir. 2010) (en banc), and establish a strong nexus for due process purposes. In addition, Plaintiffs have demonstrated TBC's "significant aggregation of contacts" with California that satisfy the Fourteenth Amendment due process requirements of *Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981); D.E. 699-1 at 6. *A fortiori*, those contacts clearly meet the "more flexible" standards of the Fifth Amendment.

Moreover, the entire aggregation of contacts between TBC and the United States with regard to the claims at issue was extensive. *See* D.E. 682-2 at 6–10; D.E. 753 at 11–13. Viewed in light of U.S. policy requiring return of Nazi-looted art, culminating in the HVRA and HEAR Act, as well as international treaties and agreements to the same effect, the Court must defer to Congress's exercise of foreign relations and international commerce powers, made here with highly specific findings.

### III.    TBC HAS NO SOVEREIGN IMMUNITY

The Court rejects TBC's argument that Congress did not effectively modify the FSIA expropriation exception. Congress has authority to amend the FSIA, itself an act of Congress, in whatever manner it chooses, and to weigh the United States' foreign policy interests and rights of victims of the Holocaust, which the 2025 HEAR Act's findings do in detail. *See Exxon Mobil Corp. v. Corporacion Cimex, S. A. (Cuba)*, 2026 WL 1791259, at *5 (U.S. June 23, 2026).

Moreover, it "remains Congress' prerogative to alter a foreign state's immunity and to render the alteration dispositive of judicial proceedings in progress," even where

it does so with respect to one or a very small number of specific subjects," *Bank Markazi*, 578 U.S. at 236, 234.

## IV.    TITLE TO THE PAINTING MUST BE AWARDED TO PLAINTIFFS

Nothing about the HEAR Act of 2025 changes the fact that Section 338(c)(6) is not federally preempted. D.E. 699-1 at 7–10.  But even if the Court were to consider application of Spanish law, Plaintiffs are entitled to recover the Painting.  The Court applied Spanish law in its 2019 findings and conclusions. *See Cassirer*, 2019 WL 13240413, at *15–19.  The Court found that the Baron did not acquire good title when he purchased it from the Stephen Hahn Gallery in 1976. *Id.* at *18–19.  The Court then held that "because the Baron (and Favorita) did not have good title to the Painting at the time of TBC's purchase, the Court concludes that TBC did not become the lawful owner of the Painting via the 1993 Acquisition Agreement." *Id.* at *19. The Court then ruled in TBC's favor, however, only on the basis that Article 1955's granted ownership "by prescription" on the facts here. With that final step now barred by the HEAR Act, the Court's conclusion that "TBC did not become the lawful owner of the Painting" dictates the outcome even under Spanish law.

Dated:  July 15, 2026

Respectfully submitted,

**KENDALL BRILL & KELLY LLP**

By: */s/ Jeffrey M. Chemerinsky*

Laura W. Brill (Bar No. 195889)
Jeffrey M. Chemerinsky (Bar No. 270756)
10100 Santa Monica Blvd.
Los Angeles, CA 90067
Telephone: (310) 556-2700
Facsimile: (310) 556-2705

**BOIES SCHILLER FLEXNER LLP**
John J. Kucera (Bar No. 274184)
Daniel G. Boyle (Bar No. 332518)

10

2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

David Boies (admitted *pro hac vice*)
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

David A. Barrett (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

Stephen N. Zack (admitted *pro hac vice*)
100 SE Second Street, Suite 2800
Miami, FL 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Scott E. Gant
1401 New York Ave, NW
Washington, DC 20005
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

**DUBBIN & KRAVETZ, LLP**
Samuel J. Dubbin (admitted *pro hac vice*)
1200 Anastasia Avenue, Suite 300
Coral Gables, FL 33134
Telephone: (305) 371-4700
Facsimile: (305) 371-4701

*Attorneys for Plaintiffs*
DAVID CASSIRER, *et al.*

11

[PROPOSED] STATEMENT OF DECISION GRANTING PLAINTIFFS'
SUPPLEMENTAL BRIEF ON THE HEAR ACT OF 2025