BRETT A. SHUMATE
Assistant Attorney General
ALEXANDER K. HAAS
Director
Federal Programs Branch
JEREMY S.B. NEWMAN
Chief Litigation Counsel
Federal Programs Branch
JOSEPH E. BORSON
Assistant Director
Federal Programs Branch
JOSHUA N. SCHOPF
(DC. Bar No. 465553)
joshua.n.schopf@usdoj.gov
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Tel.: (202) 514-6314

Attorneys for United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CASSIRER, AVA CASSIRER, and UNITED JEWISH FEDERATION OF SAN DIEGO COUNTY,<br><br>Plaintiffs,<br><br>v.<br><br>THYSSEN-BORNEMISZA COLLECTION FOUNDATION, an agency or instrumentality of the Kingdom of Spain<br><br>Defendant. | No. 05-cv-03459-JFW (Ex)<br>Honorable John F. Walter<br><br>Proposed Date: October 26, 2026<br>Time: 1:30 p.m.<br>Courtroom: 7A<br>Judge: Hon. John F. Walter |

# TABLE OF CONTENTS

STATUTORY BACKGROUND ....................3
PROCEDURAL BACKGROUND ....................4
DISCUSSION....................7
I. The HEAR ACT Does Not Violate the Due Process Clause ....................7
II. The HEAR ACT Does Not Violate Article III or Impinge on the Separation of Powers ....................11
III. The HEAR Act Applies Extraterritorially ....................14
CONCLUSION ....................18

## TABLE OF AUTHORITIES

**CASES**

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
600 U.S. 412 (2023) .......... 14

*Allstate Insurance Co. v. Hague*,
449 U.S. 302 (1981) .......... 9

*Bank Markazi v. Peterson*,
578 U.S. 212 (2016) .......... 2, 12, 13, 14

*Bennett v. Islamic Republic of Iran*,
825 F.3d 949 (9th Cir. 2016) .......... 14

*Cassirer v. Kingdom of Spain*,
461 F. Supp. 2d 1157 (C.D. Cal. 2006)
*aff'd*, 616 F.3d 1019 (9th Cir. 2010), *cert. denied*, 564 U.S. 1037 (2011) .......... 4, 8, 9

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
862 F.3d 951 (9th Cir. 2017) .......... 5

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
No. 2:05-cv-3459-JFW, 2019 WL 13240413 (C.D. Cal. Apr. 30, 2019) .......... 5

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
824 F. App'x 452 (9th Cir. 2020) .......... 5

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
596 U.S. 107 (2022) .......... 6

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
89 F.4th 1226 (9th Cir. 2024) .......... 1, 4, 5, 6

*Cassirer v. Thyssen-Borenmisza Collection Found.*,
145 S. Ct. 1331 (2025) .......... 6

*Crocker Nat. Bank of S.F. v. Byrne & McDonnell*,
178 Cal. 329, 173 P. 752 (1918) .......... 11

*EEOC v. Arabian Am. Oil Co.*,
499 U.S. 244 (1991) .......... 15

*Federal Republic of Germany v. Philipp*,
592 U.S. 169 (2021) ..................................................................................4, 16, 17, 18

*Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*,
582 F.3d 393 (2d Cir. 2009) ................................................................................ 7

*Fuld v. Palestine Liberation Org.*,
606 U.S. 1 (2025) ................................................................................................ 8

*Ileto v. Glock, Inc.*,
565 F.3d 1126 (9th Cir. 2009) ....................................................................10, 14

*Kiobel v. Royal Dutch Petrol. Co.*,
569 U.S. 108 (2013) ..........................................................................................15

*Logan v. Zimmerman Brush Co.*,
455 U.S. 422 (1982) ..........................................................................................10

*Mondou v. New York, N.H. & H.R. Co.*,
223 U.S. 1 (1912) ................................................................................................ 9

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247 (2010) ..........................................................................................15

*Munn v. Illinois*,
94 U.S. 113 (1876) ............................................................................................10

*Nestle USA, Inc. v. Doe*,
593 U.S. 628 (2021) ..........................................................................................15

*Patchak v. Zinke*,
583 U.S. 244 (2018) ....................................................................................13, 14

*Plaut v. Spendthrift Farm, Inc.*,
514 U.S. 211 (1995) ..........................................................................................11

*RJR Nabisco v. Eur. Cmty.*,
579 U.S. 325 (2016) ....................................................................................15, 18

*Sea Breeze Salt, Inc. v. Mitsubishi Corp.*,
899 F.3d 1064 (9th Cir. 2018) ..........................................................................16

*Silsbury v. McCoon*,
3 N.Y. 379 (1850) ..............................................................................................10

*Silver v. Silver*,
280 U.S. 117 (1929) ........ 10

*TMR Energy Ltd. v. State Prop. Fund of Ukraine*,
411 F.3d 296 (D.C. Cir. 2005) ........ 7

*United States v. Bennett*,
232 U.S. 299 (1914) ........ 8

*United States v. Davis*,
905 F.2d 245 (9th Cir. 1990) ........ 8, 15

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
897 F.3d 1141 (9th Cir. 2018) ........ 4

*W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*,
493 U.S. 400 (1990) ........ 16, 17

*Zuckerman v Metropolitan Museum of Art*,
928 F.3d 186 (2d Cir. 2019) ........ 3

**STATUTES**

15 U.S.C. § 7902(b) ........ 14

22 U.S.C. § 1621 ........ 1, 17

22 U.S.C. § 8772(b) ........ 12

28 U.S.C. §1605(a)(3) ........ 4, 8

28 U.S.C. §1606 ........ 5

28 U.S.C. § 2403(a) ........ 1

HEAR Act of 2016,
Pub. L. No. 114–308, 130 Stat. 1524 (2016) ........ 3, 11

Holocaust Expropriated Art Recovery Act of 2025,
Pub. L. No. 119-82, 140 Stat. 752 (2025) ........ *passim*

Holocaust Victims Redress Act,
Pub. L. No. 105–158, 112 Stat. 15 (1998) ........ 3

**RULES**

Federal Rule of Civil Procedure 5.1 .................................................................... 7

Cal. Code Civ. P. § 338(c)(6) ............................................................................ 6

**UNITED STATES' NOTICE OF INTERVENTION**

The United States hereby submits this Notice to advise the Court that the United States will participate in these proceedings to defend the constitutionality of the Holocaust Expropriated Art Recovery Act, as amended in 2025, *see* Pub. L. No. 119-82 & 22 U.S.C. § 1621 note (the "HEAR Act"). *Id.* The United States' memorandum of law in support of the HEAR Act's constitutionality is below.

The United States has a statutory right to intervene in any federal court action in which "the constitutionality of any Act of Congress affecting the public interest is drawn in question." *See* 28 U.S.C. § 2403(a).

Dated: September 28, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Director
Federal Programs Branch

JEREMY S.B. NEWMAN
Chief Litigation Counsel
Federal Programs Branch

JOSEPH E. BORSON
Assistant Branch Director
Federal Programs Branch

*/s/ Joshua N. Schopf*
JOSHUA N. SCHOPF
(DC Bar No. 465553)
Trial Attorney
United States Department of Justice
Civil Division,
Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Tel.: (202) 514-6314
joshua.n.schopf@usdoj.gov

*Counsel for the United States of America*

**MEMORANDUM OF LAW IN SUPPORT OF THE CONSTITUTIONALITY OF THE HEAR ACT**

It is the foreign policy of the United States, reflected in many acts of Congress and actions of the Executive Branch going back decades, to support the efforts of victims of Nazi Germany and their descendants and heirs to pursue claims for the recovery of looted artwork. As part of that foreign policy, Congress enacted and President Trump signed the Holocaust Expropriated Art Recovery Act of 2025, Pub. L. No. 119-82, 140 Stat. 752 (the "HEAR Act"). The HEAR Act recognized that the United States' foreign policy of "permit[ting] claims to recover Nazi-looted art to be brought" had been "frustrated" by court rulings applying "defenses based on the passage of time" and "other non-merits discretionary defenses," and that "[i]n order to effectuate the purpose of the Act to permit claims to recover Nazi-looted art to be resolved on the merits, these defenses must be precluded." *Id.* § 2(8).

This long-running case is one of the cases Congress explicitly had in mind, in which the application of non-merits defenses to preclude plaintiffs' pursuit of recovery claims had frustrated American foreign policy. Plaintiffs David Cassirer and Ava Cassirer claim that the Nazi regime looted the Camille Pissarro painting *Rue St. Honoré, Afternoon, Rain Effect* ("the Painting") from their ancestor Lilly Cassirer; Plaintiffs claim that the current possessor, Defendant Thyssen-Bornemisza Foundation ("Defendant" or "TBC") lacks good title in the Painting because its claim ultimately derives, after several subsequent transfers over the intervening decades, from the Nazis' wrongful looting. Yet the Ninth Circuit held that Plaintiffs' claim was precluded by the Spanish law doctrine of acquisitive prescription, which precludes a plaintiff from suing to recover a chattel where the defendant has had six years of uninterrupted possession, even if that possession derives indirectly from theft and the plaintiff lacked knowledge of the whereabouts of the chattel. *See Cassirer v. Thyssen-Bornemisza Collection Found.*, 89 F.4th 1226, 1235, 1245 (9th Cir. 2024). Congress specifically cited this Ninth Circuit decision and its application of acquisitive prescription as an example of the type of

injustice that Congress intended to rectify. *See* HEAR Act § 2(8).

Yet Defendant argues that the HEAR Act, and its application to this case, are unconstitutional. Defendant asserts that the HEAR Act violates the Due Process Clause, the separation of powers, and the presumption against extraterritoriality. The Court should reject these meritless arguments and apply the HEAR Act to allow Plaintiffs, at long last, to have their day in court to argue the substance of their claim.

*First*, the HEAR Act comports with the Due Process Clause. Defendant argues that it would violate the Due Process Clause to apply the HEAR Act to Defendant's conduct in Spain, but Defendant has an established, extensive nexus with the United States through numerous commercial transactions with the United States. Some of those contacts involve commercial exploitation of Defendant's possession of the Painting, such as by selling a poster of the Painting in this District and arranging to have a video program featuring the Painting aired on flights between Spain and the United States. Defendant also argues that application of the HEAR Act would deprive Defendant of property interests in the Painting. To the contrary, the HEAR Act would merely allow Plaintiffs to pursue their legal claims that they rightfully own the Painting. The Supreme Court and Ninth Circuit have long held that the legislature, consistent with Due Process, can alter the law that applies to legal claims.

*Second*, the HEAR Act does not intrude on the judicial role in violation of Article III and the separation of powers. Defendant argues that Congress intruded on the province of the judiciary by removing all defenses and pre-ordaining the outcome of this case, regardless of the facts. But the HEAR Act did something far more modest by precluding reliance on certain specified defenses. Plaintiffs still must prove the merits of their claims, and Defendant can rely on any defenses not precluded by the HEAR Act. Defendant reveals the weakness of its position by relying on the *dissent* in *Bank Markazi v. Peterson*, 578 U.S. 212 (2016), when the *majority* held that Congress can enact statutes that apply new rules to pending lawsuits, even if those statutes alter the outcome.

*Finally*, applying the HEAR Act to Defendant's possession of the Painting in

Spain does not violate the presumption against extraterritoriality because Congress clearly manifested its intent for the statute to apply extraterritorially. Among other things, Congress specifically mentioned this case and other cases involving claims of Nazi-looted art housed in foreign countries, and precluded foreign law defenses and doctrines that, by their nature, apply to conduct occurring extraterritorially.

**STATUTORY BACKGROUND**

In 2016, Congress first passed the Holocaust Expropriated Art Recovery Act to overcome state statute of limitation defenses raised in response to lawsuits seeking restitution of art expropriated or stolen from original owners during the Holocaust. The HEAR Act reflects the latest in a decades-long bipartisan "sense of Congress that 'all governments should undertake good faith efforts to facilitate the return of private and public property, such as works of art, to the rightful owners in cases where assets were confiscated from the claimant during the period of Nazi rule and there is reasonable proof that the claimant is the rightful owner.'" *See* HEAR Act of 2016 § 2(4), Pub. L. No. 114–308, 130 Stat. 1524 (2016) (quoting the Holocaust Victims Redress Act § 202, Pub. L. No. 105–158, 112 Stat. 15 (1998)). The HEAR Act allows for claims to proceed for up to six years after a claimant had actual knowledge of the identity, location, and right to a possessory interest in the art. *Id.* § 5(a)(1) & (2). The 2016 Act also had a sunset clause of January 1, 2027.

The HEAR Act of 2025 was passed on April 14, 2026. In addition to eliminating the sunset date, the Act is designed to remove certain procedural barriers for plaintiffs seeking restitution of their artwork, primarily through eliminating several defenses used regularly by defendants in these cases. As the Act's findings note, "the intent of this Act is to permit claims to recover Nazi-looted art to be brought, notwithstanding the passage of time since World War II. Some courts have frustrated the intent of this Act by dismissing recovery lawsuits in reliance on defenses based on the passage of time, such as laches (for example, *Zuckerman v Metropolitan Museum of Art*, 928 F.3d 186 (2d Cir. 2019)) or adverse possession, acquisitive prescription, or usucapion for example,

*Cassirer v. Thyssen-Bornemisza Foundation*, 89 F.4th 1226 (9th Cir. 2024)) or on other non-merits discretionary defenses, such as the act of state doctrine (for example, *Von Saher v. Norton Simon Museum of Art at Pasadena*, 897 F.3d 1141 (9th Cir. 2018)), forum non conveniens, international comity, or prudential exhaustion. In order to effectuate the purpose of the Act to permit claims to recover Nazi-looted art to be resolved on the merits, these defenses must be precluded." HEAR Act § 2(8); *see also id.* § 5(f) (barring same defenses discussed in findings). The Act also states that that it is intended to allow claims to recover artwork "notwithstanding the 'domestic takings' rule under *Federal Republic of Germany v. Philipp*, 592 U.S. 169 (2021)." *Id.* § (2)(9); *see also* § 5(b) ("Notwithstanding any other law or prior judicial decision, any civil claim or cause of action covered by subsection (a) shall be deemed to be an action in which rights in violation of international law are in issue for purposes of section 1605(a)(3) of title 28, United States Code, without regard to the nationality or citizenship of the alleged victim.").

## PROCEDURAL BACKGROUND

This case involves a long-running dispute over the ownership of the Camille Pissarro painting *Rue St. Honoré, Afternoon, Rain Effect* ("the Painting"), currently in Defendant Thyssen-Bornemisza Collection Foundation's ("TBC") possession in its museum in Spain. Initially, after six years of litigation, the district court and Ninth Circuit upheld jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §1605(a)(3), because the Painting was taken in violation of international law, and because TBC engages in extensive commercial activities in the United States and California. *See Cassirer v. Kingdom of Spain*, 461 F. Supp. 2d 1157, 1169–76 (C.D. Cal. 2006), *aff'd*, 616 F.3d 1019 (9th Cir. 2010) (en banc) ("*Cassirer II*"), *cert. denied*, 564 U.S. 1037 (2011) ("*Cassirer I*").

Spain and TBC then filed a certiorari petition arguing that the expropriation exception to the FSIA should not apply because Nazi Germany, not Spain, violated

international law in confiscating the painting from Lilly Cassirer. The U.S. government filed an amicus brief in support of the Cassirers and in opposition to TBC and Spain, and the petition was denied. After further litigation on other issues, the courts turned to the choice-of-law issue. Under California law, thieves are prohibited from passing title to anyone, including a good faith purchaser, and the true owner cannot lose title without actual knowledge of his rights in the property and without knowledge of the location of the property. In contrast, under Spain's Article 1955, the holder of stolen property gains good title after three years of possession "in good faith" and six years of possession "otherwise." This Spanish doctrine is called "acquisitive prescription." *Cassirer v. Thyssen-Bornemisza Collection Found.*, 89 F.4th 1226, 1232 n.6 (9th Cir. 2024) ("*Cassirer VII*").

Plaintiffs argued that the proper framework for deciding choice of law for an FSIA case raising state law issues was the law of the forum state, California, which applied a "governmental interest test." But the Ninth Circuit held that "federal common law," applied, which favored the jurisdiction where the property was located, in this case Spain. The Ninth Circuit thus applied Spain's law of "acquisitive prescription" under Article 1955. *Cassirer v. Thyssen-Bornemisza Collection Found,* 862 F.3d 951 (9th Cir. 2017) (*"Cassirer III"*). After a one-day trial on Spanish law issues, the district court awarded the Painting to the museum based on its six and one-half years of possession prior to the time Mr. Claude Cassirer made his claim to the Painting in 2000. *Cassirer v. Thyssen-Bornemisza Collection Found*, No. 2:05-cv-3459-JFW, 2019 WL 13240413, *16, 22 (C.D. Cal. Apr. 30, 2019). The Ninth Circuit affirmed. 824 F. App'x 452 (9th Cir. 2020) ("*Cassirer IV*").

The Cassirers filed a petition for certiorari, arguing that the Ninth Circuit's use of "federal common law" violated 28 U.S.C. §1606 and *Erie* principles, and also conflicted with the rule of four other federal circuits. The Supreme Court granted certiorari, and reversed the Ninth Circuit, holding that §1606 required a foreign sovereign to be held to the same substantive liability rules as a private party, which in an FSIA case raising state

law claims means the forum state's choice of law rules, not federal common law, control. *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 111–12 (2022) ("*Cassirer V*"). In that case, the Office of the Solicitor General filed an amicus brief supporting the Cassirers. *See* Br. of the United States as Amicus Curiae Supporting Petitioners, *Cassirer v. Thyssen-Bornemisza Collection Found.*, No. 20-1566, 2021 WL 5513717 (U.S. filed Nov. 22, 2021).

On remand, the Ninth Circuit again concluded that Spanish law applied, even under California's common law "governmental interest test." *Cassirer v. Thyssen-Bornemisza Collection Found.*, 89 F.4th 1226, 1229 (9th Cir. 2024) ("*Cassirer VII*") It held that Spain's interest in the certainty of commercial transactions outweighed California's interest in supporting the rights of stolen property victims. *Id.* Within months of this decision, the California Legislature passed a new statute mandating that "California substantive law shall apply" in pending and future cases brought by California residents or their heirs to recover stolen artworks held by museums, or covered by the HEAR Act. Cal. Code Civ. P. § 338(c)(6).

Plaintiffs then filed a second petition for certiorari, asking the Supreme Court to issue a Grant, Vacate and Remand Order (GVR) because the Ninth Circuit's *Cassirer VII* decision was irreconcilable with California's new choice of law statute, which must be applied on appeal. On March 10, 2025, the Supreme Court granted certiorari, vacated the Ninth Circuit's January 2024 decision, and remanded "for further consideration in light of Assem. Bill 2867," the bill containing § 338(c)(6). *Cassirer v. Thyssen-Bornemisza Collection Found.*, 145 S. Ct. 1331 (2025) ("*Cassirer VIII*"). The parties then filed cross-motions for summary judgment. The Cassirers argued (among other things) that § 338(c)(6) required application of California substantive law, and that they prevailed under that law. *See* Dkt. No. 682. Defendant argued (among other things) that § 338(c)(6) was preempted by federal law, violated the Due Process Clause, and violated the Commerce Clause; Defendant argued that Spanish law continued to apply, and that it prevailed under Spanish law. *See* Dkt. No. 691.

After the HEAR Act went into effect, Defendant filed a Notice of Constitutional Challenge under Federal Rule of Civil Procedure 5.1 on June 15, 2026 ("Rule 5.1 Notice"). *See* Dkt. No. 755. Defendant argues that the HEAR Act (1) violates due process; (2) violates Article III's separation of powers; and (3) does not overcome the presumption against extraterritoriality. *See* Dkt. No. 752. On August 7, 2026, the United States filed an Acknowledgment of Constitutional Participation and Notice of Potential Participation. Dkt. No. 766. The United States now formally intervenes to address the constitutionality of the HEAR Act.

## DISCUSSION

### I. The HEAR ACT Does Not Violate the Due Process Clause

Defendant claims that application of the HEAR Act to this lawsuit would violate the Due Process Clause. As an initial matter, it is not clear whether Defendant, as an agency or instrumentality of Spain, is a "person" within the scope of the Due Process Clause. *See TMR Energy Ltd. v. State Prop. Fund of Ukraine*, 411 F.3d 296 (D.C. Cir. 2005); *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 399 (2d Cir. 2009). Assuming that the Due Process Clause applies to Defendant, the HEAR Act does not violate any of Defendant's rights under that clause.

**1.** Defendant argues that applying the HEAR Act extraterritorially[1] to its conduct in Spain would violate the Due Process Clause. *See* Dkt. No. 752, at 21-23. Yet as the Supreme Court recently recognized, "[t]he Constitution confers upon the Federal Government—and it alone—both nationwide and extraterritorial authority. While 'the limitations of the Constitution are barriers bordering the States and preventing them from transcending the limits of their authority,' there is no equivalent 'ground for constructing an imaginary constitutional barrier around the exterior confines of the United States for the purpose of shutting that government off from the exertion of powers which inherently belong to it by virtue of its sovereignty.'" *Fuld v. Palestine Liberation Org.*,

[1] As described below, the HEAR Act applies extraterritorially. *See infra*, Part III.

606 U.S. 1, 15 (2025) (quoting *United States v. Bennett*, 232 U.S. 299, 306 (1914)).

Defendant relies on *United States v. Davis*, 905 F.2d 245 (9th Cir. 1990), which held that "[i]n order to apply extraterritorially a federal criminal statute to a defendant consistently with due process, there must be a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair," *id.* at 248-49. It is not clear this standard applies here, where the HEAR Act is not a criminal statute. Yet this Court and the Ninth Circuit already held that Defendant had a sufficient nexus with the United States to apply the FSIA's expropriation exception to Defendant, which requires that the agency or instrumentality of a foreign state in possession of the expropriated property "is engaged in a commercial activity in the United States." 28 U.S.C. § 1605(a)(3); *see Cassirer I*, 461 F. Supp. 2d. at 1172-76; *Cassirer II*, 616 F.3d at 1033-34. In addition, any nexus requirement must be read flexibly in light of the significant deference courts owe where, as here, Congress and the Executive Branch are speaking with one voice on matters of foreign affairs: "We will not, however, cavalierly interfere with the political branches' delicate judgments on matters of foreign affairs. And when the Executive and Congress have spoken with one voice in that sphere, their coordinate action is supported by the strongest of presumptions and the widest latitude of judicial interpretation, and the burden of persuasion would rest heavily upon any who might attack it." *Fuld*, 606 U.S. at 19 (citations omitted).

Here, this Court's factual findings, affirmed by the Ninth Circuit, are more than sufficient to satisfy any requirement of a nexus between Defendant and the United States. In 2006, this Court found that Defendant had engaged in "numerous commercial contacts with the United States," *Cassirer I*, 461 F. Supp. 2d. at 1175, including making purchases from the United States and sales into the United States, paying United States citizens to write essays for its exhibition catalogues, and advertising its exhibitions in publications distributed in the United States, *id.* at 1172-74. Crucially, some of those contacts involved the Painting, such as selling a poster depicting the painting to an individual in this District, and giving a video production company permission to film a

program featuring the Painting that was aired on Iberian Airlines flights between Spain and the United States. *Id.* at 1173-74. The Ninth Circuit upheld these factual findings and summarized them as follows: "the Foundation has had many contacts with the United States, including some that encourage Americans to visit the museum where the Pissarro is featured, and some that relate to the painting itself." *Cassirer II*, 616 F.3d at 1033-34 (9th Cir. 2010).[2] It is likely that Defendant has engaged in further contacts with the United States in the two decades since this Court's 2006 ruling. Yet those adjudicated facts, that Defendant has regularly engaged in commercial contacts with the United States, including to exploit commercially its possession of the Painting within the United States, more than suffice to satisfy any nexus requirement for extraterritorial application of the HEAR Act.

**2.** Finally, Defendant argues that application of the HEAR Act would violate the Due Process Clause by depriving it of property rights in the Painting itself. *See* Dkt. No. 752, at 21, 25-26. Not so. The merits question in this case is who owns the Painting, Plaintiffs or Defendant. The HEAR Act merely precludes Defendant from relying on defenses that Congress deemed to be "non-merits defenses," *see* HEAR Act § 2(a)(1)(B), in order to prevent Plaintiffs from pressing their claim that they have property rights in the Painting.

Courts have repeatedly rejected the notion that a litigant has a vested property interest in the continued application of a rule of law. As the Supreme Court held more than a century ago, "[a] person has no property, no vested interest, in any rule of the common law. . . . [T]he law itself, as a rule of conduct, may be changed at the will . . . of the legislature, unless prevented by constitutional limitations." *Mondou v. New York, N.H. & H.R. Co.*, 223 U.S. 1, 50 (1912) (quoting *Munn v. Illinois*, 94 U.S. 113, 134

[2] Defendant's contacts with the United States far exceed the defendant insurer's contacts with Minnesota in *Allstate Insurance Co. v. Hague*, 449 U.S. 302, 312-19 (1981), where the Supreme Court approved the application of Minnesota law to a lawsuit involving a collision between Wisconsin residents in Wisconsin.

(1876)); *see also Silver v. Silver*, 280 U.S. 117, 122 (1929) ("the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object"); *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1142 (9th Cir. 2009) (when legislature changes the legal rules applicable to a pending case, "the legislative determination provides all the process that is due") (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 423 (1982)). Similarly, the HEAR Act did not violate the Due Process Clause by changing the law applicable to lawsuits seeking the recovery of art looted by Nazis.

In particular, the Court should reject the notion that the U.S. Constitution requires the application of a foreign law doctrine that is wholly inconsistent with bedrock principles of Anglo-American jurisprudence. Defendant claims a constitutional right to invoke the Spanish law defense of acquisitive prescription, which would allow someone who received stolen property to defeat a claim by the true owner based on the passage of time. *See* Dkt. No. 752, at 25-26. Yet a bedrock principle of American common law, derived from the British common law tradition, is that a thief cannot convey good title, even to a good faith purchaser. For example, the New York Court of Appeals held in 1850 that "[i]t is an elementary principle in the law of all civilized communities, that no man can be deprived of his property, except by his own voluntary act, or by operation of law." *Silsbury v. McCoon*, 3 N.Y. 379, 381 (1850). Thus, "[t]he thief who steals a chattel . . . acquires no title by such wrongful taking," and "if the wrongdoer sell the chattel to an honest purchaser having no notice of the fraud by which it was acquired, the purchaser obtains no title from the trespasser, because the trespasser had none to give." *Id.* at 381, 383-84. The court derived these principles in part from such venerable sources as Bracton on Laws and Customs of England and Blackstone's Commentaries. *Id.* at 388-89. California likewise has long recognized "the well-known rules that the seller of ordinary property can transfer to the buyer no better title than he has himself, and that if such property has been lost by the true owner, or stolen from him, one who buys from the finder or from the thief, though he pays full value and buys in good faith,

without notice, obtains no title as against the true owner." *Crocker Nat. Bank of S.F. v. Byrne & McDonnell*, 178 Cal. 329, 332-33, 173 P. 752, 754 (1918). Ordinary choice-of-law disputes do not rise to the level of a constitutional concern. It would be especially inappropriate to read the Due Process Clause to constitutionalize the application of a foreign law litigation defense that so fundamentally conflicts with the American common law tradition.

**II. The HEAR ACT Does Not Violate Article III or Impinge on the Separation of Powers**

Defendant argues that the HEAR Act violates Article III and the separation of powers, asserting that a "statute that removes all defenses a party has previously used to defend an action, so as to preordain the outcome regardless of facts, violates Article III." Dkt. No. 757, at 25. The Supreme Court has made clear that although Congress may not direct courts to reinstate cases that have reached final judgment, it can change the law and apply the new law to pending cases. *See Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 225-27 (1995). Defendant's argument both mischaracterizes the HEAR Act and Congress's ability to modify substantive rules and apply them to pending cases.

Turn first to the HEAR Act. The HEAR Act clarifies that certain defenses used by litigants to shield them from liability are unavailable and applies that rule to all suits involving artwork or other property lost because of Nazi persecution from 1933 through 1945, including those pending and even if those defenses were already used by a defendant. *See* HEAR Act § 2(a)(3)(G); HEAR Act of 2016 § 5(a). But application of the HEAR Act need not, by itself, determine the outcome of any particular case; it merely precludes reliance on certain defenses. In any lawsuit covered by the HEAR Act, the plaintiffs still must establish the elements of their cause of action, and the defendants may rely on any defenses not precluded from the HEAR Act. To the extent that genuine disputes of material fact exist, the factfinder must resolve those disputes.

Even if the HEAR Act did effectively "preordain the outcome" of this case or other covered cases, that would not violate Article III or the Separation of Powers.

Defendant cites the *dissent* in *Bank Markazi v. Peterson*, 578 U.S. 212 (2016), to support the argument that the HEAR ACT runs afoul of the separation of powers doctrine. Dkt. No. 757, at 25. But Defendant ignores the holding of the *majority* in *Bank Markazi*, which rejected the dissent's arguments and concluded that application of outcome-altering legislation to a pending case did not violate the separation of powers.

In *Bank Markazi*, the Court addressed whether provisions of the Iran-Threat Reduction and Syria Human Rights Act of 2012 violated the separation of powers. The statutory section at issue, section 8772, makes a designated set of assets held at Bank Markazi available for post-judgment execution. The assets would help satisfy judgments in numerous actions by victims of Iranian-sponsored terrorist acts. *Bank Markazi*, 578 U.S. at 215. These victims sought to enforce their judgments by forcing turnover of approximately $1.75 billion in bond assets owned by Markazi. *Id.* at 221. Section 8772 identified as available for execution of judgments "'the financial assets that are identified in and the subject of proceedings in the United States District Court for the Southern District of New York in *Peterson et al. v. Islamic Republic of Iran et al.*, Case No. 10 Civ. 4518(BSJ)(GWG), that were restrained by restraining notices and levies secured by the plaintiffs in those proceedings.'" *Id.* at 218 (quoting 22 U.S.C. § 8772(b)).

The Markazi assets were among those identified in the district court proceeding. Markazi argued that Section 8772 violated the separation of powers because Congress was effectively dictating "specific factual findings in connection with a specific litigation—invading the province of the courts," *id.* (citation omitted), and "compelling the courts to reach a predetermined result in this case." *Id.*

The Second Circuit rejected Markazi's arguments, and the Supreme Court affirmed. The Court noted that "Congress may indeed direct courts to apply newly enacted, outcome-altering legislation in pending civil cases." *Id.* at 229. And a "statute does not impinge on judicial power when it directs courts to apply a new legal standard to undisputed facts." *Id.* at 230. The Court found that Section 8772 "provide[d] a new standard clarifying, that if Iran owns certain assets, the victims of Iran-sponsored

terrorist attacks will be permitted to execute against those assets. Applying laws implementing Congress' policy judgments, with fidelity to those judgments, is commonplace for the Judiciary." *Id.* at 232. And the Court further noted that Section 8772 "is an exercise of congressional authority regarding foreign affairs, a domain in which the controlling role of the political branches is both necessary and proper." *Id.* at 234. In such a setting, "Congress and the President have, time and again, as exigencies arose, exercised control over claims against foreign states and the disposition of foreign-state property in the United States." *Id.* Such "measures have never been rejected as invasions upon the Article III judicial power." *Id.*

In *Patchak v. Zinke*, 583 U.S. 244, 250 (2018), the Court reaffirmed that Congress could enact outcome-altering legislation that applied to pending cases, holding "that the legislative power is the power to make law, and Congress can make laws that apply retroactively to pending lawsuits, even when it effectively ensures that one side wins." That case involved a dispute over whether the Department of the Interior could take into trust a property on behalf of an Indian Tribe. *Id.* at 246. While the case was pending, Congress enacted a law directing that suits related to the land at issue "'shall not be filed or maintained in a Federal court and shall be promptly dismissed.'" *Id.* Petitioner argued that this law "impermissibly infringed the judicial power that Article III of the Constitution vests exclusively in the Judicial Branch." *Id.* The Court noted that "Article III does not prohibit Congress from enacting new laws that apply to pending civil cases." *Id.* at 258. When Congress enacts such a law that "governs pending cases, Article III does not prevent courts from applying it because 'each court, at every level, must 'decide according to existing laws.'" *Id.* Because the statute at issue "references 'pending' cases" and because Petitioner's "suit is not final, applying [the statute] does not offend Article III." *Id.*

Even before *Markazi* and *Patchak*, the Ninth Circuit held that it did not violate the separation of powers for Congress to pass a law that altered the outcome of pending cases. *See Ileto*, 565 F.3d at 1139-40. *Ileto* concerned the Protection of Lawful

Commerce in Arms Act, which held that certain categories of claims against firearms manufacturers and sellers were preempted, and required courts "to 'immediately dismiss[]' any pending lawsuits preempted by the PLCAA." *Id.* at 1131 (quoting 15 U.S.C. § 7902(b)). The Ninth Circuit held "the PLCAA does not violate the constitutional separation of powers" by "amend[ing] the applicable law" and applying the amended law "generally to all cases, both pending and future." *Id.* at 1139.

As with the statutes at issue in *Markazi*, *Patchak*, and *Ileto*, the HEAR Act does not infringe on the judicial power. Congress is entitled through the HEAR Act to enact a new law that applies to "pending civil cases," *Patchak*, 583 U.S. at 258, such as this one, even if the HEAR Act prevents Defendants from asserting defenses it previously asserted and even if the HEAR Act is "outcome-altering." *Markazi*, 578 U.S. at 229. As the underlying litigation remains ongoing, and no final outcome has been reached, the HEAR Act "does not offend Article III." *Patchak*, 583 U.S. at 258; *see also Bennett v. Islamic Republic of Iran*, 825 F.3d 949, 963 (9th Cir. 2016) (holding that statute applies even if "imposing liability retroactively, because Congress so intended.").

**III. The HEAR Act Applies Extraterritorially**

Defendant invokes the presumption against extraterritoriality to argue that the HEAR Act cannot be construed to apply extraterritorially to its conduct in Spain. *See* Dkt. No. 752, at 3-9. Yet Congress made abundantly clear, in several provisions of the HEAR Act, that it intended the statute to apply extraterritorially to cases involving the possession of Nazi-looted art in foreign countries, including in this very case. The HEAR Act's clear manifestation of intent to apply extraterritorially overcomes the presumption.

A "longstanding principle of American law" is that legislation enacted by Congress "is meant to apply only within the territorial jurisdiction of the United States." *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 417 (2023). This principle is embodied in the presumption against extraterritoriality—namely, that "[a]bsent clearly expressed congressional intent to the contrary, federal laws will be

construed to have only domestic application." *RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 335 (2016). The Supreme Court has also recognized, however, that "Congress has the authority to enforce its laws beyond the traditional boundaries of the United States." *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991) ("*Aramco*").

To analyze extraterritoriality issues, the Supreme Court has adopted "a two-step framework." *RJR Nabisco*, 579 U.S. at 337. Courts must first ask "whether the statute gives a clear, affirmative indication that it applies extraterritorially." *Id.* That question is "a matter of statutory construction." *Aramco*, 499 U.S. at 248. If Congress "has affirmatively and unmistakably instructed that [a] statute" is meant to apply extraterritorially, the statute so applies and the presumption has been rebutted. *Id.* To identify any such instruction, the Supreme Court has examined the statutory text, *see, e.g.*, *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 262–63 (2010), as well as a statute's context, *see id.* at 265 ("Assuredly, context can be consulted as well."). "[A]n express statement of extra territoriality is not essential" for a statute to apply extraterritorially. *RJR Nabisco*, 579 U.S. at 340; *see also Kiobel v. Royal Dutch Petrol. Co.*, 569 U.S. 108, 117 (2013) (asking whether Congress "intends federal law to apply to conduct occurring abroad").

Only if at step one the statute is not extraterritorial, do courts "move to step two, which resolves whether the suit seeks a (permissible) domestic or (impermissible) foreign application of the provision." *Abitron*, 600 U.S. at 418. The court must first identify the "focus of congressional concern underlying the provision at issue," *id.*, and then "ask whether the conduct relevant to that focus occurred in United States territory," *id.* (citation modified). To prove that a claim involves a domestic application of a statute, a plaintiff "must establish that the conduct relevant to the statute's focus occurred in the United States." *Nestle USA, Inc. v. Doe*, 593 U.S. 628, 633 (2021) (citation omitted).

Here, it is not necessary to progress to step two, because the HEAR Act clearly manifests Congress's intent that the law apply extraterritorially. Indeed, the Act's

introduction specifically cites this case as a decision that "frustrated" Congress's intent in the 2016 Act. Congress particularly noted this case's application of "acquisitive prescription, or usucapion," which are foreign law concepts, and stated that "to effectuate the purpose of the Act to permit claims to recover Nazi-looted art to be resolved on the merits, these defenses must be precluded." HEAR Act, § 2(a).

Defendant claims that these foreign law defenses permit the museum to retain ownership of the Painting because the museum held the painting more than six years before the owner's grandson discovered the painting's location. *See*, *e.g.*, Dkt. No. 752, at 25. Defendant maintains that such defenses are applicable here because Defendant is a foreign entity and the expropriated art at issue is located in Spain. But the HEAR Act could not have been clearer in its intent to preclude reliance on such defenses, including in this very case.

Such defenses would only need to be abrogated if the HEAR Act applies extraterritorially. The Act also eliminates the "act of state doctrine" in cases involving Nazi expropriation of art. The act of state doctrine applies when a domestic court would be required "to declare invalid the official act of a foreign sovereign performed within its own territory." *W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*, 493 U.S. 400, 406 (1990); *see also Sea Breeze Salt, Inc. v. Mitsubishi Corp.,* 899 F.3d 1064, 1067 (9th Cir. 2018) (noting that the "act of state doctrine limits judicial interference in foreign relations by precluding adjudication of the sovereign acts of other nations in United States courts."). "Act of state issues only arise when a court *must decide*—that is, when the outcome of the case turns upon—the effect of official action by a foreign sovereign." *W.S. Kirkpatrick*, 493 U.S. at 406.

Whether or not this particular doctrine applies in the instant matter, *see Philipp*, 592 U.S. at 179 (suggesting that the expropriation exception to sovereign immunity implies the unavailability of the act of state doctrine), the HEAR Act explicitly bars its use: "with respect to any claim that is otherwise timely under this Act- all non-merits discretionary bases for dismissal, including the act of state doctrine, international comity,

forum non conveniens, prudential exhaustion, and similar doctrines unrelated to the merits, may not be applied with respect to the claim." 22 U.S.C. § 1621 note, HEAR Act, § 2(8). Barring the act of state doctrine is another clear indication that the Act applies extraterritorially, since this is a doctrine that only has purchase with regard to the conduct "of a foreign sovereign performed within its own territory." *W.S. Kirkpatrick*, 493 U.S. at 405.

Further, the Act's findings, incorporated into the original 2016 HEAR Act, reference multiple circumstances involving foreign events and governments, including as one example, the policies of the Holocaust Victims Redress Act ("HVRA"), which "expressed the sense of Congress that 'all governments should undertake good faith efforts to facilitate the return of private and public property, such as works of art, to the rightful owners in cases where assets were confiscated from the claimant during the period of Nazi rule and there is reasonable proof that the claimant is the rightful owner." *Id.* at § 2(4). *See also id.* at § 3(1). The Act's reference to "*all governments*," indicates application beyond the United States.

Finally, the HEAR Act allows claims to recover artwork "notwithstanding the 'domestic takings' rule under Federal Republic of Germany v. Philipp, 592 U.S. 169 (2021)." *Id.* at § (2)(9); *see also id.* § 5(b). *Philipp* involved claims by the heirs of German Jewish art dealers against Germany seeking compensation for artwork that the Nazi regime allegedly expropriated in Germany. Germany argued that it was immune from suit under the FSIA as the heirs' claims did not fall within the FSIA's exception to sovereign immunity for property taken in violation of international law. *Phillip*, 592 U.S. at 176. This was because Germany maintained that a "foreign sovereign's taking of its own nationals' property remains a domestic affair." *Id.* "This 'domestic takings rule' assumes that what a country does to property belonging to its own citizens within its own borders is not the subject of international law." *Id.* The Supreme Court ultimately agreed with Germany, while noting that "[c]laims concerning Nazi-era art takings could be brought under the expropriation exception where the claims involve the taking of a

*foreign* national's property." *Id.* at 185. But otherwise, the FSIA's expropriation exception, which "refers to violations of the international law of expropriation . . . incorporates the domestic takings rule." *Id.* at 187.

The HEAR Act would have no reason to state its intent to allow claims to recover artwork "notwithstanding the 'domestic takings' rule" in FSIA actions if Congress did not intend for the Act to apply extraterritorially as that rule applies only in cases involving foreign actors.

Thus, from both its language and context, the HEAR Act manifests a "clear, affirmative indication that it applies extraterritorially." *RJR Nabisco,* 579 U.S. at 337. The presumption against extraterritorially is therefore inapplicable.

**CONCLUSION**

The Court should reject Defendant's constitutional challenge to the HEAR ACT for the reasons discussed above.

Dated: September 28, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Director
Federal Programs Branch

JEREMY S.B. NEWMAN
Chief Litigation Counsel
Federal Programs Branch

JOSEPH E. BORSON
Assistant Branch Director
Federal Programs Branch

*/s/ Joshua N. Schopf*
JOSHUA N. SCHOPF
(DC Bar No. 465553)
Trial Attorney
United States Department of Justice
Civil Division,
Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Tel.: (202) 514-6314
joshua.n.schopf@usdoj.gov

*Counsel for the United States of America*

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for the United States of America, certifies that this brief contains 19 pages, which complies with the 30-page limit set by court order dated April 29, 2026 (D.E. 743), and contains 6,299 words, complying with Local Rule 11-6.1.

Dated: September 28, 2026

By: *_/s/ Joshua N. Schopf_*
*Counsel for the United States of America*